FILED IN THE
UNITED STATES DISTRICT CO
DISTRICT OF HAWAII

JUL 2 8 2005

at 10 o'clock and 51 min
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

MARTIN VENTRESS, ET AL.,    )    CIVIL NO. 03-00451 SPK-LEK
                )
        Plaintiffs,    )
                )
    vs.             )
                )
JAPAN AIRLINES, ET AL.,    )
                )
        Defendants.    )
                )

## ORDER GRANTING DEFENDANT HAWAI'I AVIATION CONTRACT SERVICES, INC.'S MOTION TO COMPEL ARBITRATION PURSUANT TO THE TERMS OF THE CONTRACT BETWEEN PLAINTIFF MARTIN VENTRESS AND DEFENDANT HAWAI'I AVIATION CONTRACT SERVICE, INC.

Before the Court is Defendant Hawai'i Aviation Contract Services, Inc.'s ("Defendant HACS") Motion to Compel Arbitration Pursuant to the Terms of the Contract between Plaintiff Martin Ventress and Defendant Hawai'i Aviation Contract Service, Inc. ("Motion"), filed on May 18, 2005. This matter came on for hearing on July 25, 2005. Pro se Plaintiff Martin Ventress ("Plaintiff Ventress") appeared via telephone and Carl Osaki, Esq., appeared on behalf of Defendant HACS. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY GRANTS Defendant HACS's Motion for the reasons set forth below.

**EXHIBIT 15**



BACKGROUND

Plaintiff Ventress and Plaintiff Jack Crawford (collectively "Plaintiffs"), former employees of Defendant Japan Airlines and Defendant JALways Company, Ltd., a subsidiary of Defendant Japan Airlines (collectively "Defendants JAL") and Defendant HACS, filed their Complaint on December 23, 2002. Plaintiff Ventress' claims arise out of allegedly retaliatory, harassing conduct by Defendants JAL and its employees, including placing his name on a "Termination List." These actions were allegedly prompted by Mr. Ventress' reporting of two incidents involving an incapacitated captain who was allowed to fly and land his plane.

Plaintiff Ventress contends that Defendants JAL and Defendant HACS violated California Labor Code § 1102.5 by retaliating against him for reporting the incidents. He also claims that they constructively terminated him and that such termination constitutes retaliatory harassment. Plaintiff Ventress further alleges that this constructive termination violates California Government Code § 12940(k), California Labor Code § 1102.5, 49 U.S.C. § 40101(d)(1)-(2), and 49 U.S.C. § 42121. He also makes claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

Plaintiff HACS filed the instant Motion on May 18,

2

*Background*

Hawaii Aviation Contract Services, Inc. ("HACS") contracted Plaintiff Ventress to fly passenger airplanes for Japan Air Charter, Ltd. in 1992. Plaintiff witnessed and reported to proper authorities the circumstances associated with another pilot who had been 'piloting' while deathly ill with brain cancer and later died, Plaintiff's former employer HACS terminated him on February 18, 2003. Plaintiff filed a wrongful termination lawsuit against HACS and JAL et al., in December 2002 in California. A change of venue motion granted moved the case to the U.S. District Court of Hawaii. Defendants filed this motion to compel arbitration pursuant to the terms of the contract:

*d.  In the event of any dispute between the parties hereto, the dispute shall be submitted to the American Arbitration Association and be decided by neutral binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association.*

Defendants argue against the "internal policy" of the American Arbitration Association ("AAA"), which already rendered its' decision to use the National Employment Rules, instead of the Commercial Rules to arbitrate this case. However, Defendants HACS breached the contract and made no attempt to compel arbitration pursuant to the terms of the HACS-Ventress contract, when they initiated the arbitration process and elected **to use the Dispute Prevention Resolution (DPR), Inc. in Honolulu, Hawaii,** <u>instead of</u> the American Arbitration Association.

**Declaration of Venetia K. Carpenter-Asui:**
(Re: The **Counsel(s)** in this matter have been actively engaged in the selection of a mutually agreed upon arbitrator for the arbitration of this case. Names of potential arbitrators have been exchanged and discussed, as well as ongoing discussion regarding use of the Dispute Prevention and Resolution, Inc. in Honolulu, Hawaii, instead of the American Arbitration Association in the State of California to save expenses.

