DEC — 5 2005

Office of Disciplinary Counsel
1132 Bishop Street, Suite 300
Honolulu, Hawai'i 96813
Telephone (808) 521-4591

Chief Disciplinary Counsel
  Carole R. Richelieu
Assistant Disciplinary Counsel
  Charles H. Hite
  Michael T. Lee
  Geoffrey M. Kam
  Yvonne R. Shinmura
Of Counsel
  Alvin T. Ito
  Magali V. Sunderland*
  *A Law Corporation
Investigator
  Fred Oishi
Research Paralegals
  Darryn J. Manuel
  Lisa Lemon-Monville



Disciplinary Board
Chairperson
Charles T. Kleintop
Vice Chairperson
Diane D. Hastert
Secretary
Lynn H. Higashi
Treasurer
Richard A. Coons, CPA

Rustam A. Barbee
Richard A. Chamberlin, Ph.D.
Corlis J. Chang
Chief Lee D. Donohue (Ret.)
Gary M. Farkas, Ph.D., MBA
Hon. Leslie A. Hayashi
Joyce Ingram-Chinn, Ph.D.
Hon. Evelyn B. Lance (Ret.)
Hon. Clifford L. Nakea (Ret.)
Dean E. Ochiai
Blake T. Okimoto
Jean E. Rolles, CPM
Carroll S. Taylor
Thomas D. Welch, Jr.

December 2, 2005                CONFIDENTIAL

Mr. Martin Ventress
5042 Wilshire Blvd., #310
Los Angeles, CA  90036

Re:  Carl H. Osaki

Dear Mr. Ventress:

This will acknowledge receipt on December 1, 2005, of your ethics grievance (with attachments) regarding attorney Carl H. Osaki.

Please be advised, however, that this office does not handle legal disputes as described in your November 28, 2005 letter, and cannot provide the requested legal assistance. Our jurisdiction is limited to the ethical rules which rules are not implicated by your recitation.

Thank you for taking the time to contact this office. By copy of this letter, we are routinely apprising Mr. Osaki of your contact with this office.

Very truly yours,

*Carole R. Richelieu*

CAROLE R. RICHELIEU
CHIEF DISCIPLINARY COUNSEL

CRR:dlh

cc:  Carl H. Osaki, Esq. (enclosure-11/28/05 letter without attachments)



EXHIBIT D

DEC - 5 2005

COMPLAINT REGARDING ATTORNEY CARL H. OSAKI, ESQ.

November 28, 2005

Supreme Court of Hawaii
Office of Disciplinary Counsel
1132 Bishop Street, Suite 300
Honolulu, Hawaii 96813

OFFICE OF DISCIPLINARY COUNSEL

RECEIVED

1   December   2005
DAY   MONTH   YEAR

TIME 10:30 am   BY [initials]

RE: **Ethics Violations by Carl H. Osaki**

I hereby lodge an official complaint against Carl H. Osaki who is licensed in the State of Hawaii, and therefore subject to the Hawaii Office of Disciplinary Counsel.

**Nature of the complaint:**

Carl H. Osaki engaged in unethical behavior as detailed below:

### BACKGROUND

Japan Airlines ("JAL") created its subsidiary company, Japan Air Charter ("JAZ") in Tokyo, Japan, in 1990. In addition, Hawaii Aviation Contract Services, Inc. ("HACS") incorporated in Honolulu, Hawaii, in 1990. HACS is the Independent Contract Service that provides foreign flight crews for JAL and JAZ with the majority being U.S. citizens. On October 1, 1999, **Japan Air Charter was renamed JALways Co., Ltd.** JAL owns 100% of JALways. JAL and JALways principal place of business is Tokyo, Japan. However, **JALways Co. is a registered corporate business in Hawaii.**

**For pay purposes**, flight crews are employees of HACS, however, flight crews' actual employer is JALways; **herein is the problem**.
**First**, this scheme insulates the foreign parent company (**i.e. JAL**) from the laws of the United States. **Second**, the subsidiary company (**i.e. JALways**) creates an "alter ego" company (**i.e. HACS**). Carl H. Osaki ("**Mr. Osaki**") is the attorney for HACS.

