THE FOLLOWING DOCUMENT WAS WRITTEN

AND PREPARED BY LICENSED HAWAII

ATTORNEY MS. VENETIA CARPENTER-ASUI

EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| MARTIN VENTRESS, | ) | Civil No. 03-00451 SPK LEK |
|---|---|---|
| Plaintiff, | ) ) ) | DECLARATION OF VENETIA K. CARPENTER-ASUI |
| vs. | ) ) | |
| JAPAN AIRLINES, JALWAYS, HAWAII AVIATION CONTRACT SERVICES, | ) ) ) ) | |
| Defendant. | ) ) | |

### DECLARATION OF VENETIA K. CARPENTER-ASUI

I, Venetia K. Carpenter-Asui, state that:

1. I am the attorney for Plaintiff Martin Ventress in the above described action, and am duly licensed to practice before all Courts in the State of Hawaii.

2. On May 28, 2004, I was retained and agreed to represent Plaintiff Martin Ventress in the above entitled matter.

3. The Counsels in this matter have been actively engaged in the selection of a mutually agreed upon arbitrator for the arbitration of this case. Names of potential arbitrators have been exchanged and discussed, as well as ongoing discussion regarding use of the Dispute Prevention Resolution, Inc. in Honolulu, Hawaii, instead of the American Arbitration Association ("AAA") in the State of California to save expenses.

* This newly discovered evidence is relevant to this case for several reasons. First, it proves that Defendants JAL was the "actual" employer of Plaintiffs. Second, it proves that Defendants JAL is avoiding liability under American laws by contracting with HACS to accept Defendants JAL's liability in exchange for compensation.

### 1. CONTRACT BETWEEN HACS AND JAL PROVES THAT JAL WAS THE "ACTUAL" EMPLOYER OF PLAINTIFFS

The Order states, "Plaintiff's appear to have been actually employed by HACS, which has some sort of contractual arrangement with JAL to supply JAL with qualified flight crews. Plaintiffs had signed HACS employment contracts (not JAL contracts)[.]" (Order p3) This is an error of law and fact as Plaintiffs were actually employed by Defendants JAL.

Although Plaintiffs signed written contracts of employment with HACS (Ex A,B), HACS also had a signed contract with Defendants JAL to provide them with employees who would perform work for Defendants JAL. (Ex B - subject to pending motion to file under seal) In reading both contracts, it is clear that Defendants JAL controlled the "manner and means" of the Plaintiffs every action at work. Thus, Defendants JAL was the actual employer while HACS was merely a sham "Chinese wall" for Defendants JAL to hide behind.

The Ninth Circuit addressed the issue of sub-contractor liability in <u>Mitchell v. Frank Howard Memorial Hospital</u>, 853 F.2d 762 (1988), writing "[a]s we noted in <u>Lucher v. Musicians Union Local 47</u>, 633 F.2d 880 (9th Cir. 1980), determining whether a relationship is one of employment, in which case ... protections apply, or rather one of independent contractual affiliation, in which case they do not, requires a fact-specific inquiry which

4

'depends upon the economic realities of the situation.'" Id. at 883. In Lutcher the Ninth Circuit identified a "number of factors that should be considered when determining whether an employment relationship existed, the primary one being the extent to which the 'employer' has a right to control the means and manner of the worker's performance." Id. The Ninth Circuit also noted that other "factors include: whether the 'employer' or the individual in question furnishes the equipment used and the place of work; the length of time during which the individual has worked; the method of payment; and whether the work is an integral part of the business of the 'employer.'" Id. at n. 5.

"The Supreme Court listed the following common-law agency factors to determine whether the hiring party controls the manner and means by which work is accomplished: the level of skill required; the source of necessary instrumentalities and tools; the location of the work; the duration of the relationship between the parties; the hiring party's right to assign additional projects to the worker; the extent of the worker's discretion over when and how long to work; the method of payment; whether the hiring party provides the worker with benefits; and whether the hiring party deducts the worker's employment-related taxes." Nationwide Mutual Insurance Co. v. Darden, 112 S.Ct. 1344, 1348 (1992).

