UNITED STATES DISTRICT COURT
FROM THE DISTRICT OF HAWAII

MARTIN VENTRESS
Plaintiff, Pro Se

vs.

HAWAII AVIATION CONTRACT SERVICES, INC.
Defendants

CIVIL No. 03-00451 – LEK:
HONORABLE MAGISTRATE LESLIE E. KOBAYASHI

**REQUEST FOR STATUS CONFERENCE**

Pursuant to Local Rule of the District of Hawaii, **LR16.10** (eff 06/01/2003), Martin Ventress ("Plaintiff") moves this court for a Status Conference, necessary to facilitate the progress of the arbitration that is before the International Centre for Dispute Resolution ("ICDR"), a division of the American Arbitration Association ("AAA"). The primary reason this matter is before this court, is the controversy Hawaii Aviation Contract Services, Inc. ("HACS") created between AAA and the USDC of Hawaii, regarding "the authority to interpret AAA rules". The last Status Conference was held 12 months ago, at which time the AAA had not selected an arbitrator; shortly thereafter, AAA assigned Judge Boyd Mossman, as arbitrator in **February 2006**. Plaintiff intends to be present at Conference, with Representation.

## TOPICS OF DISCUSSION

In order for parties to prepare for this Status Conference, Mr. Ventress has prepared the following controversies and disputes, he deems necessary to facilitate the progress of this arbitration:

### 1) AAA COMMERCIAL ARBITRATION RULES "IN THEIR ENTIRETY"

→ <u>Commercial Arbitration Rules 1 through 54</u> ←

**On November 16, 2004**, the United States District Court ("USDC") of Hawaii Ordered a Stipulation for Stay of Action pending arbitration between the Parties; thus, there was no need for HACS to file a motion to compel arbitration pursuant to the express terms of the HACS Pilot's Contract on **May 18, 2005**, except **waste time** to make Commercial Rules the issue. AAA stated they would abide by any court order; hence, Mr. Ventress opted to return to USDC of Hawaii to request Judge Kobayashi to re-examine the matter; filed a Motion to Reconsider. Initially, Mr. Ventress appealed to AAA, per the Commercial Rules, <u>not the Court</u>, abided by USDC Order of **July 28, 2005**, and followed AAA Commercial Rules.

On **October 13, 2005**, ICDR informed parties that Commercial Rules would apply, because of USDC Order. Mr. Ventress appealed to ICDR, **not the court**, because of Commercial Rules; abided by the HACS contract, a document written by HACS that does not allow judicial involvement by using the court system:

<u>This *[going to arbitration]* is the sole legal remedy VENTRESS and HACS shall have with respect to any disputes arising from this agreement, i.e., **each party hereby waives his or its rights to seek redress in any court system** that might otherwise be available to him or it.</u>

1

HACS disagreed with AAA interpretation of its Commercial Rules, requested USDC of Hawaii to **overturn Employment Rules, already determined by AAA.** However, USDC Order did not make reference to, nor any attempt to "interpret" Commercial Rules. HACS argues Judge Kobayashi Order set legal precedence. On **February 21, 2006**, Mr. Ventress filed a Motion to Reconsider **after** first appealing pursuant to AAA Commercial Rules. The HACS controversy caused ICDR to reply that they would abide by any court order, regardless of Commercial Rule R-1 +:

*+ A dispute arising out of an employer promulgated plan will be administered under the AAA's National Rules for the Resolution of Employment Disputes.*

Specifically, AAA's National Case Management Department makes **"an initial administrative determination"** of whether the employment agreement is "employer-promulgated" OR "individually negotiated". **AAA determined** that the arbitration provision in the HACS contract was an **employer-promulgated plan.** It is not which "Rules", but rather which "Plan" the AAA determines to use in this case. HACS argues that AAA employer plan was not promulgated until 1996. **HACS hired Plaintiff in 1992** with a 5-year "auto-renewable" contract. Meaning HACS had **(2) opportunities to amend and/or modify** to "update" their own contract, but neglected to do so. Under AAA Rules, allocation of AAA fees in employment disputes depends upon whether the employment agreement was **"individually negotiated" or "employer-promulgated."** Where employment agreement is "employer-promulgated," **the employer pays arbitration fees.**

