IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARTIN VENTRESS and<br>JACK CRAWFORD,<br><br>          Plaintiffs,<br><br>   vs.<br><br>JAPAN AIRLINES; JALWAYS CO.,<br>LTD., a subsidiary of Japan<br>Airlines; HAWAII AVIATION<br>CONTRACT SERVICES, INC.;<br>and DOES 1-10,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. CV 03-451  SPK-LEK<br><br>MEMORANDUM IN SUPPORT OF<br>MOTION |

TABLE OF CONTENTS

Page

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    There Is No Dispute That HACS
         And Crawford Unequivocally Agreed To
         Conduct An Arbitration Under The
         Administration Of Dispute Prevention
         & Resolution . . . . . . . . . . . . . . . . . . . . 5

    B.    There Are No Grounds For The Revocation
         Of The Arbitration Agreement . . . . . . . . . . . 5

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 8

TABLE OF AUTHORITIES

Page(s)

CASES

Koolau Radiology, Inc. v. Queen's Medical Center,
    73 Haw. 433,439, 834 P.2d 1294, 1298 (1992) . . . . . . . . 7

Lee v. Heftel,
    81 Haw. 1, 911 P.2d 721 (1996) . . . . . . . . . . . 6, 7


STATE STATUTES

Hawaii Revised Statutes § 658-1 . . . . . . . . . . . . . . . . . 7

Hawaii Revised Statutes § 658A-6(a) . . . . . . . . . . . . . 5

MEMORANDUM IN SUPPORT OF MOTION

I. INTRODUCTION

Defendant Hawaii Aviation Contract Services, Inc. ("HACS") moves to compel the arbitration between itself and Plaintiff Jack Crawford ("Crawford") to be conducted under the terms of the Agreement To Participate In Binding Arbitration, executed by HACS and Crawford ("Arbitration Agreement"). See Exhibits A & B.[1]

II. FACTS

This action began in the Central District of California in 2003, when Crawford was represented by Martin Cervantes, Esq. of the California bar. At that time, Crawford was co-plaintiff with Plaintiff Martin Ventress ("Ventress"), who is not involved in the matter covered by this motion.

HACS moved that Crawford and Ventress had agreed to arbitrate their disputes, and that the civil action was improper. Defendants Japan Airlines, Inc. And JALways Co., Ltd. (collectively "JAL") — which are also not involved in the matter covered by this motion - also moved to dismiss the action against them based on treaty provisions between the United States and Japan. After the action was removed to the District of Hawaii, the motions were renewed. JAL prevailed on its motion, and that

---

[1] The Arbitration Agreement provides that it could be signed in counterparts.

matter is on appeal to the United States Court of Appeals for the Ninth Circuit. Before HACS' motion was decided, counsel for both Ventress and Crawford[2] agreed to stay the civil action and to arbitrate.

Although the contracts that contained the original arbitration clauses provided for the American Arbitration Association ("AAA") as the arbitration forum, both Crawford and Ventress were invited to use the services of DPR. When Ventress elected to use the AAA and filed an arbitration demand in that forum, Ms. Carpenter-Asui withdrew her representation.

Crawford, on the other hand, accepted the offer to use Dispute Prevention & Resolution ("DPR"), instead of the AAA. On or before January 20, 2005, Crawford authorized his counsel, Mr. Brower, to use DPR on his behalf. Mr. Brower wrote the following in a letter that was copied to Crawford:

> I have also received confirmation that Mr. Crawford has agreed to use Dispute Prevention and Resolution rather than AAA.

See Exhibit C.

---

[2] By the time of the stipulation to stay, Mr. Cervantes had withdrawn; Eric Seitz, Esq. had made an appearance and withdrawn; and Ms. Venetia Carptenter-Asui had made an appearance on behalf of Ventress and Charges Brower, Esq. had made an appearance on behalf of Crawford.

2

By February 16, 2005, Mr. Brower had begun the process of discussing the selection of a DPR arbitrator. <u>See</u>, <u>e.g.</u>, Exhibit D (Crawford was copied on this letter too).

By the time that Crawford <u>himself</u> submitted the Submission to ADR Form ("Submission Form") to DPR on or about January 23, 2006, the parties had already notified DPR that they had selected Mr. Keith Hunter as the arbitrator. <u>See</u> Exhibit E. Notably, Crawford personally signed the Submission Form.

On or about January 31, 2006, DPR requested the parties to execute the Agreement To Participate In Binding Arbitration form ("Arbitration Agreement") by February 24, 2006. <u>See</u> Exhibit F. HACS, through its counsel, promptly submitted the executed Arbitration Agreement. <u>See</u> Exhibit A. On or about February 2, 2006, Mr. Brower submitted the Arbitration Agreement, <u>signed by Crawford on February 1, 2006</u>. <u>See</u> Exhibit B.

Thus, by early February 2006, there was an agreement between HACS and Crawford to arbitrate before DPR.

The parties then embarked on arbitrating under the procedures and protocols of DPR. For example, on March 1, 2006, the parties submitted Crawford's claims and HACS' counterclaims. <u>See</u> Exhibits G & H. HACS also made the initial deposit and commenced discovery. HACS has conducted third-party document discovery upon International Air Services Company, Ltd., and is in the process of such discovery upon Middle Tennessee State

3

University and U.S. Air.  <u>See</u> Affidavit of Carl H. Osaki ("Osaki Affidavit").  HACS also has attempted to depose Crawford, who resides in Thailand, but has had difficulty because Crawford has not made himself available for deposition.  <u>Id</u>.

