IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARTIN VENTRESS<br>AND JACK CRAWFORD,<br><br>                        Plaintiffs,<br><br>    vs.<br><br>JAPAN AIRLINES; JALWAYS CO.,<br>LTD., A SUBSIDIARY OF JAPAN<br>AIRLINES; HAWAII AVIATION<br>CONTRACT SERVICES, INC.; AND<br>DOES 1-10,<br><br>                        Defendants. | ) CIVIL NO. 03-451 SPK-LEK<br>)<br>) PLAINTIFF JACK CRAWFORD'S<br>) OPPOSITION TO DEFENDANT<br>) HAWAII AVIATION CONTRACT<br>) SERVICES, INC.'S MOTION TO<br>) COMPEL ARBITRATION PURSUANT<br>) TO THE TERMS OF AN<br>) AGREEMENT BETWEEN PLAINTIFF<br>) JACK CRAWFORD AND<br>) DEFENDANT HAWAII AVIATION<br>) CONTRACT SERVICES, INC.<br>)<br>) |

PLAINTIFF JACK CRAWFORD'S OPPOSITION TO DEFENDANT
HAWAII AVIATION CONTRACT SERVICES, INC.'S MOTION TO
COMPEL ARBITRATION PURSUANT TO THE TERMS OF AN
AGREEMENT BETWEEN PLAINTIFF JACK CRAWFORD AND
DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.

## A. Federal Preemption

Hawaii Aviation Contract Services, Inc.'s (HACS') Motion to Compel

Arbitration pursuant to Hawaii State Law DPR Rules is federally preempted

by the Federal Arbitration Act (FAA), 9 U.S.C.A. Sections 1, et seq.

Domestic and International Contracts alike are governed by the FAA.

The alternative dispute resolution agency that HACS vehemently

opposes and seeking to enjoin from doing CRAWFORD'S arbitration, the

American Arbitration Association (AAA), is the oldest provider of
alternative dispute resolution services in the United States and the largest
United States institutional administrator of arbitration (both in the number of
cases and the aggregate amount in dispute). See 83 Am Jur POF3d 1.

Importantly, "*Innumerable federal and state court decisions* are
reported, *which interpret many of AAA's published rules,* all of which
*contributes to the body of arbitral jurisprudence upon which federal and
state courts have relied upon for years. This makes AAA the gold standard
for fundamentally fair arbitrations* and makes it appropriate to reference its
involvement in the fabric of alternative dispute resolution". See 83 Am Jur
POF3d 1.

The FAA embraces all arbitrations that involve interstate commerce.
Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford
Junior University, 489 U.S. 468 (1989).

**The FAA preempts any state law when an arbitral is covered by
the FAA.** The FAA uses an expanded definition of the term "commerce",
which includes and extends beyond the traditional definition of "interstate
commerce" to include foreign and some domestic transactions. When
applying the FAA, commerce includes commerce with foreign nations. See
9 USCA Section 1.

Whether a given fact scenario evidences a transaction involving interstate commerce is a legal determination for the court. State v Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710 (3d Cir. 2000).

The FAA Section 2 term "involving commerce" is the functional equivalent of the more familiar term "affecting commerce" (i.e., words of art that ordinarily signal the fullest and broadest permissible exercise of Congress' Commerce Clause power). USCA Const. Art. Section 1, Section 8, clause 3; see also 9 USCA Section 2.

FAA Section 2 (9 USCA Section 2) makes enforceable a written arbitration provision in a contract which evidences a transaction involving commerce. It is important to note that *it is irrelevant whether or not the parties actually contemplated a commerce connection or not*. Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 US 265 (1995).

As HACS and Crawford submitted themselves to the FAA in 1992, any state law such as DPR that interferes with the broad remedial purposes of the FAA is preempted by the FAA because of the Supremacy Clause of the United States Constitution.

Accordingly, as the FAA applies, this Honorable Court has federal jurisdiction pursuant to the FAA (9 USCA Section 3) to stay litigation (as this very court already has done by previously approving a stipulation to stay

litigation pending Arbitration); compel HACS to Arbitration pursuant to AAA Employment Rules (9 USCA Section 4); appoint AAA arbitrators or an umpire (9 USCA Section 5); authorize subpoenas to compel the attendance of hostile witnesses who were formerly employed or currently employed by HACS at an arbitration hearing (9 USCA Section 7); confirm an award including a decision by AAA to default HACS should HACS persist in its' contemptuous behavior of refusing to deposit the funds necessary to allow Crawford's AAA Employment Rules Arbitration to proceed as to not prejudice CRAWFORD any longer from his right be heard and seek redress for the alleged violations of federal and state law he has set forth against HACS (9 USCA Section 9); and even vacate any future award by DPR and Keith Hunter (9 USCA Section 10).

