EXHIBIT "22"

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

CIVIL NO. **CV07 00149**    **SOM** KSC

MAR 20 2007

☑ **ORDER SETTING RULE 16 SCHEDULING CONFERENCE**

at __1__ o'clock and __5__ min. __P__ M,
SUE BEITIA, CLERK

☐ **NOTICE SETTING STATUS CONFERENCE**

You are hereby ORDERED to appear for a Scheduling Conference/Status Conference on _June 18, 2007_ ✓✓ at 9:00 a.m. before

☐ Magistrate Judge Barry M. Kurren in Courtroom 6

☐ Magistrate Judge Leslie E. Kobayashi in Courtroom 7

☑ Magistrate Judge Kevin S.C. Chang in Courtroom 5

   Pursuant to Rule 16 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Local Rule 16.2 of the Rules of the United States District Court for the District of Hawaii ("L.R."):

   Each party shall file a Scheduling Conference Statement pursuant to L.R. 16.2(b), and shall attend in person or by counsel.

   Parties are reminded that, unless otherwise ordered by the Court, a meeting of the parties must occur at least 21 days prior to the Scheduling Conference and a report submitted to the Court. Except as otherwise provided by L.R. 26.1(c), no formal discovery may be commenced before the meeting of the parties.

   Failure to file and/or failure to attend will result in imposition of sanctions, (including fines or dismissal), under Fed.R.Civ.P. 16(f) and L.R. 11.1.

   DATED at Honolulu, Hawaii ___MAR 20 2007___.

                    HELEN GILLMOR
              Chief, U.S. District Judge

I hereby acknowledge receipt of the Order Setting Rule 16 Scheduling Conference/Status Conference.

Date _MAR 20 2007_

Sign _____

Atty ( ) Secy ( ) Messenger ( )

**THIS RULE 16 ORDER/NOTICE OF STATUS CONFERENCE IS ATTACHED TO THE INITIATING DOCUMENT (COMPLAINT/NOTICE OF REMOVAL) & MUST BE SERVED WITH THE DOCUMENT. PLEASE DO NOT REMOVE.)**

**ORIGINAL**

THE LAW OFFICES OF
DAVID F. SIMONS

DAVID F. SIMONS 2179-0
Ocean View Center
707 Richards Street, PH 1
Honolulu, HI 96813
Telephone: (808) 536-3255
e-mail: dsimons@hawaii.rr.com

Attorney for Petitioner

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 20 2007

at 1 o'clock and 55 min P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BRUCE G. SCHOGGEN, | S.P. No. **CV07 00149 SOM KSC** |
| Petitioner, | NOTICE OF HEARING MOTION; PETITIONER'S MOTION TO CONFIRM ARBITRATION AWARD; DECLARATION OF DAVID F. SIMONS; EXHIBITS 1-6; CERTIFICATE OF SERVICE |
| vs. | |
| HAWAII AVIATION CONTRACT SERVICES; JAPAN AIRLINES; JALWAYS CO., LTD., a subsidiary of Japan Airlines; and DOES 1-10 | Hearing: |
| Respondents | DATE: _____ TIME: _____ JUDGE: David A. Ezra |

## NOTICE OF HEARING MOTION

TO:      Carl H. Osaki, Esq.
         Pioneer Plaza, Suite 1510
         900 Fort Street
         Honolulu, Hawaii 96813

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BRUCE G. SCHOGGEN,<br><br>               Petitioner<br><br>vs.<br><br>HAWAII AVIATION CONTRACT SERVICES; JAPAN AIRLINES; JALWAYS CO., LTD., a subsidiary of Japan Airlines; and DOES 1-10<br><br>           Respondents. | S.P. No.<br>PETITIONER'S MOTION TO CONFIRM ARBITRATION AWARD |

## PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD

Petitioner Bruce G. Schoggen, by and through his counsel, moves this Court pursuant to section 9 of the Federal Arbitration Act, 9 U.S.C. 1 et seq. for an order confirming the Partial Final Award of E. John McConnell dated November 13, 2006, his Second Partial Final Award of January 10, 2007, and his Final Award of March 5, 2007, and pursuant to those awards, entry of judgment in favor of Petitioner Bruce G. Schoggen and against Respondent H.A.C.S., in the amount of $249,142.45.

The attached memorandum, declaration of David F. Simons and the exhibits provide support for this motion.

Dated: Honolulu, Hawaii, _____March 20, 2007_____.

DAVID F. SIMONS
Attorney for Petitioner
BRUCE G. SCHOGGEN

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BRUCE G. SCHOGGEN, | S.P. No. |
| Petitioner, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| HAWAII AVIATION CONTRACT SERVICES; JAPAN AIRLINES; JALWAYS CO., LTD., a subsidiary of Japan Airlines; and DOES 1-10 | |
| Respondents. | |

## MEMORANDUM IN SUPPORT OF MOTION

## I.     FACTUAL AND PROCEDURAL BACKGROUND.

On January 27, 1993, Petitioner Bruce G. Schoggen and Respondent Hawaii

Aviation Contract Services ("HACS") signed a "Pilot Contract" employing

Petitioner as a DC-10 pilot, (Ex. 1). It had an arbitration agreement which

provided:

> d.     In the event of any dispute between the parties hereto, the dispute shall be submitted to the American Arbitration Association and be decided by neutral binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitrator shall construe this Agreement and the rights of the parties hereunder in accordance with the laws of the State of Hawaii, U.S.A. Any

decisions made by the arbitrator shall be deemed binding for the purposes of this Agreement and are not appealable. Costs and expenses incurred shall be borne in accordance with the decisions made by the arbitrator. This is the sole legal remedy SCHOGGEN and HACS shall have with respect to any disputes arising from this agreement, i.e., each party hereby waives his or its rights to seek redress in any court system that might otherwise be available to him or it. The decision of the arbitrator shall be non-appealable. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

Mr. Schoggen was discharged from his employment with HACS on 9/08/04.

He claimed the discharge inter alia, breached his contract with HACS.

On December 2, 2004, Mr. Schoggen filed a complaint with the United

States District Court. Under Civil no. 04-00707 DAE LEK. In Count V of his

Complaint, Petitioner alleged a claim for breach of contract based on his

employment with HACS. On February 25, 2005, Mr. Schoggen filed a Motion to

Compel Arbitration. On March 30, 2005, Honorable Judge Ezra heard the motion

and ordered Mr. Schoggen and HACS to arbitration and dismissed the other claims

and parties in the case without prejudice. The order is attached hereto as Exhibit 2.

On January 20, 2006, E. John McConnell was selected by the parties and

appointed by AAA as the arbitrator in the case. (Exhibit 3).

In September 2006, Arbitrator McConnell held a two day arbitration hearing

in the case. On November 13, 2006, Arbitrator McConnell issued his first Partial

2

Final Award in the case awarding Mr. Schoggen back pay of $197,667.00. (See Exhibit 4). The first Partial Final Award also indicated that Arbitrator McConnell awarded attorney's fee to Mr. Schoggen, and ordered HACS to use "good faith efforts" to convince its primary client, Jalways, to allow Mr. Schoggen to return to his old job, and retained jurisdiction to consider possible front pay and the attorneys' fees award.

Mr. Schoggen subsequently submitted an application for attorneys' fees and costs, and HACS filed a memorandum in opposition. On January 10, 2007, Arbitrator McConnell used a second partial award. He awarded $51,475.45 in attorneys' fees and costs to Mr. Schoggen. (See Exhibit 5).

