CARL H. OSAKI  4008-0
Attorney At Law, A Law Corporation
Pioneer Plaza, Suite 1510
900 Fort Street
Honolulu, Hawaii  96813
Telephone:  (808) 528-4666

Attorney for Defendant
HAWAII AVIATION CONTRACT
SERVICES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARTIN VENTRESS and JACK CRAWFORD,<br><br>Plaintiffs,<br><br>vs.<br><br>JAPAN AIRLINES; JALWAYS CO., LTD., a subsidiary of Japan Airlines; HAWAII AVIATION CONTRACT SERVICES, INC.; and DOES 1-10,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. CV 03-451  SPK-LEK<br><br>DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S REPLY TO PLAINTIFF JACK CRAWFORD'S OPPOSITION TO DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S MOTION TO COMPEL ARBITRATION PURSUANT TO THE TERMS OF AN AGREEMENT BETWEEN PLAINTIFF JACK CRAWFORD AND DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC., FILED DECEMBER 29, 2006 (FILED APRIL 2, 2007); AFFIDAVIT OF CARL H. OSAKI; CERTIFICATE OF SERVICE<br><br>DATE:    May 8, 2007<br>TIME:    9:00 a.m.<br>JUDGE:   Leslie E. Kobayashi |

DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S
REPLY TO PLAINTIFF JACK CRAWFORD'S OPPOSITION TO
DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S
MOTION TO COMPEL ARBITRATION PURSUANT TO THE TERMS
OF AN AGREEMENT BETWEEN PLAINTIFF JACK CRAWFORD
AND DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.,
FILED DECEMBER 29, 2006 (FILED APRIL 2, 2007)

I.    INTRODUCTION

Defendant Hawaii Aviation Contract Services, Inc.
("HACS") replies to Plaintiff Jack Crawford's Opposition To
Defendant Hawaii Aviation Contract Services, Inc.'s
Motion To Compel Arbitration Pursuant To The Terms
Of An Agreement Between Plaintiff Jack Crawford
And Defendant Hawaii Aviation Contract Services, Inc., Filed
December 29, 2006 (filed April 2, 2007) ("Opposition").  The
Opposition misapprehends the issue underlying HACS' motion to
compel arbitration under the administration of Dispute Prevention
& Prevention ("DPR") and the law pertaining to that issue.

The issue is whether Plaintiff Jack Crawford
("Plaintiff") can ignore his own agreement to arbitrate under the
administration of DPR and unilaterally change his mind and
initiate an arbitration before the American Arbitration
Association ("AAA").  The simple answer is that he cannot.

II.   ARGUMENTS

A.    Plaintiff's "Preemption" Argument Is Without Merit And
      Frivolous

Plaintiff argues that the Federal Arbitration Act
("FAA") preempts state law, as if somehow that means that the AAA
is the correct forum.  Plaintiff is talking about apples and
oranges.

Whether or not the FAA controls the substantive law of arbitration over this matter, the FAA simply does not relate to the forum, which remains a matter of contract. Nowhere in the FAA does it dictate the "where" of an arbitration. Nowhere in the FAA does it mandate -- <u>or even suggest</u>, for that matter -- the AAA as the forum of <u>any</u> arbitration. Simply put, the FAA does not even <u>mention</u> the AAA. It would be very surprising indeed for a federal statute to favor one private company over any other, as Plaintiff suggests.

Rather, the FAA includes provisions for the selection of an arbitrator, <u>see</u> 9 U.S.C. § 5, should the contractual arbitration provision be silent on those issues. If the FAA truly dictated that arbitrations under it would be administered by the AAA, then is would be superfluous for the statute to provide for procedures that AAA rules already contain.

Thus, it is one thing to say that the FAA preempts state law; it is something else entirely to then somehow equate that to the proposition that DPR is precluded as an arbitration forum just because it is a Hawaii corporation. The AAA itself is a non-profit organization, so to "graft" the AAA onto the FAA is remarkably bizarre.

No matter what substantive law governs this arbitration, and whether it be the FAA or the Hawaii Arbitration Act, that issue is irrelevant to the motion, and does not bear on the forum under which Plaintiff agreed to conduct this arbitration; that is, DPR.

2

B.   Whether Mr. Keith Hunter May Or May Not Be Neutral Is Totally Irrelevant To The Issue Of Whether Plaintiff Can Unilaterally Renege On His Agreement To Arbitrate Under The Administration Of DPR, And Positing That Argument Here Is Frivolous

Charles Brower, Esq., Plaintiff's third-former-attorney at least,[1] agreed to the selection of Mr. Keith Hunter ("Hunter") as the DPR arbitrator in this matter.

Now, Plaintiff's fourth *attorney* complains that Hunter, **the arbitrator selected by Plaintiff through Mr. Brower**, is not neutral.  He makes this complaint on the basis of past decisions made by Hunter in unrelated matters in which Plaintiff's attorney (but not Plaintiff) was involved.   Whether or not Hunter may or may not be neutral in this matter, however, is not germane to the issue of Plaintiff's own agreement to select DPR as the arbitration forum.

