FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

MARTIN VENTRESS,
   *Plaintiff-Appellant,*
  and
JACK CRAWFORD,
   *Plaintiff,*
  v.
JAPAN AIRLINES; HAWAII AVIATION
CONTRACT SERVICES, INC.; DOES
1-10 INCLUSIVE; JALWAYS CO., LTD.,
a subsidiary of Japan Airlines,
   *Defendants-Appellees.*

</td><td>

No. 04-17353
D.C. No.
CV-03-00451-SPK

</td></tr>
<tr><td>

MARTIN VENTRESS,
   *Plaintiff,*
  and
JACK CRAWFORD,
   *Plaintiff-Appellant,*
  v.
JAPAN AIRLINES; HAWAII AVIATION
CONTRACT SERVICES, INC.; DOES
1-10 INCLUSIVE; JALWAYS CO., LTD.,
a subsidiary of Japan Airlines,
   *Defendants-Appellees.*

</td><td>

No. 05-15044
D.C. No.
CV-03-00451-SPK

</td></tr>
</table>

4524         VENTRESS v. JAPAN AIRLINES

Appeal from the United States District Court
for the District of Hawaii
Samuel P. King, Senior Judge, Presiding

MARTIN VENTRESS,
    *Plaintiff-Appellant,*

v.

HAWAII AVIATION CONTRACT
SERVICES, INC.,
    *Defendant-Appellee.*

No. 06-15904
D.C. No.
CV-03-00451-LEK
OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, Magistrate Judge, Presiding

Argued and Submitted
March 9, 2007—Pasadena, California

Filed April 24, 2007

Before: Alfred T. Goodwin, Robert R. Beezer, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Goodwin

## SUMMARY

### International Law/Treaties

The court of appeals affirmed a judgment of the district court in part, reversed in part, dismissed in part, and remanded. The court held that the United States-Japan Friendship, Commerce, and Navigation (FCN) Treaty does not preempt California's whistle blower protection laws.

Appellants Martin Ventress and Jack Crawford filed suit in district court in California against appellees including Japan Airlines (JAL) and Hawaii Aviation Contract Services, Inc. (HACS), which employed Ventress and Crawford to perform services for JAL flights. Ventress and Crawford alleged that JAL retaliated against them for reporting that JAL had required a seriously ill pilot to fly. Ventress and Crawford sought recovery under California law for violation of California's whistle blower statute, wrongful termination, and emotional distress. The district court granted JAL's motion to transfer the case to the District of Hawaii, explaining that nearly all the events giving rise to the complaint occurred in international air space or in Hawaii, Ventress and Crawford resided in Hawaii, and Hawaii was the more convenient forum for potential witnesses and for accessing HACS's personnel records. The Hawaii district court granted judgment on the pleadings for JAL on the ground that all of Ventress and Crawford's claims were preempted by the Japan FCN Treaty. In addition, the court ruled that the emotional distress claims failed as a matter of California law, even if they were not preempted. The court severed the claims against HACS and stayed further proceedings pending arbitration. After Ventress and HACS disputed the applicable arbitration rules, the court entered an order compelling arbitration under the commercial rules of the American Arbitration Association (AAA).

Ventress and Crawford appealed; Ventress separately challenged the order compelling arbitration of his claims.

[1] A treaty preempts inconsistent state law. Article VIII(1) of the Japan FCN Treaty provides that nationals and companies of either party shall be permitted to engage, within the territories of the other party, specialists "of their choice." [2] The extent to which the Japan FCN Treaty preempted state employment law was a question of first impression in the Ninth Circuit. The treaty was one among a series of FCN treaties with the United States. The purpose of the treaties was to assure foreign corporations the right to conduct business on

an equal basis without suffering discrimination based on their alienage. In addition, the treaties established certain non-contingent rules of treatment, which gave foreign employers a certain specified protection without regard to whether the same protection was provided to host country businesses.

