IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| MARTIN VENTRESS, ET AL., | ) | CIVIL NO. 03-00451 SPK-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JAPAN AIRLINES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT HAWAI`I AVIATION CONTRACT
SERVICES, INC.'S MOTION TO COMPEL ARBITRATION PURSUANT
TO THE TERMS OF THE CONTRACT BETWEEN PLAINTIFF JACK CRAWFORD AND
DEFENDANT HAWAI`I AVIATION CONTRACT SERVICE, INC. AND DENYING
PLAINTIFF JACK CRAWFORD'S CROSS-MOTION FOR AN ORDER COMPELLING
ARBITRATION BEFORE AAA, USING AAA EMPLOYMENT RULES RATHER THAN
AAA COMMERCIAL RULES AND FOR THE IMPOSITION OF SANCTIONS FOR
VIOLATION OF FEDERAL STAY PENDING AAA ARBITRATION**

Before the Court is Defendant Hawai'i Aviation Contract
Services, Inc.'s ("HACS") Motion to Compel Arbitration Pursuant
to the Terms of the Contract between Plaintiff Jack Crawford
("Crawford") and Defendant Hawai'i Aviation Contract Service,
Inc. ("Motion"), filed on December 29, 2006, and Plaintiff's
Cross-Motion for an Order Compelling Arbitration Before AAA,
Using AAA Employment Rules Rather than AAA Commercial Rules and
for the Imposition of Sanctions for Violation of Federal Stay
Pending AAA Arbitration ("Cross-Motion"), filed on April 2, 2007.
This matter came on for hearing on May 8, 2007.  Shawn Luiz,
Esq., appeared on behalf of Crawford and Carl Osaki, Esq.,
appeared on behalf of HACS.  After careful consideration of the

Motion, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY GRANTS HACS' Motion and DENIES Crawford's Cross-Motion for the reasons set forth below.

### BACKGROUND

Plaintiffs Jack L. Crawford and Martin Ventress (collectively "Plaintiffs") filed the instant employment discrimination action against Defendants Japan Airlines and Jalways (collectively "Japan Defendants") and HACS in the U.S. District Court for the Central District of California.  The case was transferred to the District of Hawai'i on August 20, 2003. Plaintiffs' claims against the Japan Defendants were dismissed and severed from their claims against HACS on October 20, 2004. The Court entered Final judgment on October 25, 2004 in favor of the Japan Defendants and both Ventress and Crawford filed notices of appeal to the Ninth Circuit.[1]  On November 16, 2004, Plaintiffs and HACS stipulated to stay the case pending arbitration ("Stipulation").  The Court has exercised oversight authority over the arbitration proceedings.

On May 18, 2005, HACS filed a Motion to Compel Arbitration Pursuant to the Terms of the Contract between

---

[1] In Ventress v. Japan Airlines, CV Nos. 04-17353, 05-15044, 06-15904, 2007 WL 1192010, at *1 (9th Cir. Apr. 24, 2007), the Ninth Circuit reversed and remanded with respect to the Japan Defendants, holding that the Friendship, Commerce and Navigation Treaty does not preempt California's whistleblowers protection laws.  Id. at *5.

Plaintiff Martin Ventress and Defendant Hawai'i Aviation Contract Service, Inc. ("Motion to Compel Ventress Arbitration"), seeking an order compelling arbitration pursuant to the American Arbitration Association's ("AAA") Commercial Arbitration Rules, as specified in the contract between Ventress and HACS, rather than the National Rules for the Resolution of Employment Disputes ("Employment Rules"), which the AAA intended to apply.  This Court granted the Motion to Compel Ventress Arbitration in an order filed on July 28, 2005.  On February 21, 2006, Ventress filed a motion to reconsider the July 28, 2005 order.  This Court denied the motion for reconsideration in an April 19, 2006 order. Ventress appealed the decision to the Ninth Circuit.  The Ninth Circuit dismissed Ventress' appeal on the grounds that the interlocutory Order Compelling Arbitration is not appealable because of the stay pending arbitration.  Id. at *6.

I.  **Motion to Compel Arbitration**

HACS filed the instant Motion on December 29, 2006. HACS seeks a court order enforcing an arbitration agreement between HACS and Crawford in which they agreed to submit to arbitration before Dispute Prevention and Resolution ("DPR").

