CARL H. OSAKI   4008-0
Attorney At Law, A Law Corporation
Pioneer Plaza, Suite 1510
900 Fort Street
Honolulu, Hawaii  96813
Telephone:  (808) 528-4666

Attorney for Defendant
HAWAII AVIATION CONTRACT
SERVICES, INC.

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARTIN VENTRESS and JACK CRAWFORD,<br><br>    Plaintiffs,<br><br>  vs.<br><br>JAPAN AIRLINES; JALWAYS CO., LTD., a subsidiary of Japan Airlines; HAWAII AVIATION CONTRACT SERVICES, INC.; and DOES 1-10,<br><br>    Defendants. | CIVIL NO. CV 03-451  SPK-LEK<br><br>DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF MARTIN VENTRESS' MOTION TO QUASH DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S SUBPOENAS DUCES TECUM, FILED MAY 25, 2007; AFFIDAVIT OF CARL H. OSAKI; EXHIBITS "A" THROUGH "P;" CERTIFICATE OF SERVICE<br><br>DATE:  July 3, 2007<br>TIME:  9:30 a.m.<br>JUDGE:  Leslie E. Kobayashi |

DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF MARTIN VENTRESS'
MOTION TO QUASH DEFENDANT HAWAII AVIATION CONTRACT
SERVICES, INC.'S SUBPOENAS DUCES TECUM, FILED MAY 25, 2007

I.    INTRODUCTION

        Plaintiff Martin Ventress ("Plaintiff") raises a host
of complaints he has about the on-going arbitration proceedings,
and specifically, subpoenas duces tecum served on his health care
provider witnesses.  Overlooking the complete lack of merit to
any of the points Plaintiff raises, the fundamental problem with
his complaints to this Court, is that this Court is the wrong
place to complain.  Nevertheless, Defendant Hawaii Aviation
Contract Services, Inc. ("HACS") will address the points he
raises.

II.   FACTS

        This federal court action is pending only because
Plaintiff initially ignored the arbitration clause and filed a
federal action in the United States District Court for the
Central District of California ("Central District") in late 2002.
After the action was transferred to the District of Hawaii in
2003, Plaintiff's California counsel withdrew; to be replaced by
Eric Seitz, Esq., who subsequently withdrew; to be replaced by
Ms. Venetia Carpenter-Asui, who subsequently withdrew.  Plaintiff
has been pro se since Ms. Carpenter-Asui's withdrawal in early
2005.  Prior to Ms. Carpenter-Asui's withdrawal, Plaintiff
finally agreed to arbitrate and Plaintiff and HACS stipulated to
the stay of this action pending the completion of the
arbitration.

At a very early stage of the arbitration, and because Plaintiff put his mental state at issue, HACS, through its counsel, requested that Plaintiff execute authorizations to the release of his medical records.  On February 18, 2005, HACS' counsel wrote to Mr. William Chang of the International Centre for Dispute Resolution:

> Enclosed are (1) Hawaii Aviation Contract Services, Inc.'s (HACS") reply to the demand for arbitration and HACS' counterclaim; (2) a check for $750 to cover the initial filing fee for the counterclaim; and (3) an authorization for Mr. Ventress to sign because his medical condition has been put at issue in the arbitration.

See Exhibit A.

On March 2, 2005, HACS' counsel followed up directly with Plaintiff regarding the authorizations to release medical records:

> I have provided Mr. Chang with an authorization to obtain and use your medical information and records in this arbitration. Such information is material to the claims and defenses in this arbitration, and you have put your mental state at issue as well. Please execute it and return it to Mr. Chang when he provides it to you.

See Exhibit B.

HACS' counsel never received any authorizations that were executed by Plaintiff in response to this initial request.

In an updated Witness List of January 24, 2007, Plaintiff identified the following expert witnesses, all of whom are health care providers:  William Brath, M.D.; Garrett O'Connor, M.D.; Bryan K. Nichols, Ph.D.; Ike (Ikechukwu) Ohiaeri,

M.D.; and Jack H. Scaff, Jr., M.D.  See Exhibit C.  All of these witnesses, except for Honolulu physician Jack H. Scaff, M.D., reside in the State of California.

In analyzing how to obtain documents in these witnesses' possession pertaining to Plaintiff, there were two primary issues:  (1) how to issue subpoenas duces tecum to them; and (2) how to get Plaintiff to authorize them to release his medical records.  Of the two, the latter was of utmost importance because without Plaintiff's authorizations, none of these health care provider witnesses would likely produce any documents. Indeed, if Plaintiff authorized them to release his records, the necessity of subpoenas duces tecum would be obviated and the medical records could be directly obtained.

