# Carl Osaki

| | |
|---|---|
| **From:** | Brigitte Omane [Omaneb@adr.org] |
| **Sent:** | Friday, May 25, 2007 4:01 AM |
| **To:** | cho@hawaii.rr.com |
| **Cc:** | Allison Kubo (E-mail); Martin Ventress (E-mail) |
| **Subject:** | RE: 5/24 Ventress v. HACS - status of document discovery effort by HACS and request for resolution of pending issues related thereto |
| **Importance:** | High |

Fact
:et-SUBPOENAS (2).

Good Morning:

In response to your inquiry please see the attached fact sheet regarding subpoenas in arbitration. Please be advised that state law usually governs subpoenas as such the AAA has no jurisdiction over subpoenas.

Regards,

-----Original Message-----
From: Carl Osaki [mailto:cho@hawaii.rr.com]
Sent: Thursday, May 24, 2007 5:37 PM
To: Brigitte Omane
Cc: Allison Kubo (E-mail); Martin Ventress (E-mail)
Subject: 5/24 Ventress v. HACS - status of document discovery effort by HACS and request for resolution of pending issues related thereto

Ms. Omane:

I am following up on my letter to you of May 16, 2007, regarding my effort to obtain non-privileged document discovery from claimant's former attorney, Martin Cervantes, Esq. Mr. Cervantes' intent appears to be non-compliance.

My question is: What does AAA do in the instance of a non-compliant deponent? I know that I can either open a special proceeding in court in order to obtain documentary discovery, or I can use the pending federal action to do the same. That way, I would have a judicial forum available to enforce a subpoena. I do not know how the AAA intends to enforce its subpoena. If you can enlighten me on that, I would appreciate it.

Presently, my discovery effort as to Mr. Cervantes is lodged between a rock and a hard place. Mr. Cervantes calls the AAA subpoena "bogus." Claimant, on the other hand, terms subpoenas issuing from the pending federal court action "fraudulent." I, therefore, am in need of your directions.

I am also following up on the discovery from the health care providers identified by claimant. As you will recall, the Arbitrator ordered claimant to have the health care provider witnesses produce documents. See Arbitrator's Prehearing Order No. 4 On Respondent's Motion To Compel ("Order No. 4"); Arbitrator's Prehearing Order No. 5 On Respondent's Motion To Continue ("Order no. 5"). These witnesses are as follows: William Frank Brath; Garrett O'Connor; Bryan K. Nichols, Ikichukwu Ohiaeri and Jack H.
Scaff. See Order, No. 4. Claimant was to have sent these witnesses authorizations to release his medical records. See Order No. 5. Claimant says that he has provided these authorizations, although he has

1



not provided copies of these authorizations to me.

The status of discovery upon these witnesses is as follows:

    Dr. Scaff:  Dr. Scaff informs that he is ready to produce claimant's medical records.  I will pick them up and make copies.

    Dr. Nichols:   Dr. Nichols received a letter from claimant, and while he initially informed my office that he would produce claimant's medical records, he subsenquently informed me that he re-interpreted claimant's letter as not authorizing him to release claimant's medical records.  I have not seen claimant's letter to Dr. Nichols, so I cannot comment on Dr. Nichols' position.  All I know is that Dr. Nichols feels that he does not have claimant's authorization to release his medical records.  Claimant should be made to clarify to Dr. Nichols that Dr. Nichols does, in fact, have claimant's authorization to release his medical records.  Otherwise, claimant will remain in violation of Order No. 5.

    Dr. Ohiaeri:   Through a deposition upon written questions of Jason Hazelitt, the custodian of records at Foothill Behavioral Health Consultants, 16519 Victor Street, Victorville, California, Dr. Ohiaeri produced no records pertaining to claimant because they do not have any such records.

    Dr. Brath:  Dr. Brath's office informs that claimant's records would most likely be at Centinela Hospital, Airport Medical Clinic, 9601 S. Sepulveda Blvd., Los Angeles, California 90045 ("Centinela").  Dr. Brath's staff states that he has no control over claimant's records at Centinela.  I am, therefore, sending you via courier a AAA subpoena duces tecum directed to Centinela seeking production of cliamant's medical records, along with courier pouches to the Arbitrator; back to you; and back to me to facilitate the processing of the subpoena.  Because I do not have possession of any executed authorizations to release medical records from claimant, I also request that you direct cliamant to authorize the release of his medical records at Centinela.

