# MINUTES

| | |
|---|---|
| CASE NUMBER: | CIVIL NO. 03-00451SPK-LEK |
| CASE NAME: | Martin Ventress, et al. Vs. Hawaii Aviation Contract Services, Inc. |
| ATTYS FOR PLA: | |
| ATTYS FOR DEFT: | |
| INTERPRETER: | |

| | | | |
|---|---|---|---|
| JUDGE: | Leslie E. Kobayashi | REPORTER: | |
| DATE: | 07/02/2007 | TIME: | |

COURT ACTION:  EO: Court's Inclination Re Plaintiff's Motion to Quash Subpoena Duces Tecum, filed May 25, 2007

     The Court, having reviewed Plaintiff Martin Ventress' ("Plaintiff") Motion to Quash Subpoena Duces Tecum, filed May 25, 2007, Defendant Hawai`i Aviation Contract Services' ("HACS") Memorandum in Opposition, filed June 15, 2007, and hereby informs the parties of its inclination to DENY the motion as indicated below.

     Plaintiffs Jack L. Crawford and Martin Ventress (collectively "Plaintiffs") filed the instant employment discrimination action against Defendants Japan Airlines and Jalways (collectively "Japan Defendants") and HACS in the United States District Court for the Central District of California.  The case was transferred to the District of Hawai`i on August 20, 2003.  Plaintiffs' claims against the Japan Defendants were dismissed and severed from their claims against HACS on October 20, 2004.  Final judgment was entered on October 25, 2004 in favor of the Japan Defendants and both Ventress and Crawford filed notices of appeal to the Ninth Circuit.  On November 16, 2004, Plaintiffs and HACS, stipulated to stay the case pending arbitration ("Stipulation").  The Court has exercised oversight authority over the arbitration proceedings, which are before the American Arbitration Association ("AAA").

     On May 25, 2007, Plaintiff filed the instant Motion to Quash Defendant Hawaii Aviation Contract Services, Inc.'s Subpoenas Duces Tecum.  He claims that Carl Osaki, counsel for Defendant Hawaii Aviation Contract Services, Inc., falsely served a subpoenas duces tecum ("SDT") in the midst of arbitration.  Plaintiff also takes issue with the arbitrator and filed a motion for disqualification because of his perception that the arbitrator had demonstrated bias and a preferential interest for HACS.  [Mot. at 2.]

With respect to the SDT, Plaintiff specifically claims that Mr. Osaki served false SDT, without the arbitrator's signature, to medical doctors on Plaintiff's witness list. [Id. at 3.] Plaintiff accuses Mr. Osaki of fraudulently using the district courts in Hawaii and central California to support his "illegal" demand, as there were no pending actions in these courts. (Plaintiff apparently believes this case was dismissed in November 2004.) In particular, Plaintiff complains about a SDT that Mr. Osaki purportedly served on Martin Cervantes, a California attorney. [Id. at 6.]

Because of his belief that Mr. Osaki has improperly issued/falsely served SDT, Plaintiff asks the Court to impose Rule 11 sanctions and sanctions for violations of Federal Rule of Civil Procedure 26(g), made payable to the Court. In conclusion, Plaintiff argues that HACS already requested and received his medical records and that Mr. Osaki authorized William Chang (of AAA) to obtain and use Plaintiff's medical information and records in arbitration without his written consent. [Id. at 8.]

On June 15, 2007, HACS filed its Opposition. According to HACS, because Plaintiff put his mental state at issue, it requested that he execute authorizations to the release of his medical records, which HACS never received. [Opp'n at 2.] On January 24, 2007, Plaintiff submitted an updated witness list that identified five experts, all of whom are health care providers, four of whom reside in California and one who resides in Hawaii. After careful deliberation, Mr. Osaki determined that the most effective and appropriate method of serving these experts with enforceable subpoenas would be to utilize the pending federal court action because he questioned the validity of an AAA subpoena, especially as it pertained to the out-of-state experts. [Id. at 3-4.]

