IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARTIN VENTRESS and
JACK CRAWFORD,

       Plaintiffs,

   vs.

JAPAN AIRLINES; JALWAYS CO.,
LTD.; HAWAII AVIATION
CONTRACT SERVICES, INC.; and
DOES 1-10, inclusive,

       Defendants.

CIVIL NO.  03-00451 SPK/LEK

MEMORANDUM IN SUPPORT OF
MOTION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   LEGAL STANDARD FOR ADJUDICATING THIS MOTION.................3

III.  ARGUMENT.......................................................................................4

    A.    JAL is Shielded by Its Corporate Structure.........................................6

    B.    The Alter Ego or Mere Instrumentality Exceptions to the
        Corporate Shield are Inapplicable .........................................................9

    C.    Plaintiffs Cannot Prove JALways Had No Autonomy or
        Substantive Purpose Separate and Apart from that of JAL ...............10

    D.    A Downstream Subsidiary Relationship Alone is Not Enough to
        Establish The "Mere Instrumentality" Exception .............................11

    E.    The "Mere Instrumentality" Exception Requires that Any
        Structural Fraud be Directed at the Plaintiffs....................................12

    F.    Plaintiffs Cannot Meet Their Burden to Pierce the Corporate
        Veil of JALways.................................................................................13

    G.    Plaintiffs Cannot Meet Their Burden Under the Relevant
        Standards for the Alter Ego Doctrine as Recently Interpreted by
        this Court ............................................................................................15

IV.   CONCLUSION...............................................................................19

TABLE OF AUTHORITIES

Page

## **Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 250 (1986) ..........................................................................3, 4

*Cahill v. Hawaiian Paradise Park Corp.*,
  56 Haw. 522, 526, 543 P.2d 1356, 1360 (1975).............................................7

*Calvert v. Huckins*, 875 F. Supp.
  674, 678 (E.D. Cal. 1995)...........................................................................13

*Cascade Energy & Metals Corp. v. Banks*,
  896 F.2d 1557, 1576 (10th Cir. 1990), *cert. denied*, 498 U.S. 849 (1990) .....9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)......................................................................................4

*Chung v. Animal Clinic, Inc.*,
  63 Haw. 642, 646, 636 P.2d 721, 724 (1981)........................................ passim

*Comstock v. Group of Institutional Investors*,
  335 U.S. 211, 230 (1948) ..............................................................................9

*De Jesus v. Sears, Roebuck & Co.*,
  87 F.3d 65, 69 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996) .. 5, 10, 11,
  15

*Escude Cruz v. Ortho Pharm. Corp.*,
  619 F.2d 902, 905 (1st Cir. 1980) ......................................................... 13, 14

*Evanston Ins. Co. v. Luko*,
  7 Haw. App. 520, 522, 783 P.2d 293, 295 (1989).......................................7, 8

*Fina Oil & Chem. Co. v. Amoco Prod. Co.*,
  673 So. 2d 668, 673 (La. Ct. App. 1996), *writ denied,* 679 So. 2d 1353 (La.
  1996) ...................................................................................... 6, 11, 14

*First Nat'l Bank v. Cities Serv. Co.*,
  391 U.S. 253, 290 (1968) ..............................................................................4

TABLE OF AUTHORITIES

Page

*Firstmark Capital Corp. v. Hempel Fin. Corp.*,
    859 F.2d 92, 95 (9th Cir. 1988) ....................................................16

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389, 1393 (9th Cir. 1984) ...................................... 9, 12

*Frank v. U.S. West, Inc.*,
    3 F.3d 1357, 1362 (10th Cir. 1993) .............................................10

*Hambleton Bros. Lumber Co. v. Balkin Enter.*,
    397 F.3d 1217, 1227 (9th Cir. 2005) ...........................................16

*Hando v. PPG Indus., Inc.*,
    771 P.2d 956, 960 (Mont. 1989) ..................................................12

*Henry Waterhouse Trust Co. v. Home Ins. Co.*,
    27 Haw. 572, 581, 1923 WL 2802 *5 (1923)........................ 6, 7, 8

*Hilo Crane Serv., Inc. v. Ho*,
    5 Haw. App. 360, 374, 693 P.2d 412, 422 (1984), *cert. denied*, 67 Haw. 685,
    744 P.2d 781 (1985) ....................................................... 7, 8, 9

*In re Mid-Town Produce Terminal, Inc.*,
    599 F.2d 389, 393 (10th Cir. 1979) ..............................................8