On December 17, 2004, Plaintiff filed for a Hardship Exemption with the AAA **unaware** that the arbitration process had begun with the <u>DPR *not* the AAA.</u>

Shortly thereafter, Ms. Carpenter-Asui sent Plaintiff an ultimatum letter to withdraw request for Hardship Exemption, or she would withdraw as counsel for the Plaintiff. Plaintiff refused to withdraw Hardship Exemption with the AAA, and for this reason, Ms. Carpenter-Asui withdrew as counsel for the Plaintiff.

<u>Defendants now want to invoke the contract to compel arbitration pursuant to the terms of the contract</u>, as one seeking legal protection through the local Hawaii court.

### *AAA's Decision and the Employment Rules*

The HACS-Ventress contract also states:

*<u>This is the sole legal remedy VENTRESS and HACS shall have with respect to any disputes arising from this agreement, i.e., each party hereby waives his or its rights to seek redress in any court system that might otherwise be available to him or it.</u>*

Plaintiff understands <u>both parties waives his or its right to seek redress in any court system</u> means both parties signed an agreement to submit to the authority of the AAA, and <u>not to burden the court whenever an AAA decision does not benefit one of the parties</u>. Admittedly, Plaintiff mistakenly thought the Commercial Arbitration Rules would apply, requested an explanation from the AAA. The AAA determined that because this employment contract was signed in 1992, before the AAA had established separate rules for resolution of employment disputes, that, even though the contractual provision specified "commercial rules" would apply, that the case would be arbitrated under the AAA's rules for resolution of employment disputes. Thus, Plaintiff submitted to the common sense decision that the arbitration disputes were employment related violations of the contract, and agreed to continue the arbitration under authority of the AAA.

Conversely, Defendants argued that the AAA's internal policy of applying the Employment Rules to the "employment disputes" cannot automatically replace the provisions of the HACS-Ventress contract. Neither AAA's Employment Rules nor its internal policy was something that HACS and VENTRESS ever agreed upon or even knew about.

The International Centre for Dispute Resolutions ("ICDR") is a division of the AAA. The ICDR is not mentioned in the HACS-Ventress contract. Nonetheless, it is the AAA's "internal policy" to arbitrate this case under the authority of the ICDR. Defendants HACS have made no comment regarding that "internal policy" of the AAA.

Defendants also engaged in "internal policy" changes after the HACS-Ventress contract was signed in 1992. The HACS-Ventress contract assigned, "VENTRESS as a Crewmember for Japan Air Charter ("JAZ") *ONLY*... to use such CREWMEMBERS for their *charter and ferry operations ONLY*". An agreement between Japan Air Charter and HACS for CREWMEMBERS ON ASSIGNMENT TO JAZ was effective August 1, 1998 through July 31, 2003. On September 30, 1999, Japan Air Charter seized to exist. Japan Air Charter changed its' agreement with HACS, became what is known today as JALways, Co., Ltd.; In addition, Defendants *"added" scheduled flight operation duties* that was not part of the original Crewmembers contract, and failed to make appropriate changes to update the employment contracts of its' Crewmembers, (like HACS failed to update the Arbitration Clause in its employment contract to add the Employment Rules). There was no addendum, no amendment, nor successor clause to the employment contract. This means Ventress and other HACS Crewmembers performed *scheduled flight operations* (not charter and ferry operations per the original contract) for both *Japan Airlines* and *JALways* that Plaintiff never agreed upon or even knew about.

Lew Zeigler, **FAA** International Chief Operating Inspector in San Francisco, CA. responded to the Safety Reports submitted to the FAA by the Plaintiff. Mr. Zeigler pointed out <u>other violations committed by the Plaintiff's employer HACS</u>. It is a FAA violation for crewmembers under such employment (HACS) contracts to be assigned to operate for <u>two (2) different airlines</u>, **in this case JAL and JALways**, in which neither Airlines were mentioned in the HACS-Ventress contract when it was executed in 1992.

## Defendants Claim This is Not an Employment Dispute

In the letter dated May 3, 2005, Defendants claim this case is not an employment dispute, and attempt to point the blame on the Japan Civil Aviation Bureau ("JCAB"), analogous to our FAA, and as an agency of the sovereign government of Japan. However, the HACS-Ventress contract states... *any disputes between the parties hereto*, in which there are many, to prove this issue IS an employment related dispute, therefore the Employment Rules should apply to this case, as there are no commercial aspect nor advantage to the Commercial Rules. The Nature of Disputes filed by Plaintiff are Labor/Employment violations and are not Commercial violations.