Although pilots sign written contracts of employment with HACS, HACS also signed a written contract with JALways to provide pilots to fly their airplanes. HACS is merely the "alter ego" that does not exist without JALways pushing the buttons. HACS is the paymaster for JALways that shields them from the U.S. Legal System. In 1992, HACS contracted me to fly airplanes for JALways only, **not Japan Airlines (JAL)**.

In June 2001, I witnessed a near fatal airplane crash flown by a pilot that I reported was extremely ill. Soon after, it was determined that pilot **Jeff Bicknell had brain cancer**. The chain of events that followed ultimately resulted in my termination in February 2003.

I believe I was terminated because I "Blew the Whistle" regarding the health of <u>Jeff Bicknell, who died later that same year of brain cancer (2003)</u>.

Initially, I filed a wrongful termination lawsuit against JAL, JALways, and HACS, in my home state of California. Defendants Motion for a Change of Venue was Granted; the case transferred to U.S. District Court of Hawaii.

### ATTEMPT TO BREACH CONTRACT

In August 2004, Venetia Carpenter-Asui ("Ms. Asui") my attorney at the time, explained to me that my case was stipulated to arbitration, because of the clause in my employment contract with HACS states:

<u>*d. In the event of any dispute between the parties hereto, the dispute shall be submitted to the American Arbitration Association ("AAA") and be decided by neutral binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association.*</u>

Rather than arbitrate by the terms pursuant to the terms of the HACS-Ventress contract to submit any dispute with the **AAA**, Ms. Asui and Mr. Osaki, (<u>unbeknown to me at that time</u>), **instead** agreed to arbitrate with the Hawaii Dispute Prevention and Resolution ("DPR").

Mr. Osaki and Ms. Asui ignored the <u>contractual agreement</u> between HACS and myself, attempted to **breach the contract** when they agreed to use the DPR. <u>I never agreed to use the DPR</u>, nor did Mr. Osaki and Ms. Asui submit this case under the authority of the **AAA** pursuant to the HACS contract. Moreover, it was determined that Magistrate Judge Leslie Kobayashi would have jurisdiction over this arbitration. This is inconsistent with language of the HACS-Ventress contract:

<u>*This is the sole legal remedy VENTRESS and HACS shall have with respect to any disputes arising from this agreement, i.e., each party hereby waives his or its rights to seek redress in any court system that might otherwise be available to him or it.*</u>

Therefore, <u>I filed</u> a **Demand for Arbitration** with the AAA, because of the incompetence of the two attorneys to do so, as Mr. Osaki and Ms. Asui collaborated to deny my contractual agreement to arbitrate under the AAA.

Ms. Asui withdrew as counselor, and threatened me with an attorney's lien. **Mr. Osaki** seeks to recover all the attorneys' fees/cost it has incurred in defending against the civil action and in enforcing the arbitration provision of my contract. Mr. Osaki now claims that I filed a Frivolous Lawsuit. JALways lawyers threatened me several times, to withdraw charges against their clients, or face a countersuit for malicious prosecution, in which they assured me they would prevail. Mr. Osaki and Ms. Asui want to recovery attorney costs, even though both attorneys ran up unnecessary fees and costs. Fact is certain costly attorney fees would have been determined by the rules of the AAA, if both parties had submitted to the AAA, instead of the DPR. (U.S. Department of Justice refers to this under Title 18 U.S.C. Section 241)

## MR. OSAKI OBJECTS TO HARDSHIP EXEMPTION GRANTED BY AAA

On December 17, 2004, in accordance with the guidelines set forth by the AAA, I filed a **Demand for Arbitration.** Simultaneously, I requested a **Hardship Exemption** provided by the AAA for individuals with financial burdens. I submitted financial statements required by the AAA. After review of my financial statements, the AAA granted my hardship request.