The written contract between HACS and Defendants JAL clearly states that Defendants JAL controls the daily manner and means of all aspects of the Plaintiffs work. As exhibit B is subject to an upcoming motion to file under seal, I can only summarize the forty-five (45) page contract here in this paragraph. The manner and means Defendants JAL employed to control all aspects of the Plaintiffs employment included, but was not limited to: licensing required by the JCAB (analogous to our FAA);

5

rights of inspection; rights to reject crewmembers; rights to request HACS terminate crewmembers; crewmembers observance of policies, procedures, regulations; compliance with laws and regulations; rights to request HACS terminate crewmembers; required training; right to reject assignment of crewmembers; crewmembers flight schedules; crewmembers to be available for flights; whether a crewmember is fit to fly or not; right to have its doctors determine fitness to fly; monthly salary; overtime pay; other economic decisions; processing charges; vacation buy-backs; contract bonuses; supervisors allowance; instructors allowance; amounts of pay time; pay proration; pay per diem; hotel accommodations; payment of parking lot fees; uniforms; monitors sick leave use; requests for medical certificates for sick leave used; right to designate vacation days; right to designate AWOL; accrual of sick leave; whether sick leave was bona fide; determine sick leave credits; buyback rates; earned vacation credits; determine vacation leave credits; AWOL; bereavement leaves; jury duty leaves; rest days; seatings for deadhead and business trips; free and reduced fare transports; right to change rules at its discretion. (Ex B subject of motion to file under seal)

### 2. THE CONTRACTS BETWEEN HACS AND THE PLAINTIFFS ALSO PROVES DEFENDANTS JAL WAS THEIR ACTUAL EMPLOYER

Even under the Pilot Contracts signed between Plaintiff Ventress and HACS (Ex A), and Plaintiff Crawford and HACS (Ex C), all of the terms and conditions of their employment was dictated, controlled and subject to the approval of Defendants JAL (also referred to as "JAZ" for Japan Air Charter, a former subsidiary of Defendants JAL below):

1. must be "qualified to fly for JAZ, i.e., all training, testing, line checking, ... flight training and JAZ certification. (Ex A p2)
2. "assign VENTRESS to JAZ for the periods..." (Ex A p2)
3. "VENTRESS shall be certified to be qualified in accordance with specifications set forth in JAZ Operations Manual." (Ex A p2)
4. "VENTRESS understands that JAZ and HACS shall screen and agree to his assignment to JAZ." (Ex A, p2)
5. "VENTRESS understands that he is not eligible for promotion during the agreed term unless otherwise agreed by both JAZ and HACS." (Ex A, p2-3)
6. "VENTRESS understands that he shall perform his services in accordance with the regulations and procedures of JAZ." (Ex A, p3)
7. "HACS will be responsible for giving a complete briefing to VENTRESS insuring that he is familiar with the terms, conditions and expectations of JAZ with respect to salary, working conditions, no strike provisions, etc." (Ex A, p3)
8. "VENTRESS agrees to sign and adhere to the terms of the 'Work Disruption Agreement.'" (Ex A, p3)
9. "VENTRESS acknowledges that JAZ has the right to supplement the HACS crew complement... to act as coordinators and/or managers of JAZ flight and charter operations." (Ex A, p3)
10. "VENTRESS understands that JAZ has the authority to govern the conduct of, and to supervise, direct, and control CREWMEMBERS... (Ex A p3)

7

11. "VENTRESS understands that HACS must, at the request of JAZ, terminate the assignment of any CREWMEMBER ... (Ex A, p3)

12. "VENTRESS understands that JAZ is entitled to claim damages resulting from the ...(Ex A, p3)

13. "...VENTRESS. Initial JCAB Medical Certificate will be paid by JAZ." (Ex A, p4)

14. "In the event VENTRESS fails the required proficiency...as specified in JAZ Qualification Manual...JAZ shall determine... the final disposition of VENTRESS." (Ex A, p4)

15. "Initial training and checks... will be performed at a location or locations chosen by JAZ." (Ex A, p4)

16. "JAZ shall provide and pay for periodic training and checks... in accordance with the details described in JAZ Qualification Manual. such training and checks shall be specified by JAZ. (Ex A, p4)

17. "In the event VENTRESS is involved in or causes an accident, he shall be deemed an employee of JAZ." (Ex A, p4)

18. "While VENTRESS is working or training under the supervision, direction or control of JAZ, JAZ shall ... (Ex A p5)

19. "...VENTRESS becomes permanently physically or mentally unqualified for flight duty...as determined by an approved JAZ physician." (Ex A p7)

20. "If VENTRESS reaches age 60 or JCAB mandatory retirement age, voluntarily resigns or dies, his assignment to JAZ is terminated. (Ex A, p7)

21. "VENTRESS understands that Jaz Operations Manual,

revised, is the controlling document for the JAZ operations. (Ex A, p7)