Where an employment agreement is "<u>individually negotiated</u>," arbitration fees are subject to allocation by the arbitrator in the award, unless the parties agree otherwise. **AAA Rules also provide that:**

"Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually-negotiated agreement or contract *****shall be determined by the AAA and its determination shall be final."**

Determining whether a dispute arises from employer-promulgated plan or individually negotiated agreement, <u>for purposes of fee allocation</u>, is made pursuant to the Commercial Rules and "<u>is not based on any particular state or federal law</u>"). As noted, the parties agreed that the arbitration would be governed by AAA Rules. Pursuant to AAA, the question is **not Commercial Rules vs. Employment Rules**, rather if the agreement made by the parties was an **employer-promulgated or an individually negotiated plan.** AAA clearly determined that the Employment Rules apply based on the employer-promulgated plan. HACS used this controversy and the court system, to decide that, which AAA has jurisdiction and authority.

This entire matter could have been avoided had the AAA enforced its own rules, instead of allowing HACS' voluminous objections. Mr. Osaki deceitfully created the Commercial Rule controversy, because he knew that if the Commercial Rules became an issue, the ICDR could dismiss the arbitration. On **April 1, 2005,** Mr. Osaki sent an email to Mr. Ventress, **and not the ICDR:**

3

Mr. Osaki wrote, "**Mr. Namias** <u>indicated that if either party insisted on the application of Commercial Rules, AAA may decline to administer the arbitration</u>", suggesting that only a few options were available to him to continue the arbitration. HACS offered Mr. Ventress a resolution of all the claims, if the charges were dismissed. Mr. Ventress refused to dismiss any charges against HACS, because of the Jeff Bicknell tragedy.

**Before** Judge Kobayashi's Order, the AAA on at least (4) occasions determined that Employment Rules apply because of Commercial Rule R-1.

Furthermore, **May 13, 2005**, ICDR initiated the selection process for an Arbitrator. Instead of allowing the selection of an Arbitrator to determine any disputes between the parties, Mr. Osaki instead elected to burden USDC of Hawaii. Even though Judge Ezra ordered *Schoggen v. HACS* case to AAA on **May 17, 2005**, HACS filed an unnecessary motion to compel on **May 18, 2005**. The AAA should have continued the selection process and appointed an Arbitrator. Parties would have had the Arbitrator, not the court, to decide which set of rules, Commercial or Employment Rules, or any other issues.

HACS argued with AAA, that the Court must "enforce the contract", but selectively ignored the fact that the express terms of its own contract, states any dispute must be resolved in arbitration, by AAA – not the Court! Case law supports AAA, even if Commercial Rules are written in contracts.

The issue of the Commercial Arbitration Rules "in their entirety", includes Commercial Rules 1 through 54, and means exactly what it says. Specifically, Commercial Rules, R-1; R-2; R-7; R-53; L-1; and L-2, as these rules pertain to this matter (Ex "A"). Neither this court, nor the AAA, would clarify why the exclusion of certain Commercial Rules. In fact, AAA Rules determine this case <u>shall</u> use Procedures For Complex Commercial Disputes, which require (3) arbitrators, in spite of the HACS contract; just as it did in determining that Employment Rules apply, in spite of the HACS contract.

Captain Bruce Schoggen, Captain Jack Crawford, Captain Michael Moore are other pilots that have legal disputes against HACS; each pilot has the identical arbitration provision in the HACS contract as Mr. Ventress. Mr. Schoggen thus far, has concluded his arbitration, which also sets legal precedence that Employment Rules apply. **AAA recently informed Mr. Crawford and Mr. Moore that Employment Rules will apply**; however, they soon could end up in this court, with the same controversy Mr. Osaki created with Commercial Rules; simply because HACS disagrees with AAA interpretation of its own rules; which also serves to increase Mr. Osaki's attorney's fees and costs. HACS has violated the lawful purpose arbitration was created that is to relief the courts burden, to be more expedient, to be more cost effective, this is one of the oldest cases in the USDC of Hawaii.