On or about October 6, 2006, Crawford informed DPR that he wished to withdraw his arbitration demand made pursuant to the Arbitration Agreement.  <u>See</u> Exhibit I.  In response, HACS wished to know whether the withdrawal would be "with" or "without" prejudice.  <u>See</u> Exhibit J.  After obtaining an extension of time to respond, Crawford, on or about November 30, 2006, stated that he desired to withdraw his arbitration demand because he wanted to initiate a separate arbitration before the AAA.  <u>See</u> Exhibit K.

Crawford raised two points in his November 26, 2006 position statement.  First, he said that there was no proof that HACS authorized its counsel to agree to arbitrate before DPR.  Second, he stated that Mr. Brower was not authorized to agree to arbitrate before DPR.  Crawford <u>completely ignored</u> the Arbitration Agreement in his November 30, 2006 letter.

HACS responded on December 7, 2006.  <u>See</u> Exhibit L.  HACS pointed out that (1) its counsel had authority to agree to the Arbitration Agreement, and (2) not only did Mr. Brower have Crawford's authority to agree to use DPR, Crawford <u>himself</u> signed the Arbitration Agreement.  HACS also argued that Crawford cannot

4

now unilaterally change his mind and renege on the Arbitration Agreement.

    Mr. Hunter determined that the resolution of Crawford's wish to withdraw his DPR arbitration should be left to judicial determination. <u>See</u> Exhibit M. HACS stated that it would comply. <u>See</u> Exhibit N. This motion follows.

III. <u>ARGUMENTS</u>

    A.    There Is No Dispute That HACS And Crawford Unequivocally Agreed To Conduct An Arbitration Under <u>The Administration Of Dispute Prevention & Resolution</u>

    It is undisputed that HACS and Crawford agreed to conduct this arbitration under the administration of DPR. <u>See</u> Exhibits A & B (collectively "Arbitration Agreement"). The Arbitration Agreement has not been mutually modified. It remains enforceable, and should be enforced.

    B.    There Are No Grounds For The Revocation Of The <u>Arbitration Agreement</u>

    Section 658A-6(a) provides in relevant part:

> An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

Haw. Rev. Stat. § 658A-6(a).

    Here, Crawford does not present any reason for withdrawing the DPR arbitration in order to start another one before the AAA, except for the two reasons he presented in his

5

November 26, 2006 letter. Neither reason would compel a revocation of the Arbitration Agreement.

First, HACS' counsel had the authority to enter into the Arbitration Agreement. See Osaki Affidavit.

Second, Mr. Brower had the authority to agree to an arbitration before DPR. See Exhibit C. Even assuming for the sake of argument that Mr. Brower did not have such authority, Crawford himself signed the Arbitration Agreement. See Exhibit B.

Crawford presents no valid basis that would justify revoking the Arbitration Agreement. Indeed, he quite readily admits that the reason for his desire to unilaterally dump the Arbitration Agreement is that events subsequent to his entering into the Arbitration Agreement has caused him to want to arbitrate in another forum. See Exhibit K ("Subsequent to filing the submission with DPR I learned . . . Clearly I would have submitted the dispute to the AAA had I known this information before submitting the dispute to DPR."). His unilateral change of heart, however, cannot invalidate the Arbitration Agreement.

Lee v. Heftel, 81 Haw. 1, 911 P.2d 721 (1996) is controlling here. Lee points out that when confronted with a motion to compel arbitration, a court is limited to answering two questions: (1) whether an arbitration agreement exists between the parties; and (2) if, so, whether the subject matter of the

6

dispute is arbitrable under such agreement. Id., 81 Haw. at 3, 911 P.2d at 723 (citing Koolau Radiology, Inc. v. Queen's Medical Center, 73 Haw. 433, 439, 834 P.2d 1294, 1298 (1992)).

In this matter, there is no dispute that the dispute is arbitrable, because Crawford stipulated to stay this action in order to arbitrate, and now (erroneously) desires to arbitrate before the AAA. There also should also be no dispute that there exists an arbitration agreement: the Arbitration Agreement, executed by HACS' counsel and Crawford himself.

Lee addressed the second prong of the judicial inquiry in the context of whether allegations of fraudulent inducement vitiated the arbitration agreement in that case under Haw. Rev. Stat. § 658-1. Id., 81 Haw. at 3, n.3, 911 P.2d at 723, n.3 (citing the statute: "'A provision in a written contract to settle by arbitration a controversy . . . shall be valid, enforceable, and irrevocable, save only upon such grounds as exist for the revocation of any contract.'").

The Lee court noted that the only way that allegations of fraudulent inducement would revoke the arbitration agreement was if the fraud was in the inducement of the arbitration clause itself, and not the contract in general. Because that was not the case, the Lee court held that the arbitration agreement was valid and it would be up to the arbitrator to decide the merits of the fraudulent inducement claim.

In this case, Crawford does not attack the validity of the Arbitration Agreement itself, except on the sole ground that the parties entering into the agreement did not have authority to do so. That argument is meritless, because HACS' counsel did have such authority, and Crawford himself executed the Arbitration Agreement. There is, therefore, no ground to revoke the Arbitration Agreement, and it is valid, enforceable and irrevocable, despite Crawford's unilateral wish otherwise.

IV. CONCLUSION

For all of the foregoing reasons, HACS respectfully requests the Court to enforce the Arbitration Agreement, and to compel the arbitration before DPR.

DATED:   Honolulu, Hawaii   DEC 2 9 2006       .

_____
CARL H. OSAKI
Attorney for Defendant
HAWAII AVIATION CONTRACT
SERVICES, INC.