**B. In light of the Federal Preemption Doctrine, Hawaii DPR does not have subject matter jurisdiction of Crawford's Arbitration; AAA has subject matter jurisdiction of Crawford's Arbitration; and subject matter jurisdiction is non-waivable**

It is important to note that an appellate court has an obligation sua sponte, to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a case under review. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (U.S. 1998); see also, Ex parte McCardle, 74 U.S. 506, 7 Wall. 506, 514, 19 L. Ed. 264 (1869) ("Without jurisdiction the court cannot

proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *Great Southern Fire Proof Hotel Co.* v. *Jones*, 177 U.S. 449, 453, 44 L. Ed. 842, 20 S. Ct. 690 (1900); ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."); Mansfield, C. & L. M. R. Co. v. Swan, 111 U.S. 379, 382, 28 L. Ed. 462, 4 S. Ct. 510 (1884) (The requirement that jurisdiction be established as a threshold matter "springs from the nature and limits of the judicial power of the United States" and is "inflexible and without exception.")

Further, subject matter jurisdiction is not a matter that may be waived. See California v. United States, 215 F.3d 1005, 1010 (9th Cir. 2000) (stating that defects going to the court's subject matter jurisdiction are not waivable and may by raised at any time).

**C. Neutral Decision Maker**

"A principal feature of FAA arbitration is that it is conducted either by a single <u>neutral</u> arbitrator, or by a panel of [neutral] arbitrators…" <u>See 83 Am Jur POF3d 11</u>.

Crawford's counsel objects to Keith Hunter being the arbitrator in this matter, or in light of Hunter being the CEO of DPR, also objects to any DPR proceeding.

Crawford's counsel has four compelling objections as to why Hunter (or in light of Hunter being the CEO of DPR, any other Arbitrator on the DPR list must not be allowed to act as Arbitrator) is not suitable as a neutral Arbitrator in this present case.  First, Counsel for Crawford was not satisfied with after acquired information concerning Hunter's disclosure in two separate matters where Hunter was the mediator.

Second, Hunter made credibility "calls" based on "cold" declarations rather than "live" witness testimony that were refuted by the submissions of various documents by both parties.  As Crawford's case will involve making credibility calls in conflicting versions of events giving rise to Crawford's allegations and HACS' refutation of those very allegations, Counsel for Crawford cannot agree to Hunter as the arbitrator.

Third, after Hunter's most recent decision, Crawford's counsel in checking the Hawaii Bar Journal discovered that Hunter is not a licensed attorney in the State of Hawaii.

Assuming arguendo that while a law license may not be essential as to ending hostilities and bringing parties together as part of an informal resolution of a dispute through mediation, CRAWFORD'S case does indeed require a licensed attorney as the job description here is much more complex and demanding.

CRAWFORD'S case decidedly involves deciding liability and damages in a framework of complex federal and state statutory claims, involving the burden and alternative standards of proof in a wrongful termination case where the Plaintiff has alleged a pretextual decision based termination.

"Consider the example of a dispute over whether or not a particular supervisor had sexually harassed a subordinate. Such allegations may put parties at odds, involving them in a "he said, she said" controversy. This type of dispute often comes down to whether a trier of fact would believe one party or the other if the allegations were put to the test." See 83 Am Jur POF3d 14.

The arbitrator in CRAWFORD'S case would be put to the critical task of being a fact-finder who would be hearing live witness testimony and making credibility decisions and issuing a decision stating the facts found to be true. It could not be better said then, "Much of the success of ADR [Alternative Dispute Resolution] method rests on the fact-finder who must be more than arms' length from all parties and witnesses, with a reputation of fairness and candor." See 83 Am Jur POF3d 14.

Accordingly, Hunter is an inappropriate choice based upon his qualifications and lack of a law license, and additionally, based upon CRAWFORD'S counsel's previous experiences regarding disclosures and impartiality (intentional or otherwise).

**D. Fundamental Fairness**

"Arbitration also involves a process that must be fundamentally fair. Usually, arbitration determines liability in the same fashion as a court, through adversary hearings where evidence is adduced allowing the arbitrator to play a quasi-judicial role." See 83 Am Jur POF 3d 12.