After what Mr. Schoggen thought were lax efforts by HACS to get his job back, Mr. Schoggen remained unemployed. On 1/2/07 Mr. Schoggen filed a motion for a front pay award, questioning HACS efforts, and HACS filed a memorandum in opposition claiming they had made a "good faith (albeit unsuccessful) effort" to get Mr. Schoggen his job and petitioned for instructions if there was something more the arbitrator thought they should do. The arbitrator ruled in favor of HACS on this issue and refused to give Mr. Schoggen a front pay award. He issued a Final Award denying the front pay request, and incorporating his first two awards. The Court is asked to confirm the award and pursuant to the

3

terms of the award, enter judgment in favor of Mr. Schoggen in the amount of

$249,142.45.

## II.    ARGUMENT

The Federal Arbitration Act provides:

> ### AWARD OF ARBITRATORS; CONFIRMATION; JURISDICTION; PROCEDURE
>
> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a non-resident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

The contract specifically provided for the entering of a judgment:

> Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

This Court should confirm the $249,142.45 arbitration award against HACS, and enter judgment in favor of Mr. Schoggen.

## III.    CONCLUSION

For the foregoing reasons, Petitioner Bruce G. Schoggen respectfully requests that this Court grant his motion to confirm the arbitration award and enter judgment for Petitioner against Respondent in the amount of $249,142.45.

Dated: Honolulu, Hawaii, _____ March 20, 2007 _____.

DAVID F. SIMONS
Attorney for Petitioner
BRUCE G. SCHOGGEN

5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BRUCE G. SCHOGGEN, | S.P. No._____ |
| Petitioner, | |
| vs. | DECLARATION OF DAVID F. SIMONS |
| HAWAII AVIATION CONTRACT SERVICES; JAPAN AIRLINES; JALWAYS CO., LTD., a subsidiary of Japan Airlines; and DOES 1-10. | |
| Respondents. | |

## DECLARATION OF DAVID F. SIMONS

I DAVID F. SIMONS declare:

1.    I am the attorney representing Petitioner in the above-referenced case.

2.    I make this declaration based on personal knowledge.

3.    I am an attorney licensed to practice law in the State of Hawaii.

4.    I represent Petitioner Bruce Schoggen in an arbitration against his former employer "H.A.C.S."

5.    In this arbitration a two day hearing was held in September 2006 before Arbitrator E. John McConnell, who had been selected by the parties and appointed by the AAA as the arbitrator.  Both sides were permitted to introduce all evidence they offered and call all witnesses

they wished, after which both sides rested their case, filed post-hearing briefing and submitted to the arbitrator for his decision.

6.    The arbitrator issued his First Partial Award on November 13, 2006, finding in favor of Mr. Schoggen on his claim of breach of contract and awarded $197,667 in back pay.

7.    In his First Partial Award Arbitrator McConnell granted Mr. Schoggen's request for attorney's fees and asked for additional briefing on the attorney fee issue.

8.    On November 27, 2006, I submitted on behalf of Mr. Schoggen a motion requesting attorney's fees in excess of $70,000.00. Later Mr. Osaki filed a memorandum in opposition.

9.    On January 10, 2006, Judge McConnell issued a Second Partial Award awarding Mr. Schoggen $51,475.45 in attorney's fees.

10.    As part of Judge McConnell's initial Award, he ordered that HACS make "good faith efforts" to allow Mr. Schoggen to return to his job as an airline pilot.

11.    On January 2, 2007, because those efforts had not born fruit, I filed a motion to have the Court issue a front pay Award to Mr. Schoggen because it was apparent he was not going to be able to return to his job.

12.    HACS filed a memorandum in opposition documenting their effort to re-employee Mr. Schoggen.

13.    On March 5, 2007, Judge McConnell entered his Final Award which expressed incorporation of his First and Second Partial Awards, rejected Mr. Schoggen's request for front pay, finalized the award and ended his role as arbitrator in the matter.

14.    Attached as Exhibit1 is a true and correct copy of Mr. Schoggen's contract with HACS.

2

15.   Attached as Exhibit 2 is a true and correct copy of the Order issued by
      Judge David A. Ezra, granting Plaintiff's Motion to Compel
      Arbitration.

16.   Attached as Exhibit 3 is a true and correct copy of the January 20,
      2006 letter from AAA appointing Honorable E. John McConnell as
      arbitrator.

17.   Attached as Exhibit 4 is a true and correct copy of the Partial Final
      Award issued by arbitrator McConnell on November 13, 2006.

18.   Attached as Exhibit 5 is a true and correct copy of the Second Partial
      Final Award issued by arbitrator McConnell on January 10, 2007.

19.   Attached as Exhibit 6 is a true and correct copy of the Final Award of
      Arbitrator issued by arbitrator McConnell on March 5, 2007.

      Dated: Honolulu, Hawaii. _____ March 20, 2007 _____.


      _____
      DAVID F. SIMONS
      Declarant

3

## PILOT CONTRACT

This contract (hereinafter referred to as "AGREEMENT" by and between HAWAII AVIATION CONTRACT SERVICES, INC., a Hawaii corporation doing business as H-A-C-S, whose address is 3660 Waialae Avenue, Suite 310, Honolulu, Hawaii, hereinafter referred to as "HACS" and MR. BRUCE GUY SCHOGGEN hereinafter referred to as SCHOGGEN whose address is _11507 Whisper Circle San Antonio, Texas 78230_, is entered into this _27th_ day of _January_ ,199_3_ .

W I T N E S S E T H :

WHEREAS, JAPAN AIR CHARTER CO. LTD., is a foreign corporation established in accordance with the laws of Japan, whose address is Sumitomo Hamamatsu Cho Building, Tokyo, Japan, and is hereinafter referred to as "JAZ"; and

WHEREAS, JAZ conducts flight operations as an air carrier and needs personnel rated and able to be trained to fly as captain, first officer, flight engineer, who are in possession of the qualifications specifically provided hereunder, hereinafter, collectively, CREWMEMBERS; and

WHEREAS, HACS has the ability to supply such CREWMEMBERS; and

WHEREAS, JAZ desires to use such CREWMEMBERS for their charter operations; and

WHEREAS, HACS is a business designed to supply crews for special types of flight operations, including charter and ferry operations;

WHEREAS, SCHOGGEN, desires to be employed as a crewmember for HACS under its current agreement with JAZ,   NOW,   THEREFORE,   in consideration of mutual covenants and conditions contained hereinafter, the parties hereto, SCHOGGEN and HACS, respectively, agree as follows:

1.   Term of Agreement.   This AGREEMENT contemplates a period of approximately five (5) years and seven (7) months, as follows:

EXHIBIT **1**

1

    a.    Crew training commences on/or about March 1, 1993.

    b.    Training shall encompass in excess of six (6) to seven (7) months.

    c.    When SCHOGGEN has been qualified to fly for JAZ, i.e, all training, testing, line checking, are completed, he shall be obligated to fly for five (5) years, i.e., sixty (60) consecutive months subsequent to the completion of flight training and JAZ certification.

    d.    The term of this AGREEMENT shall run from the date of the signing (execution) of the AGREEMENT until approximately October, 1998 and shall be automatically renewed unless SCHOGGEN notifies HACS in writing at least one year prior to the termination date of this contract that he does not wish to have this contract renewed. The termination date shall be determined upon certification of SCHOGGEN for line flying and shall be inserted hereinafter upon completion.