First, the identity of the DPR arbitrator is not for this Court to decide.  Assuming arguendo — *and only for the sake of argument* – that Hunter is not impartial as to HACS and Plaintiff, then that issue would be a matter for a post-arbitration motion to vacate.

Second, Plaintiff presents absolutely no evidence that Hunter is not neutral in this matter.  Plaintiff's attorney fills his pleading with complaints that he has about Hunter.  However, those complaints are personal ones, not involving Plaintiff, and even Plaintiff's counsel fails to demonstrate even one instance

_____

[1]Plaintiff previously has been represented in this action by Martin Cervantes, Esq., Eric Seitz, Esq. and Ms. Venetia Carpenter-Asui.

3

where an arbitration decision by Hunter was vacated because of an allegation of partiality brought by Plaintiff's attorney in *any* case.  The only thing in the record is Plaintiff's attorney's own dissatisfaction with decisions made in other matters by Hunter. It does not demonstrate a lack of impartiality in this matter. Indeed, if every decision an attorney did not personally like rendered an arbitrator "partial," then the vacatur of arbitration awards would be legion.

Third, Plaintiff's attorney's apparent willingness to display his own dislike of Hunter's past, and unrelated, decision-making on the record, may influence Hunter's decision about whether to continue as the DPR arbitrator in this matter. It does not, however, provide grounds to nullify Plaintiff's own agreement to arbitrate under the forum of DPR.  DPR has many available arbitrators beside Hunter.  Thus, the identity of Hunter as the already agreed-upon DPR arbitrator is a non-starter regarding the issue of this arbitration's forum.

    C.    Plaintiff's Argument Regarding Adhesion And
              Unconscionability Are Factually Wrong And Frivolous

No one forced Plaintiff to agree to DPR as the arbitration forum.  No one gave Plaintiff no choice but to agree to DPR as the arbitration forum.  Rather, the undisputed fact is that Plaintiff had a choice.  More than that, Plaintiff had the benefit of legal counsel and his legal advice regarding that choice.  Even more than that, with the benefit of an attorney's advice, Plaintiff himself signed the DPR arbitration agreement. Furthermore, he then participated in the DPR arbitration for

4

almost two years.  How in the world can Plaintiff muster the
gumption to argue with a straight face now that the DPR
arbitration agreement was one of adhesion?  It is a patently
frivolous argument.

Likewise, Plaintiff's free exercise of his choice
between DPR and AAA, made with the benefit of legal guidance and
advice, renders his unconscionability argument defective and
misplaced.  If Plaintiff has a present problem with the legal
advice his own attorney gave or did not give him, then his issue
is with his former attorney.  His own former attorney agreed to
the $8,000 deposit.  Of course, his attorney acts on his behalf;
in other words, Plaintiff agreed to the $8,000 deposit.

Even on its face, and without regard to Plaintiff's
agreement to the DPR deposit, that deposit is not unconscionable.
For example, when Plaintiff signed the agreement that contains
the arbitration clause in 1992, see Opposition, at its Exhibit
3A, it provided for the application of the AAA commercial rules
in any arbitration.  There was no AAA employment rules in
existence at that time.  See Opposition, at its Exhibit 24(AAA
employment rules were promulgated in 1996).  Plaintiff's intent
in signing the contract with the arbitration clause was to abide
by the commercial rules.  When Plaintiff was forced to arbitrate
(he initially filed his arbitrable claims in the Central District
of California in 2002), the AAA commercial rules provided for a
deposit of $8,000 for his claim.  If Plaintiff agreed to apply

the commercial rules, why should an identical deposit now be unconscionable?

      Furthermore, as Plaintiff recognizes, unconscionability requires both procedural and substantive unconscionability. Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170-1171 (9th Cir. 2003), cert. denied, 540 U.S. 1160 (2004) (applying California law, citing Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 783 (9th Cir. 2002). Procedural unconscionability requires an absence of meaningful choice. Id., at 1170 (citing A&M produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486, 186 Cal. Rptr. 114 (1982)). Here, Plaintiff had a clear choice. The stipulation to stay this action cited the arbitration agreement in the contract identifying AAA as the arbitration administrator. When the proposal arose to use DPR instead, Plaintiff could have declined. He presumably consulted with his attorney on the matter and, with legal advice, freely agreed to use DPR. How can Plaintiff possibly now say he had no choice?

      It is not substantively unconscionable either because the deposit is not unreasonably favorable to one side. Id. When agreeing to the original arbitration provision, Plaintiff agreed to a schedule of fees under the AAA commercial rules, which provided for an $8,000 deposit for a claim like his. See Opposition, at its Exhibit 25. Indeed, even the AAA employment rules have the commercial rules schedule of fees for individually negotiated contracts. Id., at its Exhibit 24. Furthermore, when

6

Plaintiff agreed to use DPR, he did so with the advice of his attorney.  There is no substantive unconscionability either, and Plaintiff needs both kinds to have any hopes of showing unconscionability.