[3] The "of their choice" clause of article VIII(1) is an example of a non-contingent rule that goes beyond assuring national treatment. Its purpose was to ensure the foreign company's ability to control its overseas investments without interference from local-hiring quotas. [4] Given the purpose and history of the FCN treaties, other circuits have consistently held that foreign employers do not enjoy immunity from domestic employment laws that do not interfere with the employers' ability to hire their fellow citizens. [5] It had to be held that the district court erred by construing article VIII(1) to confer on Japanese employers blanket immunity from state employment law. The main purpose of article VIII(1) is to guarantee the ability of each signatory's companies the ability to staff critical managerial and technical positions overseas with their fellow citizens. California's whistle-blower protection laws merely prevented JAL from retaliating against employees for reporting and resisting the employer's domestic law violations; the laws in no way conflicted with JAL's limited treaty right to discriminate in favor of Japanese citizens. In the absence of conflict, there can be no preemption. The judgment of the district court had to be reversed on this issue.

[6] For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. [7] The California district court explained its reasoning in detail in the transfer order. [8] The district court did not abuse its discretion in transferring the case to Hawaii. The judgment of the district court had to be affirmed on this issue.

[9] The district court's interlocutory order compelling arbitration of Ventress' claims against HACS under the AAA's

commercial rules was not appealable because the district court stayed the case pending arbitration. **[10]** Ventress' interlocutory appeal challenging the arbitration order had to be dismissed, and HACS was entitled to recover its costs from Ventress.

## COUNSEL

Martin Ventress, Pro Se, Houston, Texas, for the plaintiff-appellant; Charles H. Brower, Shawn A. Luiz, Honolulu, Hawaii, for plaintiff-appellant Crawford.

Andrew L. Pepper, Carlsmith Ball LLP, Honolulu, Hawaii, for defendants-appellees Japan Airlines & Jalways Co., Ltd. Carl H. Osaki, Honolulu, Hawaii, for defendant-appellee Hawaii Aviation Contract Services, Inc.

## OPINION

GOODWIN, Circuit Judge:

Martin Ventress, a flight engineer, and Jack Crawford, a commercial pilot (collectively, "plaintiffs"), sued Japan Airlines and other entities, making a number of claims. They appeal a judgment on the pleadings for Japan Airlines and its subsidiary Jalways Co., Ltd. (collectively, "JAL"). We have jurisdiction under 28 U.S.C. § 1291. We reverse.

Ventress separately challenges the district court's venue transfer order and an order compelling arbitration of his claims against Hawaii Aviation Contract Services, Inc. ("HACS"). We affirm the venue transfer and dismiss Ventress' appeal of the arbitration order.

## BACKGROUND

JAL is a Japanese commercial air carrier based in Tokyo. HACS, a Hawaii corporation with its principal place of busi-

ness in Honolulu, provides contract flight crews to JAL. Ventress and Crawford were employed by HACS to perform services for JAL flights. Plaintiffs' employment agreements with HACS contain mandatory arbitration provisions.

In December 2002, Ventress and Crawford jointly filed a complaint against JAL and HACS in the Central District of California. The complaint alleged that JAL required a seriously ill pilot to fly in June 2001, in violation of American and Japanese aviation laws as well as JAL's own operations manual. Crawford expressed his concern to a JAL official in Honolulu in July 2001. Afterward, he experienced harassment from his superiors, including repeated performance checks, questions and homework assignments. In December 2001, HACS informed Crawford that his assignment to JAL was cancelled because of unsatisfactory performance. That same month, Ventress submitted reports on the June incidents to JAL, HACS and aviation regulators. Ventress claimed repeated harassment from JAL thereafter, including demands to undergo psychiatric evaluations. Ventress has not been allowed to fly since September 2001. The complaint sought recovery for violation of California's whistle blower statute,[1] wrongful termination in violation of the public policy protecting whistle blowers[2] and emotional distress. All claims were brought under California law.

---

[1] "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal regulation." Cal. Labor Code § 1102.5(b).

[2] Among other statutes, the terminations allegedly violated the public policy expressed in 49 U.S.C. § 42121(a)(1), which prohibits air carriers from discriminating against any employee because the employee "provided, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration."