HACS acknowledges that the arbitration clauses in Plaintiffs' contracts call for arbitration before AAA.  HACS, however, invited Plaintiffs to utilize DPR instead.  Although Ventress refused, Crawford accepted.  At some point on or before

January 20, 2005, Crawford authorized his previous attorney, Charles H. Brower, Esq., to pursue arbitration before DPR. By mid-February 2005, Mr. Brower had begun the process of selecting a DPR arbitrator. Mr. Brower sent copies of both letters to Crawford.

On January 23, 2006, Evelyn K. Johnson, the DPR Case Manager, sent a letter to Mr. Brower and Mr. Osaki confirming DPR's receipt of a Submission for ADR Form, signed by Crawford. On January 31, 2006, Ms. Johnson requested that the parties sign the Agreement to Participate in Private Mediation ("Arbitration Agreement"). HACS, through its attorney, and Crawford each signed the agreement on February 1, 2006. The parties thereafter continued to prepare for arbitration before DPR. They submitted their claims and counterclaims on March 1, 2006. HACS paid the initial deposit and began discovery.

Sometime on or before October 6, 2006, Crawford notified DPR of his desire to withdraw his arbitration demand. HACS responded that it would have no objection if Crawford intended to drop his claim with prejudice or to litigate the matter in federal court. HACS opposed any attempt to modify their contractual agreement if Crawford's intent was to do something else, like pursue arbitration before AAA.

In his November 30, 2006 response, Crawford stated that he wished to withdraw his claim from DPR arbitration in order to

4

pursue arbitration before AAA, as required by his original contract with HACS and the Stipulation. Crawford argued that the prior submission of the dispute to DPR did not modify the original contract. He also argued that Mr. Brower never had his consent to modify the original contract. Crawford stated that he agreed to arbitrate before DPR because, under AAA's Commercial Rules, he would have been required to deposit the arbitration costs in advance. In contrast, with DPR the parties would share costs until the resolution of the dispute. After he submitted his claims to DPR, he learned from other employees involved in similar cases that AAA applied the Employment Rules, which require the employer to pay the arbitration fees. He also learned that DPR does not apply the AAA rules to its cases. Crawford states that, had he known these things, he never would have submitted his claims to DPR.

HACS responded in a December 7, 2006 letter. HACS stated that its counsel had authority to enter into the Arbitration Agreement and pointed out that Crawford himself signed the agreement. HACS argued that Crawford could not unilaterally change his mind about the DPR arbitration.

The DPR arbitrator, Keith Hunter ("Hunter"), decided that, pursuant to Hawai'i Revised Statutes § 658A-6(b), the courts should determine whether there was a binding arbitration agreement between HACS and Crawford.

In the instant Motion, HACS argues that the Arbitration Agreement is valid and has not been mutually modified.  It therefore urges the Court to enforce the Arbitration Agreement. HACS argues that there are no grounds to revoke the Arbitration Agreement.  Crawford's only arguments are that HACS' counsel did not have authority to enter into the Arbitration Agreement and that Crawford did not authorize the amendment of the original contract.  HACS argues that neither of these claims are true and they are merely pretext for Crawford's change of heart based on events that occurred after the execution of the Arbitration Agreement.  HACS notes that Crawford does not otherwise attack the Arbitration Agreement on other grounds, such as fraud in the inducement.

On January 24, 2007, Crawford filed a Motion for Continuance of Existing Motions Filed, until New Counsel of Record is Appointed ("Motion to Continue").  Crawford claims that Mr. Brower had him sign the Arbitration Agreement, despite the fact that the Stipulation requires the parties to arbitrate according to their contract, which requires arbitration before AAA.  He also argues that Mr. Brower did not adequately discuss the case with him and that Mr. Brower made legal decisions that were against his interests.  Crawford lastly argues that, if the Court permits Mr. Brower to withdraw, it should continue the hearing on the instant Motion until Crawford can retain new

counsel.  The Court granted the foregoing Motion to Continue on
February 6, 2007, and explained that there existed good cause for
Mr. Brower to withdraw.

On February 23, 2007, Shawn Luiz informed the court
that he would be appearing on behalf of Crawford.  On April 2,
2007, Crawford filed his Opposition to HACS' Motion
("Opposition") along with his Cross-Motion.  In his Opposition,
Crawford asserts that HACS' reliance on Hawai`i State Law DPR
Rules is federally preempted by the Federal Arbitration Act
("FAA"), 9 U.S.C. § 1.  According to Crawford, the FAA embraces
all arbitration involving interstate commerce, which includes
foreign commerce.  He claims that because he and HACS submitted
themselves to the FAA in 1992, the FAA preempts DPR, and Hawai`i
DPR lacks subject matter jurisdiction over his arbitration.