With regard to the subpoenas duces tecum, the issue was how to serve a valid and enforceable subpoena, through the arbitration process.  All but one of these witnesses are in California, and HACS' counsel had serious reservations about whether a AAA subpoena would be complied with in California.  By way of comparison, in an analogous judicial setting, a subpoena issued by a Hawaii court would not be enforceable in California because of jurisdictional limitations on judicial power.  In such a case, a commission to take an out-of-state deposition issuing out of a Hawaii court typically would precede the opening of a special proceeding in California, followed by the issuance of a California subpoena, which would be enforceable against a California resident.  HACS' counsel therefore had questions about

3

the out-of-state service of a AAA subpoena signed by a Hawaii arbitrator.  See Affidavit of Carl H. Osaki ("Osaki Affidavit").

This concern regarding the validity of a AAA subpoena signed by a Hawaii arbitrator and served in California turns out not to be simply an academic question.  Indeed, when HACS served a AAA subpoena in the arbitration proceeding upon Plaintiff's former California attorney, seeking the production of non-privileged material, the California attorney refused to comply with the subpoena, calling the AAA subpoena "bogus."  See Exhibits D and E.  HACS has no idea how to compel compliance with the non-observance of this AAA subpoena.  See Exhibit F.[1]

Thus, in analyzing how to go about serving the California health care professionals with enforceable subpoenas, the determination was made to utilize the vehicle of the pending federal court action as the judicial foundation for the subpoenas.  See Osaki Affidavit.  The subpoenas were prepared in accordance with Rule 45(a) of the Federal Rules of Civil Procedure, which provides in relevant part:

> (2)    . . . If separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made.
>
> (3)    The clerk shall issue a subpoena, signed but otherwise in blank, to a party

---

[1]Because AAA's position is that enforcement lies with the courts, it is basically saying that its own subpoenas are not enforceable.  Query whether there would be a need in any case to obtain a judicial subpoena if one desires an enforceable subpoena.

> requesting it, who shall complete it
> before service. An attorney as officer
> of the court may also issue and sign a
> subpoena on behalf of
>
> (A)    a court in which the attorney is
>        authorized to practice; or
>
> (B)    a court for a district in which a
>        deposition or production is
>        compelled by the subpoena, if the
>        deposition or production pertains
>        to an action pending in a court in
>        which the attorney is authorized to
>        practice.

Fed. R. Civ. P. 45(a).

In preparing the subpoenas from the forms provided on the web-site of the United States District Court (www.uscourts.gov, Form AO 088), HACS' counsel followed the form's footnote to the blank-entry for the case number, which states:

> If action is pending in district other than
> district of issuance, state district under
> case number.

See Osaki Affidavit.

HACS' counsel prepared subpoenas duces tecum and proceeded to serve the California health care professional witnesses on or about March 15, 2007, and notified Plaintiff. See Exhibit G.  Plaintiff was also served with the subpoenas duces tecum.  See Motion, at Documents 215-7 and 215-8.

On or about March 20, 2007, Plaintiff objected to the subpoenas duces tecum to the Arbitrator.  See Exhibit H.  HACS' counsel responded to the Arbitrator's subsequent questions about the subpoenas:

I understand that Mr. Ventress' questions surround the discovery into the health care providers he identified as expert witnesses on his behalf. Long ago – I do not have the exact date off hand [February 18, 2005] – my recollection is that I requested that Mr. Ventress execute authorizations to release his medical records. Mr. Ventress had not done that. Right after we had the status conference in early February, I asked Mr. Ventress for various information to facilitate discovery. He did not respond. Included in my request was a request for his availability for oral deposition. I had wanted to conduct such a deposition so that I could focus my discovery; for example, Mr. Ventress may have had prior claims of discrimination and I wanted to obtain information about those claims because they are not generally available. I informed Mr. Ventress that time was of the essence. He did not respond. On March 1, 2007, I again inquired of him for the same information. Again, he did not respond. I then considered how I was supposed to conduct discovery upon his experts, especially since he did not supply addresses for many of these out-of-state witnesses. I also had a problem because some of the experts were in California, and that state has its own time constraints on notice requirements for records' depositions. I also wanted to be sure that the deponent would be in a position to respond. Because Mr. Ventress' federal action is still pending, and stayed, it supplied a convenient route to out-of-state records depositions. I could sign the subpoenas and the process servers would have a much easier time processing the subpoenas in California; rather than to open a separate proceeding, which would have eaten up more time. Frankly, I figured that none of the deponents would produce absent a signed authorization, and I figured that I would have problems obtaining Mr. Ventress' cooperation in executing such authorizations. My concerns were realized. I sent Mr. Ventress authorizations in both PDF and Word Perfect formats, and also served him with the deponent notices. He, predictably, has not responded. Instead, he has complained about procedures that have largely been brought

about and necessitated by his own non-cooperation in discovery. Because using the federal action does indeed supply a swift route to service of out-of-state records' deposition subpoenas, I instructed my staff to contact all such deponents to request that they respond to the subpoenas, absent an executed authorization from Mr. Ventress (One such witness has informed my office that there are no such records). I will concurrently file a motion to compel, both Mr. Ventress' oral deposition, and his execution of the authorizations to release medical records.