    Dr. O'Connor:   Dr. O'Connor's office claims that he was not served with the subpoena.  Rather than have a dispute about that, I am also sending you via courier a AAA subpoena duces tecum directed to Dr. O'Connor seeking production of claimant's medical records, along with courier pouches to the Arbitrator; back to you; and back to me to facilitate the processing of the subpoena.  Because I do not have possession of any executed authorizations to release medical records from claimant, I also request that you direct claimant to authorize the release of his medical records in Dr. O'Connor's possession.

Thank you for your attention to these pending matters.  I appreciate your assistance.

Carl H. Osaki, Esq.



American Arbitration Association
*Dispute Resolution Services Worldwide*

# Fact Sheet

## Subpoenas

**Q.** How do I subpoena someone?
**A.** Anyone authorized by law to issue subpoenas may do so in arbitration. In addition, under many arbitration statutes, the arbitrator can issue subpoenas either at the request of a party or independently. In either instance, the parties are responsible for preparation of the subpoena, service and enforcement. We have subpoena forms available for use by the parties or the arbitrator.

**Q.** Is the arbitrator the only one who can sign a subpoena?
**A.** An arbitrator or other person who is authorized by law to subpoena witnesses or documents may sign a subpoena in an arbitration.

**Q.** In a panel of three arbitrators, can only one arbitrator issue the subpoena?
**A.** Unless the law provides to the contrary, or the parties otherwise agree, decisions on subpoena issuance should be made by a majority of the panel.

**Q.** What does the subpoena process involve?
**A.** The following steps generally take place when subpoenas are sought by a party:
1. Party/attorney informs the AAA case administrator of its wish to request subpoena(s),
2. AAA case administrator sends subpoena form(s) to the party/attorney for completion,
3. Party/attorney completes subpoena form(s) and returns same to the administrator,
4. Administrator sends completed subpoena form(s) to the arbitrator for review and signature, if determined by the arbitrator to be appropriate (if there are three arbitrators serving, at least a majority will generally sign the subpoenas),
5. If acceptable, the arbitrator signs the subpoena(s) and returns same to the administrator. If time is of the essence, the arbitrator, upon notification of the administrator, may forward the signed subpoena(s) directly to the requesting party/attorney,
6. Administrator receives subpoena(s) and returns same to the requesting party/attorney,
7. Requesting party/attorney serves subpoena(s) on witness or custodian of documents.

**Q.** Can I subpoena someone from another state?
**A.** Yes, in certain situations. This requires review of the applicable law under your particular circumstances. The AAA as a neutral administrator cannot review this issue. Ultimately, enforcement of the subpoena lies with the court, not the AAA.

**Q.** May an arbitrator refuse to sign a subpoena requested by a party?
**A.** Generally, arbitrators will issue subpoenas at the request of a party. In some instances, an arbitrator may question the need for the subpoena requested and ask the case administrator to obtain detailed information from the requesting party to aid the arbitrator in deciding whether or not to sign the subpoena. If the arbitrator deems it appropriate, the subpoena request may be disclosed to all parties. In the alternative, the arbitrator might reserve decision, subject to oral argument of the parties at the time of the hearing.

The purpose of this Q&A is to provide a brief explanation regarding the subpoena process.
Please make sure to review the applicable rules and guides for additional information.

 American Arbitration Association
*Dispute Resolution Services Worldwide*

# Fact Sheet page 2

## Subpoenas

Q. How are subpoenas enforced?
A. Enforcement of subpoenas comes from the courts.

Q. What if someone I subpoena doesn't show up for the hearing?
A. If a subpoena is ignored, it is up to the requesting party to have that subpoena enforced through a court of proper jurisdiction. Arbitrators may draw "negative inferences" about a party's failure to abide by a subpoena.

Q. Need I inform my adversary that I intend to obtain a subpoena?
A. Copies of correspondence or other information with respect to subpoenas are normally not exchanged between the parties or discussed. With the mutual agreement of the parties or at the direction of the arbitrator, however, copies of such correspondence and subpoenas may be exchanged between the parties.

Q. Can a party request an arbitrator to quash a subpoena?
A. A party to the arbitration who is served with a subpoena and questions the validity of the subpoena, may raise the issue before the arbitrator at the hearing. The arbitrator may then rule as to whether the subpoena should be quashed.

Q. Who should I contact if I have questions regarding subpoenas or any other general questions about the process?
A. Contact the case administrator assigned to your case. The case administrator has the most knowledge about every aspect of your case and is there to assist you throughout the process.

The purpose of this Q&A is to provide a brief explanation regarding the subpoena process.
Please make sure to review the applicable rules and guides for additional information.