HACS claims that on or about March 15, 2007, it served the health care providers located in California with SDT, notified Plaintiff, and served Plaintiff with the same. Plaintiff objected to the SDT on or about March 20, 2007. [Id. at 7.] HACS filed a Motion to Compel Plaintiff to execute authorizations to release his medical records, which the arbitrator granted. Mr. Osaki provided Plaintiff with a form letter authorizing the release of Plaintiff's medical records as well as the contact information for all of his health care provider witnesses. Even though the arbitrator issued another order directing Plaintiff to provide releases to the witnesses, HACS has never received copies indicating that Plaintiff complied. [Id. at 8.] HACS reports that as of May 24, 2007, Dr. Scaff produced Plaintiff's medical records; Dr. Ohiaeri's custodian of records informed HACS that there were no records pertaining to Plaintiff; Dr. O'Conner was not served with a subpoena due to service issues; Dr. Brath's office informed HACS that Plaintiff's records were probably located at Centinela Hospital, Airport Medical Center, Los Angeles; and Dr. Nichols interpreted Plaintiff's letter as not authorizing the release of medical records. [Id. at 8-9.]

HACS further explains that the instant Motion is moot because the arbitrator has already decided the issues. [Id. at 9 (citing Exs. K & N to Opp'n).] Currently before the arbitrator is the issue of Dr. Nichols interpretation that Plaintiff did not authorize the release of medical records. With respect to Plaintiff's remaining points of contention, HACS submits that they are without merit. First, HACS counters Plaintiff's assertion that there is no pending federal action. Second, HACS notes that it never used the civil

number from the central district of California case (where Plaintiff originally filed suit) on the SDT, but that it had to use the central district pursuant to FRCP 45 to properly effectuate the subpoena. Third, HACS disputes Plaintiff's claim that it already has his medical records. Fourth, HACS clarifies that it never authorized Mr. Chang of AAA to obtain and use Plaintiff's medical records in arbitration, but merely requested that Mr. Chang obtain Plaintiff's execution of the authorizations. Fifth, Mr. Osaki maintains that he never tried to "trick" Plaintiff's witnesses and instead communicated with the deponents to ensure that they did not produce the documents without Plaintiff's authorization. Sixth, HACS addresses Plaintiff's complaint that he was not included in an email from an email from the arbitrator to Mr. Osaki by noting that the email was part of a later email string. [Id. at 10-12.]

Regarding Plaintiff's request for sanctions, HACS argues that the request is both procedurally and substantially unfounded. It is procedurally unfounded because the arbitrator already resolved the issues related to the subpoenas and ordered Plaintiff to authorize the release of his medical records. [Id. at 12-13; Exs. K & N to Opp'n.] According to HACS, it is substantively unfounded because the arbitrator recognized HACS' right to access the records. HACS emphasizes that Plaintiff is the party who has violated the arbitrator's orders. [Id. at 13.]

Lastly, HACS contends that Plaintiff's complaints about the arbitrator are misplaced. HACS explains that Plaintiff moved to disqualify the arbitrator on the grounds that the arbitrator 1) "endorsed" HACS' effort to obtain Plaintiff's records and 2) would not allow a non-lawyer to represent Plaintiff. AAA denied Plaintiff's motion and after Plaintiff insisted on further review, AAA reaffirmed its denial. [Id.]

## STANDARD

Rule 45 governs the issuance of subpoenas. Specifically, a subpoena may "command each person to whom it is directed . . . to produce . . . documents . . . in the possession, custody or control of that person[.]" Fed. R. Civ. P. 45(a)(1)(C). Where a subpoena is issued for production, it must issue "from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C). A subpoenaed party may move to quash or modify the subpoena on various grounds, including that the subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed. 2007).

As the instant matter has been stayed pending arbitration, discovery cannot be conducted unless and until the stay is lifted. Discovery issues are proper for consideration and ruling by the Arbitrator and not the federal court. Federal courts have the discretion to stay the discovery process pending the conclusion of arbitration. Airline Pilots' Ass'n v. Miller, 523 U.S. 866, 880 n.6 (1998).

The Court is therefore inclined to deny the Motion and the request for Rule 11

sanctions.

      The parties should appear at the July 3, 2007 hearing prepared to discuss these issues and/or to direct the Court to controlling case law that either supports or contradicts this matter.  The Court notes, this inclination is intended only to help the parties prepare for oral argument and is not the Court's final decision in the matter.  Rather, the parties are encouraged to raise relevant case law and/or facts to show the Court why its inclination is mistaken or correct.


Submitted by: Warren N. Nakamura, Courtroom Manager