*Johnson v. Flowers Indus., Inc.*,
    814 F.2d 978, 980-81 (4th Cir. 1987)...........................................10

*Kahili, Inc. v. Yamamoto*,
    54 Haw. 267, 269-70, 271-72, 506 P.2d 9, 11-12 (1973)........................ 7, 16

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175, 1177 (9th Cir. 1980) ...........................................12

*N.L.R.B. v. Deena Artware, Inc.*,
    361 U.S. 398, 402-03 (1960) ......................................................10

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471, 485 (3d Cir. 2001), *cert. denied*, 534 U.S. 950 (2001) ..........16

# TABLE OF AUTHORITIES

Page

*Quarles v. Fuqua Indus., Inc.*,
   504 F.2d 1358, 1362 (10th Cir. 1974) ..........................................................11

*Riggins v. Dixie Shoring Co., Inc.*,
   590 So. 2d 1164, 1167 (La. 1991) ..................................................................6

*Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co.*,
   91 Hawai'i 224, 243, 982 P.2d 853, 872 (1999)..................................... passim

*Schmidt v. Beverly Health and Rehabilitation Servs., Inc.*,
   993 F. Supp. 1354, 1360 (D. Kan. 1998) .....................................................12

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,*
    809 F.2d 626, 630 (9th Cir. 1987 .............................................................3, 4

*Television Events & Marketing, Inc. v. AMCON Distrib., Co.*,
   484 F. Supp. 2d 1124, 1141 n.16 (D. Haw. 2006) .......................... 15, 16, 18

*THI-Hawaii, Inc. v. First Commerce Fin. Corp.*,
   627 F.2d 991, 994 (9th Cir. 1980) ................................................................4

*Tropic Builders, Ltd. v. Naval Ammunition Depot Lualualei Quarters, Inc.*,
   48 Haw. 306, 326, 402 P.2d 440, 452 (1965)................................................7

*Williams v. McAllister Bros., Inc.*,
   534 F.2d 19, 21 (2d Cir. 1976) .....................................................................5

## <u>Statutes</u>

Haw. Rev. Stat. chs.  415A ...........................................................................6

Haw. Rev. Stat. chs. 414 ...............................................................................6

Haw. Rev. Stat. chs. 414D..............................................................................6

Haw. Rev. Stat. chs. 419 ...............................................................................6

Haw. Rev. Stat. chs. 421I...............................................................................6

## TABLE OF AUTHORITIES

Page

### **Other Authorities**

Fed. R. Civ. P. 56(e)......................................................................4

### **Rules**

1 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS
§ 41, at 603 (rev. ed. 1990 & Supp. 1994) ............................... 8, 13

FLETCHER CYC. § 41.30, at 662 .................................................10

FLETCHER CYC. § 43, at 729 & n.1 ............................................12

FLETCHER CYC. § 43, at 729 & nn.4-5 .......................................12

FLETCHER CYC. § 43.10, at 758 & n.2 ........................................10

FLETCHER CYC. § 43.10, at 758 & n.5 ........................................11

FLETCHER CYC. § 43.10, at 759 & n.16 .................................. 11, 13

FLETCHER CYC. § 43.10, at 759 & n.17 .......................................13

FLETCHER, 1 CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS
§ 41.95, at 699-705 (1999) .......................................................16

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiffs Martin Ventress ("**Ventress**") and Jack Crawford ("**Crawford**") (collectively "**Plaintiffs**") were employed by Defendant Hawaii Aviation Contract Services, Inc. ("**HACS**"), as a DC-10 flight engineer and a DC-10 pilot, respectively (*see* Concise Statement ("**CS**"), Nos. 21 and 22), until declared ineligible to fly under the rules of the Japan Civil Aeronautics Board ("**JCAB**"), a Japanese federal government agency akin to the U.S. Federal Aviation Administration.  Under Plaintiffs' respective employment contracts with HACS, Plaintiffs were assigned to Defendant Jalways Co., Ltd. ("**JALways**"), Ventress as a flight engineer and Crawford as a pilot, flying international routes.  *Id.*  Ventress was medically disqualified, and Crawford received an unsatisfactory grade on his performance review; the contracts between HACS and JALways required HACS to terminate Plaintiffs' assignments to JALways.