When Counsel for Defendants attempted to use the DPR, the list of potential arbitrators were selected based on their background and experience in Labor/Employment Law. <u>THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:</u>

**HRS 378-62 / Discrimination Against Employee for Reporting Violations of Law**
"<u>An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:</u>

The employee, or a person acting on behalf of the employee, reports to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of a law, rule, or ordinance adopted pursuant to a law of this State, a political subdivision of this State, or the United States, or information demonstrating **danger to public health or safety**, unless the employee knows that the report is false".

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:

**Wendell H. Ford Aviation Investment and Reform Act Protecting Whistleblowers**

The Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"), Public Law 106-181, was enacted on April 5, 2000. Section 519 of the Act, Codified at 49 U.S.C. 42121, provides protection to employees against retaliation by air carriers, their contractors, and their sub-contractors, because they provided information to the employer or the Federal Government relating to air safety violations, or filed, testified, or assisted in a proceeding against the employer relating to any violation or alleged violation of any regulation, or standard of the Federal Aviation Administration ("FAA") or any other law relating to the safety of air carriers, or because they are about to take on these actions.

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:

**Americans with Disabilities Act (ADA)**

To be protected by the ADA, an employee must have a disability or have a relationship or association with an individual with a disability. An individual with a disability is defined by the ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment.

Though Plaintiff did not have a disability, but certainly had a relationship with an individual with a disability in Jeff Bicknell. The Plaintiff was medically disqualified for unknown reasons; therefore, perceived by others as having such an impairment. Despite being cleared to return to work ("fit for flight duty").

Federal and State laws make it an unlawful employment practice to discriminate against employees based on their disability or perceived disability. The ADA prohibits an employer from discriminating against such person with regards to the "discharge of employees"… and other terms, conditions, and privileges of employment.

<u>THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE</u>:

**Family and Medical Leave Act (FMLA)**

In March 2002, HACS President Francis Tabata declared that he "<u>even cleared the way through JALways' personnel department</u>", before placing Plaintiff Ventress on Leave of Absence ("LOA") <u>without</u> pay. During the LOA, Defendants HACS email letter proves requests were made of the Plaintiff to provide medical clearance ("fit for duty"). Plaintiff's Medical Records reveal Ventress complied with Defendants request by having a Psychologist and a Psychiatrist to provide a "fit for flight duty" form to the Defendants. Under the FMLA the employee:

(A) <u>Is to be restored by the employer to the position of employment held by the employee when the leave commenced</u>; or

(B) <u>To be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.</u>

The FMLA states, "<u>It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of the employee rights; it shall be unlawful for any employer to discharge or in any other manner discriminates against any employee</u>".

Whereas, Defendants terminated Plaintiff Ventress because he allegedly "failed to maintain medical qualification" **is not true**. During the LOA, there was no medical examination, which diagnosed Plaintiff as being medically disqualified. Therefore, Plaintiff could not have "failed" something he did not take part. Nonetheless, Defendants refused to allow the Plaintiff the right to return to work.

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:

**Discrimination by Harassment in the Workplace** is certainly an employment issue. Harassment and Libel came in the form of a letter-writing campaign against Plaintiff that included Defendants allowing the letters to circulate throughout the JAZ and HACS offices, using crewmembers' mailboxes as a distribution center. HACS name also appears on the e-mail address list. Alleging Plaintiff Ventress attempt to "cash-in" on the misfortunes of Bicknell, because he filed this lawsuit, when in FACT, Ventress was, and remains well documented to support his allegations against Defendants HACS. While other letters viciously attacked Ventress as being lazy and a malinger.

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:

**The Defendants Refused to Release Plaintiff's Employment Records** further proves this case is an employment case. Plaintiff requested HACS to release his employment records. Counsel for Defendants HACS, in a letter to Plaintiff, refused to release Plaintiff's employment records. Defendant's defiance and intentional refusal to release Mr. Ventress' employment records constitute malicious retaliation and violation of law:

§ 44936. Employment investigations (The Pilot Records Improvement Act)

§ 44703. Records of Employment of Pilot Applicants
Because of Defendants refusal to release Plaintiff's employment records, he has been unable to secure employment as a crewmember with other airline companies.

<u>THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:</u>

Plaintiff was DENIED **unemployment benefits** after being terminated by the Defendants. The Unemployment Office in Hawaii denied Plaintiff benefit rights, because Defendants claimed Plaintiff was terminated for "**misconduct connected with work**". This alone constitutes an employment dispute. Therefore, because of the <u>alleged</u> "misconduct" unemployment benefits were denied the Plaintiff. There has been no documentation in the Plaintiff's personal files to substantiate any misconduct in his 10-year employment. This was another intentional act by Defendants against the Plaintiff.