Mr. Osaki now wants an explanation from the AAA, requesting the terms in which that hardship was granted. According to the AAA, my financial hardship is personal information between the AAA accounting department and myself. Mr. Osaki's unethical request delays the arbitration process, and disrespects the integrity of the AAA that already verified and granted my hardship. In addition, I proved that my financial burdens were directly attributed to the egregiousness of Mr. Osaki's clients HACS.

## MR. OSAKI OBJECTS TO AAA INTERNAL POLICIES

The AAA assigned the International Centre for Dispute Resolution (ICDR), the international division of the AAA, because of the "business arrangement" between HACS and JALways. The AAA's internal policy for employment disputes is their use of the National Employment Rules. Again, Mr. Osaki did not agree with the AAA policy of the National Employment Rules. Thus, May 18, 2005, Mr. Osaki filed a Motion to Compel Arbitration pursuant to the terms of the HACS-Ventress contract. The same contract Mr. Osaki & Ms. Asui ignored in 2004. Mr. Osaki wanted to use the Commercial Rules, **instead of,** the National Employment Rules, because of the $8,000 administrative fee required by the AAA is to be paid by the Claimant. This delay tied up the U.S. District Court for an additional two months.

The Commercial Rules require an initial payment from the Claimant, whereas, the Nat'l Employment Rules has no such requirement. In this case, I am <u>required to pay an upfront fee of</u> **$8,000**. The Commercial Rules serve no advantage, except to provide Mr. Osaki more time to waste.

Nonetheless, On July 25, 2005, U.S. District Judge Leslie Kobayashi, Granted Mr. Osaki's Motion to Arbitrate pursuant to the <u>Commercial Rules</u>, **instead of** the Employment Rules of the AAA. <u>The AAA deferred $8,000 obligation fee</u>; for this, Mr. Osaki wants justification from the AAA.

### OSAKI'S CONSPIRACY THEORY

Mr. Osaki is defending several disputes from other pilots against his clients for various reasons. Each pilot decided to arbitrate upon his own accord. Each case becomes Public Record. Pilots have personal knowledge of each other's case, as it is their right.

For this cause, Mr. Osaki filed counterclaims against other pilots with the AAA, claiming there is a "Conspiracy" against his clients. I take offense to being called a "Conspirator". I pride myself that served our country from Viet Nam to Desert Storm in the United States Air Force, with a Top Secret Security Clearance, and served the City of Los Angeles as a Firefighter; moreover, I flew 10-years for JALways without incident, or accident, now Mr. Osaki slanderous remarks calling me a "Conspirator", is an insult.

### MR. OSAKI ASSERTS COUNTERCLAIM TO AAA

Mr. Osaki filed a counterclaim with the AAA that I asserted claims against HACS in federal court that should have been arbitrated. <u>Mr. Osaki claims none of the fees and costs incurred</u> in relation to the federal court litigation, should have been necessitated in the first place. <u>I claim none of the fees and costs incurred</u> in relation to his unauthorized attempt to use the DPR, instead of the AAA, should have been necessitated in the first place.

In a similar case against HACS (**CV NO. 04-00707 DAE-LEK**), Chief Justice Judge David A. Ezra, Granted Plaintiff's Motion to Compel Arbitration (May 17, 2005). In that case, Mr. Osaki argued the same points as in my case, regarding filing the initial complaints in the federal court. Judge Ezra disagreed with Mr. Osaki then (seven months ago), yet Mr. Osaki filed a counterclaim with the AAA that is without merit.

## MR. OSAKI AND THE U.S. DISTRICT COURT JUDGES

Mr. Osaki objected to the AAA internal policy of the National Employment Rules, filed a motion to compel arbitration pursuant to the terms of the HACS-Ventress contract.