22. "To the extent it does not conflict with the JAZ Operations Manual, the HACS Policy Manual shall control." (Ex A, p7)

23. "...voluntary waives any right to strike either HACS or JAZ, (Ex A, appendix C)

24. "VENTRESS understands that he is required to have a ... semi-annual physical is an internal requirement of JAZ..." (Ex A, appendix D)

25. "Transportation will be provided for crewmembers in accordance with ... (JAZ S.O.P.'s)." (Ex A, appendix D)

26. "Costs for visas shall be borne by JAZ. Costs for inoculation...shall be borne by JAZ." (Ex A, appendix D)

27. "...JAZ shall designate the hotel or hotels to be used. (Ex A, appendix D p2)

28. "Per diem ... shall be in accordance with effective JAZ standards." (Ex A, appendix D p2)

29. "VENTRESS understands in the event that he becomes ill... immediately thereafter notify JAZ..." "..subject to approval by JAZ." (Ex A, appen. D p2)

30. "Unused vacation credit shall be paid to crewmember by JAZ." (Ex A, appendix D p4)

Plaintiff Jack Crawford's contract is attached hereto at exhibit C, and reflects similar provisions to Plaintiff Martin Ventress contract, proving that Defendants JAL, not HACS, controlled the manner and means of both Plaintiffs terms and conditions of employment. (Ex A,B)

Not only do the contracts control the manner and means of the Plaintiffs daily work, it also specifically states that "[i]n the event VENTRESS is involved in or causes an accident, he shall be deemed an employee of JAZ." (#17 above, Ex A, p4) It also provides that Defendant JAL's Operations Manual is the controlling document. (#21 above, Ex A, p7) Only where the HACS Policy Manual does not conflict with the JAL Policy Manual, only then shall the HACS Policy Manual control. (#22 above, Ex A, p7) Both the contract between HACS and JAL, and the contract between HACS and Plaintiff Ventress, appear to have been drafted by the same entity -- Defendants JAL. (Ex A, B-subject of motion to file under seal)

In reading both contracts, it is clear that Defendants JAL exercised overarching control of both Plaintiffs daily work as well as the terms and conditions of their employment. Thus, Defendants JAL is liable under an agency theory for its violations of law in this country, despite hiding behind HACS as a sub-contractor.

### B. RELIEF FROM JUDGMENT DUE TO DEFENDANTS JAL'S FRAUD UPON THE AMERICAN LEGAL SYSTEM

Plaintiff Ventress prays for relief from the Judgment due to fraud by Defendants JAL. In order to avoid liability for violating American laws Defendants JAL hides behind the FCN Treaty as a Japanese company, and points to HACS as the employer and thus liable party. The contract between Defendants JAL and HACS proves that it is Defendants JAL, not HACS, who is in control. HACS is merely a convenient scapegoat for Defendants JAL's legal problems. HACS accepts liability for Defendants JAL's legal transgressions because Defendants JAL pays HACS

handsomely for doing so, as clearly stated in the written contract between Defendants JAL and HACS. (Ex B, subject of motion to file under seal)

As exhibit B is subject of an upcoming motion to file under seal, I can only summarize here the ways in which the contract between Defendants JAL and HACS is utilized to escape liability and improperly compensate HACS for agreeing to serve as the liable party: by the written Indemnification Agreements, by the written promise to pay for HACS litigation attorneys' fees and costs; by the written promise to provide liability insurance for HACS; the written promise to cooperate with each other in the event of any investigations, lawsuits, administrative complaints, grievances, and any other foes; and written agreements not to sue each other. (Ex B, subject of upcoming motion to file under seal)

The evidence proves that Defendants JAL, through fraudulent, cold and calculated means, has taken steps to set up a screen to shield itself from American liability, by its improper payments to HACS, its promise to indemnify HACS, and its promise to carry HACS on its insurance policy and pay its fees and costs litigation. This allows HACS and Defendants JAL to point fingers at each other in assigning blame, JAL jumps through the escape hatch (FCN Treaty), and HACS is free to point to JAL as the wrongdoer and non-party. This constitutes fraud to the legal system that is supposed to give parties an opportunity to bring claims to court. This way, both HACS and Defendants JAL escape all liability. This improper and bad-faith mis-use of the FCN Treaty, as a shield to circumvent American laws, was not the intent of the original signatories. Defendants JAL must not be allowed to skirt its liability in ways not intended by the original signatories to the FCN Treaty.