5

## The Schoggen Case Set Legal Precedence

During administration of the Schoggen Case, HACS presented the AAA with Judge Kobayashi's Order in the Ventress case, and, based on that order asked AAA to reverse its decision that the Employment Rules applied to the arbitration. AAA considered that argument and rejected it. Despite Judge Kobayashi's order in the Ventress case, AAA still determined that the Employment Rules applied to the Schoggen arbitration. That decision was AAA's to make, **not the USDC of Hawaii.** Therefore, HACS claim that Judge Kobayashi's Order did not set legal precedence. The *Schoggen Case* set legal precedence that the Employment Rule applies. Mr. Crawford and Mr. Moore benefit from the *Schoggen Case*, and use of Employment Rules.

You would think that after several failed attempts to force AAA to apply Commercial Rules in an Employment Dispute, HACS would respect legal authority of Chief Justice Honorable Judge David A. Ezra's Order; Circuit Court of Hawaii Honorable Judge Karen Ahn's Dismissal that included Sanctions against Mr. Osaki; AAA Arbitrator Honorable Judge McConnell's Order; AAA's National Case Management Department that makes "an initial administrative determination" of whether employment agreement is "employer-promulgated" or "individually negotiated". The Kobayashi's Order becomes inconsistent, as Mr. Osaki misused that ruling.

6

## 2) EMPLOYER RELEASE OF PILOT RECORDS

<u>Pursuant to Title 49 U.S. Code:</u>

§ 44936. Employment Investigations; Pilot Records Improvement Act
§ 44703. Records of Employment of Pilot Applicants

**Pilot Records Improvement Act** ("PRIA") assures pilots the right to access its records to <u>ensure they have not been tampered</u>. HACS purposely refuses to release Mr. Ventress' pilot records, knowing that it is impossible to be gainfully employed as a pilot without them. In one instance, when Mr. Ventress interviewed with Omni Airlines for a Flight Crew Position, the interviewer requested a copy of his pilot records for verification, which he could not provide, therefore he could not be considered for employment.

Mr. Osaki stated, "<u>*HACS will not simply hand you [Mr. Ventress] the pilot's record, because they do not know what you will do with them*</u>".

Mr. Ventress does not understand how HACS intends to comply with the requirements of the PRIA, without releasing a copy of his pilot records.

Since September 11, 2001, Federal Law makes it impossible for airlines to hire pilots without verification of pilot records. HACS knows that without pilot records, being gainfully employed as a flight crewmember is impossible. HACS, who itself, is in the business of hiring pilots, **does not hire pilots without pilot records**. The fact that Mr. Ventress requested, and HACS refuses to release his pilot records further substantiates HACS' intent to retaliate against him for reporting safety violations regarding Mr. Bicknell.

7

The issue of racial discrimination concerns Mr. Ventress, who is the Only African-American among Mr. Schoggen, Mr. Crawford, Mr. Moore; each has the same arbitration provision; each has the same AAA Employment Rules, **except Mr. Ventress**, as Judge Kobayashi Ordered that Commercial Rules apply to him. HACS, by and through its counsel, Carl Osaki, created disputes that caused inconsistencies between the USDC of Hawaii and AAA; Moreover, these controversies, ultimately forced Mr. Ventress to introduce this matter in the Ninth Circuit Court of Appeals. In addition, this arbitration needs legal answers neither USDC of Hawaii, nor AAA/ICDR has clarified. **Mr. Ventress' disputes against HACS began 5½ years ago** (June 2001). **2007 is here**, should justify, Mr. Ventress' request that this court schedule a Status Conference, necessary to facilitate the progress of this arbitration, to discuss the controversies and disputes created by HACS. Mr. Ventress may be Pro Se (not by choice), does not give HACS, nor Mr. Osaki, the right to take advantage of him and the U. S. Court System for self-serving purposes.

DATED: December 14, 2006

*[signature]*
MARTIN VENTRESS
Plaintiff, Pro Se

"*Woe to those who decree unjust statues and to those who continually record unjust decisions, to deprive the needy of justice, and to rob the poor of My people of their rights...*" (Book of Isaiah 10:1)

8