In Crawford's case the fact-finder will be called upon to determine a disputed set of facts, involving credibility decisions. Accordingly, previous dealings with Hunter, would make Crawford's arbitration proceeding with

HACS as a party opponent and Hunter as the assigned arbitrator, decidedly fundamentally unfair.

## E.  Unconscionable or Adhesion Contract

Crawford's purported modification to use DPR in lieu of AAA, would cost Crawford thousands more ($8,000.00 just for starters with initial deposit) rather than a mere $125.00 AAA administrative fee, is voidable at his option as the contract modification is both substantively and procedurally oppressive and unconscionable.

In determining whether an agreement or subsequent modification may be voided as a contract of adhesion, the Court is required to consider factors such as whether there is unequal bargaining power as between the parties; an unfair advantage is obtained; the agreement or subsequent modification is within the reasonable expectations of the weaker party; and the stronger party used deceptive tactics. Ticknor v. Choice Hotels Intern, Inc., 265 F.3d 931 (9th Cir 2001); Circuit City Stores, Inc. v. Adams, 279 F 3d 889, 892 (9th Cir. 2002), cert. denied 535 U.S. 1112 (2002); Harris v. Green Tree Financial Corp., 183 F.3d 173 (3d Cir. 1999); We Care Hair Development, Inc. v. Engen, 180 F.3d 838 (7th Cir. 1999).

Importantly, federal law preempts state law when the result would otherwise be an unconscionable adhesion contract to the detriment of an

employee amid allegations of a wrongful termination. Ingle v. Circuit City Stores, Inc., 328 F. 3d 1165, 1169 (9th Cir. 2003), cert. denied, 124 S. Ct. 1169 (2004); Ticknor, supra; and Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 686-687 (1996).

If the offending provision in the contract can be severed or restricted in its application, then such severance and restriction are appropriate. See 83 Am Jur POF 3d 71.

In this case, the contractual provision that offends is unreasonably favorable to the drafter (HACS) by forcing Crawford to deposit $8,000.00 (just for starters) with DPR rather than $125.00 with AAA (the total portion Crawford would be responsible for with the remaining balance of the AAA proceedings being charged to HACS) (procedural unconscionability) and the terms are unreasonably favorable to the other party (HACS) (Substantive unconscionability). Circuit City Stores, Inc. v. Mantor, 335 F. 3d 1101 (9th Cir. 2003), cert. denied, 124 S. Ct. 1169 (2004).

A mandate that an employee split the arbitrator's fees with the employer is substantively unconscionable. Circuit City Stores, Inc. v. Adams, 279 F 3d 889 (9th Cir. 2002), cert. denied 535 U.S. 1112 (2002). A fee sharing provision that could costs employees thousands of dollars is substantively unconscionable. Ferguson v. Countrywide Credit Industries,

Inc., 298 F. 3d 778 (9th Cir. 2002); Ingle v. Circuit City Stores, Inc., 328 F.

3d 1165, 1169 (9th Cir. 2003), cert. denied, 124 S. Ct. 1169 (2004).

The AAA Website shows that one using AAA to arbitrate according

to the clause in the employment contract requires an employee to deposit a

mere "administrative cost" of $125.00. After the initial administrative cost"

of $125.00, under the AAA National Employment Rules, the Employer is

then responsible for all additional costs from that point forward. In

CRAWFORD'S case it is therefore the employer (HACS) under the

Employment Rules that is responsible for the "arbitration cost" of $8,000.00.

In addition, the HACS is mandated to pay for a court reporter, including the

costs of transcripts (just as the parents in an IDEA administrative hearing

before the Hawaii Department of Commerce and Consumer affairs are

entitled too).

HACS argument is frivolous that DPR rules be followed and HACS

should be sanctioned based on contemptuous conduct in violation of 9th

Circuit law directly on point for "judge shopping". See Hernandez v. City

of El Monte, 138 F.3d 393 (9th Cir. 1998)(review of a dismissal sanction for

"judge shopping").

The Commercial Rules are irrelevant as the 1992 contract clause is

void as against public policy. Additionally, *the very contract at issue before*

*the court arises under an employment contract and not a commercial*

*contract* such as a contract for the sale of goods under the Uniform

Commercial Code.

"AAA" provides a pay schedule, so upfront costs are ascertainable.

The DPR does not provide this useful pay schedule; rather DPR charges

based on an hourly rate, with no way of telling how much money

CRAWFORD'S arbitration could cost him rather than the AAA $125.00

administrative fee.