    e.    Termination Date _____

2.    CREWMEMBER Qualification; Assignment;

    a.    HACS shall assign SCHOGGEN to JAZ for the periods and purposes noted in paragraph 1, above.

    b.    SCHOGGEN shall be certified to be qualified in accordance with specifications set forth in JAZ Operations Manual.

    c.    SCHOGGEN understands that in the event the needs of JAZ and HACS diminish, the laws of the State of Hawaii shall apply should there be a requirement to lay off personnel.

    d.    Compensation:    Benefits for CREWMEMBERS shall be in accordance with Appendix B hereto.

    e.    SCHOGGEN understands that JAZ and HACS shall screen and agree to his assignment to JAZ.

    f.    SCHOGGEN understands that he is not eligible for promotion

during the agreed term unless otherwise agreed by both JAZ and HACS.

      g.    SCHOGGEN understands that he shall perform his services in accordance with the regulations and procedures of JAZ. However, should there be any conflict between JAZ regulations and procedures on the one hand and this AGREEMENT on the other hand, this Agreement shall take precedence and be binding.

      h.    HACS will be responsible for giving a complete briefing to SCHOGGEN insuring that he is familiar with the terms, conditions and expectations of JAZ with respect to salary, working conditions, no strike provisions, etc. .

      i.    SCHOGGEN agrees to sign and adhere to the terms of the "Work Disruption Agreement." See Appendix C.

      j.    SCHOGGEN acknowledges that JAZ has the right to supplement the HACS crew complement, including non-Japanese crews, to act as coordinators and/or managers of JAZ flight and charter operations.

      k.    SCHOGGEN understands that JAZ has the authority to govern the conduct of, and to supervise, direct, and control CREWMEMBERS assigned hereunder during the performance of those duties for which they are assigned to JAZ. JAZ and HACS shall exercise their best efforts and will cooperate with each other in order to coordinate their efforts to accomplish said governing, supervision, direction and control.

      l.    SCHOGGEN understands that HACS must, at the request of JAZ, terminate the assignment of any CREWMEMBER who fails to maintain required qualifications, i.e., flight certification, medical certification, visas required for operations, as per JAZ Operations Manual.

      m.    SCHOGGEN understands that JAZ is entitled to claim damages resulting from the shortage of CREWMEMBERS for flight operation, when the shortage of CREWMEMBERS is caused by the negligence of HACS.

n.    The JCAB (Japan Civil Aviation Bureau) Medical Certificate, as well as FAA medical certificates shall be obtained and paid for by SCHOGGEN. Initial JCAB Medical Certificate will be paid by JAZ.

o.    SCHOGGEN understands that he shall not communicate directly or indirectly in writing with JAZ supervisory personnel unless it is necessary in the performance of his assigned duties.

p.    In the event SCHOGGEN fails the required proficiency or type rating checks after receiving applicable training as specified in JAZ Qualification Manual, SCHOGGEN understands that JAZ and HACS supervisory personnel shall confer and HACS supervisors shall present their opinion with respect to his case. JAZ shall determine after said conference, the final disposition of SCHOGGEN'S case.

q.    Initial training and checks as well as certification for line flying will be performed at a location or locations chosen by JAZ. In the event initial training or subsequent training is failed by SCHOGGEN, he will be given transportation back to his domicile at the origin of this AGREEMENT. Cost of transportation shall be borne by JAZ.

r.    SCHOGGEN understands that JAZ shall provide and pay for periodic training and checks for CREWMEMBERS in accordance with the details described in JAZ Qualification Manual. Such training and checks shall be specified by JAZ.

s.    In the event SCHOGGEN is involved in or causes an accident, he shall be deemed an employee of JAZ. He will be held harmless by JAZ and will be furnished legal counsel at no expense to himself. In the event fellow employees are injured, regardless of the location of the accident, the laws of Hawaii with respect to the Workman's Compensation remedies shall apply, i.e., no cause of action shall exist for JAZ against SCHOGGEN nor shall SCHOGGEN have any cause of action against JAZ or HACS.

4

3.    CREWMEMBER Benefits

a.    Pay and allowances shall be in accordance with the scales set forth in Appendix B.

b.    Individual benefits are set forth in Appendix B.

c.    SCHOGGEN understands that there are no interline benefits under the terms of this contract.  HACS Employee Manual will set forth the current benefits available through Japan Airlines.  Free and reduced fare transportation is open for further discussion and discovery.  HACS and JAZ shall make their best efforts to obtain free and reduced fare transportation for CREWMEMBERS and their families.

4.    War or Terrorist Prisoner or Hostage Benefits

a.    In this international charter operation it is possible that SCHOGGEN may be interned or held as hostage.

b.    SCHOGGEN understands that in the event he is interned for other than criminal conduct, JAZ shall continue to pay all amounts otherwise due SCHOGGEN for the duration of said internment.

5.    Liabilities, Indemnities, Releases, Choice of Law

a.    While SCHOGGEN is working or training under the supervision, direction or control of JAZ, JAZ shall save and hold harmless HACS, its officers, heirs or assigns from any and all claims arising from acts or omissions of SCHOGGEN.  HACS shall indemnify same and hold JAZ free and harmless from any and all claims of liability brought by any crewmember arising out of, or occurring in the course of such crewmember's performance of services hereunder, or employment agreements with such crewmember, including claims of liability caused by illness, accident or death of any such crewmember.  JAZ reserves its right to make claims against HACS and Crewmember assigned to JAZ for damages caused by HACS crewmember while off duty.

b.    Unless otherwise required by clear definition of conflicts of law, the choice of law for any dispute arising from this AGREEMENT shall be the law of the State of Hawaii and, if applicable, the law of the United States of America.

c.    HACS will insure that SCHOGGEN will be covered by both Workman's Compensation and Temporary Disability insurance and any other coverage required by the Hawaii Revised Statutes.

d.    In the event of any dispute between the parties hereto, the dispute shall be submitted to the American Arbitration Association and be decided by neutral binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  The arbitrator shall construe this Agreement and the rights of the parties hereunder in accordance with the laws of the State of Hawaii , U.S.A. Any decisions made by the arbitrator shall be deemed binding for the purposes of this Agreement and are not appealable.    Costs and expenses incurred shall be borne in accordance with the decisions made by the arbitrator.  This is the sole legal remedy SCHOGGEN and HACS shall have with respect to any disputes arising from this agreement, i.e., each party hereby waives his or its rights to seek redress in any court system that might otherwise be available to him or it.  The decision of the arbitrator shall be non-appealable.  Judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

6.    _Future Hiring_

a.    SCHOGGEN, subsequent to the execution of this AGREEMENT, shall not be hired by JAZ directly or indirectly through any subsidiary of Japan Airlines or JAZ during the term of this AGREEMENT.

7.    Termination of CREWMEMBERS

a.    Assignment of SCHOGGEN to JAZ shall be terminated on the date SCHOGGEN refuses or fails to maintain required qualification. (See Paragraph 2 (l))

6

b.    In the event that SCHOGGEN becomes permanently physically or mentally unqualified for flight duty as a result of sickness or injury as determined by an approved JAZ physician, SCHOGGEN shall be medically retired. Neither HACS or JAZ shall be responsible for Medical retirement Benefits.

c.    If SCHOGGEN reaches age 60 or JCAB mandatory retirement age, voluntarily resigns or dies, his assignment to JAZ is terminated.

8.    Conditions of Service

a.    SCHOGGEN understands that JAZ's Operations Manual, revised, is the controlling document for the JAZ operations.

b.    To the extent it does not conflict with the JAZ Operations Manual, the HACS Policy Manual shall control.

c.    It is understood that U.S. F.A.R's must be complied with as well as pertinent rules and regulations of the Nation of Japan.