D.    Plaintiff's Argument About Offensive Collateral
      Estoppel Is Meritless And Frivolous

Plaintiff argues that HACS should be collaterally estopped from moving to compel arbitration with DPR as the forum. The argument has no merit for the following reasons.

First, the reason why Plaintiff and HACS found themselves before DPR is because of a <u>mutual</u> agreement to use DPR as the arbitration forum.  Because of this basic underlying agreement, how can the doctrine of collateral estoppel even find application in the first instance?  Collateral estoppel exists as a legal doctrine to preclude re-litigation of issues already litigated and decided.  Here, there is an <u>agreement</u> to use DPR, not an adjudication.  Collateral estoppel could not apply in the first instance.

Second, the purported basis for the application of the doctrine also fails the test, even assuming there was an adjudication.  Plaintiff points to decisions by United States District Judge David A. Ezra and state judge Karen S.S. Ahn as the basis for collateral estoppel.  The issue before Judge Ezra, however, was whether the claimant in another case had waived the arbitration clause in his contract with HACS.  <u>See</u> Opposition, at its Exhibit 3.  Judge Ezra decided that he had not waived it. There is no issue here about "waiver" of an arbitration

7

provision.  Indeed, both parties here  agree that the arbitration clause has not been waived.

The issue before Judge Ahn was which set of AAA rules would apply over the arbitration in another case.  That issue is not even ripe in this case.  Even if it was, Judge Ahn did not decide that issue in any case, leaving it up to an arbitrator to decide.  See Opposition, at its Declaration of Shawn A. Luiz, at para. 10 (pointing out that Judge Ahn said that the matter of which set of arbitration rules would apply would be left to the arbitration process, and not the court).  This case involves a threshold issue of which private arbitration company will administer the arbitration.  Judge Ahn did not have that issue before her, and never did.

Either Plaintiff does not understand Judge Ezra and Judge Ahn's rulings, or Plaintiff is purposefully misrepresenting those rulings for purposes of a misplaced collateral estoppel argument.  Either way, the argument is factually and legally wrong.

F.    Plaintiff's Argument About Consideration Is Equally Meritless And Frivolous

Plaintiff and HACS mutually agreed to have DPR administer this arbitration in early 2005 in order to avoid having out-of-state administration by AAA.  Once the DPR arbitration agreement was fully executed by February 1, 2005, the parties proceeded to mutually progress with the DPR arbitration. Hunter had already been the mutually agreed upon arbitrator, and the parties filed their respective claims and counterclaims with

8

DPR. HACS made its arbitration deposit, and conducted discovery under DPR's administration and sought Plaintiff's deposition. It is patently frivolous to say that there was no consideration for the mutual agreement to have DPR administer this arbitration.

G.    Plaintiff's Argument About The AAA's Employment Rules Is Inapplicable And Frivolous

Plaintiff's present unilateral posture is not supported by the facts and the law. The DPR arbitration had been proceeding for almost two years under DPR's protocols. For all that time, Plaintiff never complained about those rules of administration and procedure.

Plaintiff's complaints now are based on what happened in an unrelated matter; involving a different claimant; a different forum; a different set of rules; and a different arbitrator. Plaintiff's original contract specifies the application of the AAA commercial rules, but both Plaintiff and HACS mutually agreed to apply DPR's protocols when they mutually agreed to have DPR administer their arbitration proceedings.

At the time of that agreement, which was consummated in February 2005, there was no arbitration involving anyone known to HACS or Plaintiff, anywhere, that ultimately involved the application of the AAA employment rules in an arbitration that originally applied the AAA commercial rules. For Plaintiff to now try to renege on his own agreement -- set forth in his own hand -- is like a mortgage loan borrower unilaterally trying to cancel his mortgage agreement a decade down the road because interest rates fortuitously moved in his favor in the interim,

9

all to the detriment of the lender and his original binding loan agreement.  No court would countenance such unilateral maneuvering.  No system premised on the sanctity of contract could withstand such an assault.

Plaintiff and HACS mutually agreed to arbitrate under the administration of DPR.  Plaintiff had legal counsel and advice for this decision.  Plaintiff himself executed the DPR agreements.  Plaintiff proceeded to arbitrate under the administration of DPR for almost two years.  Plaintiff's unilateral abandonment of his agreement is a material breach of that agreement.  Plaintiff should be compelled to perform as he has freely agreed.

III. CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in the motion to compel, HACS respectfully requests this Court to compel Plaintiff to arbitrate pursuant to the mutual agreement to have DPR administer the arbitration.

DATED:    Honolulu, Hawaii    APR. 1 9 2007    _____ .

_____
CARL H. OSAKI
Attorney for Defendant
HAWAII AVIATION CONTRACT
SERVICES, INC.