In July 2003, the California district court granted defendants' motion to transfer the case to the District of Hawaii. The district court explained that nearly all the events giving rise to the complaint occurred in international air space or in Hawaii, and that Hawaii was the more convenient forum for potential witnesses and for accessing HACS's personnel records. After the venue change, plaintiffs moved to amend the complaint to replace their California law claims with Hawaii law claims. A magistrate judge denied that motion, and plaintiffs appealed to the Hawaii district court.

In October 2004, the Hawaii district court granted judgment on the pleadings for JAL on the ground that all of plaintiffs' claims were preempted by the Friendship, Commerce, and Navigation Treaty, U.S.-Japan, April 2, 1953, 4 U.S.T. 2063 ("Japan FCN Treaty"). The court further held that the emotional distress claims failed as a matter of California law, even if they were not preempted. The court declined to rule on plaintiffs' appeal of the denial of leave to amend, saying that the issue was mooted by its decision on treaty preemption. The court then severed the claims against HACS and entered a stipulation and order staying further proceedings pending arbitration. After Ventress and HACS disputed the applicable arbitration rules, the court entered an order compelling arbitration under the commercial rules of the American Arbitration Association ("AAA").

Ventress and Crawford filed separate appeals from the judgement for JAL. Although Ventress and Crawford were represented by the same lawyer when they filed the complaint, Ventress now proceeds pro se. Ventress alone appeals the change of venue and the order placing arbitration under AAA commercial rules.

The consolidated appeals present three questions: (1) whether the Hawaii district court erred in ruling that the Japan FCN Treaty preempted plaintiffs' claims under California's

whistle blower protection laws,[3] (2) whether the California district court abused its discretion in transferring the case to Hawaii, and (3) whether the interlocutory order compelling arbitration is appealable.

## DISCUSSION

### A. Treaty Preemption

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper "when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). We review de novo a district court's grant of judgment on the pleadings. *Id.*

[1] A treaty preempts inconsistent state law. *United States v. Pink*, 315 U.S. 203, 230-31 (1942). Federal law must also be strictly construed to avoid conflict with treaty obligations. *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963). The district court premised its judgment on article VIII(1) of the Japan FCN Treaty, which provides:

> Nationals and companies of either Party shall be permitted to engage, within the territories of the other Party, accountants and other technical experts, executive personnel, attorneys, agents and other specialists *of their choice*. Moreover, such nationals and companies shall be permitted to engage accountants and other technical experts regardless of the extent to which they may have qualified for the practice of

---

[3]The district court held that the emotional distress claims failed as a matter of California law, and neither of the plaintiffs appeal that decision. Thus, we need not reach the question whether the Japan FCN Treaty also preempts the emotional distress claims.

> a profession within the territories of such other Party
> . . . .

(emphasis added). The district court reasoned that plaintiffs' claims were preempted because holding Japanese employers liable for violation of California employment law would conflict with the employers' treaty-conferred right to engage specialists "of their choice."[4]

[2] The extent to which the Japan FCN Treaty preempts state employment law is a question of first impression in our circuit. The treaty was one among a series of friendship, commerce, and navigation ("FCN") treaties the United States concluded with trading partners after World War II. *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185-86 (1982) ("*Sumitomo II*"). These treaties "define the treatment each country owes the nationals of the other; their rights to engage in business and other activities within the boundaries of the former; and the respect due them, their property and their enterprises." Herman Walker, Jr., *Modern Treaties of Friendship, Commerce and Navigation*, 42 Minn. L. Rev. 805, 806 (1958). "The purpose of the Treaties was not to give foreign corporations greater rights than domestic companies, but instead to assure them the right to conduct business on an equal basis without suffering discrimination based on their alienage." *Sumitomo II*, 457 U.S. at 187-88. "The Treaties accomplished their purpose by granting foreign corporations 'national treatment' in most respects." *Id.* at 188 (footnote omitted). National treatment entitles a foreign national to "carry on his chosen business under conditions of non-discrimination, and to enjoy the same legal opportunity to succeed and prosper on his merits as is allowed citizens of the country." *MacNamara v. Korean Air Lines*, 863 F.2d 1135,

---

[4]On appeal, Ventress argues for the first time that he was not a "specialist" within the meaning of article VIII(1). We do not address that argument because it was not raised below. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004).