Crawford also argues that Hunter is not neutral and is
therefore an unacceptable arbitrator for three reasons: 1)
Crawford's counsel was not satisfied with after-acquired
information concerning Hunter's disclosure in two separate
matters where Hunter acted as mediator; 2) Hunter made
credibility calls based on cold declarations versus live witness
testimony; 3) Hunter is not a licensed attorney in Hawai`i.
Although Crawford concedes that a law license is not required of
an arbitrator, he argues that the instant case, because of its
complexity, requires a licensed attorney.  Crawford also takes

issue with Hunter's position as CEO of DPR and objects to any other arbitrator on the DPR list being permitted to act as arbitrator as well.  Based on the above, Crawford asserts that the instant arbitration would be fundamentally unfair.

As a third point of contention, Crawford argues that the modification to the contract to use DPR in lieu of AAA is voidable at his option because it is an adhesion contract and thus substantively and procedurally oppressive and unconscionable.  Specifically, Crawford notes that it is substantively unconscionable that an employee split arbitrator fees with the employer and procedurally unconscionable that the contract requires him to deposit $8000 with DPR versus the $125 administrative deposit required under AAA (with the remaining cost charged to HACS).

Crawford further relies on offensive, non-mutual collateral estoppel in opposing HACS' Motion.  He postulates that because HACS already litigated and lost the issue of which rules to follow as between DPR and AAA with another Plaintiff, Schoggen's (Crawford's co-worker), it is precluded from relitigating the same issue.[2]  Crawford cites to orders issued by

---

[2] HACS' Motion does not seek to relitigate the issue of which rule applies.  Rather, it narrowly seeks to enforce the arbitration agreement between the parties to arbitrate under DPR.

Judge Ezra[3] and Judge Ahn[4] for support.  Relying on these orders, he argues that HACS' Motion is thus in bad faith; that it is merely a means to harass him and subject him to an unaffordable DPR proceeding such that they, with their superior financial resources, can prevail on a technicality.  Crawford insists that because AAA Employment Rules were utilized in Schoggen's arbitration, the same must be applied in his case under collateral estoppel principles.  Crawford also relies on the theory of judicial estoppel to support his argument that AAA arbitration applies.

As asides, Crawford argues that 1) modification of the contract to arbitrate pursuant to DPR is unenforceable as it lacks consideration and 2) AAA, in administering the FAA, is entitled to deference in deciding that AAA Employment apply (as opposed to the AAA commercial rules).

On April 19, 2007, HACS filed its Reply.  At the outset, HACS notes that Crawford misapprehends the issue underlying the instant Motion to compel arbitration under DPR

---

[3] Judge Ezra's Order did not address the applicability of DPR versus AAA rules.  It instead granted Schoggen's Motion to compel arbitration under the terms of the employment contract (which provide that disputes between the parties would be submitted to AAA) and determined that Schoggen did not waive his right to arbitrate by declining to arbitrate at the outset of the dispute.

[4] Judge Ahn ruled that the arbitration process, not the court, decides what specific rules apply in arbitration.

which is whether he can ignore his own agreement to arbitrate under DPR and unilaterally decide to arbitrate under AAA.  First, HACS argues that Crawford's FAA preemption argument is without merit and frivolous.

Second, HACS asserts that the neutrality of Hunter bears no relevance on whether Crawford can renege on his agreement to arbitrate under DPR.  Even assuming that neutrality was at issue, Crawford has not presented any evidence to suggest or support the allegation that Hunter is not neutral in this matter other than Crawford's counsel's personal dissatisfaction with Hunter based on past decisions in unrelated matters.

Third, HACS counters Crawford's unconscionability argument.  It argues that Crawford voluntarily and with the benefit of counsel signed the DPR arbitration agreement and proceeded to participate in DPR arbitration for almost two years. As such, the unconscionability argument is patently frivolous, defective and misplaced.  Moreover, the $8000 that Crawford now disputes is an amount he agreed to in the arbitration clause of his employment contract ("1992 arbitration agreement").[5]

Fourth, HACS attacks Crawford's collateral estoppel argument as meritless.  It contends that collateral estoppel does not apply in this instance because 1) the parties mutually agreed

---

[5] The AAA Commercial Rules, which would be applied in the event of arbitration under the terms of the 1992 arbitration agreement, provided for a $8000 deposit for Crawford's claim.

to use DPR and there was no adjudication as to such issue and 2) the decisions by Judge Ezra and Judge Ahn do not stand for the propositions cited by Crawford so he either does not understand the decisions or is misrepresenting those decisions for the purposes of a misplaced collateral estoppel argument.