I did not intend to overstep the Arbitrator's authority, or to side-step it. I was trying to deal with discovery upon Mr. Ventress' expert witnesses when he would not cooperate in facilitating that discovery. Had I not done that, I felt that I would have been put in a position where I could not obtain such records because of California notice requirements.

If you require further information, please let me know, and I will be happy to supply you with all of the inforamtion I have in my possession.

See Exhibit I.

HACS also filed a motion to compel, among other things, Plaintiff to execute the authorizations to release his medical records. See Exhibit J. The Arbitrator resolved the matter through Arbitrator's Prehearing Order No. 4 On Respondent's Motion To Compel, which provided in relevant part:

Motion is granted to the extent that Claimant is ordered to no later than March 27, 2007, advise and insure that all those who have been noticed by Respondent be authorized by Claimant to provide medical and other records as designated in the subpoenas. These persons would be Doctors William Frank Brath, Garrett O'Connor, Bryan K. Nichols, Ikechukwu Ohiaeri and Jack H. Scaff and their Custodians of Records.

7

See Exhibit K.

On March 27, 2007, HACS' counsel requested that Plaintiff provide copies of the signed authorizations.  See Exhibit L.  Plaintiff was informed that HACS' counsel was willing to draft a letter from Plaintiff to his health care provider witnesses for release of the medical records directly to HACS' counsel's office.  Id.  Later that day, HACS' counsel provided Plaintiff with the addresses of his witnesses and language for a letter authorizing direct release of the pertinent records to HACS' counsel.  See Exhibit M.

The Arbitrator followed up with Arbitrator's Prehearing Order No. 5 On Respondent's Motion To Continue, which provided in relevant part:

> Claimant is to insure that the previously ordered releases for medical records be properly provided the identified doctors and their custodians of record and that Respondent have access to same.

See Exhibit N.

Plaintiff has never provided copies of his letters purporting to comply with Arbitrator Order No. 4 and Arbitrator Order No. 5.  See Osaki Affidavit.  As of May 24, 2007, the status of discovery upon Plaintiff's health care professional witnesses was as follows:  (1) Dr. Scaff was ready to produce Plaintiff's medical records, and has, in fact, done so; (2) Dr. Ohiaeri's custodian of records appeared at a records' deposition and stated that there were no records pertaining to Plaintiff; (3) Dr. O'Connor was not served with a subpoena

because of an inability of the California process server to connect with the relevant member of his staff; (4) Dr. Brath's office informed HACS' counsel's office that Plaintiff's records probably were located at Centinela Hospital, Airport Medical Center, Los Angeles; and (5) Dr. Nichols interpreted Plaintiff's letter to him as NOT authorizing the release of Plaintiff's medical records.  See Exhibit O.

On June 13, 2007, HACS submitted a motion in the arbitration, seeking to clean up various outstanding discovery matters, including HACS' effort to obtain Plaintiff's medical records from his health care provider expert witnesses.  See Exhibit P.

III. ARGUMENTS

A.   The Motion Is Moot Because The Issues It Contains Have Already Been Decided By The Arbitrator

This motion seeks to quash the subpoenas duces tecum served upon the health care provider witnesses identified by Plaintiff as expert witnesses.  Plaintiff complained to the Arbitrator about the subpoenas duces tecum.  See Exhibit H.  The Arbitrator sought explanation, which HACS' counsel provided.  See Exhibit I.  HACS also sought a compel order from the Arbitrator concerning the medical records in the purported possession of these witnesses.  See Exhibit J.  The Arbitrator decided the controversy, through Arbitrator Order No. 4 and Arbitrator Order No. 5.  See Exhibits K and N.

There is nothing for this Court to do.  Plaintiff, the Claimant in the arbitration, has been ordered to authorize these

witnesses to release his medical records.  Plaintiff has not
disclosed his purported authorizations, and it is clear that at
least one of those witnesses interprets Plaintiff's
communications to him to NOT authorize the release of Plaintiff's
medical records.  That issue is currently before the Arbitrator
for resolution.  See Exhibit P.

  B.  Plaintiff's Other Points Are Without Merit

      Plaintiff complains that the subpoenas duces tecum were
"false."  See Motion, at 2.  This is not true.  The subpoenas
duces tecum were the result of careful analysis of how to obtain
medical records, primarily from California health care providers,
in light of the then-established hearing schedule (in mid-March
2007, the arbitration hearing was set for April 11, 2007) and
Plaintiff's non-cooperation in facilitating the release of his
medical records.  HACS' counsel believes that he followed the
requirements of Rule 45 to insure that the subpoenas to be served
would be enforceable.  See Osaki Affidavit.  HACS' counsel's
concerns about enforce-ability were not idle musings since
Plaintiff's former California attorney subsequently ignored a AAA
subpoena duces tecum, calling it "bogus."  See Exhibit E.