Despite those proper determinations of ineligibility, Plaintiffs claim that they were improperly terminated as a result of an alleged "pattern of harassing conduct by Defendants JAL … including … questioning Plaintiff Martin Ventress's mental competency … and preventing him from working."  Compl. ¶ 22.  Plaintiff Crawford also alleges he was terminated "in retaliation for … voicing his concerns regarding Defendant JAL's policy that captains fly aircraft despite being sick."  *Id.*

¶ 34.  Not content to sue their ***only***, actual employer (*i.e.,* HACS), Plaintiffs also sued JALways, the airline to whom they had been assigned as flight deck officers under their respective employment contracts with HACS.[1]  Seeking remuneration from even deeper pockets and continuing up the corporate ladder, Plaintiffs also improperly sued JALways' parent company, JAL.

Plaintiffs claim JAL is responsible and liable for whatever harm they allegedly suffered from HACS' termination of their assignment to JALways.  Compl. ¶¶ 28, 32, and 36.  Because Plaintiffs never were employed by JAL (or JALways), however, the only logical inference for naming JAL as a defendant in this lawsuit is that Plaintiffs must be alleging that JAL so dominated the operations of its subsidiary JALways, that JALways should be deemed JAL's *alter ego* (or mere instrumentality), that Jalways' corporate veil should be pierced, and JAL, as JALways' sole shareholder, should be held to pay for JALways' purported liability concerning Plaintiffs.  Reality (an all applicable law) negates that theory.

---

[1]  Plaintiffs' ability to raise valid claims against JALways is also questionable, because their claims are predicated upon an employer-employee relationship that never existed between Plaintiffs and JALways:  Plaintiffs were employed by HACS, not JALways or JAL.  This Motion nonetheless focuses only on the legal defects in Plaintiffs' claims against JAL; the legal defects of claims against JALways are reserved for another motion.

JAL moves for partial summary judgment seeking dismissal from the case.[2] JAL has no legal relationship with JALways (other than as its sole shareholder); JAL cannot, as a matter of law, be held liable for JALways' acts, absent a finding that JALways is JAL's *alter ego*.  Because Plaintiffs lack the evidentiary facts to contend JAL so dominated JALways that JAL should be held liable for JALways' actions vis-à-vis the Plaintiffs, JAL is entitled to partial summary judgment dismissing JAL from this suit.

## II.    LEGAL STANDARD FOR ADJUDICATING THIS MOTION

JAL is entitled to partial summary judgment on all of Plaintiffs' claims: there is no genuine issue of material fact as to whether JAL can be held vicariously liable for the alleged acts of its subsidiary JALways, via piercing JALways' corporate veil or otherwise.  Under Fed. R. Civ. P. 56, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  The moving party must "identify[] for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact[.]"  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir. 1987 (citing *Celotex Corp. v.*

---

[2]  JALways does not participate in this motion and seeks no relief by it.

*Catrett*, 477 U.S. 317 (1986)).  If the moving party does so, the opposing party

may not defeat the motion absent significant probative factual evidence supporting

its legal theory.  *THI-Hawaii, Inc. v. First Commerce Fin. Corp*., 627 F.2d 991,

994 (9th Cir. 1980) (citing *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 290

(1968)).  The opposing party cannot stand on its pleadings or assert it will discredit

the movant's evidence at trial.  Fed. R. Civ. P. 56(e); *T.W. Elec. Serv.*, 809 F.2d at

630; *Anderson*, 477 U.S. at 248 ("[A] party opposing a properly supported motion

for summary judgment 'may not rest upon the mere allegations or denials of a

pleading, but … must set forth specific facts showing that there is a genuine issue

for trial.'").

## III.  ARGUMENT

It is indisputable that Plaintiffs never had an employment relationship, or

any other contractual connection with JAL.  CS Nos. 21and 22.  Plaintiffs'

employment contracts were with HACS, not JALways or JAL, for assignment only

to JALways, never JAL.  *Id.*  Undaunted by that crushing factual reality, Plaintiffs

sued JAL to bring "deeper pockets" to the table and extract a larger settlement than

otherwise might be possible from HACS or JALways alone.  Although this tactic

has been known to work against litigation-averse Japan corporations, JAL refuses

to give into that increasingly-common and altogether reprehensible tactic.

Despite the lack of any plausible legal theory to sue JAL, and without any apparent pre-filing investigation into the facts, Plaintiffs appear to be invoking the *alter ego* doctrine (or mere instrumentality rule) to pierce JALways' corporate veil and hold JAL liable for JALways' tenuous relationship with Plaintiffs.[3]  Any characterization of JALways as an *alter ego* of JAL is false, because it ignores: (1) controlling Hawaii law fastidiously respecting the integrity of separate corporate entities; and (2) the relevant, undisputed or indisputable facts on the relationship between the corporate entities involved in this case.  CS Nos. 1-26.