**Termination of Crewmember under HACS Employment Contract**

When medical examinations are required, the employer will pay medical expenses. Instead, Plaintiff who was on leave of absence without pay, but required by Defendants to obtain another medical clearance (fit for duty), incurred medical bills he could not afford, Moreover, was not reimbursed by Defendants. Plaintiff possesses letters from HACS that prove medical examinations were ordered at the request of Defendants, <u>not the JCAB</u>. Therefore, the Defendants (<u>not the JCAB</u>) retaliated against the Plaintiff, and Defendants Terminated Ventress' on February 18, 2003 "<u>failure to maintain medical qualifications</u>". Under the HACS-Ventress contract… (Section 7. a) <u>Termination of CREWMEMBERS</u>: (HACS) Assignment of VENTRESS to JAZ shall be terminated on the date VENTRESS <u>Refuses or Fails</u> to maintain required qualifications. Plaintiff was on a leave of absence at the time of his termination; therefore, he could not have failed to maintain his medical qualification. Neither did Plaintiff refuse medical examinations as evident by the medical records that prove from <u>August 21, 2001 until August 5, 2002</u>, Plaintiff had been cleared "Fit for Flight Duty" <u>8-Times</u> by Medical Professionals.

**Location of Arbitration** (According to the terms of the contract)

Though the clause in the HACS-Ventress contract states… in accordance with the Laws of the State of Hawaii, "location of the arbitration" is not automatically in Hawaii. Defendants argued to arbitrate in Hawaii because Plaintiff's employment with HACS Is in Hawaii, is an admission by the Defendants that "employment location" is relevant. Defendants mislead this court and the AAA regarding the location of witnesses by quoting the "employment contract" those HACS employees (witnesses) must live in Hawaii. Defendants confused the issue of where a pilot can live versus where they reside. The majority of the American crewmembers do not **reside** in Hawaii, however, if they did reside in Hawaii, HACS would be required by State Law to Withhold Income Tax. **Witnesses** do not **reside** in Hawaii, instead most "reside" in the Western United States. This matter can be resolved by the production of HACS Payroll and Tax Records that would reveal the **Tax Residence** for Defendants HACS Non-Resident Employees. Contractually, the Defendants' Non-Resident Pilots come to Hawaii for flight duty only. Whether it is the witnesses as employees, or HACS as employer, fact remains the Employee/Employer relationship that exists clearly makes this an "employment dispute".

**Cost Factor**

WHEREAS, the HACS-Ventress contract designates a single arbitrator, Defendants desire to the use of the Commercial Arbitration Rules in this case. The Commercial Rules also states, when the claim involves at least $1,000,000, **Three (3) arbitrators shall hear and determine the case.** Therefore, the (3) arbitrator rule will apply in this case if the Commercial Rules are enforced. This would be an additional cost to both parties.

However, the AAA has already granted the Plaintiff a waiver/deferral hardship provision (in accordance with the *AAA's Administrative Fees Waiver/Deferral/Hardship Provisions*) where the inability of one party to pay the arbitrator may prevent the case from going forward. Plaintiff believes the decision that granted hardship provisions by the AAA is the primary reason the Defendants desire to use the Commercial Rules. Under the Commercial Rules Plaintiff shares expenses with Defendants to arbitrate the case. However, under the Employment Rules <u>Defendants pay</u> administrative cost to arbitrate the case. Defendants now challenge the AAA's decision that granted hardship requesting the financial statements of the Plaintiff. It is a simple case of outspending the opposition. Therefore, Defendants are attempting to create financial burdens that the Plaintiff will be unable to pay. The FACT that the contract between Defendants JALways and Defendants HACS, and by the written Indemnification Agreements, JALways promise to pay for HACS litigation attorneys' fee and costs. Thus, HACS has the financial pockets and support of JALways, 100% owned by JAL, a Multi-Billion Dollar Conglomerate.

When Defendants argued change of venue before the U.S. District Court in Central California, Defendants claimed it would be more expedient to litigate in Hawaii. However, On October 13, 2004, Judge King acknowledged this as one of the oldest cases in the Hawaii Courthouse. Defendants burden an already backlogged Hawaii District Court, while increasing the cost of this arbitration, as evident by the billable hours paid by Defendants. Moreover, disputes against Defendants HACS will continue to mount:

In the District Court of Hawaii, former HACS Captain Bruce Schoggen filed a motion to compel arbitration against Defendants HACS. Plaintiff Ventress signed a similar contract as Schoggen.