Hawaii attorney David Simmons on behalf of his client Captain Bruce Schoggen (has similar contract as Ventress), filed **Demand for Arbitration** against HACS. The AAA granted Mr. Simmons the similar internal policy use of the National Employment Rules. I find it inconsistent that Mr. Osaki filed a motion to compel arbitration pursuant to the terms of the <u>HACS-Ventress contract</u> before **Judge Kobayashi**; however, <u>Mr. Osaki has not filed the same motion</u> to compel arbitration pursuant to the terms of the <u>HACS-Schoggen contract</u> before **Chief Justice Judge Ezra**:

Whereas, **Judge Kobayashi** GRANTED Defendants HACS motion to compel arbitration pursuant to the terms of the **HACS-Ventress** contract.
Whereas, **Chief Justice Judge Ezra** GRANTED Plaintiff's motion to compel arbitration pursuant to the terms of the **HACS-Schoggen** contract.

Captain Michael Moore filed Demand for Arbitration with the AAA against HACS. Therefore, September 9, 2005, Mr. Osaki filed another court action, a motion to compel arbitration pursuant to the terms of that contract. Moore has resigned to the fact <u>Judge Kobayashi will Grant Mr. Osaki's motion</u>, as Mr. Osaki continues to misuse the courts from ever allowing these cases to proceed before an unbiased court of law (i.e. arbitration).

Captain Jack L. Crawford, terminated in December 2001, continues to wait for his "**day in court**". Mr. Crawford agreed to arbitrate under the authority of the DPR (in Hawaii) trusted his attorney, believed Mr. Osaki that the arbitration would be less costly, and more expedient than the AAA; <u>Crawford has been waiting for Mr. Osaki & the DPR since November 2004.</u>

I am not at liberty to divulge potential cases against HACS by other crewmembers, but it is apparently obvious things are not right at HACS.
We are highly skilled professionals that cannot find justice in Hawaii.
We intend to prove the fraudulent business arrangement between JALways and HACS, and their attempt to circumvent the U.S. Legal System.
We plan to address all these issues when we go to the seat of our nation's capitol Washington, D.C., when it becomes necessary; enough is enough.

Mr. Osaki's letter on May 3, 2005, he claims **this case is not an employment dispute**. However, the HACS-Ventress contract states... *any disputes between the parties hereto.*

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:
**HRS 378-62 / Discrimination Against Employee for Reporting Violations of Law**

"An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:

The employee, or a person acting on behalf of the employee, reports to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of a law, rule, or ordinance adopted pursuant to a law of this State, a political subdivision of this State, or the United States, or information demonstrating **danger to public health or safety**, unless the employee knows that the report is false".

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:
**Wendell H. Ford Aviation Investment and Reform Act Protecting Whistleblowers**

The Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"), Public Law 106-181, was enacted on April 5, 2000. Section 519 of the Act, Codified at 49 U.S.C. 42121, provides protection to employees against retaliation by air carriers, **their contractors, and their sub-contractors**, because they provided information to the employer or the Federal Government relating to air safety violations, or filed, testified, or assisted in a proceeding against the employer relating to any violation or alleged violation of any regulation, or standard of the Federal Aviation Administration ("FAA") or any other law relating to the safety of air carriers, or because they are about to take on these actions.

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:
**Americans with Disabilities Act (ADA)**

To be protected by the ADA, an employee must have a disability or have a relationship or association with an individual with a disability. An individual with a disability is defined by the ADA as a person, who has a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment,

Or a person who is perceived by others as having such an impairment. However, I did not have a disability, but certainly had a relationship with an individual with a disability in Jeff Bicknell. I was medically disqualified for unknown reasons; therefore, perceived by others as having such an impairment, despite being cleared to return to work ("fit for flight duty").

Federal and State laws make it an unlawful employment practice to discriminate against employees based on their disability or perceived disability. The ADA prohibits an employer from discriminating against such person with regards to the "discharge of employees"… and other terms, conditions, and privileges of employment.

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:
**Family and Medical Leave Act (FMLA)**

In March 2002, HACS President Francis Tabata declared that he "even cleared the way through JALways' personnel department", before placing me on Leave of Absence ("LOA") without pay. During the LOA, HACS email letter proves requests were made for me to provide medical clearance ("fit for duty"). My medical records reveal that I complied with HACS request by having a Psychologist and a Psychiatrist to provide a "fit for flight duty" form to the Defendants.