**F.  Offensive Collateral Estoppel/Judicial Estoppel**

Offensive, non-mutual collateral estoppel prevents HACS from

relitigating this same issue with CRAWFORD as HACS already fully and

fairly litigated this issue before Judge Ezra with SCHOGGENS and lost, not

to mention loosing before Judge Ahn in state court as well with

SCHOGGENS.

Offensive, non-mutual collateral estoppel is a version of collateral

estoppel that arises when a plaintiff (here Crawford) seeks to estop a

defendant (here HACS) from relitigating an issue that the defendant (again

HACS) previously litigated and lost against another Plaintiff (here co-

worker Bruce Schoggins).  See Parklane Hosiery Co., Inc. v. Shore, 439

U.S. 322 (1979).

In <u>Parklane</u>, before Plaintiff Shore's action came to trial, the

Securities and Exchange Commission (SEC) filed suit against the same

defendants in a Federal District Court, alleging essentially the same

allegations as those that had been alleged in Shore's private individual

complaint.

After a 4-day trial in the SEC case, the District Court found in favor

of the SEC and entered a declaratory judgment to that effect ( <u>SEC v.</u>

<u>Parklane Hosiery Co.</u>, 422 F.Supp. 477), which the Court of Appeals for the

Second Circuit affirmed the judgment in favor of the SEC (558 F.2d 1083).

Plaintiff Shore then moved for partial summary judgment against the

Parklane defendants, asserting that they were collaterally estopped from

relitigating the issues that had been resolved against them in the action

brought by the SEC. As the SEC action was limited to a determination of

whether a proxy statement contained materially false and misleading

information, Shore wisely conceded that he would still have to prove that he

was in fact injured and prove damages as elements of his prima facie case in

the private action. <u>Parklane</u>, 439 at 324-325. Likewise in CRAWFORD'S

case, Crawford is currently only requesting the estoppel issue as to whether

AAA Employment rules must be followed rather than DPR rules. Crawford,

in similar manner to Schoggens, would still have to prove that he [Crawford]

was in fact injured and prove damages [lost wages, emotional distress, etc.) as elements of his prima facie case in his own action against HACS.

The Parklane Court noted in a footnote, "In this context, offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." Parklane, 439 U.S. at 326, footnote 4.

Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. Parklane, 439 U.S. at 326, footnote 5.

There is an "obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost". Id. at 327. "Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." Id. at 328. The offensive use of collateral estoppel is when a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant (HACS) previously litigated and lost against another plaintiff (SCHOGGENS). Id. at 329.

HACS had every opportunity to present evidence and call witnesses in the SCHOGGENS v. HACS matter, and the AAA arbitrator held in favor of SCHOGGENS and awarded damages.

HACS was already aware of the CRAWFORD action when SCHOGGENS commenced his action against HACS since CRAWFORD had commenced it in the United States District Court for the Central District of California prior (CRAWFORD Complaint filed December 23, 2002) to SCHOGGENS commencing his action in the United States District Court for the District of Hawaii (SCHOGGENS Complaint filed December 4, 2004).

In the Parklane matter, the Defendant was likewise aware of the Plaintiff's complaint prior to the SEC filing its own complaint against the Defendant. Parklane, 439 U.S. at 332. Further, HACS was never prejudiced by the necessity of defending the first lawsuit in an inconvenient forum as the CRAWFORD complaint was transferred from the United States District Court for the Central District of California to the United States District Court for the District of Hawaii after the granting of a motion for venue transfer pursuant to principles of *forum non conveniens*. Parklane, 439 U.S. at 332.

"We conclude, therefore, that none of the considerations that would justify a refusal to allow the use of offensive collateral estoppel is present in this case. Since the petitioners received a "full and fair" opportunity to litigate their claims in the SEC action, the contemporary law of collateral estoppel

leads inescapably to the conclusion that the petitioners are collaterally estopped from relitigating the question of whether the proxy statement was materially false and misleading.

<u>Parklane</u>, 439 at 332-333 (U.S. 1979).

Judge Ezra ruled against HACS in May of 2005. Judge Ahn ruled against Osaki in State Court and additionally sanctioned Osaki on March 16, 2006.

HACS' motion is therefore in bad faith merely to harass and annoy and cause great anxiety for Crawford and subject him to a DPR proceeding which he cannot afford to pay in order for HACS' to win by superior financial resources through a technicality (superior financial resources) rather than winning on the merits. Further, the attached award by former co-worker Schoggens already went forward using AAA Employment Rules. Thus principles of collateral estoppel require HACS to use AAA Employment with Schoggen's co-workers, namely Crawford, Moore and Ventress who all demanded AAA arbitration pursuant to the FAA and AAA employment rules.