9.    Voluntary Termination

a.    In the event SCHOGGEN elects to terminate his assignment to JAZ prior to completion of his originally agreed upon term, he may do so by providing 90 days' notice to HACS who will in turn seek an acceptable replacement CREWMEMBER.

b.    If SCHOGGEN makes the election provided for in 9.a. above, crewmember shall be responsible to pay to JAZ through HACS liquidated damages in the amount of $15,000 per year or fraction thereof, not prorated, remaining in his term of employment with HACS up to a maximum of $75,000 U.S.D.

c.    If SCHOGGEN elects to terminate under provisions of 9.b. above he agrees to execute a promissory note in the amount owed plus 10% per annum interest if the debt is not paid off in full at the time of resignation.

d.    If SCHOGGEN fails to follow the procedure set forth in 9 a,b,c above, he understands that HACS has the right to recover special damages in addition to the

liquidated damages provided for in paragraph 9 b,c. SCHOGGEN further understands that he may be liable for punitive damages if he fails to give notice as set forth in paragraph 9.a.

10.    SCHOGGEN understands that the Appendice A,B,C, & D attached hereto are incorporated by reference and made a part hereof.

IN WITNESS WHEREOF, the parties hereto have executed this contract this 27 day of _January_ 1993.

HAWAII AVIATION CONTRACT SERVICES, INC.

By:    _John S. Carroll_
JOHN S. CARROLL
President

By:    _Bruce Guy Schoggen_
BRUCE GUY SCHOGGEN

---

**IFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                                         No. 5193

ate of _California_
ounty of _Marin_

_1-27-93_ before me, _S. J. Orchid_
DATE                    NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

ersonally appeared _Bruce Guy Schoggen_
NAME(S) OF SIGNER(S)

personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Signature of Notary_
SIGNATURE OF NOTARY

OFFICIAL SEAL
S. J. ORCHID
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
SONOMA COUNTY
My Commission Expires Aug. 6, 1993

■━━ OPTIONAL SECTION ━━■
**CAPACITY CLAIMED BY SIGNER**
Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document.
☒ INDIVIDUAL
☐ CORPORATE OFFICER(S)
                        TITLE(S)
☐ PARTNER(S)    ☐ LIMITED
                        ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)
_____
_____

━━ **OPTIONAL SECTION** ━━
TITLE OR TYPE OF DOCUMENT_____
NUMBER OF PAGES_____ DATE OF DOCUMENT_____
SIGNER(S) OTHER THAN NAMED ABOVE _____

IS CERTIFICATE MUST BE ATTACHED TO
E DOCUMENT DESCRIBED AT RIGHT:
ugh the data requested here is not required by law,
uld prevent fraudulent reattachment of this form.

©1993 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184

**APPENDIX A**

**QUALIFICATIONS LIST**

**PILOT CONTRACT**

**U.S. F.A.A. QUALIFICATIONS**

**CAPTAINS**

1.   Airline Transport Pilot Certificate

2.   Type rating for aircraft to which assigned

3.   First Class Medical Certificate

4.   F.C.C. Flight Radio Operator's License

**FIRST OFFICERS**

1.   Airline Transport Pilot Certificate

2.   Type Rating for aircraft to which assigned

3.   First Class Medical Certificate

4.   F.C.C. Flight Radio Operator's License

**FLIGHT ENGENEERS**

1.   Flight Engineer Certificate

2.   Turbo Jet Rating

3.   Second Class Medical Certificate

4.   F.C.C. Flight Radio Operator's License

**JCAB QUALIFICATIONS**

**CAPTAIN**

1.  Airline Transport Pilot Certificate

2.  Type Rating for aircraft to which assigned

3.  Aviation Medical Certificate - JCAB - First Class

4.  Third Class Flight Radio Operator's
    Certificate

5.  Aeronautical Class Service Radio Operator's
    License

**FIRST OFFICERS**

1.  Airline Transport Pilot Certificate

2.  Type Rating for aircraft to which assigned.

3.  Aviation Medical Certificate - JCAB - First Class

4.  Third Class Flight Radio Operator's
    Certificate

5.  Aeronautical Class Service Radio Operator's
    License.

**FLIGHT ENGINEERS**

1.  Flight Engineer Certificate

2.  Type Rating for aircraft to which assigned.

3.  Aviation Medical Certificate - JCAB - First Class

**ICAO QUALIFICATIONS**

**CAPTAINS**

1.  Airline Transport Pilot License

2.  Aircraft Type Rating for aircraft to which
    assigned.

2

   3.   Class One Medical Certificate

   4.   Radio License issued by a member state of the International Telecommunications Union.

**FIRST OFFICERS**

   1.   Airline Transport Pilot License

   2.   Aircraft Type Rating for aircraft to which assigned.

   3.   Class One Medical Certificate.

   4.   Radio License issued by a member state of the International Telecommunications Union.

**FLIGHT ENGINEERS**

   1.   Flight Engineer License

   2.   Authorization for the type of aircraft to which assigned.

   3.   Aviation Medical Certificate.

## APPENDIX B

## PILOT CONTRACT

|  |  | Captain | First Officer | Flight Engineer |
|---|---|---|---|---|
| Monthly Salary |  | $9,240.00 | $6,006.00 | $5,544.00 |
|  |  |  |  |  |
| Social Security |  | GOVERNED BY U.S. LAW | | |
| Medicare |  | GOVERNED BY U.S. LAW | | |
| Unemployment | Federal | PAID BY HACS | | |
|  | State | PAID BY HACS | | |
| Worker's Comp |  | PAID BY HACS | | |
| Medical & Dental |  | PAID BY HACS | | |
| Basic Life & AD&D Insurance |  | 100,000/250,000 PAID BY HACS | | |
| Pension |  | 14.8% OF MONTHLY SALARY | | |
| TDI |  | PAID BY HACS | | |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Above Monthly Salary is based on a 65 (sixty-five) hour guarantee.

In case a crewmember flies more that 65 (sixty-five) hours Pay Time, the actual Monthly Salary will be calculated by the following formula.

Pay Time (PT) = Flight Duty Hours + 50 (fifty) % of Deadhead time

Unit Pay per Hour (UPH) = 65 hours guaranteed Monthly Salary ÷ 65 hours

UPH- Captain = $142.15
UPH - Copilot = $92.40
UPH - F/E = $85.29

Actual Monthly Salary    =    65 Hours Guaranteed Monthly Salary
(When Pay Time is at or less that 65 Hours)

or

=    65 Hours Guaranteed Monthly Salary + UPH x (PT - 65)

## APPENDIX B (cont'd)

For Example:

      Example 1    Flight Duty Hours:  50 Hours
                       Dead Head Time:  20 Hours

                   PT = 50hrs + (0.5 x 20hrs) = 50 + 10 = 60hrs

In this case, the crewmember receives 65 hours Guaranteed Monthly Salary.

| | |
|---|---|
| For Captains: | $9,240.00 |
| For Copilots | $6,006.00 |
| For F/E | $5,544.00 |

      Example 2    Flight Duty Hours:  60 Hours
                       Dead Head Time:  20 Hours

                   PT = 60hrs + (0.5 x 20hrs) = 60 + 10 = 70hrs

In this case, the crewmember receives 70 hours of Actual Monthly Salary. I.e.

| | |
|---|---|
| For Captains: | $9,240.00 + (142.15 x (70-65)) = $9,950.75 |
| For Copilots | $6,006.00 + (92.40 x (70-65)) = $6,468.00 |
| For F/E | $5,544.00 + (85.29 x (70-65)) = $5,970.45 |

## APPENDIX C

## PILOT CONTRACT

## WORK DISRUPTION AGREEMENT

The undersigned, SCHOGGEN, agrees and understands that by signing the Contract between himself and HACS, that he voluntarily waives any right to strike either HACS or JAZ. He further agrees that he will not participate in any work slow down, sick out, secondary boycott* or any other type of disruptive behavior designed to diminish or denigrate efficient flight or ground operations of JAZ or HACS. I further agree that I shall never act in anyway disruptive or detrimental to the normal course of business of HACS or JAZ.