1143 (3d Cir. 1988). Although national treatment was the "predominant standard," *id.*, it was not extended to all areas of commercial activity. "In certain areas treaty parties are unwilling to grant full national treatment; in those areas the parties frequently grant 'most-favored-nation treatment,' which means treatment no less favorable than that accorded to nationals or companies of any third country." *Sumitomo II*, 457 U.S. at 188 n.18. In addition, the treaties established certain non-contingent rules of treatment, which "gave foreign employers a certain specified protection without regard to whether the same protection was provided to host country businesses." *McNamara*, 863 F.2d at 1143.

[3] The "of their choice" clause of article VIII(1) is an example of a non-contingent rule that goes beyond assuring national treatment. *Cf.* at 1143-44 (interpreting the same provision in the Friendship, Commerce, and Navigation Treaty, U.S.-Korea, Nov. 28, 1956, 8 U.S.T. 2217). Its purpose was to ensure the foreign company's ability to control its overseas investments without interference from local-hiring quotas. As the Sixth Circuit has explained in the context of the Greece FCN treaty:

> The post-World War II Friendship, Commerce and Navigation treaties were negotiated in a period characterized by so-called "percentile" restrictions which required American companies operating abroad to hire a certain percentage of citizens of the host country. These restrictions were thought to have the effect of inhibiting American companies operating abroad from hiring the people in whom they had the greatest confidence. Similarly, a number of states had laws restricting or banning the employment of aliens by foreign companies doing business within the state. The legislative history of the post-war treaties suggests that both parties deemed the right to utilize the services of their own nationals in manage-

rial, technical, and confidential capacities to be critical.

*Wickes v. Olympic Airways*, 745 F.2d 363, 367 n.1 (6th Cir. 1984). The Fifth Circuit, examining the Japan FCN Treaty, has reached the same conclusion about the objective of article VIII. "The article VIII(1) right to free choice of technical and managerial personnel sought to ensure that the American businessman's investment in the host country would remain within his control." *Spiess v. C. Itoh & Co. (Am.), Inc.*, 643 F.2d 353, 361 (5th Cir. 1981), *rev'd on other grounds*, 457 U.S. 1128 (1982). "[T]he Senate, in consenting to ratification of the Treaty, was concerned about the right of American companies to use American personnel to control their investments in Japan." *Id.*

[4] Given the purpose and history of the FCN treaties, our sister circuits have consistently held that foreign employers do not enjoy immunity from domestic employment laws that do not interfere with the employers' ability to hire their fellow citizens. In *McNamara*, 863 F.2d 1135, the Third Circuit considered a provision in the Korea FCN treaty that is identical in language to article VIII(1). The plaintiff, having been terminated by his Korean employer and replaced by a Korean citizen, sought recovery for race, national origin and age discrimination. The employer argued that it enjoyed treaty conferred immunity from federal anti-discrimination statutes. The court disagreed. The court explained that the treaty's negotiating history "[wa]s barren of any suggestion that Article VIII(1) was intended to achieve anything other than the right to utilize one's own citizens in the capacities specified." *Id.* at 1145. Rather, the provision "was intended to confer no greater right than an employer's freedom to choose the nationality of its executive labor pool." *Id.* at 1146. If the provision conferred broad immunity from domestic employment laws, the drafters would not have specifically guaranteed the right to hire technical experts regardless of professional qualification requirements under local law. Such language would

4534                VENTRESS v. JAPAN AIRLINES

have been superfluous. *Id.* at 1145. Although the Korean employer had a treaty right to discriminate in favor of Korean citizens, the treaty afforded no immunity from liability for race, age and national origin discrimination.[5]

In *Wickes*, the Sixth Circuit had to decide whether the Greece FCN treaty preempted Michigan's employment discrimination laws. The court held that the "of their choice" clause in the treaty afforded only "a narrow privilege to discriminate in favor of Greek citizens." 745 F.2d at 368. Thus, the plaintiff's discrimination claims were viable because there was no conflict between the treaty right to hire Greek citizens and Michigan law's prohibition of discrimination on the basis of race, sex and national origin. *Id.*; *see also Fortino v. Quasar Co.*, 950 F.2d 389, 392-95 (7th Cir. 1991) (assuming that national origin discrimination claim could proceed against Japanese employer, and permitting age discrimination claim to proceed also); *Avigliano v. Sumitomo Shoji Am., Inc.*, 638 F.2d 552, 559 (2d Cir. 1981) ("Sumitomo I") (holding that Japan FCN Treaty did not bar national origin and sex discrimination claims brought under Title VII), *rev'd on other grounds*, 457 U.S. 176.