Last, HACS dismisses Crawford's lack of consideration and AAA employment rules arguments as meritless and frivolous. As for the consideration argument, HACS asserts that after the DPR arbitration agreement was executed, the parties mutually proceeded by filing their respective claims and counterclaims and HACS paid its arbitration deposit.  HACS questions Crawford's current dispute with the application of the AAA commercial rules given that he never complained before (and in fact agreed to arbitrate pursuant to DPR rules), especially in light of the fact that the complaints are based on proceedings in an unrelated matter.

**II.  <u>Cross-Motion</u>**

In his Cross-Motion, Crawford seeks an Order 1) compelling arbitration before AAA, employing the AAA Employment Rules rather than the AAA Commercial Rules and 2) imposing sanctions in contempt of court for violating the Stay Pending Arbitration.  Crawford moves for arbitration before AAA based on the substantial prejudice he would suffer if further delayed from arbitrating before AAA, which, at a $125 fee, would be more

reasonable than the $8000+ cost associated with DPR arbitration. With respect to Crawford's allegations of contempt, he requests an award of fees, costs and further appropriate sanctions for HACS' violation of the Stay and for judge shopping.

HACS filed its Opposition to the Cross-Motion on April 19, 2007. In it, HACS argues that Crawford's only grounds raised in support of applying the AAA Employment rules are the costs that he would incur. HACS emphasizes that Crawford's arguments are separate from the issue in its Motion to Compel: the forum for arbitration (DPR versus AAA) and whether Crawford can unilaterally renege on an agreement he voluntarily made, with the advice of counsel, to arbitrate before DPR. HACS notes that the issue of costs that Crawford may have to bear is not before the Court.

With respect to Crawford's request for sanctions, HACS asserts that if it is in violation of the Stipulation, then so too is Crawford. He initially agreed to arbitrate before DPR but has since reneged on the agreement and unilaterally initiated arbitration before AAA. Consequently, the request for sanctions is incorrect and would be inappropriate and improper under the circumstances.

On April 25, 2007, Crawford filed a Reply. He criticizes HACS' counsel for failing to cite any Supreme Court or Ninth Circuit case in the two-page Opposition. Throughout the

Reply, Crawford accuses Mr. Osaki of disregarding law and ignoring the arguments raised in Crawford's Opposition to HACS' Motion to Compel.[6]  Crawford primarily uses the Reply as a means of responding to HACS' Reply to its Motion rather than addressing the arguments raised in HACS' Opposition to Crawford's Cross-Motion.  Moreover, Crawford rehashes the same arguments (most verbatim) he extended in the Opposition to HACS' Motion to Compel (i.e. preemption, unconscionability, collateral estoppel, neutrality).

## **JURISDICTION**

The parties here do not dispute that there is a valid arbitration clause in Plaintiffs' employment contracts.  Rather, the dispute revolves around whether a written agreement to submit the arbitration called for in the Plaintiffs' contract before DPR rather than AAA is valid and enforceable.  This issue is properly before the court, rather than the arbitrator.  Davis v. O'Melveny & Myers, No. 04-56039, 2007 WL 1394530, at *3 (9th Cir. May 14, 2007) (Challenges to an arbitration clause or agreement should be decided by a court "'[w]hen the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts [as opposed to the arbitrator] must decide whether the arbitration provision is

---

[6] Despite Crawford's claim to the contrary, Mr. Osaki addressed all of Crawford's arguments in the Reply to HACS' Motion to Compel.

invalid and unenforceable under 9 U.S.C. § 2 [.]'")(quoting

<u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257 (9th Cir. 2006)(en

banc)).

<u>**DISCUSSION**</u>

Federal law favors arbitrations and "[u]nder the

Federal Arbitration Act (FAA), arbitration agreements 'shall be

valid, irrevocable, and enforceable save upon such grounds as

exist at law or in equity for the revocation of any contract.'"

<u>Id</u>. (citing 9 U.S.C. § 2).  In determining whether arbitration

agreements are enforceable, federal courts should apply ordinary

state law principles governing the formation of contracts.