      Plaintiff incorrectly states that there was no pending
federal court case.  See Motion, at 2.  This is not true and
Plaintiff knows it; how else did Plaintiff file this very motion
if there was no pending federal action!  Plaintiff also says that
this civil action is "DISMISSED."  Id.  By filing this very
motion, Plaintiff knows this statement is false.

Plaintiff complains that HACS' counsel referenced civil case "CV 02-9762-NM(SHx)." _Id._, at 3.  That civil number is the civil number assigned to this action when it was originally and improperly (because the dispute was arbitrable at the time of filing) filed in the United States District Court for the Central District of California.  However, _nowhere_ on the subpoenas duces tecum does that civil number appear.  In his effort to find something wrong, Plaintiff probably wished for that civil number to appear out of thin air.  Having cited, but apparently not having actually read Rule 45, Plaintiff seemingly does not comprehend that the Central District appears on the subpoenas because of Rule 45's requirement.

Plaintiff complains that HACS already has his medical records.  _Id._, at 4.  If that were the case, HACS would not have gone through the efforts to obtain them.

Plaintiff misapprehends the authorization request to Mr. William Chang, and complains it was without his consent.  _Id._ This is silly.  HACS requested Mr. Chang of the AAA to obtain Plaintiff's execution of the authorizations.  Plaintiff disregarded the request, and later requests for those authorizations and other means to facilitate the release of his medical records.  _See_ Exhibits A, G, L and M.  Indeed, Plaintiff remains in defiance of Arbitrator Order No. 4 and Arbitrator Order No. 5; this we know because of Dr. Nichols' position that Plaintiff's communication does not authorize him to release medical records.  Plaintiff has not cured that, and HACS is

seeking relief form the Arbitrator.  HACS suspects that Plaintiff thinks it is acceptable to put his medical condition at issue, and then try to hide the ball.

Plaintiff claims that HACS' counsel tried to "trick" his witnesses by "intimidation." See Motion, at 4.  Wrong again. It was very clear that without Plaintiff's authorization to release, none of the health care providers was going to release his medical records.  HACS' counsel communicated with the deponents to make sure that they did not produce without Plaintiff's authorization.  See Exhibit I.  Dr. Nichols still does not believe he has Plaintiff's authorization, based on Plaintiff's own communications to him.

Plaintiff complains about the Arbitrator's email of March 21, 2007, and claims he does not know what it refers to. See Motion, at 5.  See also Exhibit I (email from Judge Mossman, dated March 21, 2007).  This is false.  Plaintiff has a copy of that email because it was part of a later email string.  Id.  In the March 23, 2007 email string, immediately below the Arbitrator's referenced email is Plaintiff's original email.  Id.

Plaintiff's request for sanctions is both procedurally and substantively unfounded.  See Motion, at 6-7.  It is procedurally unfounded because all of the issues surrounding the subpoenas were resolved by the Arbitrator in Arbitrator Order No. 4 and Arbitrator Order No. 5.  The Arbitrator ordered Plaintiff to insure that HACS has access to his medical records. As Dr. Nichols' position has demonstrated, Plaintiff has not

12

complied with the Arbitrator's orders. It is Plaintiff who is in violation of the Arbitrator's orders, and a resolution of that is pending in the AAA arbitration. It is substantively unfounded because the Arbitrator recognized HACS' fundamental right to access Plaintiff's medical records, from Plaintiff's own witnesses. Despite repeated requests, Plaintiff has never signed an authorization to release his records provided to him by HACS' counsel. Plaintiff has not disclosed his communications with his health care providers, and HACS' counsel has seen only one such communication because Dr. Scaff has produced Plaintiff's medical records. All of these issues are before the Arbitrator for resolution.

Finally, Plaintiff's complaints about the Arbitrator himself are misplaced. See Motion, at 1. Plaintiff moved to disqualify the Arbitrator in the arbitration proceedings, on the grounds that the Arbitrator "endorsed" the effort to obtain Plaintiff's medical records, and on the grounds that the Arbitrator would not allow a non-lawyer to represent Plaintiff in the arbitration and thus commit the offense of practicing law without a license. The AAA denied Plaintiff's motion to disqualify, and upon Plaintiff's insistence for further review, re-affirmed the denial.

IV.  <u>CONCLUSION</u>

       For all of the foregoing reasons, HACS respectfully requests that this Court deny the Motion.

       DATED:   Honolulu, Hawaii   JUN. 1 5 2007  _____.

                        _____
                        CARL H. OSAKI
                        Attorney for Defendant
                        HAWAII AVIATION CONTRACT
                          SERVICES, INC.

14