Plaintiffs apparently believe JALways was an *alter ego* of JAL, because JAL is the sole shareholder and parent corporation of JALways.  That basis is *never* enough under the law to pierce a corporation's veil.  As elaborated below, JALways and JAL each are large, separate business entities that follow all requisite corporate formalities.[4]  As a matter of law, Plaintiffs cannot establish that JALways

---

[3]  There was no direct relationship between Plaintiffs and JAL.  The only logical inference is that Plaintiffs are pursuing the indirect liability theory of "piercing the corporate veil."

[4]  "Ownership by a parent of all its subsidiary's stock has been held an insufficient reason in and of itself to disregard distinct corporate entities."  *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996) (quoting *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 21 (2d Cir. 1976)); *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i 224, 243, 982 P.2d 853, 872 (1999) ("control is determined by the actual relationship of the parties, formal stock ownership is not dispositive."); *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 646, 636 P.2d 721, 724 (1981) (exclusive ownership and

was an *alter ego* (or mere instrumentality) of JAL.  Accordingly, this Court should dismiss JAL from being a defendant in this case.

### A.    JAL is Shielded by Its Corporate Structure.

Corporate existence is a matter of statutory law and separate corporations clearly are recognized as separate judicial entities under the law.[5]  Corporations are allowed to exist as entities distinct and separate from their officers, directors and shareholders because "[t]he role of the corporate identity is perceived as beneficial to business and industry."  *Fina Oil & Chem. Co. v. Amoco Prod. Co.,* 673 So. 2d 668, 673 (La. Ct. App. 1996), *writ denied,* 679 So. 2d 1353 (La. 1996) (citing *Riggins v. Dixie Shoring Co., Inc.*, 590 So. 2d 1164, 1167 (La. 1991)).

As with *all* other American jurisdictions, Hawaii has long shown a healthy respect for the integrity of the corporate entity.  Indeed, since at least 1923, Hawaii's courts have upheld a presumption of corporate separateness.  *See Henry Waterhouse Trust Co. v. Home Ins. Co.*, 27 Haw. 572, 581, 1923 WL 2802 *5 (1923) (where a corporation has been formed, it has an "existence as a separate and distinct entity."); *Evanston Ins. Co. v. Luko*, 7 Haw. App. 520, 522, 783 P.2d 293,

---

control is not "solely determinative on the issue of whether we should disregard the corporate entity[.]").

[5]  *See*, *e.g.*, Haw. Rev. Stat. chs. 414 (Business Corporation Act); 414D (Nonprofit Corporations Act); 415A (Professional Corporation Act); 419 (Ecclesiastical Corporations Act); and 421I (Cooperative Housing Corporations Act).

295 (1989) (same) (quoting *Henry Waterhouse*).  "**Hawai'i courts have been**

**reluctant to disregard the corporate entity**."  *Robert's Hawaii*, 91 Hawai'i at 241

n.12, 982 P.2d at 870 n.12 (emphasis added).[6]

Hawaii cases show pronounced deference to the integrity of separate

corporate entities:

> The general rule is that a corporation and its shareholders are to be treated as distinct legal entities.  The corporate "veil" will be pierced and the legal entity of the corporation will be disregarded *only* where recognition of the corporate fiction would bring about injustice or inequity or when there is evidence that the corporate fiction has been used to perpetuate a fraud or to defeat a rightful claim.

*Chung*, 63 Haw. at 645, 636 P.2d at 723 (emphasis added; citations omitted).

---

[6]  *Robert's Hawaii* exemplified that statement with this string citation:  "*See Evanston Ins. Co. v. Luko*, 7 Haw. App. 520, 525, 783 P.2d 293, 297 (1989) (piercing corporate veil will "accomplish nothing"); *Hilo Crane Service*, 5 Haw. App. at 374-75, 693 P.2d at 422 (refusing to disregard corporate entity to apply principle of equitable subordination, stating that "mere control or domination of a corporation is not proscribed by law and is in itself insufficient to justify piercing the corporate veil and subordinating claims"); *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 645, 636 P.2d 721, 723 (1981) (refusing to pierce corporate veil in order to deny owner/employee's workers' compensation benefits); *Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 526, 543 P.2d 1356, 1360 (1975) (refusing to apply alter ego doctrine); *Tropic Builders, Ltd. v. Naval Ammunition Depot Lualualei Quarters, Inc.*, 48 Haw. 306, 326, 402 P.2d 440, 452 (1965) ("[W]e see no valid reason why the corporate veil should be pierced merely to add another string to plaintiff's bow."); *Henry Waterhouse Trust Co.*, 27 Haw. at 582, 586 (refusing to pierce corporate veil and stating that party claiming corporation is mere instrumentality carries the burden of proof); *cf. Kahili, Inc. v. Yamamoto*, 54 Haw. 267, 269-70, 271-72, 506 P.2d 9, 11-12 (1973) (piercing corporate veil because (1) two shareholders owned all stock, (2) corporation was undercapitalized, and (3) shareholders' behavior in lease negotiations suggested they were acting for their behalf rather than for the corporation)."