Captain Michael Moore, and Captain Jack Crawford. In the recent past, these three (3)

HACS Captains (now former Captains) with long illustrious aviation careers and

distinguished military backgrounds have initiated Demand for Arbitration against HACS,

For employment violations of their contracts; in addition, they have similar contracts as

Plaintiff. The fact the Plaintiff is a Viet Nam Era Veteran that served his country through

and including Operation Desert Storm, had an exemplary 10-year employment with the

Defendants, until the Plaintiff reported Safety Violations against the Defendants over Jeff

Bicknell. The late Jeff Bicknell was the young pilot with brain cancer that was the whole

basis of the Plaintiff's Safety Reports. Plaintiff never failed any medical examinations

during the 10-years as a crewmember for the Defendants. Plaintiff's financial burdens are

a direct result of the intentional and malicious acts of retaliation against the Plaintiff for

Whistleblowing, by the Defendants. Nonetheless, Defendants continue to seek retaliation

and more concerned with Plaintiff $8,000.00 dollar financial burden for administrative

fee than the actual application of the Commercial Rules.

   If Defendants truly desire to compel arbitration pursuant to the terms of the

contract, jurisdiction therefore, should be pursuant to the authority of the AAA and

not the U.S. District Court of Hawaii:

*This is the sole legal remedy VENTRESS and HACS shall have with respect to any disputes arising from this agreement, i.e., each party hereby waives his or its rights to seek redress in any court system that might otherwise be available to him or it.*

Therefore, Plaintiff requests to continue this arbitration under the authority of the AAA,

and its' decision to use the National Employment Rules and not the Commercial Rules.

Thank you for your time and consideration.

Ventress, like Schoggen, initially filed his dispute in the form of a lawsuit against HACS in U.S. District Court. Contrary to Plaintiff Schoggen, <u>Defendants argued against the motion to compel arbitration filed by Schoggen</u>. Nevertheless, Hawaii Chief Justice Judge David A. Ezra granted Plaintiff Schoggen motion to compel arbitration on May 17, 2005. (CV NO. 04-00707 DAE-LEK).

### *CONCLUSION*

The Defendants efforts to prevent the relevant facts surrounding the Plaintiffs Termination from ever being reviewed by an impartial, dispassionate and fair arbitrator(s) indicate doubt in the ability of the Defendants to prevail, thus prolonging the inevitable.

As a result of the several employment disputes against Defendants HACS, the Plaintiff prays that the U.S. District Court of Hawaii will respect the decision, and the "internal policy" set forth by the AAA to use the National Employment Rules to arbitrate this case. There are no clear advantages to the use of the Commercial Arbitration Rules except to create additional costs, and the addition of more arbitrators. One can expect this predictable pattern by the Defendants to continue with another 'motion to compel' one arbitrator instead of three (3) arbitrators.

The AAA's internal policy to use the National Employment Rules for the upcoming arbitrations will continue to burden the courts, backlog the dockets, with one stall tactic after the other. Therefore, this District Court of Hawaii ruling will relieve future burdens of the court of the upcoming arbitrations of Captain Bruce Schoggen, Captain Michael Moore, and Captain Jack Crawford. In the recent past, these three (3) HACS Captains (now former Captains) with long illustrious aviation careers and distinguished military backgrounds have initiated Demand for Arbitration against HACS,

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was or will be duly served upon the following by U.S. Certified Mail postage:

    TO:    Carl H. Osaki, Esq.
            Pioneer Plaza, Suite 1510
            900 Fort Street
            Honolulu, Hawaii 96813

            Attorney for Defendant
            Hawaii Aviation Contract Services, Inc.

    TO:    William Chang / Case Manager
            International Centre for Dispute Resolution
            International Division of the American Arbitration Association
            1633 Broadway, 10th Floor
            New York, NY 10019

DATED:  Wednesday, July 13, 2005

*Martin Ventress*

MARTIN VENTRESS, Pro Se

## CARL H. OSAKI

*Attorney At Law, A Law Corporation*
Pioneer Plaza, Suite 1510
900 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 528-4666
Facsimile: (808) 529-0764

May 3, 2005

VIA Facsimile - (212) 246-7274

Mr. William Chang
International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

   RE: Ventress v. Hawaii Aviation Contract Services, Inc.
     Case Number:  50 116 T 00587 04

Dear Mr. Chang:

  I received your letter of April 29, 2005, which addresses two topics: (1) the rules to be applied, and whether the American Arbitration Association ("AAA") will continue to administer this arbitration; and (2) the locale of the arbitration.