**Under the FMLA the employee:**

(A) Is to be restored by the employer to the position of employment held by the employee when the leave commenced; or
(B) To be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

The FMLA states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of the employee rights; it shall be unlawful for any employer to discharge or in any other manner discriminates against any employee".

HACS terminated me because I allegedly "failed and refusal to maintain flight qualification" **is not true**. During the LOA, there was no medical examination, which diagnosed me as being medically disqualified. Therefore, I could not have "failed" something he did not take part. Nonetheless, HACS refused to allow me the right to return to work.

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:

**Discrimination by Harassment in the Workplace** is an employment issue. Harassment and Libel came in the form of a letter-writing campaign against me that included HACS allowing the letters to circulate throughout the JAZ and HACS offices, using crewmembers' mailboxes as a distribution center. HACS name also appears on the e-mail address list; alleging that I attempted to "cash-in" on the misfortunes of Bicknell, because I filed this lawsuit. While letters viciously attacked me as being lazy and a malinger.

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:

**The Defendants Refused to Release My Pilot Plaintiff's Records** further proves this case is an employment case. I requested HACS release my pilot (employment) records. Mr. Osaki refused to release my records. By refusing to release my pilot's records, I have been unable to secure employment as a crewmember with other airline companies. This defiance and intentional refusal to release my pilot records constitute malicious retaliation and is a violation of federal law:

§ 44936. Employment investigations (The Pilot Records Improvement Act)
§ 44703. Records of Employment of Pilot Applicants

THIS CASE IS AN EMPLOYMENT DISPUTE BECAUSE:

**Termination of Crewmember under HACS Employment Contract**

When medical examinations are required, the employer will pay medical expenses. Instead, I was on leave of absence without pay, but required by HACS to obtain another medical clearance (fit for duty), incurred medical bills I could not afford, moreover, I was not reimbursed by HACS. I have letters from HACS that prove medical examinations were ordered at the request of JAL Medical through HACS, not the JCAB.

Therefore, JALways in concert with HACS (not the JCAB) retaliated and terminated me on February 18, 2003 allegedly "failure and refusal to maintain medical qualifications". **Under the HACS-Ventress contract...**
(Section 7. a)  Termination of CREWMEMBERS:
(HACS) Assignment of VENTRESS to JAZ shall be terminated on the date VENTRESS Refuses or Fails to maintain required qualifications.

I was on a leave of absence at the time of my termination; therefore, I could not have failed to maintain his medical qualification. Neither did I refuse medical examinations as evident by the medical records that prove from <u>August 21, 2001 until August 5, 2002</u>, I had been cleared "Fit for Flight Duty" <u>8-Times</u> by Medical Professionals.

### MR. OSAKI REJECTS CERTIFIED MAIL

Judge Kobayashi admonished me earlier this year for ex-parte communication. However, in my attempt to contact Mr. Osaki by U.S. Certified Mail, the mail returned to me by reason checked "Unclaimed", after three (3) attempts in January 2005. On February 16, 2005, Mr. Osaki inadvertently did not copy me on a letter to the ICDR. The next day he sent me a copy of the letter. Whether or not he was admonished, I do not know.

### UNEMPLOYMENT OFFICE DENIES BENEFITS

Mr. Osaki, and his client HACS, informed the Hawaii Unemployment Office that I was terminated for <u>misconduct related to work;</u> thereby, disqualifying me to receive Unemployment Benefits. However, the HACS Termination Letter states that I was terminated for <u>failure and refusal to maintain flight qualifications</u>. I provided proper documentation to the Office of Unemployment in Hawaii as evidence. Nevertheless, the Unemployment Office chose to believe a "verbal statement" from HACS, and DENIED my request to receive any benefits.

### MR. OSAKI CONFUSES "RESIDE" vs. "LIVE" REGARDING WITNESSES

In California, Judge Manella placed strong emphasis on <u>residence of potential witnesses</u> as basis for her decision to transfer the case to Hawaii. Mr. Osaki mislead U.S. District Court of Central California, claiming pilots **must reside** in Hawaii. Mr. Osaki clouded the issue of <u>reside vs. "live"</u>.