Issues that implicate <u>comity</u> concerns may be raised for first time on appeal. <u>Stone v. City and County of San Francisco</u>, 268 F.2d 850, 855-856 (9th Cir. 1992). Further, concealing the decisions of Judge Ezra and Judge Ahn in order to "judge shop" is prohibited by the doctrine of judicial

estoppel which prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued by that party in a previous legal proceeding. Judicial estoppel protects the "integrity of the judicial process" and prevents a party from attempting to play "fast and loose with the courts." See McNemar v. Disney Store, Inc., 91 F.3d 610, 618-20 (3d Cir. 1996). First HACS says no federal litigation; Second, HACS demands arbitration in accordance with AAA; Third, when HACS discovers that the Crawford, Moore, Schoggen and Ventress are entitled to AAA arbitration under the Employment rules, HACS then begins pursues court actions against all four in at least six known forums (there may be more that have not come to light as of yet) to secure arbitration as it sees fit. HACS did this despite previously agreeing to AAA which clearly states in its rules that whatever rule is in effect at the time of the demand is the rule that is applicable and AAA decides which rule applies when there is a conflict in rules; Fourth, HACS begins trying to secure DPR proceedings to get away from AAA and the FAA altogether. Crawford, who never saw the danger, was the first weak "gazelle" to get preyed upon with HACS' setup to get a pilot stuck with a bill for thousands of dollars rather than $125.00.

## G.  The Modification Lacks Consideration to be Enforceable

To be effective as a modification, a contract must possess all the elements necessary to form a contract.  Here the missing element is consideration.  There is no consideration for CRAWFORD to be bound as he goes from $125.00 with AAA to $8,000.00 min. with DPR.

Modifications that are not supported by valid consideration are unenforceable. See 83 Am Jur POF 3d 80; Premier Technical Sales, Inc. v. Digital Equipment Corp., 1 F.Supp. 2d 1156 (N.D. Cal. 1998), aff'd in part, rev'd in part on other grounds, 202 F.3d 279 (9th Cir. 1999).


## H.  The AAA is entitled to deference in deciding that AAA Employment Rules apply in CRAWFORD'S case

In administering the FAA, the AAA is entitled to deference in deciding that AAA Employment Rules apply in CRAWFORD'S case rather than commercial rules.  See

Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 843 (U.S. 1984) (Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. The court need not conclude that the agency construction was the only one it permissibly could have adopted to

18

uphold the construction, or even the reading the court would have reached if

the question initially had arisen in a judicial proceeding. See, *e. g., FEC v.*

*Democratic Senatorial Campaign Committee*, 454 U.S. 27, 39 (1981). The

AAA Rules and procedures unambiguously states:

IMPORTANT NOTICE
These rules and any amendment of them shall apply in the form in effect at
the time the administrative filing requirements are met for a demand for
arbitration or submission agreement received by AAA. To ensure that you
have the most current information, see our web site at www.adr.org.


AAA is a non-profit public service organization that offers not only a

broad range of dispute resolution services worldwide, but in addition "serves

as a center for education and training, issues specialized publications, and

conducts research on all forms of out-of-court dispute settlement. See AAA

brochure, Introduction Section. In administering the FAA, the AAA is thus

entitled to deference in deciding that AAA Employment Rules apply in

CRAWFORD'S case rather than AAA commercial rules.

## I. Conclusion

HACS Motion should be denied; CRAWFORD'S CROSS-MOTION for an

order compelling arbitration before AAA, using Employment Rules rather

than Commercial Rules should be granted based on the forgoing; Sanctions

against HACS are in order as set forth below. The well coordinated effort by

HACS to wear the Plaintiffs out though the use of improper procedures

should not be tolerated.  HACS motion to compel arbitration pursuant to DPR rather than AAA is patently frivolous and without any merit.  Crawford therefore request sanctions against HACS in the form of an award of attorneys fees and costs for the time and expenses spent in opposing this motion and allow further submissions as to the total hours expended in defending against HACS' Motion; the lodestar amount for counsel's current hourly rate; and costs expended in defending against HACS' Motion in the form of an award of fees and costs.

DATED:  Honolulu, Hawaii, April 2, 2007.

SHAWN A. LUIZ
Attorney for Plaintiff
Jack L. Crawford III.