Consideration for this agreement is the right to become a pilot (flight engineer) for HACS.

Agreed and understood this _____27_____ day _Januory_____ 199_3_

HAWAII AVIATION CONTRACT SERVICES, INC.

By: _____
JOHN S. CARROLL
President

By: _____
BRUCE GUY SCHOGGEN

* i.e. refusing to perform JAZ or HACS assigned flight duties in order to give support to workers or unions not employed by JAZ or HACS.

## APPENDIX D

## PILOT CONTRACT

1.    a.    SCHOGGEN understands that he is required to have a semi-annual physical examination in addition to all other requirements for physical examinations listed hereinabove or hereinafter. The semi-annual physical is an internal requirement of JAZ and hereinafter designated as PEA.

   b.    SCHOGGEN understands that he is required to take the PEA at the location so designated by JAZ. In the event travel costs are to be incurred, i.e. if the exam is designated to be completed at other than the crewmember's domicile, JAZ shall pay for such costs or provide suitable transportation, per diem and hotel accommodations.

2.    Ground Transportation.

   a.    Transportation will be provided for crewmembers in accordance with standards set forth in the (JAZ S.O.P.'s). Such transportation shall be paid by JAZ upon receipt of requested reimbursement from HACS if JAZ is unable to supply appropriate ground transport when crewmember is away from domicile.

   b.    SCHOGGEN understands that HACS shall provide parking for crewmember at Honolulu International Airport. This proviso is based on the condition that HACS employees shall be allowed to use the employee's parking lot at Honolulu International Airport. Neither HACS nor JAZ has any obligation to furnish ground transportation at the domicile of the crewmember.

3.    Documentation costs.

   a.    Cost of passport shall be borne by crewmember.

   b.    Costs for visas shall be borne by JAZ.

   c.    Costs for inoculation in connection with visa requirements or company requirements shall be borne by JAZ.

4.    Hotel usage.

   a.    SCHOGGEN understands that when it is operationally necessary for crewmembers to be housed in hotels, JAZ shall designate the hotel or hotels to be used. JAZ scheduling and HACS shall inform crewmembers of said selection.

   b.    SCHOGGEN understands that JAZ shall be responsible for obtaining reservations at designated hotels and shall be responsible to pay for hotel costs, i.e.

room and taxes, and fees. Crewmembers shall be responsible for incidental costs and shall insure separate payment for such expenditures.

5.      Per Diem Payments.

      a.     Per diem payments for crewmembers serving JAZ away from domicile shall be in accordance with effective JAZ standards. (Current standards set forth APP. .Table).

      b.     Per diem will be paid by JAZ, accounted for and disbursed by HACS.

6.      Deadhead Provisions.

      a.     SCHOGGEN understands he is required to deadhead for purposes of supporting JAZ flight operations or otherwise, he shall be given aircraft seating as follows:

         i.     On JAZ aircraft, Y class, positive space.

         ii.     On all other carriers, if available, C-class, positive space.

         iii.     If, C class is not available, Y class, positive space shall be provided.

7.      Sick Leave Policy.

      a. SCHOGGEN understands in the event that he becomes ill and cannot perform flight duties, or if he becomes injured or otherwise physically disabled, he shall notify HACS operations immediately. He shall immediately thereafter notify JAZ schedulers of his condition.

      b.     Sick leave pay approval shall be subject to approval by JAZ.

      c.     As soon as able, crewmembers shall advise JAZ schedulers and HACS that he is able to return to flight duty.

      d.     Any sick leave in excess of two days will require submission of a physician's statement outlining the illness suffered and an assurance that the crewmember is now fit for flight duty.

      e.     In the event sick leave is in excess of thirty (30) days, a statement shall be submitted by the physician once each thirty (30) days, indicating the crewmember's current health status, i.e., fit to fly, grounded, etc.

      f.     No sick leave shall be approved for more than two (2) days if a physician's statement is not furnished to HACS. Cost of the physicians statement shall be borne by

crewmember.

g.    If no physicians's statement is submitted by a crewmember, he will be charged for the lost time by having said unapproved absence charged against his accrued vacation.

h.    If a crewmember has no accrued vacation credit he shall be deemed to have taken unauthorized leave. In this event crewmember will be denied pay for the unauthorized absence, e.g. Pay is based on 30 day months. If sick three days out of 30 days, pay is reduced by 10%. 10% times (monthly salary) $4,739.20 = $473.92 (Monthly salary) $4,739.20 - (10%) $473.92 = $4,265.28.

i.    Sick leave will be accrued at the rate of one and one- half days per month. Maximum accumulation shall be thirty-six days.

j.    If a crewmember has unused sick leave at the termination of the contract period, that sick leave shall not be paid to HACS by JAZ.

k.    If crewmember has unused sick leave at termination of contract period and is chosen by HACS and JAL to sign a subsequent contract, such crewmember shall be allowed to be credited with the unused sick leave at the commencement of the subsequent contract period.

8.    Vacation Provision.

a.    SCHOGGEN understands that vacation will be accrued at the rate of twenty (20) days per fiscal year.

b.    Crewmembers may elect to carry over vacation to the following fiscal year for a maximum of forty (40) days per year.

c.    If a crewmember is allowed to take vacation during the initial assignment period, such vacation will be based on the proration noted above, i.e. 20 days per fiscal year.

d.    Unused vacation credit shall be paid to crewmember by JAZ upon termination of each contract period.

9.    Missing Appendices, severability.

a.    SCHOGGEN understands that if this agreement does not have the appendices denominated or if the appendices indicate "correction needed" or the like, that the agreement is still binding upon the both parties. If a missing or later corrected appendix causes a contractual defect, that defective portion and the results issuing there from shall be considered severed. The unsevered portion of the contract shall be

3

HAWAII AVIATION CONTRACT SERVICES, INC.

By: _____
JOHN S. CARROLL
President

Date of Execution: __1/29/93__

By: _____
BRUCE GUY SCHOGGEN

Date of Execution: _January 27, 1993_

4

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 1 7 2005

at 3 o'clock and 40 min. P
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BRUCE G. SCHOGGEN,                )        CV NO. 04-00707 DAE LEK
                                  )
        Plaintiff,                )
                                  )
    vs.                           )
                                  )
HAWAII AVIATION CONTRACT          )
SERVICES; JAPAN AIRLINES;         )
JALWAYS CO., LTD., a subsidiary   )
of Japan Airlines; and DOES 1-10, )
                                  )
        Defendants.               )
                                  )
_____    )

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL ARBITRATION; DISMISSING THE CASE WITHOUT
PREJUDICE; AND DENYING ALL PENDING MOTIONS AS MOOT

The Court heard Plaintiff's Motion on March 30, 2005. David

Simons, Esq., appeared at the hearing on behalf of Plaintiff; Carl Osaki, Esq.,

appeared at the hearing on behalf of Defendant Hawaii Aviation Contract

Services, Inc.; Joseph Kotowski appeared at the hearing on behalf of Defendants

Japan Airlines and Jalways Co., Ltd.. After reviewing the motion and the

supporting and opposing memoranda, the Court GRANTS Plaintiff's Motion to

Compel Arbitration; DISMISSES WITHOUT PREJUDICE the case; and DENIES

all pending motions as moot.