[5] We hold that the district court erred by construing article VIII(1) to confer on Japanese employers blanket immunity from state employment law. In the district court's view, JAL's immunity was sufficiently broad that judgment was appropriate even though the pleadings were silent on whether the plaintiffs were replaced by Japanese citizens. In other words, the district court believed that JAL has a treaty right to ignore domestic employment law even for personnel decisions that involved only non-Japanese citizens. Taken to its logical conclusion, such an expansive construction of article VIII(1)

---

[5]For purposes of Title VII, citizenship and national origin are distinct concepts. Title VII prohibits only national origin discrimination, not discrimination on the basis of citizenship. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).

VENTRESS v. JAPAN AIRLINES     4535

would lead to absurd results, such as exempting foreign employers from collective bargaining laws. *Sumitomo I*, 638 F.2d at 559. As the circuits that have addressed the question have uniformly found, the main purpose of article VIII(1) is to guarantee the ability of each signatory's companies the ability to staff critical managerial and technical positions overseas with their fellow citizens. California's whistleblower protection laws merely prevent JAL from retaliating against employees for reporting and resisting the employer's domestic law violations; the laws in no way conflict with JAL's limited treaty right to discriminate in favor of Japanese citizens. In the absence of conflict, there can be no preemption.

JAL relies heavily on the Fifth Circuit's statement in *Spiess* that "article VIII(1) means exactly what it says: Companies have a right to decide which executives and technicians will manage their investment in the host country, without regard to host country laws." 643 F.2d at 361. Although that dictum appears to endorse a broad view of the scope of article VIII(1), a careful reading of the *Spiess* opinion shows that the Fifth Circuit intended otherwise. *Spiess*' holding was merely that article VIII(1) "exempts [Japanese employers] from domestic employment discrimination laws to the extent of permitting discrimination in favor of Japanese citizens in employment for executive and technical positions." *Id.* at 359; *see also id.* at 355 ("We hold that the treaty affords American subsidiaries of Japanese corporations the limited right to discriminate in favor of Japanese nationals . . . ."). The court expressly declined to decide whether article VIII(1) has any preemptive effect outside of the context of citizenship discrimination. *Id.* at 362 n.8; *see also Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059-60 (5th Cir. 1998) (assuming, without deciding, that age, race and national origin discrimination claims could proceed against French employer asserting treaty right to discriminate on basis of citizenship); *Papaila v. Uniden Am. Corp.*, 51 F.3d 54, 55 (5th Cir. 1995) (holding that "Article VIII to a limited extent permits Japa-

nese companies to discriminate in favor of their fellow citizens because of their citizenship").

JAL further argues that *Fortino*, *MacNamara* and *Sumitomo I* are distinguishable because they involved federal employment discrimination statutes rather than state whistle-blower laws. JAL does not explain how whistle-blower protection statutes conflict with article VIII(1)'s citizenship discrimination rights any more than Title VII does. JAL also points to a minor difference in wording between the Greece FCN Treaty at issue in *Wickes* and the Japan FCN Treaty. We do not agree that *Wickes* can be so easily distiguished.[6] In any event, that difference does nothing to change the fact that article VIII(1) was primarily aimed at permitting foreign companies to hire their fellow citizens. Nor does the argument undermine the persuasiveness of *Fortino*, *MacNamara* and *Sumitomo I*, each of which involved the Japan FCN Treaty itself or language that is identical to article VIII(1). Thus we conclude that article VIII(1), which confers on Japanese employers only the limited right to discriminate in favor of

---

[6]Article XII(4) of the Greece FCN treaty provides:

> Nationals and companies of either Party shall be permitted to engage . . . agents and other employees of their choice among those legally in the country and eligible to work. Moreover, such nationals and companies shall be permitted to engage, on a temporary basis, accountants and other technical experts, *regardless of nationality* and regardless of the extent to which they may possess the qualifications required by applicable laws for the exercise of their duties . . . .