<u>Circuit City Stores, Inc. v. Adams</u>, 279 F.3d 889, 892 (9th Cir.

2002).

**I.    <u>Motion to Compel</u>**

Hawai'i law recognizes a strong public policy in favor

of arbitration and, where parties have an enforceable agreement

to arbitrate, the courts' powers are limited by Hawai'i Revised

Statutes Chapter 658A.  <u>Cf.</u> <u>Bateman Constr., Inc. v. Haitsuka</u>

<u>Bros., Ltd.</u>, 77 Hawai'i 481, 484, 889 P.2d 58, 61 (1995)

(concerning Chapter 658, predecessor to Chapter 658A).  Section

658A-7(a) provides, in pertinent part:

> (a)  On motion of a person showing an agreement to
> arbitrate and alleging another person's refusal to
> arbitrate pursuant to the agreement:
> . . . .
> (2)  If the refusing party opposes the
> motion, the court shall proceed summarily to

14

> decide the issue and order the parties to
> arbitrate unless it finds that there is no
> enforceable agreement to arbitrate.

Haw. Rev. Stat. § 658A-7(a).  Thus, "when presented with a motion
to compel arbitration, the court is limited to answering two
questions: 1) whether an arbitration agreement exists between the
parties; and 2) if so, whether the subject matter of the dispute
is arbitrable under such agreement."  Hawai`i Med. Ass'n v.
Hawai`i Med. Serv. Ass'n, Inc., 113 Hawai'i 77, 91, 148 P.3d
1179, 1193 (2006) (citation and quotation marks omitted).
Whether there is a valid agreement to arbitrate a particular
dispute is a matter of state contract law.  See, e.g., First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)
("When deciding whether the parties agreed to arbitrate a certain
matter (including arbitrability), courts generally . . . should
apply ordinary state-law principles that govern the formation of
contracts." (citations omitted)); see also Haw. Rev. Stat. §
658A-6(a) ("An agreement contained in a record to submit to
arbitration any existing or subsequent controversy arising
between the parties to the agreement is valid, enforceable, and
irrevocable except upon a ground that exists at law or in equity
for the revocation of a contract.").

        By way of the February 1, 2006 Arbitration Agreement,
HACS and Crawford agreed to arbitrate before DPR notwithstanding
the 1992 arbitration clause in the employment agreement, which

called for arbitration before AAA.  The Arbitration Agreement
clearly shows that the parties intended to arbitrate under DPR
instead of AAA.  Crawford was represented by counsel when he
voluntarily signed the Arbitration Agreement and he has not
presented any legitimate basis for revoking or nullifying the
Arbitration Agreement, a valid contract.

Crawford erroneously characterizes the Arbitration
Agreement as an unconscionable adhesion contract and thus
believes it to be voidable at his option.  "Unconscionability has
generally been recognized to include an absence of meaningful
choice on the part of one of the parties together with contract
terms which are unreasonably favorable to the other party."  City
and County of Honolulu v. Midkiff, 62 Haw. 411, 418, 616 P.2d
213, 218 (1980).  A determination of whether meaningful choice is
present requires a consideration of all the circumstances
surrounding the transaction.  Id.  "'One-sidedness' is a basic
element of unconscionability; a contract is unconscionable, inter
alia, if it is 'unjustly disproportionate' in its allocation of
rights, benefits, obligations, or liabilities."  Brown v. KFC
Nat'l Mgmt. Co., 82 Hawai'i 226, 247 n.24, 921 P.2d 146, 167 n.24
(1996) (quoting Lewis v. Lewis, 69 Haw. 497, 502, 748 P.2d 1362,
1366 (1988)).

Relatedly, contracts of adhesion are rendered

16

unenforceable if "(1) the contract is the result of coercive bargaining between parties of unequal bargaining strength; and (2) the contract unfairly limits the obligations and liability of, or otherwise unfairly advantages, the stronger party." Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 266, 141 P.3d 427, 439 (2006) (quoting Fujimoto v. Au, 95 Hawai'i 116, 156, 19 P.3d 699, 739 (2001)) (quotation marks and citations omitted); see also id. (quoting Wheelock v. Sport Kites, Inc., 839 F. Supp. 730, 736 (D. Haw. 1993) ("[A]dhesion contracts are fully enforceable provided that they are not unconscionable and do not fall outside the reasonable expectations of the weaker or adhering party.")).  Generally, arbitration agreements are not regarded as unenforceable contracts of adhesion because "the agreement 'bears equally' on the contracting parties and does not limit the obligations or liabilities of either of them, 'but merely substitutes one forum for another.'"  Brown, 82 Hawai'i at 247, 921 P.2d at 167 (quoting Leong by Leong v. Kaiser Found. Hosps., 71 Haw. 240, 248, 788 P.2d 164, 169 (1990)).