As the *Chung* court recognized, "[t]he fact that a sole or principal stockholder dominates the corporation violates no statutory requirement, is not opposed to public policy, and constitutes no fraud on creditors." *Id.* at 646, 636 P.2d at 724. Indeed, tolerance of the corporate fiction is so deeply ingrained in our law that the leading treatise on corporate existence states that the "entire point of the corporate veil doctrine is that form does prevail over substance." 1 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41, at 603 (rev. ed. 1990 & Supp. 1994) ("**FLETCHER CYC.**"). The same theme was echoed in *Hilo Crane Serv., Inc. v. Ho*, 5 Haw. App. 360, 374, 693 P.2d 412, 422 (1984), *cert. denied*, 67 Haw. 685, 744 P.2d 781 (1985) ("[M]ere control or domination of a corporation is not proscribed by law and is in itself insufficient to justify piercing the corporate veil and subordinating claims.") (quoting *In re Mid-Town Produce Terminal, Inc*., 599 F.2d 389, 393 (10th Cir. 1979)) and *Evanston Ins. Co.*, 7 Haw. App. at 522, 783 P.2d at 295 ("[T]he general rule [is] that when a corporation has been legally formed, it has an 'existence as a separate and distinct entity.'") (quoting *Henry Waterhouse Trust Co.*, 27 Haw. at 581).

As framed by the foregoing cases, a corporation's separate existence is presumed and a critical prerequisite to overcoming that presumption is a clear showing of misconduct in connection with the corporate existence itself. No such showing can be made concerning the corporate existence of JAL.

**B.    The *Alter Ego* or Mere Instrumentality Exceptions to the Corporate Shield are Inapplicable.**

The only way to circumvent the strong presumption of corporate separateness is via the *alter ego* (or mere instrumentality) exception.  This is a rule of judicial construction that allows courts to prevent an owner from hiding fictionally behind a corporate entity.  To justify piercing the corporate veil under an *alter ego* theory--to thereby hold a parent corporation liable for the acts or omissions of its subsidiary--a plaintiff must demonstrate:  (1) that there is such a unity of interest and ownership between the two corporations that their separate personalities no longer exist; and (2) that an inequitable result would follow if the parent corporation were not held liable.  *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984).  *See also Hilo Crane*, 5 Haw. App. at 373, 693 P.2d at 421 (despite the domination of a subsidiary corporation by the parent, "equitable subordination is inapplicable if the facts reveal 'good faith, fair dealing and freedom from fraud or overreaching' by the parent.") (quoting *Comstock v. Group of Institutional Investors*, 335 U.S. 211, 230 (1948)).

On of the key purposes of corporate law is to allow businesses to incorporate subsidiaries to limit liability and isolate liabilities among separate entities.  *See e.g., Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1576 (10th Cir. 1990), *cert. denied*, 498 U.S. 849 (1990).  One way liability is limited in corporations is that shareholders generally are not liable for the acts of the

corporation. *N.L.R.B. v. Deena Artware, Inc.*, 361 U.S. 398, 402-03 (1960). The doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees; the courts have found otherwise only in extraordinary circumstances. *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980-81 (4th Cir. 1987); *accord Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993) (presumption that parent corporation is ***not*** the employer of its subsidiaries' employees.)

A court must exercise its power to pierce the corporate veil "reluctantly and cautiously." FLETCHER CYC. § 41.30, at 662. Here, JALways is a separate and distinct operating entity from JAL, and *not* an "*alter ego*" or "mere instrumentality" of JAL. CS Nos. 1-26. Here, Plaintiffs have no basis whatsoever upon which to pierce the corporate veil and to hold JAL liable for their alleged injuries by JALways. *Id.* Summary judgment in favor of JAL is appropriate.