  As I understand the AAA's reasoning, it: (1) acknowledges that the contract between Martin Ventress ("Ventress") and Hawaii Aviation Contract Services, Inc. ("HACS") provides that the Commercial Rules shall apply to any arbitration; (2) notes its own general policy of applying the Employment Rules to any employment dispute; and (3) concludes that the Employment Rules will henceforth apply.

  With all due respect, I disagree with that line of reasoning. There is no explanation of *why* the Employment Rules can or should apply under these circumstances. Indeed, the AAA began administering this arbitration in some respects under the Commercial Rules. See, e.g., your letter of February 11, 2005.

  Furthermore, this case is not an employment dispute. It is fundamentally about Mr. Ventress' unexplained and, frankly, perplexing failure to abide by a request from an agency of the sovereign government of Japan -- the JCAB -- which has jurisdiction over whether Mr. Ventress was allowed to operate as a crewmember aboard a Japanese-flag commercial airliner. Under the HACS-Ventress contract, once Mr. Ventress lost his ability to perform under the contract, HACS had no choice but to terminate it. See Exhibit D. As I informed Martin Cervantes, Esq. (Mr. Ventress' first attorney) a long time ago, Mr. Ventress' beef was

Mr. William Chang
May 3, 2005
Page 2

with the JCAB, not HACS. <u>See</u> Exhibit G (in December 2002, I wrote: "In my view, your client's complaints should be addressed to the JCAB, and not an American court. However, that is just my view.").

In addition, the Employment Rules were not in existence when the HACS-Ventress contract was executed. There have been no subsequent modifications between HACS and Ventress to the arbitration provision in the HACS-Ventress contract; thus, the agreement that the Commercial Rules would apply has not changed since the HACS-Ventress contract was executed. The fact that the AAA promulgated the Employment Rules years after the HACS-Ventress contract was signed cannot modify the contract between HACS and Ventress. The AAA's internal policy of applying the Employment Rules to "employment disputes" cannot automatically replace the provisions of the HACS-Ventress contract. Neither AAA's Employment Rules nor its internal policy was something that HACS and Ventress ever agreed upon, or even knew about. <u>See</u>, <u>e.g.</u>, letter dated February 14, 2005, from Martin Ventress to myself, a true and correct copy of which is attached as Exhibit A (". . . <u>the dispute</u> <u>shall be submitted to the American Arbitration Association and be decided . . . in accordance</u> <u>with the Commercial Arbitration Rules of the American Arbitration Association</u>.") [italics and underscoring by Mr. Ventress]); letter dated February 23, 2005, from Martin Ventress to you (same); letter dated February 25, 2005 from Martin Ventress to you (same, but with the reference to the Commercial Rules also in bold-face type by Mr. Ventress).

Moreover, the regime set up by the AAA under the Employment Rules was not followed by HACS. There is no "promulgated plan" submitted by HACS to the AAA. In short, applying the Employment Rules when the parties to the HACS-Ventress contract specifically provided for the application of the Commercial Rules would subject any award to a motion to vacate pursuant to Section 658A-23 of the Hawaii Revised Statutes. HACS objects to the application of the Employment Rules under these circumstances.

This will serve as notice that HACS is considering seeking judicial relief regarding this issue under Sections 658A-5 and 658A-8 of the Hawaii Revised Statutes.

Without waiving the objection to these proceedings being conducted under the Employment Rules, I will also address the "place of arbitration" issue raised in your letter.

First, it was my understanding that the AAA established Honolulu, Hawaii, as the locale for the arbitration as far back as February 11, 2005. <u>See</u> your letter of February 11, 2005. I stated HACS' agreement with that determination in my two-page letter of March 2, 2005. I also reiterated that position in my twelve-page letter of March 2, 2005. Thus, I was not aware that the locale was still at issue. *Thus, please inform how and why the AAA has apparently reversed its position from February 11, 2005.*

Second, assuming without conceding that the locale of the arbitration is still at issue, HACS responds to the elements set forth in your letter as follows, all of which support Honolulu, Hawaii, as the site of the arbitration:

Mr. William Chang
May 3, 2005
Page 3

      1.    <u>Location of parties</u>. HACS is a Hawaii corporation, with its principal office in Honolulu, Hawaii. In a letter of acknowledgment attached to the HACS-Ventress contract, Mr. Ventress signed the following unambiguous understanding of his residency under the contract:

> I understand without question or ambiguity that . . .
> I must live in Hawaii and will not commute to work.