However, the contract states **must live in Hawaii.** A letter from HACS CEO Alexander Bell made it clear pilots can live anywhere they prefer. Most crewmembers **do not reside in Hawaii**, if they did, Hawaii Law to Withhold Income Tax would obligate HACS. This matter can be resolved by the **production of HACS Tax Records**, which would reveal the **Tax Residence** status for all Non-Resident Employees. Contractually, HACS Non-Resident Pilots come to Hawaii for flight duty only.

## CONCLUSION

Mr. Chang, the AAA Case Manager for this arbitration, has sent both parties a "List of Arbitrators" **twice**. On May 16, 2005, the ICDR provided a list of (6) names; On June 24, 2005, the ICDR provided a list of (5) names. December 2004, Ms. Asui letter confirmed she could only refer a list of (3) potential arbitrators. Mr. Osaki most recent demand from the ICDR, is a list of **ten (10) arbitrators**; in addition, **they all must be from Hawaii**.

Mr. Osaki's countless objections, and demands from the AAA, are prime examples of Governor Linda Lingle's article from the Starbulletin, April 12, 2004, the problems in Hawaii legal community. Delay tactics used by attorneys like Mr. Osaki are one of the reasons Hawaii courts are backlogged. Furthermore, the primary reason the American Arbitration Association was created in 1926, was to relieve the overcrowded courts.

Collectively, the pilots are confident that we will prevail before a jury of our peers, whenever given that opportunity. We have personal knowledge of Jeff Bicknell; in addition, the incidents that gave rise to our complaints. For obvious reasons, (Jeff Bicknell's illness/death) Mr. Osaki does not want to confront me, nor my witness list, nor the supporting documents, before any unbiased legal forum to review the many disputes against his client. He rather use "smoke and mirrors" to deflect attention that incriminate his clients. Nevertheless, until these problems are addressed, flight safety remains at risk for fear of retribution by JALways, which HACS protects.

### *The BOTTOM LINE:*

Mr. Osaki continues to quibble with the AAA, with one objection after another. The AAA has already determined:

We settle disputes pursuant to the terms of the HACS-Ventress contract
The use of the ICDR; My Hardship Deferment; The location
The ruling by the U.S. District Court of Hawaii
Agreed to use the Commercial Arbitration Rules
The list of arbitrators sent to both parties
I would submit to the authority of the AAA

Mr. Osaki's efforts to prevent the relevant facts surrounding my disputes from ever being reviewed by an impartial, dispassionate and fair arbitrator(s) indicate doubt in the ability HACS to prevail, thus prolonging the inevitable.

<u>These magnificent words are from the Hawaii State Government:</u>

**§92-1 Declaration of policy and intent.** *In a democracy, the people are vested with the ultimate decision-making power. Governmental agencies exist to aid the people in the formation and conduct of public policy. Opening up the governmental processes to public scrutiny and participation is the only viable and reasonable method of protecting the public's interest. Therefore, the legislature declares that it is the policy of this State that the formation and conduct of public policy - the discussions, deliberations, decisions, and action of governmental agencies - shall be conducted as openly as possible.*

For the reasons stated above, and on behalf of the other pilots affected by the tactics used by Mr. Osaki, I respectfully request this office to secure our Constitutional rights to seek redress of our grievances. I have several disputes to bring before the court against HACS, and I have documentation to support my allegations. Thus, I ask that Mr. Osaki seize from any further obstruction of justice that may interfere with my right to due process under the law, that I too, may have my day in court. This case is currently one of the oldest cases in the U.S. District Court in Hawaii, according to Judge Samuel King. Therefore, I am confident the Office of Disciplinary Counsel will find this issue worthy of investigation, and I look forward to hearing from you as to the disposition of this matter. Please do not hesitate to contact me if you require additional information or have any questions. Thank you!

Very truly yours,

*Martin Ventress*

Martin Ventress
5042 Wilshire Blvd. #310
Los Angeles, CA 90036-4305
(323) 842-8629