EXHIBIT 2

## BACKGROUND

On January 27, 1993, Plaintiff Bruce Schoggen ("Plaintiff") and Defendant Hawaii Aviation Contract Services ("HACS") signed a "Pilot Contract" employing Plaintiff as a DC-10 pilot. Plaintiff was subsequently discharged from his employment with HACS, which he claims was done wrongfully. For purposes of the present motion, the only relevant issue is whether the arbitration clause contained in the employment contract that Plaintiff entered into with HACS requires compliance.

Plaintiff filed his Complaint on December 2, 2004. In Count V of his Complaint, Plaintiff alleges a claim for breach of contract based on his employment contract with HACS. The employment contract states in relevant part:

> In the event of any dispute between the parties hereto the dispute shall be submitted to the American Arbitration Association and decided by a neutral binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitrator shall construe this agreement and the rights of the parties hereunder in accordance with the laws of the State of Hawaii, USA.... This is the sole legal remedy SCHOGGEN and HACS shall have with respect to any disputes arising from this agreement.

Plaintiff's Motion, Exhibit 4.

2

In addition, the contract's choice of law provision provides that "[u]nless otherwise required by clear definitions of conflicts of law, the choice of law for any dispute arising from this AGREEMENT shall be the law of the State of Hawaii and, if applicable, the law of the United States of America. Id.

On February 17, 2005, HACS filed its Answer which included as its "Tenth Defense" that, "[t]he action should be stayed because there are issues within the action which are referable to arbitration." Plaintiff's Motion, Exhibit 1.

In mid-February Plaintiff obtained new counsel in this matter. Plaintiff's previous counsel disputed the applicability of the arbitration clause and indicated on numerous occasions that Plaintiff would be pursuing the civil action in this case as was his right. However, Plaintiff's present counsel is in agreement with the application of the clause, immediately informed opposing counsel of his position, and requests that the Court enforce it. HACS, which originally supported arbitration as indicated in its Answer, now contends that Plaintiff has waived his right to arbitrate under the employment contract and wishes to proceed with the matter before this Court.

Defendants Japan Airlines ("JAL") and Jalways, Co., Ltd. ("Jalways") (collectively "JAL Defendants") do not take any position on the

3

Motion to Compel Arbitration, but do oppose the Motion for Stay of Proceedings
pending arbitration.

DISCUSSION

It is undisputed by the parties at this point that a valid and
enforceable arbitration agreement was created according to the express terms of
the employment contract.  The parties do dispute, however, whether Plaintiff
waived his right to arbitrate under the employment contract upon declining to
arbitrate the matter at the outset of the dispute as requested by HACS and instead
pursuing the suit before this Court.

<u>Waiver of Right to Arbitrate</u>

HACS contends that Plaintiff's refusal to arbitrate at the outset of the
case and his decision to pursue the matter in court instead, constituted a valid
waiver of his right to arbitrate under the employment contract.  Specifically,
HACS asserts that the continued refusal to arbitrate by Plaintiff's previous counsel
constituted a valid waiver and any subsequent acts by Plaintiff's current counsel is
of no effect.

The statutory duty of the court to determine arbitrability of certain
issues exists whether or not the party has sought arbitration and continues until the
court decides that no issue is referable to arbitration, or, if at least one issue is

4

referable, arbitration is completed, or all relevant parties have waived their rights to arbitration. See Rainbow Chevrolet, Inc. v. Asahi Jyunken (USA), Inc., 78 Haw. 107 (1995). A party may waive its right to arbitration by (1) failing to assert its right, or (2) taking actions that are completely inconsistent with any reliance thereon. See Shimote v. Vincent, 80 Haw. 96 (1995).

The acts of Plaintiff's previous counsel were not sufficiently inconsistent with Plaintiff's right to arbitrate, constituting a valid waiver under Hawaii case law. The court in Shimote held that plaintiffs had waived their right to arbitration by actively litigating the case for over six years. Id. That is a far cry from the case presently before this Court. Discovery has not yet commenced in this case and at the time that the present motion was filed, HCAS had not filed anything more beyond its Answer and an Amended Answer. Moreover, Plaintiff's current counsel indicated that he was interested in arbitration immediately upon being retained as Plaintiff's counsel. Therefore, the Court finds that Plaintiff has not waived his right to arbitrate and GRANTS Plaintiff's Motion to Compel Arbitration.

### Stay of Proceedings

Plaintiff also requests that, in the interest of judicial economy, this Court stay all proceedings before it pending the outcome of the arbitration on the

chance that any issues are left unresolved by those proceedings. The Court refuses

to do so. Rather, the Court DISMISSES WITHOUT PREJUDICE the case in light

of the arbitration proceedings. Should Plaintiff feel that issues still remain

following arbitration, he may file a new lawsuit with this Court at that point.

Furthermore, all pending motions in this case are hereby DENIED as moot.

### CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion

to Compel Arbitration; DISMISSES WITHOUT PREJUDICE the case; and

DENIES all pending motions as moot.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, MAY 1 7 2005 .

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

Bruce G. Schoggen v. Hawaii Aviation Contract Services, et al., CV NO. 04-
00707 DAE-LEK; ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
ARBITRATION; DISMISSING THE CASE WITHOUT PREJUDICE; AND
DENYING ALL PENDING MOTIONS AS MOOT

6

 **International Centre for Dispute Resolution**

Thomas Ventrone
Vice President

January 20, 2006

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

VIA ELECTRONIC MAIL ONLY

David Simons, Esq.
The Law Offices of David F. Simons
707 Richards Street
Penthouse One, Ocean View Center
Honolulu, HI 96813-4623

Carl H. Osaki, Esq.
900 Fort Street
Pioneer Plaza
Suite 1510
Honolulu, HI 96813

Re: 50 160 T 00266 05
    Bruce Schoggen
    vs
    Hawaii Aviation Contract Services

Dear Counsel:

We are writing this letter to inform the Parties that the ICDR has appointed Hon. E. John McConnell to hear the above-captioned matter. Enclosed please find copies of the arbitrator's duly executed Notice of Appointment and Notice of Compensation Arrangements. Please refer to the Notice of Compensation Arrangements for the specific rates of the arbitrator. Per our rules, all arbitrators are neutrals, unless otherwise agreed by the parties in the situation of party appointed arbitrators

Compensation to the arbitrator represents an independent obligation of the parties, and it is understood that the AAA has no liability, direct or indirect, for such payment. Each party shall promptly deposit in advance with the ICDR such sums of money as required by the administrator to defray the costs of the neutral fees. Compensation incurred will be deducted from deposits on hand, if any.

Upon request, checks are to be made payable to the American Arbitration Association and submitted to the case manager. You may also view case financial information, as well as make payments with a credit card online via AAA's WebFile.

Arbitrator McConnell has made a disclosure, as detailed on the enclosed Notice of Appointment and attachment. Please advise the Association of any objections to the appointment of Arbitrator McConnell **by close of business January 27, 2006**, copying the other side. The arbitrator shall not be copied on any comments related to the disclosure.