Treaty of Friendship, Commerce and Navigation, U.S.-Greece, Aug. 3, 1951, 5 U.S.T. 1829 (emphasis added). JAL argues that the absence of the "regardless of nationality" language in the Japan FCN Treaty indicates an intent to grant foreign employers rights beyond citizenship discrimination. JAL has read too much into a slight difference in terminology. The Greece FCN Treaty also states that employers may engage personnel "of their choice among those legally in the country," while the Japan FCN Treaty lacks the "those legally in the country" qualification. Following JAL's logic, this would mean that Japanese employers are free to hire illegal workers. We doubt that Congress intended such a result.

VENTRESS v. JAPAN AIRLINES    4537

their fellow citizens for certain managerial and technical positions, does not preempt California's whistle blower protection laws. We reverse the district court's judgment on this issue and remand for further proceedings.

B.  *Venue*

[6] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In transferring the case to Hawaii, the district court's decision to change venue is reviewed for abuse of discretion. *Posnanski v. Gibney*, 421 F.3d 977, 978 (9th Cir. 2005). "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

[7] The California district court explained its reasoning in detail in the transfer order. The court found no significant connection between California and the facts alleged in the complaint. The flights in which JAL allegedly flew a sick pilot operated in Thailand, Hawaii and Japan. Crawford and Ventress both resided in Hawaii while employed by HACS, all communication between plaintiffs and JAL during their employment took place in Hawaii, and the termination decision was made in Hawaii. The court also concluded that most potential witnesses resided in Hawaii and Japan; indeed, HACS requires all contract crew members to reside in Hawaii. Moreover, most of the documentary evidence, including HACS' personnel files, are located in Hawaii. Other factors deemed to favor venue in Hawaii include Hawaii's interest in adjudicating a dispute involving a Hawaii employer, the Hawaiin choice-of-law clause in the HACS employment agreement, and the lower degree of docket congestion in the District of Hawaii.

[8] Ventress argues that developments subsequent to the transfer order made Hawaii an inconvenient forum for his claims against JAL. However, the district court could not have abused its discretion by not considering events that had not taken place at the time of decision. Ventress also disputes that most potential witnesses reside in Hawaii. He claims that HACS tax records would establish that most potential witnesses live in the western United States. Nothing in the record indicates that such evidence was ever presented to the district court. Likewise, Ventress' assertion of bias on the part of Hawaii's jury pool is not supported by any evidence in the record. The district court did not abuse its discretion in transferring the case to Hawaii.

C. *Arbitration*

[9] Ventress seeks review of the district court's interlocutory order compelling arbitration of his claims against HACS under the AAA's commercial rules. That order is not appealable because the district court has stayed the case pending arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 87 n.2 (2000) ("Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable."); *Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("We therefore hold that a district court order staying judicial proceedings and compelling arbitration is not appealable . . . ."); *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004) (order compelling arbitration not appealable where plaintiff's action was "effectively stayed pending the conclusion of . . . arbitration").

[10] We dismiss Ventress' interlocutory appeal challenging the arbitration order. Because Ventress refused to dismiss this aspect of his appeal when timely requested by counsel for HACS, we hold that HACS is entitled to recover its costs from Ventress. *See* Fed. R. App. P. 39(a)(1).

## CONCLUSION

We hold that the Japan FCN Treaty does not preempt California's whistle blower protection laws. We REVERSE the district court's judgment for JAL. We AFFIRM the order transferring the case to Hawaii and DISMISS Ventress' appeal of the interlocutory arbitration order.

The case against JAL is REMANDED for further proceedings. On remand, the district court shall consider plaintiffs' motion to amend the complaint to state claims under Hawaii state law.

Plaintiffs to recover costs on the appeal against JAL; HACS to recover from Ventress its costs on the appeal of the arbitration order.

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART; DISMISSED IN PART.**