As already established, Crawford voluntarily entered into a mutual agreement with HACS to arbitrate before DPR.  The Arbitration Agreement merely swaps one arbitration provider (AAA) for another (DPR) before which the parties would arbitrate. Based on the evidence before the Court, such an agreement was not the result of coercive bargaining by HACS.  However, to the

17

extent that the Arbitration Agreement is disadvantageous to Crawford because it requires him to pay a greater share of the fees associated with the arbitration than what is required by the arbitration clause of the employment contract, then that provision of the Arbitration Agreement would be unenforceable. Crawford is however unpersuasive in his argument that he is financially disadvantaged by proceeding in arbitration before DPR, rather than AAA.  While Crawford argues that his share of the arbitration expense is limited to what is required by the AAA Employment Rules, he is mistaken.  First, the employment agreement's arbitration clause provides that the "[c]osts and fees incurred shall be borne in accordance with the decisions made by the arbitrator."  [Pilot contract, Ex. 22 to Pl.'s Opp'n to Def.'s Mot. to Compel, at 5 ¶ 5(d).]  Second, the Federal Arbitration Act supplies the rules for arbitration.  <u>Fidelity Federal Bank, FSB v. Durga Ma Corp.</u>, 386 F.3d 1306, 1311 (9th Cir. 2004) (quoting <u>Sovak v. Chugai Pharm. Co.</u>, 280 F.3d 1266, 1269 (9th Cir. 2002) ("There is a 'strong default presumption[] that the [Federal Arbitration Act], not state law, supplies the rules for arbitration.")).  The arbitration clause in <u>Fidelity</u> provided:

> Disputes or controversies shall be submitted
> to and resolved by binding arbitration in
> accordance with the laws of the State of
> California and the rules of the American
> Arbitration Association.

18

386 F.3d at 1312.  The court thus interpreted the clause as electing state substantive law but federal procedural law.  As the arbitration clause involved here is similarly drafted, this Court makes the same interpretation.  Generally, in the absence of agreement or statute, parties are jointly and severally liable for payment of an arbitrator's fees.  <u>Theofano Maritime Co., Ltd. v. 9,551.19 Long Tons of Chrome Ore on Board The Aliakmon</u>, 122 F. Supp. 853 (D. Md. 1954).  The parties here initially agreed in the 1992 arbitration agreement to use the AAA Commercial Rules which provided for a $8000 deposit for Crawford's claim.  Crawford subsequently executed the DPR arbitration agreement in which he agreed to share in the arbitration's fees and costs.  [<u>See</u> Mot. at Ex. B.]  While the 1992 arbitration agreement clearly expressed the parties' intent that the AAA Commercial Rules would apply in the event of any contract dispute, the parties validly entered into the DPR arbitration agreement.[7]  Therefore, the fees and costs associated with the arbitration should be paid in accordance with the terms of the Arbitration Agreement.  Likewise, the rules to be applied are the DPR

---

[7] Crawford insists that the Employment Rules should be applied rather than the Commercial Arbitration Rules.  Although there may be valid reasons why the Employment Rules may have some application to the claims made in this matter, the contract between the parties clearly expressed the parties' intent that the Commercial Arbitration Rules would apply in the arbitration of any contract disputes.  Likewise, the Arbitration Agreement clearly reflects the parties' intent that DPR Arbitration Rules would apply in the arbitration.

Arbitration Rules.  <u>Sovak</u>, 280 F.3d at 1269 ("Parties may agree
to state law rules even if such rules are inconsistent with those
set forth in the [FAA].") (citation omitted)).