### C.    Plaintiffs Cannot Prove JALways Had No Autonomy or Substantive Purpose Separate and Apart from that of JAL.

For the *alter ego* doctrine (or mere instrumentality rule) to apply, there must be total and complete domination of one corporation by another. There must be such domination of finances, policies, and practices, that the controlled corporation has no separate mind, will, or existence of its own; it must be a conduit for the controlling entity. FLETCHER CYC. § 43.10, at 758 & n.2; *see also De Jesus*, 87 F.3d at 70, (requiring a "showing of actual domination" to pierce the corporate

veil); *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974) (*actual* exercise of control, rather than *opportunity* to exercise control, is determinative).

Actual domination is the key; it is not enough to allege (or even prove) that there was an "opportunity" to exercise control. *De Jesus*, 87 F.3d at 69. Further, the control and the breach of duty must proximately cause the injury or unjust loss for which the complaint was made. FLETCHER CYC. § 43.10, at 758 & n.5. Here, JAL exercised no such control and at all relevant times, JALways has maintained its own distinct existence from JAL as demonstrated by their respective separate finances, policies, and practices:  The two corporations operate independently (CS No. 9), share **no** directors or officers (CS Nos. 10-11), are distinctly capitalized (CS No. 13, 14, 20), and deal with each other at arm's length (CS No. 15).  As such, Plaintiffs' claims against JAL have no legal traction under the *alter ego* (or mere instrumentality) theories.  Summary judgment should be granted, dismissing JAL as a defendant.

### D.    A Downstream Subsidiary Relationship Alone is Not Enough to Establish The "Mere Instrumentality" Exception.

The disregard of the subsidiary corporate entity is limited *only* to those circumstances where the subsidiary exists in name only, with *no* autonomy or substantive purpose.  FLETCHER CYC. § 43.10, at 759 & n.16; *see also Fina Oil & Chem. Co.*, 673 So. 2d at 674 (to overcome presumption of separateness, "[t]he circumstances must be so strong as to clearly indicate that corporation and

shareholder [are] one."). A subsidiary is the *alter ego* of the ultimate parent if the corporate affairs of both are so intertwined that each effectively no longer has a separate identity.[7] The default rule and legal presumption is that a corporation will *not* be held liable for the acts of its subsidiaries. FLETCHER CYC. § 43, at 729 & n.1. Given the foregoing law and the facts contained in the Concise Statement and the attached sworn declarations, JAL *cannot* be held liable for the wrongful acts that Plaintiffs allege in relation to its subsidiary, JALways.

### E.    The "Mere Instrumentality" Exception Requires that Any Structural Fraud be Directed at the Plaintiffs.

Even if Plaintiffs could show complete control of JALways by JAL (which they cannot), absent a conscious intent by JAL to use JALways to defraud or otherwise escape liability to Plaintiffs *specifically*, the law will not overturn the presumption of corporate separateness. FLETCHER CYC. § 43, at 729 & nn.4-5.

_____

[7] *See Flynt*, 734 F.2d at 1393. *Cf. Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (no alter ego relationship even though parent corporation guaranteed obligations of its subsidiary, reviewed and approved the major decisions of the subsidiary, placed several of its directors on the subsidiary's board of directors, and was closely involved with the subsidiary's pricing decisions); *Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989) (full ownership of subsidiary, use of same people as directors and officers, and engagement in same general business enterprise, all may not suffice to show subsidiary is merely parent's alter ego); *Schmidt v. Beverly Health and Rehabilitation Servs., Inc.*, 993 F. Supp. 1354, 1360 (D. Kan. 1998) (granting summary judgment on state workers' compensation retaliation claim **and state whistleblower retaliation claim**, because there was no evidence that parent had control over subsidiary) (interpreting Kansas law).

Absent *proof* of some fraudulent purpose directed *specifically* at a given claimant (such as Plaintiffs), a party cannot invoke the *alter ego* doctrine (or mere instrumentality rule) simply because one corporation owns all the stock of the other.  *Id.* § 43.20, at 767; *see also Chung*, 63 Haw. at 646, 636 P.2d at 724 ("Under Hawaii law, there is no specified or minimum number of stockholders that is required for valid corporate existence.  ***The fact that a sole or principal stockholder dominates a corporation violates no statutory requirement, is not opposed to public policy, and constitutes no fraud on creditors***.") (emphases added).