<u>See</u> Exhibit B.

      This, both parties under the terms of the HACS-Ventress contract reside in Hawaii.

      2.    <u>Location of witnesses and documents</u>. <u>All of HACS personnel witnesses reside in Hawaii.</u> There will be witnesses from Japan, as well as the western part of the United States. Documents are all located in either Hawaii or Japan. Mr. Ventress contractually promised to reside in Hawaii, as well. Hawaii is either the location of witnesses and documents, or is the most common site of them.

      3.    <u>Location of site or place of materials</u>. I suspect that this element is not relevant to this case. The events underlying this dispute took place in Hawaii, Japan, or over international waters in the far east. No other place but Hawaii is logically the site for the arbitration under this element.

      4.    <u>Consideration of relative cost to the parties</u>. HACS and its counsel reside in Hawaii. Mr. Ventress contractually agreed to reside in Hawaii. Hawaii is, therefore, the most convenient place for the arbitration when costs are considered. In comparison, at one point, Mr. Ventress expressed a preference for Texas or New York City. Neither location has any connection with the facts underlying this matter, and the costs associated with conducting a hearing in either location obviously would be higher than in Hawaii.

      5.    <u>Place of performance of contract</u>. <u>Mr. Ventress agreed to reside in Hawaii to perform the HACS-Ventress contract.</u> In accordance with Honolulu, Hawaii, being Mr. Ventress' home base in the performance of the HACS-Ventress contract, Mr. Ventress was provided with parking at the Honolulu International Airport. <u>See</u> Exhibit C.

      6.    <u>Laws applicable to the contract</u>. In this arbitration, the laws of Hawaii apply. <u>See</u> Exhibit D. If there is a choice of law arising under the HACS-Ventress contract, the laws of Hawaii (and, if applicable, the laws of the United States) are applicable. <u>Id</u>. In addition, work reduction is specifically governed by the laws of Hawaii. <u>See</u> Exhibit E. Moreover, the workers' compensation laws of Hawaii apply to the contract. <u>See</u> Exhibit F. Hawaii is, again, the logical place for the site of the arbitration.

      7.    <u>Place of previous court action</u>. Mr. Ventress initially filed his federal court action in the Central District of California. That court transferred the case to the District of

Mr. William Chang
May 3, 2005
Page 4

Hawaii, where the stipulation for stay was entered. Again, this element supports Hawaii as the location for the arbitration.

      8.   <u>Necessity of an on-site inspection of the project</u>. HACS does not anticipate an on-site inspection being needed in this case.

I have already addressed points that I anticipate Mr. Ventress will raise; that is, that a Hawaii forum would somehow be prejudiced against him. <u>See</u> my letters of March 2, 2005. Mr. Ventress has yet to point to a shred of evidence to support his jingoistic characterization of Hawaii.

HACS, therefore, requests: (1) that Honolulu, Hawaii, be maintained as the site of the arbitration hearing, assuming there is one; and (2) that the AAA reconsider, or at least explain, its application of the Employment Rules to this case as well as its continuing administration of this matter.

Thank you for your attention to these matters.

Very truly yours,

CARL H. OSAKI

cho/amk

c:    Hawaii Aviation Contract Services, Inc.
     Mr. Martin Ventress



**U.S. Department of Transportation**
Office of the Secretary
of Transportation

# NOTICE OF ACTION TAKEN

## DOCKET OST-95-843

This serves as interim notice to the public of the action described below, taken orally by the Department official indicated; the confirming order or other decision document will be issued as soon as possible.

Applicant: **Japan Air Charter Co., Ltd.**    Date Filed: November 6, 1997

Relief requested: Exemption from 49 U.S.C. § 41301 to engage in charter foreign air transportation of persons, property and mail between Japan and the United States, and other charters subject to the Department's rules.

If renewal, date and citation of last action: December 2, 1996, confirmed by Order 96-12-37

Applicant representative: Jeffrey N. Shane (202) 663-6909

Responsive Pleadings: On November 21, 1997, the State of Hawaii filed in support of Japan Air Charter's application. No other answers were filed.