If any objections to this arbitrator's appointment are raised, the other party may respond within five business days. The ICDR will make a determination regarding the arbitrator's continued service in accordance with the Rules.

*A Division of the American Arbitration Association*

**EXHIBIT  3**

This letter will also serve to confirm that a Preliminary Hearing will be scheduled shortly. The Parties and the arbitrator are requested to advise of their conference call availability for the week beginning February 6, 2006 and the week of February 13, 2006 **by close of business January 27, 2006**.

We have enclosed invoices for the preliminary hearing. These invoices reflect an estimated amount of **eight (8)** hours of arbitrators' compensation, including study and preliminary hearing time. Please process the invoices and remit payment to the ICDR **by February 3, 2006**. Failure to submit payment by said date may result in the Arbitrator suspending the hearing. Please note that you may receive duplicate invoices since invoices are also generated automatically every 30-days from our central accounting department.

This is a proposed agenda of the Preliminary Hearing. Please note the following items are primarily for scheduling purposes and to structure the arbitration:

1. Brief presentation by the parties of claim and counterclaim, if any, to disclose the complexity and magnitude of the matter;

2. Discussion of the parties' preparation of a stipulation of uncontested facts;

3. Discussion regarding the need for the exchange of information and documents as well as further written statements and/or briefs;

4. Discussion regarding the form of the award, including confirmation if a reasoned award is requested; and

5. Discussion regarding any additional necessary items.

In certain cases the parties may also be in a position to discuss the following matters:

6. Arrangements for the advance filing of exhibits. The parties are encouraged to agree upon and submit a consolidated set of joint exhibits. Each party shall also exchange and submit one set of exhibits to the tribunal with a cover letter to the ICDR confirming exhibits sent to the Arbitrator, by on or before the date set by the tribunal;

7. Discussion regarding the list of witnesses and the nature of their testimony;

8. Discussion regarding the estimated length and scheduling of hearing;

9. Discussion regarding the necessity of a court reporter and / or a language translator;

At the conclusion of the preliminary hearing, the parties' representatives and the Case Manager will discuss the AAA's billing and deposit practices with regard to covering the arbitrator's anticipated fees and expenses for the entire proceeding. These deposits are typically due thirty days prior to the evidentiary hearings, but this may vary depending on the schedule specific to this case. We ask that the representatives discuss this with their clients prior to the conference so that any questions they may have can be addressed.

Please note that following the preliminary hearing the Arbitrator or the Panel will issue a procedural order with regard to scheduling, submission and all remaining issues.

Each party should be responsible for updating its disclosures as such information become available. The duty to update this information continues up to and including the date of the hearing.

There shall be no direct telephone contact with the Arbitrator. Please note that any challenges or financial matters must be exclusively submitted to the case manager.

As a reminder, cases may be viewed and managed online through AAA's WebFile.

Sincerely,


Jennifer Barcenes
ICDR Supervisor
212 484 4172
Barcenesj@adr.org

cc:    Hon. E. John McConnell  (w/o  enclosures)



NOV. 13. 2006 4:50PM    AMERICAN ARBITRATION ASSOCIATION    808-242-461NO. 8339    P. 2/6.1

E JOHN McCONNELL
33 N. Market Street, Suite 200
Wailuku, Hawaii 96793
Telephone:  (808) 244-6531
Facsimile:  (808) 242-4610

Arbitrator

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

STATE OF NEW YORK

BRUCE G. SCHOGGEN,

        Claimant,

vs.

HAWAII AVIATION CONTRACT
SERVICES, INC.,

        Respondent.

CASE NO. 50-160-T-00266-05

PARTIAL FINAL AWARD OF
ARBITRATOR

## PARTIAL FINAL AWARD OF ARBITRATOR

The undersigned Arbitrator was duly selected to conduct a final and binding arbitration of a dispute between Claimant Bruce G. Schoggen ("Claimant") and Respondent Hawaii Aviation Contract Services, Inc., ("Respondent" or "HACS") arising out of Claimant's termination by Respondent on or about September 8, 2004. An arbitration hearing was held on September 26 and 27, 2006. David F. Simons, Esq., appeared for Claimant. Carl H. Osaki, Esq., appeared for Respondent. Each party was afforded a full and complete opportunity to call and examine witnesses and to offer evidence. Having carefully

1

**EXHIBIT 4**

NOV. 13. 2006  4:51PM    AMERICAN ARBITRATION ASSOCIATION  808-242-46 NO. 8339    P. 3/6.2

considered the totality of the evidence in light of the claims and contentions of each of the parties, and being fully apprised, the undersigned Arbitrator hereby FINDS, CONCLUDES and AWARDS as follows:

I.    <u>LIABILITY</u>

1.    The Arbitrator agrees with Claimant that a preponderance of the credible evidence establishes that Respondent's termination constituted a breach of his auto-renewable five-year employment contract.  It is undisputed that Claimant at all relevant times suffered from no heart disease and was perfectly healthy.  HACS asserts that it had no role in Claimant's failure to receive JCAB Medical authorization to fly after age sixty. (Claimant reached 60 on August 14, 2004.)  HACS admits, however, that it was aware of Claimant's problem.  In the Arbitrator's view, HACS breached the contract in at least two respects.

First, Respondent failed to keep the contract in force until Claimant's sick leave ran out.  This would have been consistent with past practice and would have enabled Claimant to obtain a waiver.  Indeed, Section 4.61 of the contract between Respondent and JALWAYS provides that termination in these circumstances shall be "effective on the date his accrued sick leave credit and any applicable leave of absence ("LOA") are expended."  The termination of

2

NOV. 13. 2006  4:51PM    AMERICAN ARBITRATION ASSOCIATION  808-242-46 NO. 8339    P. 4/6.3

Claimant before his sick leave ended and then, a month later, offering a waiver if he would sign a one-year contract demonstrates that Respondent's intent was to force Claimant to give up his auto-renewable contract and accept a one-year contract.    Claimant's right to automatic renewal, however, is unambiguously set worth in plain language in his employment contract.

Second, Respondent's assertion that a change in the JCAB rules effective September 1, 2004 allowed a waiver for the first time so that an angiogram could be considered ignored the fact that the new rules did not apply to Claimant, as he had not been on a waiver prior to age 60. Moreover, even if the rules did apply, it was Respondent's implied duty under the contract to keep abreast of rule changes and inform Claimant.    Respondent's assertion that the rule change caused its position to change between September 9, 2004 and October 6, 2004 when the one-year contract was offered, evidences an intent was to force Claimant to relinquish his right to automatic renewal set forth in the contract.    Its economic reasons for doing so are understandable.  Claimant was a DC-10 pilot.  DC-10s were being retired.  A one-year contract would provide Respondent the option of avoiding expensive and time-

3

consuming retraining on 747 aircraft for a pilot over 60 with a maximum of five years left in his career.

II.  REMEDY and AWARD

    1.    Award is entered in favor of Claimant Bruce G. Schoggen and against Respondent Hawaii Aviation Contract Services, Inc., in the amount of $197,667.00.  This amount is based on the minimum amount Claimant asserts is awardable (first officer pay from September 8, 2004 to the present (27 months x $7,321.00).

    2.    The Arbitrator directs Respondent Hawaii Aviation Contract Services, Inc., to make a good faith effort to have Claimant certified to fly by the JCAB and be reassigned to fly for JAL.    The Arbitrator retains jurisdiction to enforce this provision.  In the event that it is determined that Respondent has failed to make such effort, the Arbitrator will consider a claim of forward pay to age 65.