　　　　　Crawford also raises a lack of consideration argument.
His argument is misplaced.  It is well-established that
"consideration is an essential element of, and is necessary to
the enforceability or validity of, a contract."  <u>Douglass v.
Pflueger Hawai`i, Inc.</u>, 110 Hawai'i 520, 534, 135 P.3d 129, 143
(2006).  "Consideration is defined as a bargained for exchange
whereby the promisor receives some benefit or the promisee
suffers a detriment."  <u>Id.</u> (citing <u>Gibson v. Neighborhood Health
Clinics, Inc.</u>, 121 F.3d 1126, 1130 (7th Cir. 1997) (citations
omitted)).  The consideration was the original agreement by the
parties, in the employment contract, to submit to binding
arbitration for the matters in controversy between the parties.
By agreeing to binding arbitration, the parties are foregoing
their rights to a judicial forum, which provides the
consideration for the agreement.  <u>See</u>, <u>e.g.</u>, <u>id.</u> (quoting <u>Brown</u>,
82 Hawai'i at 239-40, 921 P.2d at 159-60 (concluding that "the
agreement is supported by bilateral consideration that
[plaintiff] and KFC would forego their respective rights to a
judicial forum" based upon the "manifestly unambiguous"
recitation that "KFC and [plaintiff] agree to submit to binding
arbitration any controversies concerning [plaintiff's]

compensation, employment[,] or termination of employment")).
Crawford fails to demonstrate why the parties cannot mutually
agree to an arbitration service other than AAA and thus his lack
of consideration argument fails.  Accordingly, the Arbitration
Agreement, other than the fee payment provision, is a valid and
enforceable contract by which Crawford must abide.  To permit him
to do otherwise is to allow him unilaterally to evade an
enforceable and binding contract.

     This Court finds Crawford's remaining arguments to be
misplaced.  HACS' Motion sought only to enforce the Arbitration
Agreement and Crawford's remaining arguments have no bearing on
this issue.  This is a simple contract issue to be determined by
state law, and does not involve conflicting federal law such that
preemption would come into play.

     Crawford alleges that Hunter is not neutral and
therefore Crawford cannot be required to arbitrate before DPR
pursuant to the Arbitration Agreement.  An arbitrator is required
to be impartial as his or her neutrality is essential for the
parties to have faith and trust in the arbitration process.  For
instance, a federal court may vacate an arbitration award under
the FAA "where there was evident partiality or corruption in the
arbitrators, or either of them."  9 U.S.C. § 10(a)(2).  This
Court has found that the FAA supplies the rules for arbitration.
Under federal law in order to vacate an arbitrator's award, a

party "must demonstrate more than a mere appearance of bias in
order to disqualify an arbitrator." Employers Ins. of Wausau v.
National Union Fire Ins. Co. of Pittsburgh, 933 F.2d 1481, 1488–
89 (9th Cir. 1991) (citing Sheet Metal Workers Int'l Ass'n v.
Kinney Air Conditioning Co., 756 F.2d 742, 745–46 (9th Cir.
1985)).  Rather, "the party alleging bias must establish facts
that create 'a reasonable impression of partiality.'" Toyota v.
Auto. Salesman's Union, 834 F.2d 751, 756 (9th Cir. 1987)
(quoting Sheet Metal Workers, 756 F.2d at 745)).  As support for
his contention that Hunter is not neutral (and thus the
Arbitration Agreement is invalid), Crawford provides only that
his current counsel has been dissatisfied in past matters with
Hunter.  Such evidence falls far short of establishing bias.  In
performing their duties, arbitrators invariably risk having
parties who appear before them become disgruntled.  This Court
applies the principles set forth in Sheet Metal Workers to
conclude that counsel's dissatisfaction with Hunter as being
insufficient to disqualify him as the arbitrator in the instant
matter.

    With respect to Crawford's attempt to apply collateral
estoppel to preclude HACS from relitigating the issue of whether
to follow DPR or AAA rules, this Court finds that Crawford is in
error.  "Nonmutual collateral estoppel refers to use of
collateral estoppel by a nonparty to a previous action to

22

preclude a party to that action from relitigating a previously
determined issue in a subsequent lawsuit against the nonparty."
Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d
708, 714 n.3 (9th Cir. 2005) (citing Blonder-Tongue Labs., Inc.
v. Univ. of Ill. Found., 402 U.S. 313, 320-30 (1971)).  Offensive
nonmutual collateral estoppel describes a plaintiff's attempt "to
prevent a defendant from relitigating an issue that the defendant
previously litigated unsuccessfully against a different party."
Id. (citation omitted); see also Appling v. State Farm Mut. Auto.
Ins. Co., 340 F.3d 769, 775 (9th Cir. 2003) (citing Parklane
Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979)).  It applies
where "(1) the issue sought to be litigated is sufficiently
similar to the issue presented in an earlier proceeding and
sufficiently material in both actions to justify invoking the
doctrine, (2) the issue was actually litigated in the first case,
and (3) the issue was necessarily decided in the first case."
Id. (citing United States v. Weems, 49 F.3d 528, 532 (9th Cir.
1995)).  District courts have broad discretion in determining
whether offensive nonmutual collateral estoppel applies.
Parklane, 439 U.S. at 331.