### F.    Plaintiffs Cannot Meet Their Burden to Pierce the Corporate Veil of JALways.

The burden of proof is on Plaintiffs and a plaintiff seeking to disregard a subsidiary's separate corporate identity must "make a *strong showing* to support his theory."  Fletcher Cyc. § 43.10, at 759 & n.17 (emphasis added).  "There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary."  *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (quoting *Escude Cruz v. Ortho Pharm. Corp*., 619 F.2d 902, 905 (1st Cir. 1980)).  "Disregarding the corporate entity is recognized as an *extreme* remedy, and '[c]ourts will pierce the corporate veil only

in *exceptional* circumstances.'" *Id.* (emphasis added) (internal citations omitted).[8]

Once the defendant corporation shows it exists, "the burden shifts to the challenger

or third party to show the exceptional circumstances that must exist to warrant

disregard of the corporation's separate identity." *Fina Oil & Chem. Co.*, 673 So.

2d at 674. "Clear, strong evidence is needed to prove that the shareholder has not

maintained the separate identity of the corporation." *Id.* at 675.

Here, Plaintiffs must make a "strong showing" that JALways essentially is a

sham, shell, or paper subsidiary corporation of JAL.[9] Given the facts in this

memorandum, substantiated by the declarations and exhibits attached to the

Separate Concise Statement, Plaintiffs cannot show the exceptional circumstances

needed to disregard JALways' separate and distinct existence from JAL. The

evidence provided in the sworn declarations of Katsumi Fujita and Yutaka Sasaki

substantiates compellingly the separate corporate *bona fides* of JAL and JALways.

Plaintiffs' opposition to those sworn facts will be nothing more than their

own assumptions, guesses, and speculations on the corporate structure and

---

[8] *See also Fina Oil & Chem. Co.*, 673 So. 2d at 673 ("Only exceptional circumstances warrant disregarding the concept of a corporation as a separate entity.").

[9] That evidentiary showing is impossible: JALways had independent operating revenue in excess of ¥148.4 Billion (*i.e.*, U.S. $1.2 Billion) and net assets in excess of ¥5.5 Billion (*i.e.*, U.S. $46.3 Million) during the fiscal year ending March 31, 2007. *See* Declaration of Yataka Sasaki ("Sasaki Decl.") at ¶ 24.

operations of JAL and JALways.  For a dispositive motion on the issue of piercing the corporate veil, that conjecture is wholly inadequate to create a triable issue.[10]

Plaintiffs' Complaint contains no specific, factual allegations against JAL; it contains none from which it could be inferred that JAL dominated JALways vis-à-vis any Plaintiff, HACS, or any other person or issue.  Accordingly, Plaintiffs' claims against JAL are without merit; summary judgment should be granted, dismissing JAL as a defendant in this lawsuit.

**G.    Plaintiffs Cannot Meet Their Burden Under the Relevant Standards for the Alter Ego Doctrine as Recently Interpreted by this Court.**

This Court recently summarized the law on piercing the corporate veil and *alter ego* liability:[11]

---

[10]  *See*, *e.g.*, *De Jesus*, 87 F.3d at 70 (where complaint did not allege facts from which it could be inferred that one corporation dominated another corporation, the court refused to pierce the corporate veil, dismissed the claims, and held:  "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).") (citation omitted).

[11]  The Court noted the interchangeability of "alter ego" and "piercing the corporate veil":  "The Court recognizes that 'alter ego' liability and 'piercing the corporate veil' are similar theories and are often used interchangeably.  The Hawaii Supreme Court has expressed the theories in this way:  '[a] claim based on an alter ego theory is not itself a claim for substantive relief, but rather to disregard the corporation as a distinct defendant is procedural....An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action.'" *Television Events & Marketing, Inc. v. AMCON Distrib., Co.*, 484 F. Supp. 2d 1124, 1141 n.16 (D. Haw. 2006) (quoting *Robert's Hawaii*, 91 Hawai'i 224, 241, 982 P.2d 853, 870 (Haw. 1999)).

> In diversity actions, federal courts apply state law when evaluating a claim for alter ego liability. *Hambleton Bros. Lumber Co. v. Balkin Enter.*, 397 F.3d 1217, 1227 (9th Cir. 2005); *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 95 (9th Cir. 1988) (**"Courts apply the alter ego doctrine with great caution and reluctance."**); *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp.*, 91 Hawai'i 224, 241, 982 P.2d 853 (1999); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001), *cert. denied*, 534 U.S. 950 (2001).