### DISPOSITION

Action: Approved    Action date: December 1, 1997

Effective dates of authority granted: December 1, 1997-December 1, 1998

Basis for approval (bilateral agreement/reciprocity): 1982 Memorandum of Understanding between the United States and Japan (1982 MOU)

Except to the extent exempted/waived, this authority is subject to the terms, conditions, and limitations indicated: Exemption Authority (Standard Conditions)

Special conditions/Partial grant/Denial basis/Remarks: The authority granted above is (1) subject to the prior approval requirements for charters set forth in Order 92-3-24, and (2) must be performed consistent with existing agreements between the United States and Japan.

Action taken by:

Paul L. Gretch, Director
Office of International Aviation
under assigned authority (14 CFR 385)

(Petitions for review may be filed from now until 10 days after the service date of the confirming order/letter. Filing of a petition shall not stay the effectiveness of this action.)

001895

**CARL H. OSAKI**

*Attorney At Law, A Law Corporation*
Pioneer Plaza, Suite 1510
900 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 528-4666
Facsimile: (808) 529-0764

December 20, 2004

VIA Facsimile:  523-6727

Ms. Venetia K. Carpenter-Asui
Haseko Center, Suite 812
820 Mililani Street
Honolulu, HI  96813

VIA Facsimile:  526-0307

Charles H. Brower, Esq.
Pioneer Plaza, Suite 1210
900 Fort Street
Honolulu, HI  96813

RE:    Ventress/Crawford v. Hawaii Aviation Contract Services

Counsel:

        I am in receipt of Ms. Carpenter-Asui's letter of December 20, 2004, regarding a list of arbitrators that work through the American Arbitration Association ("AAA"). I contacted the San Francisco office of the AAA, which is the location from where any arbitration initiated by your clients will be administered, and asked for a list. I was told that there is no such list available until after an arbitration is initiated. It being your clients' choice on such an initiation, I will wait for a list from the AAA in due course. I again invite you to use the services of Dispute Prevention & Resolution because I understand it would be less expensive, but that is your choice, although I will use this and past invitations with regard to any cost motion that may arise.

                                Very truly yours,

                                CARL H. OSAKI

c:  Hawaii Aviation Contract Services



**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

Issued by the Department of Transportation on August 21, 2001

## NOTICE OF ACTION TAKEN -- DOCKET OST-99-6023 & OST-99-5076

This serves as notice to the public of the action described below, taken by the Department official indicated (no additional confirming order will be issued in this matter).

Applicant: **JALways Co., Ltd.**

Date Filed: August 2, 2001

Relief requested:

Renew exemption from 49 U.S.C. § 41301 <u>to engage in scheduled foreign air transportation of persons</u>, property and mail between any point or points in Japan and any point or points in the United States; and authority to conduct charters in accordance with 14 CFR Part 212.

Renew statements of authorization under 14 CFR Part 212 to (a) display Japan Airlines Co., Ltd.'s designator code (JL) on flights operated by JALways between any point or points in Japan and any point or points in the United States; and (b) wet lease aircraft to Japan Airlines for a term coextensive with the term of the scheduled authority described above.

If renewal, date and citation of last action: August 22, 2000, in these dockets

Applicant representative: William Karas (202) 429-6223 & Benjamin R. Achenbach (202) 429-6289
Responsive pleadings: None filed

### DISPOSITION

Action: Approved

Action date: August 21, 2001

Effective dates of authority granted: August 21, 2001-August 21, 2002

Basis for approval (bilateral agreement/reciprocity): 1998 Memorandum of Understanding between the United States and Japan (1998 MOU)

Except to the extent exempted/waived, this authority is subject to the terms, conditions, and limitations indicated:

**X** Standard exemption conditions, Order 92-3-4 and the 1998 MOU

Special conditions/Partial grant/Denial basis/Remarks:

The authority granted to JALways, in addition to the conditions described above, is subject to the following conditions:

(a) To the extent that JALways is operating the service, the exemption authority granted above is subject to the frequency limitations and service points authorized under the 1998 MOU.

(b) The number of weekly round-trip frequencies conducted under the codeshare authority authorized above shall not exceed the limitations on same country airline codeshare frequencies available for such services under Section IV.E of the 1998 MOU.

(c) JALways and/or Japan Airlines must notify the Department no later than 30 days before they begin any new code-share service under the code-share services authorized here. Such notice shall identify the market(s) to be served, which carrier will be operating the aircraft in the code-share market added, and the date on which the service will begin. Such notices should be filed in Docket OST-99-6023.

(d) JALways and/or Japan Airlines must promptly notify the Department if the code-share agreement providing for the code-share operations is no longer effective or the carriers decide to cease operating any or all of the approved

4 of 17          · 001897