    3.    The Arbitrator further retains jurisdiction for the purpose of determining the amount, if any, of attorney's fees which should be awarded Claimant as the prevailing party.   Attorney fees will be awarded, if at all, in accordance with Hawaii Revised Statutes Section 607-14.  Within 15 days of service of this Partial Final

4

NOV. 13. 2006   4:51PM      AMERICAN ARBITRATION ASSOCIATION   808-242-48 NO. 8339   P. 6/6.5

Award Claimant's counsel may submit a memorandum and affidavit in support of fees. Within 15 days thereafter Respondent's counsel may submit its response. Within 15 days of the Response a Final Award of Arbitrator will be issued.

3. Except as otherwise provided herein, all claims submitted to arbitration are DENIED.

I hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Wailuku, Hawaii.


13 November 2006                                    E. John McConnell
_____              _____
        Date


State of            }
                    }  SS:
County of           }


I, E. John McConnell, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.


13 November 2006                                    E. John McConnell
_____              _____
        Date


5

E JOHN McCONNELL
33 N. Market Street, Suite 200
Wailuku, Hawaii 96793
Telephone:  (808) 244-6531
Facsimile:  (808) 242-4610

Arbitrator

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

STATE OF NEW YORK

| | |
|---|---|
| BRUCE G. SCHOGGEN, | CASE NO. 50-160-T-00266-05 |
| Claimant, | SECOND PARTIAL FINAL AWARD OF ARBITRATOR |
| vs. | |
| HAWAII AVIATION CONTRACT SERVICES, INC., | |
| Respondent. | |

## SECOND PARTIAL FINAL AWARD OF ARBITRATOR

On November 13, 2006 the undersigned Arbitrator issued a Partial Final Award of Arbitrator herein reserving jurisdiction for the sole purposes of:  (1) determining the amount, if any, of attorney's fees which should be awarded Claimant as the prevailing party; and (2) enforcing paragraph II.2 of the Partial Final Award which required Respondent Hawaii Aviation Contract Services, Inc., "to make a good faith effort to have Claimant certified to fly by the JCAB and be reassigned to fly for JAL".  On November 28, 2006 Claimant's counsel submitted his Request for Attorney's Fees.  On December 13, 2006 counsel for HACS

1

**EXHIBIT 5**

submitted "Respondent's Memorandum in Opposition to Claimant Bruce G. Schoggen's Request for Attorneys' Fees Dated November 28, 2006." The parties agreed the deadline for issuance of the Final Award of Arbitrator be extended to January 11, 2007. On January 2, 2007, Claimant submitted his Motion for Front Pay Award seeking to enforce Paragraph II.2 of the Partial Final Award issued November 28, 2006.

Having carefully considered the parties' submissions and being fully apprised, the undersigned Arbitrator hereby FINDS, CONCLUDES and AWARDS as follows:

1.   The Partial Final Award of Arbitrator issued on November 13, 2006 is incorporated herein by reference as if fully set forth.

2.   Attorneys fees in the amount of $51,475.45 (including general excise taxes) are awarded in favor of Claimant Bruce Schoggen and against Respondent Hawaii Aviation Contract Services, Inc. pursuant to HRS Section 607-14.

3.   The Arbitrator again retains jurisdiction for the purpose of determining ICDR fees and Arbitrator's compensation and expenses and Claimant's motion and awarding any attorney's fees with respect thereto.

2

4.    Since no award or order is made at this time with respect to Claimant's Motion for Front Pay Award dated January 2, 2007, Respondent HACS may submit a response thereto including any request for further hearing not later than January 22, 2007.

SO ORDERED this ___10th___ day of January, 2007.

I hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Wailuku, Hawaii.

January 10, 2007
Date
           E. John McConnell

State of         }   SS:

County of

I, E. John McConnell, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

January 10, 2007
Date
           E. John McConnell

3

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

In the Matter of the Arbitration between:

Re: 50 160 T 00266 05

Bruce Schoggen,

    Claimant

      vs

Hawaii Aviation Contract Services, Inc.,

    Respondent

## FINAL AWARD OF ARBITRATOR

On January 10, 2007, the undersigned Arbitrator issued a Second Partial Final Award herein reserving jurisdiction solely for the purpose of determining Claimant's Motion for Front Pay Award submitted on January 2, 2007 and awarding attorney's fees, if any, with respect thereto.  On February 7, 2007 Respondent submitted a Motion for Instructions essentially asserting that it had exercised good faith to comply with the Arbitrator's order that it make "a good faith effort to have Claimant certified to fly by the JCAB and be reassigned to fly for JAL."  No further submissions have been made and neither party has requested a further hearing.

1

EXHIBIT 6

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated **January 27, 1993**, having been duly sworn, and having duly heard the proofs and allegations of the Parties, having carefully considered the submissions of the parties, and being fully apprised, hereby, FINDS, CONCLUDES and AWARDS as follows:

1. The Partial Final Award of Arbitrator issued on November 13, 2006 and the Second Partial Final Award issued herein on January 10, 2007 are incorporated herein by reference as if fully set forth.

2. The Arbitrator being satisfied that the existing record fails to establish a violation of the good faith requirement set forth in Paragraph II 2 of the Partial Final Award, hereby DENIES Claimant's Motion for Front Pay Award and further DENIES Respondent's Motion for Instructions.

3. The administrative Fees and Expenses of the International Centre for Dispute Resolution ("ICDR") totaling ONE THOUSAND THREE HUNDRED FIFTY DOLLARS AND ZERO CENTS ($1,350.00) shall be borne entirely by Respondent. Therefore, Respondent shall reimburse Claimant the sum of ONE HUNDRED TWENTY FIVE DOLLARS AND ZERO CENTS ($125.00),

2

representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

4.    The compensation and expenses of the Arbitrator totaling FIVE THOUSAND FIVE HUNDRED FOURTY-FOUR DOLLARS AND SIXTY-FIVE CENTS ($5,544.65) shall be borne entirely by Respondent.

5.    This award is in full settlement of all claims and counterclaims submitted to this Arbitration.


I hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Wailuku, HI.

March 5, 2007
Date

Hon. E. John McConnell


State of          }
                  }    SS:
County of         }

I, Hon. E. John McConnell, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.


March 5, 2007
Date

Hon. E. John McConnell

3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

BRUCE G. SCHOGGEN,                    S.P. No.

                    Petitioner,

                                      CERTIFICATE OF SERVICE

        vs.

HAWAII AVIATION CONTRACT
SERVICES; JAPAN AIRLINES;
JALWAYS CO., LTD., a subsidiary of
Japan Airlines; and DOES 1-10.

                    Respondents.

## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a copy of the foregoing document will

be duly served on the following at the address listed below by hand delivery on

March 20, 2007.

TO:        Carl H. Osaki, Esq.
           Pioneer Plaza, Suite 1510
           900 Fort Street
           Honolulu, Hawaii 96813

           Attorneys for Respondent
           HAWAII AVIATION CONTRACT SERVICES

           Andrew L. Pepper, Esq.
           American Savings Bank Tower
           1001 Bishop Street, Ste. 2200
           Honolulu, Hawaii 96813

           Attorney for Respondent
           JAL &JALWAYS CO.

DATED: Honolulu, Hawaii, _____ March 20, 2007 _____.

_____

DAVID F. SIMONS
Attorney for Petitioner
BRUCE G. SCHOGGEN

2