        Collateral estoppel is clearly inapplicable here.  The
validity of the HACS-Crawford Arbitration Agreement is
distinguishable from any previous litigation concerning
Crawford's co-workers.  In the case of Schoggen, for example, the

arbitration agreement at issue was the arbitration clause in the employment contract, not a subsequent agreement.  By contrast, the parties here agree that the employment contact requires them to arbitrate.  The parties contracted to arbitrate before DPR, which HACS seeks to enforce and which Crawford seeks to invalidate.  Crawford's reliance on Judge Ezra's and Judge Ahn's orders is therefore misplaced, as neither stands for the propositions for which they are cited, nor do they concern the validity of a contract to arbitrate before DPR.  For the same reasons collateral estoppel does not apply, neither does judicial estoppel.

## II.   **Cross-Motion**

Crawford seeks an Order 1) compelling arbitration before AAA, employing the AAA Employment Rules rather than the AAA Commercial Rules and 2) imposing sanctions in contempt of court for violating the Stipulation.  Based on the aforementioned discussion, this Court denies his first request because there exists a valid contract between the parties to arbitrate before DPR.

This Court also denies Crawford's request to sanction HACS for contempt of court.  "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."  In re Dual-Deck Video Cassette Recorder Antitrust

Litig., 10 F.3d 693, 695 (9th Cir. 1993).  Willfulness is not a requirement and there is no good faith exception to abiding by a court order.  Id.  A finding of contempt is not proper, however, if a person's actions  "appear[] to be based on a good faith and reasonable interpretation of the [court's order]."  Id. (quoting Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)) (citation and quotation marks omitted) (second alteration in original).  "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply."  Id. (quoting Vertex, 689 F.2d at 891).

The party alleging civil contempt must prove by clear and convincing evidence that the alleged contemnor violated the court's order.  Id.  Thus, a finding of civil contempt requires that a party 1) violated an order, 2) beyond substantial compliance, 3) not based on good faith and a reasonable interpretation of the order, 4) by clear and convincing evidence. Id.; see also In re Dyer, 322 F.3d 1178, 1190-91 (9th Cir. 2003) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.").

By brining its Motion, HACS did not violate the

25

Stipulation.  HACS seeks to continue arbitration before DPR and was forced to bring the Motion because of Crawford's refusal to abide by the Arbitration Agreement.  Crawford is therefore unable to establish that HACS violated the Stipulation, much less that it did so by clear and convincing evidence.

**CONCLUSION**

Based on the foregoing, HACS' Motion to Compel Arbitration Pursuant to the Terms of the Contract Between Plaintiff Jack Crawford and Defendant Hawai'i Aviation Contract Service, Inc., filed on December 29, 2006, is HEREBY GRANTED and Plaintiff Jack Crawford's Cross-Motion for an Order Compelling Arbitration Before AAA, Using AAA Employment Rules Rather than AAA Commercial Rules and for the Imposition of Sanctions for Violation of the Federal Stay Pending AAA Arbitration, filed on April 2, 2007, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI1I, June 6, 2007.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States Magistrate Judge

**MARTIN VENTRESS, ET AL. V. JAPAN AIRLINES, ET AL; CIVIL NO. 03-00451 SPK-LEK; ORDER GRANTING DEFENDANT HAWAI1I AVIATION CONTRACT SERVICES, INC.'S MOTION TO COMPEL ARBITRATION PURSUANT TO THE TERMS OF THE CONTRACT BETWEEN PLAINTIFF JACK CRAWFORD AND DEFENDANT HAWAI`I AVIATION CONTRACT SERVICES, INC. AND DENYING PLAINTIFF JACK CRAWFORD'S CROSS-MOTION FOR AN ORDER COMPELLING ARBITRATION BEFORE AAA, USING AAA EMPLOYMENT RULES RATHER THAN 111 COMMERCIAL RULES AND FOR THE IMPOSITION OF SANCTIONS FOR VIOLATION OF FEDERAL STAY PENDING AAA ARBITRATION**