*Television Events & Marketing, Inc.*, 484 F. Supp. 2d at 1141-42 (emphasis

added). This Court explained:

> [A] corporation may be the alter ego of another "where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." *Robert's Hawaii,* 91 Hawai'i at 241-42, 982 P.2d 853 (quoting *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 645, 636 P.2d 721 (1981)); *see also Kahili, Inc. v. Yamamoto*, 54 Haw. 267, 271-72, 506 P.2d 9 (1973). Generally, the question of whether a corporation is an alter ego of another is a question of fact. *Robert's Hawaii*, 91 Hawai'i at 238, 982 P.2d 853 (citing FLETCHER, 1 CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.95, at 699-705 (1999)). ___**When no genuine material issues of fact exist, a court may determine alter ego liability as a matter of law**___, . . . .

*Id.* at 1142 (emphases added). This Court then identified the relevant factors for

*alter ego* liability:

> In *Robert's Hawaii*, the court listed numerous factors to consider in evaluating alter ego liability. There is no one determinative factor. The most relevant factors to the case at hand[12] include: 1)

---

[12]  Robert's Hawaii cited nineteen factors, quoted below, but the nine cited by this Court in *Television Events & Marketing, Inc.* are the most relevant to this case. The nineteen factors from *Robert's Hawaii*, which list that court also described as "not exhaustive," are: [1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of

commingling or failing to separate funds; 2) "the failure to adequately capitalize a corporation"; 3) "the total absence of corporate assets, and undercapitalization"; 4) "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation"; 5) "the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest"; 6) "the disregard of legal formalities and the failure to maintain arm's length relationships among the related entities"; 7) "the formation and use of a corporation to transfer to it the existing liability of another person or entity"; 8) "whether the subsidiary has no business or assets except those

---

corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the identical equitable ownership in the two entities; [6] the identification of the equitable owners thereof with the domination and control of the two entities; [7] *identi[ty] of ... directors and officers of the two entities in the responsible supervision and management;* [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] *the use of the same office or business location;* [10] *the employment of the same employees and/or attorney;* [11] *the failure to adequately capitalize a corporation;* [12] *the total absence of corporate assets, and undercapitalization;* [13] *the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;* [14] *the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities;* [15] *the disregard of legal formalities and the failure to maintain arm' s length relationships among related entities;* [16] the use of the corporate entity to procure labor, services or merchandise for another person or entity; [17] the diversion stockholder [sic] or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [18] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and [19] the formation and use of a corporation to transfer to it the existing liability of another person or entity. *Robert's Hawaii*, 91 Hawai'i at 242, 982 P.2d at 871 (italics in original; citation omitted).

conveyed to it by the parent"; and 9) the parent's financing of the subsidiary.

*Id.* (quoting *Robert's Hawaii*, 91 Hawai'i at 242, 982 P.2d 853).

Those nine material factors culled from *Robert's Hawaii* negate any inference of *alter ego* liability for JAL concerning JALways' alleged actions vis-à-vis the Plaintiffs.

(1)   JAL does not commingle or fail to keep separate funds vis-à-vis JALways.  CS No. 14; *see also* CS Nos. 15-16.

(2)   JALways is adequately capitalized as a corporation.  CS Nos. 13, 19.

(3)   There is no absence of corporate assets or undercapitalization in JALways.  CS Nos. 19, 20.

(4)   JAL never has used JALways as a mere shell, instrumentality, or conduit for JAL's own business.  CS No. 22.

(5)   JAL has not concealed from Plaintiffs or misrepresented to Plaintiffs the identity of the responsible ownership, management, and financial interest of JALways.  CS No. 24.

(6)   JAL has not disregarded legal formalities between JAL and JALways, nor has JAL failed to maintain an arm's length relationships between JAL and JALways.  CS Nos. 15-17.

(7)   JAL has neither formed nor used JALways to transfer to JALways any liability of JAL.  CS Nos. 5, 23.

(8)   JALways, as JAL's subsidiary, has substantial business and assets not conveyed to it by JAL as its parent.  CS No. 25.

(9)   JAL, as the parent, does not finance JALways, as its subsidiary.  CS No. 23.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant Japan Airlines respectfully requests that the Court enter partial summary judgment in its favor, dismissing JAL as a defendant in this lawsuit.

DATED:  Honolulu, Hawaii, November 13, 2007.

/s/ Andrew L. Pepper
ANDREW L. PEPPER
STEVEN M. EGESDAL
JOSEPH F. KOTOWSKI, III

Attorneys for Defendants
JAPAN AIRLINES and
JALWAYS CO., LTD.