IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACK CRAWFORD, | CIVIL NO. CV 03-00451 SPK-LEK |
| Plaintiffs, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| JAPAN AIRLINES; JALWAYS CO., LTD.; HAWAII AVIATION CONTRACT SERVICES, INC.; and DOES 1-10, inclusive, | |
| Defendants. | |

Table of Contents

Page

I.    INTRODUCTION .................................................................... 1

II.   PROCEDURAL BACKGROUND ........................................... 1

III.  SUMMARY OF MOTION .................................................... 3

IV.   RULE 56 STANDARDS ........................................................ 4

V.    MATERIAL FACTS ............................................................. 4

      A.    General Facts ............................................................ 4

      B.    Specific Admissions ................................................. 6

VI.   ANALYSIS ........................................................................... 10

      A.    JALways Was Not Crawford's Employer ....................... 10

      B.    Ninth Circuit Law Indicates JALways Was Not A Joint
            Employer ................................................................. 13

VII.  CONCLUSION .................................................................... 27

Table of Authorities

<u>Page</u>

**Cases**

*Bonnette v. Cal. Health & Welfare Agency,*
    704 F.2d 1465 (9th Cir. 1983)..................................................................passim

*Bureerong v. Uvawas,*
    922 F. Supp. 1450 (C.D. Cal. 1996)..................................................................27

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................................4

*Garcia v. San Antonio Metropolitan Transit Authority,*
    469 U.S. 528 (1985)..................................................................................15

*Guerin v. Genentech, Inc.,*
    2005 WL 2739305 at *2 (N.D. Cal. Oct 24, 2005)..........................................25

*Hall v. County of Los Angeles,*
    148 Cal. App. 4th 318 (2007)..........................................................................11

*Isenberg v. California Emp. Stab. Com.,*
    180 P.2d 11 (Cal. 1947)..................................................................................11

*Martinez-Mendoza v. Champion Int'l Corp.,*
    340 F.3d 1200 (11th Cir. 2003)..........................................................................27

*Metropolitan Water Dist. v. Superior Ct.,*
    84 P.3d. 966 (Cal. 2004) ..........................................................................11, 19

*Moreau v. Air France,*
    343 F.3d 1179 (9th Cir. 2003)..........................................................................22

*Moreau v. Air France,*
    356 F.3d 942 (2004) ..................................................................................passim

*Moreau v. Air France,*
    No. C-99-4645, 2002 WL 500779, at *8 (N.D. Cal. March 25, 2002)..............16

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
    210 F.3d 1099 (9th Cir. 2000)..........................................................................28

*Old Person v. Brown,*
    312 F.3d 1036 (9th Cir. 2002), cert. denied, 540 U.S. 1016 (2003)....................5

*Richardson v. United States,*
    841 F.2d 993 (9th Cir. 1988)............................................................................6

Table of Authorities
(Continued)

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947)...................................................................18

*Tieberg v. Unemployment Ins. Appeals Bd.*,
  471 P.2d 975 (Cal. 1970) ...........................................................11

*Torres-Lopez v. May*,
  111 F.3d 633 (9th Cir. 1997)................................................passim

*Ventress v. Japan Airlines*,
  486 F.3d 1111 (9th Cir. 2007)..........................................1, 2, 3, 6

*Zhao v. Bebe Stores, Inc.*,
  247 F.Supp. 2d 1154 (C.D. Cal. 2003).................................20, 21, 22

*Zinn v. McKune*,
  949 F. Supp. 1530 (D. Kan. 1996), aff'd, 143 F.3d 1353 (10th Cir. 1998).........12

**Statutes**
California Family Rights Act................................................................15
Fair Labor Standards Act.....................................................16, 18, 20
Family and Medical Leave Act............................................................14
Migrant and Seasonal Agricultural Worker Protection Act ...........................16, 18

**Rules**
Local Rule 74.1 ...............................................................................3

**Treatise and Other Authorities**
Friendship, Commerce, and Navigation Treaty, U.S.-Japan,
  April 2, 1953, 4 U.S.T. 2063........................................................2, 5

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Crawford sues JALways for common law tortious discharge.[1] A threshold

element in that claim is proof that JALways was Crawford's employer. The

undisputed or indisputable record, however, does not allow even the inference that

JALways was Crawford's employer.[2] Count III fails.

### II.    PROCEDURAL BACKGROUND

This case has a complex procedural history. In December 2002, Crawford,

as co-plaintiff, filed a complaint against the JAL Defendants and HACS in the

Central District of California. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1113 (9th

Cir. 2007). In July 2003, the California district court granted defendants' motion to

transfer the case to the Hawaii district court. *Id.* at 1114. After the venue change,

Crawford moved to amend the complaint to replace California law claims with

---

[1] This memorandum uses these defined terms: (1) defendant Japan Airlines (*i.e.*, Japan Air Lines Corporation, a Japan corporation) is "**JAL**"; (2) defendant Jalways Co., Ltd. (formerly Japan Air Charter Co. Ltd, a Japan corporation) is "**JALways**"; (3) JAL and JALways collectively are "**JAL Defendants**"; (4) defendant Hawaii Aviation Services, Inc. is "**HACS**"; (5) plaintiff Jack Crawford is "**Crawford**,"; (6) the Complaint's third cause of action is "**Count III**"; and (7) the Concise Statement is "**CS**," citing a relevant fact as "**CS No. __**."

[2] Crawford's Pilot Contract with HACS assigned him to work for JALways (called Japan Air Charter Co. Ltd. in that contract, as it was known at the time), not JAL. JAL and JALways are separate Japan corporations. JAL is filing a motion for summary judgment (to be heard contemporaneously with this motion), to have JAL dismissed as a defendant in this case. For this motion, all arguments relevant to disposing of Count III concerning JALways apply equally to JAL.

Hawaii ones. *Id.* The presiding magistrate judge denied that motion; Crawford appealed. *Id.*

That appeal was never heard. In October 2004, the Hawaii district court granted judgment on the pleadings for the JAL Defendants, because all of Crawford's claims were preempted by the Friendship, Commerce, and Navigation Treaty, U.S.-Japan, April 2, 1953, 4 U.S.T. 2063 ("**Japan FCN Treaty**"). *Ventress*, 486 F.3d at 1114. In addition, the court held the emotional distress claims failed as a matter of California law, even if not preempted by the Japan FCN Treaty.[3] The court declined to rule on Crawford's appeal of the denial of leave to amend, saying the issue was mooted by its decision on treaty preemption. *Id.* The court severed the claims against HACS and stayed further proceedings against HACS pending arbitration.

Crawford appealed the Japan FCN Treaty judgment rendered in favor of the JAL Defendants. *Ventress*, 486 F.3d at 1114. The Ninth Circuit held the Japan FCN Treaty does not preempt California's whistleblower protection laws (in either their statutory or common law manifestations). It reversed the district court's judgment for the JAL Defendants only on the Japan FCN Treaty. *Id.* at 1119. It

---

[3] The district court held the emotional distress claims failed as a matter of California law; Crawford never appealed that decision and, accordingly, the Ninth Circuit affirmed the dismissal of Crawford's emotional distress claims. *Ventress*, 486 F.3d at 1114 n.3. The fourth and fifth causes of action therefore are gone.

affirmed the orders transferring the case to Hawaii and dismissal of the emotional distress claims; it dismissed an appeal of the interlocutory arbitration order. *Id.* It remanded the case, instructing the district court to *consider* Crawford's LR74.1 appeal from the magistrate judge's denial of his motion to amend the complaint to state claims under Hawaii law. *Id.*

On November 26, 2007, the district court severed this case, creating a new case number for original co-plaintiff Martin Ventress (07-00581 SPK-LEK) and leaving Crawford with this case number (03-00451). Stipulation for Complete Severance Under Fed. R. Civ. P. 21 of Plaintiffs' Case for All Purposes and Order filed November 26, 2007.  On November 28, 2007, the district denied Crawford's LR74.1 appeal from the magistrate judge's denial of his motion to amend the complaint to state claims under Hawaii law.  Order Affirming Order Denying Motion to Amend Complaint, filed 11/28/07. That order left Crawford with his existing California law claim for tortious discharge.

## III.    SUMMARY OF MOTION

Count III is a cause of action against an employer for terminating an employee. ***It all requires a viable defendant to be an <u>employer</u>.*** Count III is Crawford's whistleblower, common-law tortious discharge claim. Count III cannot meet a critical requirement for that tort: JALways never was Crawford's ***employer***; only HACS was. Count III fails.

## IV.    RULE 56 STANDARDS

Summary judgment is granted when no genuine issue of material fact exists, and no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party has the initial burden of production, carried in two ways: **it may offer evidence disproving an element of the plaintiff's case**, *or* it may show the absence of any genuine issue of material fact. *Id.* at 323. Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted).

This motion disproves a critical element of Crawford's Count III: JALways never was Crawford's employer; only HACS was.

## V.    MATERIAL FACTS.

The following facts are undisputed or indisputable.

### A.    *General Facts.*

1.    JALways never hired Crawford.  CS Nos. 7-9.

2.    JALways never fired Crawford.  CS Nos. 7-9.

3.    JALways never had any authority to hire any employee for HACS, including Crawford, under the contract between JALways and HAC or otherwise.  CS No. 9-10; Ex. 1.

4.    Crawford never was an employee of JALways; Crawford was an employee of HACS, assigned to JALways under a contract between HACS and JALways.  CS. No. 1-3; Exs. 1, 2.

5.    JALways never had any authority to fire any employee for HACS, including Crawford, under the contract between JALways and HAC and otherwise.  CS No. 7.

6.    This Court previously has found that HACS was Crawford's employer: "Plaintiffs appear to have been **actually employed by HACS**, which had some sort of contractual arrangement with JAL to supply JAL with qualified flight crews.  Plaintiffs had signed HACS employment contracts (not JAL contracts), which contained a Hawaii choice-of-law provision and a binding arbitration clause."  CS Ex. 3 (Order Severing Defendants and Granting Defendants Japan Airlines and Jalways Co., Ltd.'s (1) Motion for Judgment on the Pleadings (Regarding Emotional Distress Claims); And (2) Motion for Judgment on the Pleadings and/or for Summary Judgment (Regarding the FCN Treaty) entered October 20, 2004) (emphasis added).  That crucial determination is the "law of the case."  *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002), *cert. denied*, 540 U.S. 1016 (2003) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same

court, or a higher court, in the same case.") (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)).

       7.    The Ninth Circuit already has confirmed that HACS was Crawford's employer:

> Ventress and Crawford were **employed by HACS** to perform services for JAL flights.  Plaintiffs' **employment agreements with HACS** contain mandatory arbitration provisions."

*Ventress*, 486 F.3d at 1113 (emphasis added).

> Crawford and Ventress both resided in Hawaii **while employed by HACS**, all communication between plaintiffs and JAL during their employment took place in Hawaii, and the termination decision was made in Hawaii.

*Id.* at 1119 (emphasis added).  Again, that determination is law of the case.

**B.**    *Specific Admissions.*

Specific admissions from Crawford follow, further substantiating that JALways was not Crawford's employer.

       1.    In June 1992, Crawford applied to HACS.  CS Ex. 4 (Crawford Employment Application, Bates No. 100349-50).

       2.    In June 1992, Crawford signed a "Waiver of Confidentiality and Consent," wherein he acknowledged he was being "offered employment by Hawaii Aviation Contract Services, Inc.[.]" CS Ex. 5 (Crawford Waiver of Confidentiality and Consent, Bates No. 100347).

3.      In November 1992, Crawford authorized his employer, HACS, to make direct payroll deposits in his back account. CS Ex. 6 (Crawford Direct Deposit Form, Bates No. 100537).

4.      In November 1992, HACS reported Crawford as a new hire to the State of Hawaii Unemployment Insurance Division.  CS Ex. 7 (Crawford Report of New Hires, Bates No. 100592).

5.      In December 1993, Crawford authorized HACS to deduct from his final pay "upon the completion of my contract or termination of **my employment with HACS**[.]"  CS Ex. 8 (Crawford Tokyo Ground Transportation Advance Payment, Bates No. 100368) (emphasis added).

6.      In April 1993, HACS wrote Crawford a letter advising Crawford that his licenses had been revoked by the FAA and warning him that HACS would have to terminate his training unless he dealt with that problem.  CS Ex. 9 (4/93 HACS letter to Crawford, Bates No. 100430).

7.      In July 1993, Crawford authorized a release of medical information to HACS, stating:  "I hereby authorize you to release to **my employer, HAWAII AVIATION CONTRACT SERVICES, INC.**[]" CS Ex. 10 (Crawford Authorization to Release Medical Information, Bates No. 100321) (emphasis added).

8.      In September 1993, HACS sent a memorandum to Crawford stating:  "This memo is to confirm that I am in possession of your passport for the purpose of obtaining a Japanese Working Visa for **you as an employee of Hawaii Aviation Contract Services, Inc.**"  CS Ex. 11 (Crawford Memorandum re: Working Visas, Bates No. 100454) (emphasis added).

9.      In April 1994, Crawford represented to the State of Hawaii that his "Employer" was HACS.  CS Ex. 12 (Crawford First Employee's Statement Concerning Nonresidence in the State of Hawaii, Bates No. 100527).

10.      In October 1994, HACS represented to the Immigration & Naturalization Service that "Captain Crawford has been **an employee of this company** since 21 November 1992[.]" CS Ex. 13 (10/7/94 HACS letter to INS, Bates No. 100526) (emphasis added).

11.      In November 1994, HACS sent a generally-addressed letter (i.e., "To Whom It May Concern") that stated:  "Hawaii aviation [sic] is a flight crew leasing company which **employs** Captain Jack Crawford…. He has been **employed** by us since 21, November 1992."  CS Ex. 14 (11/15/94 HACS letter re Crawford, Bates No. 100448) (emphasis added).

12.      In January 1995, Crawford represented to the State of Hawaii that his "Employer" was HACS.  CS Ex. 15 (Crawford Second Employee's Statement Concerning Nonresidence in the State of Hawaii, Bates No. 100516).

13.     In January 1996, Crawford represented to the State of Hawaii that his "Employer" was HACS.  CS Ex. 16 (Crawford Third Employee's Statement Concerning Nonresidence in the State of Hawaii, Bates No. 100514).

14.     In January 1996, HACS sent Crawford a letter of reprimand, stating "This letter of reprimand will remain as a permanent part of your personnel file." CS Ex. 17 (1/29/94 HACS letter to Crawford).

15.     In January 1997, Crawford represented to the State of Hawaii that his "Employer" was HACS.  CS Ex. 18 (Crawford Fourth Employee's Statement Concerning Nonresidence in the State of Hawaii, Bates No. 100505).

16.     In December 1996, Hawaii attorney Ronald G.S. Au sent a letter to HACS officer Frank Tabata that stated:  "Captain Crawford, as a senior flight captain, enjoys his **employment** with Hawaii Aviation, and he would like to continue his status and **employee relationship** with the company." CS Ex. 19 (12/19/96 Au letter to Tabata re Crawford's employment) (emphasis added).

17.     In December 1996, HACS sent Hawaii attorney Ronald G.S. Au a letter that referred to "the problem we have as Captain Crawford's employer[.]" and "Captain Crawford's employment contract[.]"  CS Ex. 20 (1/17/97 Tabata letter to Au re Crawford's employment) (emphasis added).

18.     In August 2001, HACS sent Crawford a letter that warned him about termination, quoting from Section XI of the employment contract:  "If

HACS decides that **Employee** is not performing satisfactorily …, or if **employee**

violates the terms of any statute, law, or regulation, … HACS will remove

**Employee** immediately from assignment to HACS." CS Ex. 21 (8/28/01 letter

from HACS to Crawford, Bates No. 100419) (emphasis added).

      19.    In December 2001, HACS sent Crawford a letter that cancelled

Crawford's assignment to JALways effective December 26, 2001.  CS Ex. 22

(12/26/01 letter from HACS to Crawford).

      20.    In October 2002, Crawford filed a Charge of Discrimination

with the EEOC.  In the document, he named as his only employer:  "Hawaiian

Aviation Contract Services."  CS Ex. 23 (Crawford EECO Charge of

Discrimination).

## VI.   ANALYSIS.

### A.   *JALways Was Not Crawford's Employer.*

      Tortious discharge claims exist only in the context of an employer/employee

relationship.  Crawford must establish a key foundational fact for Count III:

Crawford must prove JALways was his employer. He cannot. **<u>HACS</u>** was

Crawford's sole employer. CS No. 1-3; Ex. 2 ("**Pilot Contract**").  Indeed, until

Crawford decided to sue JALways, Carwford never represented to anyone that

JALways was his employer. See numerous exhibits specified in Section III above.

Moreover, there is no dispute that JALways was not Crawford's ***primary*** employer,

as HACS clearly was Crawford's primary employer; instead, Crawford apparently

seeks to prove JALways was a ***joint*** employer.

Under California law, "[t]he principal test of an employment relationship is

whether the person to whom service is rendered has the right to control the manner

and means of accomplishing the result desired."[4]  "Strong evidence of this right is

shown by **the right of the principal to discharge the worker**."[5]  It is undisputable

that HACS hired ***and*** fired Crawford.  CS Nos. 6-9; Ex. 2 (Pilot Contract); Ex. 22

[HACS Termination Letter].  JALways did not hire or fire Crawford, CS Nos. 7, 8;

nor did JALways have any authority to do so. CS Nos. 6, 7.

A joint employer theory here is a complete non-starter.  There can be no

liability under a joint employer theory for ***wrongful discharge*** claims--unlike

perhaps some employment discrimination claims--because wrongful discharge

claims focus on the entity with power to terminate the employee.  *Zinn v. McKune*,

949 F. Supp. 1530, 1538 (D. Kan. 1996) (interpreting Kansas law), *aff'd*, 143 F.3d

---

[4] *Tieberg v. Unemployment Ins. Appeals Bd.*, 471 P.2d 975, 977 (Cal. 1970) (citing *Isenberg v.  California Emp. Stab. Com.*, 180 P.2d 11 (Cal. 1947); *see also Hall v. County of Los Angeles*, 148 Cal. App. 4th 318, 324 n.5 (2007) (noting concept of "common law employee," or "a person over whom the employer has control about the details of the work," comes from *Metropolitan Water Dist.  v. Superior Ct.,* 84 P.3d. 966 (Cal. 2004)).

[5] *Isenberg*, 180 P.2d at 15 (emphasis added).

1353 (10th Cir. 1998).[6]  That court reasoned: "[W]histle-blower retaliation, ... is an

exception to the ... employment-at-will doctrine, and it **focuses on the wrongful**

**conduct of the entity with the power to terminate the employee**." *Id.* (emphasis

added).  That court disposed of a claim against a purported employer, because

there was no evidence it had the power to hire or fire the plaintiff.  Here, Crawford

can offer no evidence that JALways had the power to hire or fire him.

The Pilot Contract (CS Ex. 2) not only stated Crawford was an employee of

HACS, it went further and ***banned*** Crawford from becoming an employee of

JALways:

> Crawford, subsequent to the execution of this Agreement, ***shall not be***
> ***hired by JAZ***[7] directly or indirectly through any subsidiary of Japan
> Airlines or JAZ during the term of this Agreement.

CS Ex. 2 at 6 ¶ 6 (emphasis added).  That "anti-poaching" clause clarifies:

(a) Crawford was not a JALways employee, and (b) Crawford could not become a

JALways employee.  Crawford also acknowledged he had to remain exclusively a

HACS employee:

---

[6] In *Zinn*, a nurse plaintiff was employed by a private corporation that contracted
with the Kansas Department of Corrections to provide medical services to
incarcerated individuals. Here, Crawford analogously was employed by a private
corporation, HACS, which contracted with JALways to provide flight crews.

[7] "**JAZ**" refers to "Japan Air Charter Co. Ltd." *See* Ex. 1 at 1, first recital. The
name Japan Air Charter Co. Ltd. was changed to Jalways Co., Ltd. on or about
October 1, 1999. **CS No. 15**.

> I must remain a ***HACS employee*** during the time of my assignment to JAZ.

CS Ex. 2 [Letter of Acknowledgement] (page stamped 100391) (emphasis added).

The Pilot Contract even limited supervisory interaction between JALways and Crawford:

> Crawford understands that he shall not communicate directly or indirectly with JAZ supervisory personnel unless it is necessary in the performance of his assigned duties.

CS Ex. 2 (Letter of Acknowledgement, Bates No. 100391).[8] The Pilot Contract trumped all "JAZ regulations and procedures." CS Ex. 2 at 3 § 2g (Bates No. 100375). Crawford was to be deemed "an employee of JAZ" ***only for*** indemnification.[9] CS Ex. 2 at 4 § 2s (Bates No. 100376).  JALways never employed Crawford. CS No. 1.  Crawford never was considered an employee by JALways, and he was not treated as such by JALways.  CS Nos. 1-3.

### B.    *Ninth Circuit Law Indicates JALways Was Not A Joint Employer.*

The Ninth Circuit recently held that a foreign airline that contracted with labor vendors to provide ground crews is ***not*** a "joint employer" of those workers under the Family and Medical Leave Act ("**FMLA**").  *Moreau v. Air France*, 356

---

[8] Crawford acknowledged that duty in the Letter of Acknowledgement: "I shall not communicate with JAZ personnel other than as necessary for flight operations." **CS Ex. 2** (Letter of Acknowledgement, Bates No. 100391, ¶ 4).

[9] This sort of "deeming" is common in borrowed employee structures to make claim indemnification easier. Indemnification issues, however, do not alter actual employment or control over the employee.

F.3d 942 (2004).  *Moreau's* facts differed from earlier Ninth Circuit cases

analyzing joint-employment relationships, wherein disputes turned on whether the

plaintiff-worker qualified for leave as an employee through a joint-employment

relationship.  *E.g.*, *Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997); *Bonnette v.*

*Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), *disapproved of on*

*other grounds*, *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S.

528 (1985).

In *Moreau*, the airline did not dispute it employed plaintiff Stephane Moreau

at the San Francisco International Airport (**"SF Airport"**).  *Moreau*, 356 F.3d at

944, 953. At issue was whether Air France employed enough *other workers* at SF

Airport to put the airline within the FMLA's scope, which statute requires covered

employers to provide reasonable medical leave to employees like Moreau.  *Id.* at

944.[10]  Moreau requested leave to care for his sick father.  *Id.* at 944. Air France

denied Moreau's request, claiming it was not required to under the FMLA, because

it employed fewer than 50 employees within a 75-mile radius of SF Airport where

Moreau was stationed.  *Id.* at 945.  Moreau took leave anyway; Air France fired

---

[10] Moreau also brought a parallel claim under the California Family Rights Act
(**"CFRA"**).  The parties and the court agreed the CFRA is substantially identical to
the FMLA, so the court addressed only the federal law.

him. *Id.* Moreau's suit claimed Air France violated the FMLA, because the airline had the requisite number of employees at SF Airport. *Id.*

Moreau asserted, in addition to the approximately 42 employees claimed by Air France at SF Airport,[11] the airline also "jointly" employed **grounds crew workers** contracted through three different companies to provide such services as aircraft towing, cleaning, food preparation, and baggage and cargo handling. *Id.* at 948. While the parties disputed the characterization of Air France's relationship to the various crews, the court found some common ground. *Id.* at 948-50. All three crews worked simultaneously for other airlines, but some employees of the cargo crew were, by contract, dedicated exclusively to Air France. *Id.* Air France set *strict performance standards* for all three crews, *regularly inspected the work* done, and occasionally even *trained* the workers. *Id.*

Moreau originally sued in the federal court in California. *Moreau v. Air France*, No. C-99-4645, 2002 WL 500779, at *8 (N.D. Cal. March 25, 2002). Air France moved for summary judgment on the ground that it did not jointly employ the grounds crew workers, and the district court granted the motion. *Id.* at *2, *10. Upon appeal, the Ninth Circuit reviewed the case *de novo* and affirmed the district court's decision. *Moreau*, 356 F.3d at 953. The Ninth Circuit noted that no

---

[11]  The court stated in note 7 of its opinion that, even construing all facts in Moreau's favor, Air France employed at most 42 people in San Francisco when he requested leave. *Id.* at 953.

reported cases addressed the issue of joint employment in the FMLA context.  *Id.* at 946. It applied the same analysis it had used in cases involving the Fair Labor Standards Act ("**FLSA**") and the Migrant and Seasonal Agricultural Worker Protection Act ("**AWPA**").  *Moreau*, 356 F.3d at 946, 947 n. 2.  It considered those cases "informative," because the FMLA's language on joint employment echoed the wording of joint employment regulations found in those other two federal statutes.  *Id.* at 946.

The Ninth Circuit concluded Air France was ***not*** a joint employer of the contract ground crew workers, relying heavily upon analysis from its prior FLSA and AWPA decisions in *Bonnette* and *Torres- Lopez*.  *Id.*  *Bonnette* held that California agencies did jointly employ domestic workers providing care to Social Security welfare recipients, entitling the domestic workers to minimum wage compensation under the FLSA.  *Bonnette*, 704 F.2d at 1467.  In *Bonnette*, the state and county agencies paid elderly, blind, and disabled welfare recipients money to "purchase" domestic services.  *Id.*  The welfare recipients could use the money to hire anyone they chose to help them with household "chores," but the agencies paid the domestic workers a pre-determined rate that often did not match the prevailing federal minimum wage.  *Id.* at 1468.  For the domestic workers to qualify for minimum wage under the FLSA, the court had to find that they were jointly employed by the welfare recipient and the state agencies.  *Id.*

The Ninth Circuit held in *Bonnette* that a determination of joint employment "must be based on a consideration of the total employment situation and the economic realities of the work relationship[.]'" *Id.* at 1470. The Ninth Circuit set out four relevant factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* The *Bonnette* court held that, even though the agencies may not have hired or fired the workers directly, they exercised considerable control over the conditions of employment. *Id.* The agencies set the number of hours the employee could work and the tasks to be performed. *Id.* The agencies also set the rate and method of payment and maintained employment records. *Id.*

In *Torres-Lopez*, the Ninth Circuit again found a joint-employment relationship existed--this time, in a case involving contract farm workers' claims against produce growers for overtime pay under both the FLSA and the AWPA. *Torres-Lopez,* 111 F.3d at 636-37. In *Torres-Lopez*, the Ninth Circuit broadened its analysis of the joint employment issue by considering five factors listed in the AWPA, which overlapped with and expanded upon the four factors set forth in *Bonnette*. *Id.* at 639-40. Instead of asking whether the employer "supervised and controlled" the employee, the AWPA refers to the "degree of supervision, direct or

indirect, of the work[.]"  *Id.* at 639-40.  The *Torres-Lopez* court also considered a longer list of eight factors set forth in *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).[12]  Taking all of those factors into account, the Ninth Circuit held a cucumber grower was a joint employer of the pickers hired by a contractor. *Torres-Lopez*, 111 F. 3d at 644.  Although the grower exercised only indirect supervision over the pickers and did not hire or pay them, the court found joint employment existed, because the economic reality of the situation showed that the grower exercised control over the pickers, who were "economically dependent" on the grower.  *Id.* at 642-44.

Despite extensive references to both *Bonnette* and *Torres-Lopez*, the Ninth Circuit's analysis of the aviation-industry joint employment issue in *Moreau* placed much greater weight on the ***more limited four-factor test*** from *Bonnette* vis-à-vis the broader tests cited in *Torres-Lopez*.  The court applied the four *Bonnette* factors to the grounds crew workers and Air France.  Reordering the *Bonnette* factors slightly, the Ninth Circuit held Air France:  (1) lacked the ability to hire or fire the workers, (2) did not determine rate or method of pay, and (3) did not keep employment records.  *Moreau*, 356 F.3d at 950.  The court also found there was no

---

[12] Those factors include ownership of the premises or equipment, transferability of the contracted work, or of the workers, the longevity of the working relationship and the integrity of the work performed to the employer's overall business.  *Id.* at 730; *Torres-Lopez*, 111 F.3d at 643-44; *Moreau*, 356 F.3d at 951-52.

evidence that Air France had the authority directly to "control" any of the workers, and the "indirect supervision" of the grounds crews differed from the "indirect supervision" of the cucumber pickers in *Torres-Lopez*. *Id.* at 951.

What distinguished the cucumber pickers in *Torres-Lopez* from the airline ground crews in *Moreau* was the issue of ***safety***. The court suggested that Air France's regular inspections of the work performed differed from the cucumber grower's indirect supervision of the pickers, because the airline's supervision was motivated by **safety concerns**. *Id.*

> It is, however, noteworthy that in this case, much of the indirect supervision or control exercised by Air France over the ground handling employees was purportedly to ensure compliance with various safety and security regulations, such as ensuring that food equipment was properly stowed or that the plane's load was adequately balanced. **Any airline that is concerned about its passengers' safety would be remiss to simply delegate a task to another party and not double-check to verify that the task was done properly. We therefore believe that the purported control or supervision alleged by Moreau in this case is qualitatively different from the farmworker situation in *Torres-Lopez*.**

*Id.* (emphasis added). *Moreau* signals the Ninth Circuit applies a different standard to a "joint employer" analysis when the situation involves aviation safety. The Ninth Circuit wisely does not wish employers to take a hands-off approach to aviation safety, to avoid being tagged as a joint employer under federal or state employment laws. In *Moreau*, the Ninth Circuit chose not to penalize airlines for taking a hands-on approach to "controlling" leased employees where the "control"

involved aviation safety.  This case--with its nearly identical fact pattern as regards the "control" of leased employees--presents no sound reason to divert from that salutary path.

A recent FLSA decision within the Ninth Circuit, *Zhao v. Bebe Stores, Inc.*, 247 F.Supp. 2d 1154 (C.D. Cal. 2003), instructs on that "control" issue.  In *Zhao*, Apex Clothing Corporation (**"Apex"**) sewed garments for various clothing manufacturers, including Bebe Stores, Inc. (**"Bebe"**), with whom Apex did the majority of its business.  *Id.* at 1155. Several of Apex's garment sewers sewed exclusively for Bebe.  Bebe had quality control personnel who inspected garments at Apex, and Bebe also contracted with Apparel Resources, Inc. to audit Apex and Bebe's various other manufacturers to ensure the manufacturers were complying with state and federal labor laws.  *Id.* at 1156.

Employing the *Bonnette* and *Torres-Lopez* tests, the district court held that although some factors tipped in the plaintiffs' favor, on balance Bebe should ***not*** be treated as a joint employer of the garment sewers.  It noted the *Bonnette* factors all weighed against finding joint employment, and distinguished its facts from *Torres-Lopez*.  *Id.* at 1159.  It found that monitoring compliance with labor laws to avoid "sweat shops" was not exercising "control" over Apex, reasoning that such a holding would be "counterproductive and create a disincentive" for clothing

designers to monitor their contractor's compliance with federal laws designed to protect employee rights and safety. *Id.* at 1161.

Analogously here, making airlines "joint employers" as a consequence for exercising control over crewmembers to ensure aviation safety would be "counterproductive and create a disincentive" for airlines to monitor their crewmembers' compliance with applicable aviation safety rules and regulations. More simply, it would make it less safe to fly in commercial airplanes. Indeed, the Ninth Circuit in its earlier version of the *Moreau* opinion admonished: "As the court noted in *Zhao*, it could be counterproductive to equate ensuring lawful compliance with 'control' or supervision of employees." *Moreau v. Air France*, 343 F.3d 1179, 1189 (9th Cir. 2003) (citing *Zhao*, 247 F. Supp. 2d at 1161), *amended and superceded*, *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2004).

The Ninth Circuit added that Air France did not "control" the grounds crew, because complaints were not given directly to the employees and were, instead, given to the supervisors for each ground service company. *Moreau v. Air France*, 356 F.3d at 950-51. The court did not consider factors from *Torres-Lopez*, such as the longevity of the working relationship, or the integrity of the work performed by the grounds crews to Air France's overall business. *Id.* at 951. The court held that "the totality of the circumstances" pointed to a conclusion of no joint employment, based on its analysis borrowed from FLSA cases. *Id.*

Applying the *Moreau/Bonnette* four-factor test here indicates JALways never was Crawford's employer. *Moreau/Bonnette* factor (1)--power to hire and fire--is straight-forward:  JALways lacked the ability to hire, fire, or even discipline Crawford under the JALways-HACS Contract or otherwise.  Only HACS had that authority, indicated throughout the JALways-HACS Contract.[13]  At most, JALways could "request HACS to terminate the assignment of any [c]rewmember whose required qualifications are not maintained."  *E.g.*, CS Ex. 1 [JALways-HACS Contract] at 4 § 2.05(A).[14]  HACS always had the ultimate authority on whether to hire or fire any crewmember, never JALways.

JALways could inform HACS if an assigned crewmember failed to comply with all government-imposed, government-mandated safety requirements, in which event HACS had to determine the crewmember's disposition.  *Id.* at 17 § 6.01.

---

[13]  *E.g.*, CS Ex. 1 [JALways-HACS Contract] at 5 § 2.07(B) (if crewmember willfully violates laws and regulations, JALways only "reserves the right to request HACS to terminate the assignment"); *id.* at 6 § 2.08 (if crewmember fails required training or checks, "HACS will then make a determination as to the [c]rewmember's disposition, and JALways only "reserves the right not to accept the assignment of such [c]rewmember"); *id.* at 6 § 2.09 (if crewmember causes an accident and cannot maintain the required JCAB licenses, then JALways will advice HACS, and "HACS will then make a determination as to [c]rewmember's disposition."); *id.* at 6 § 2.11 (if a crewmember fails the required JCAB physical examination and cannot maintain the JCAB medical certificate, then JALways will advice HACS, and "HACS will then make a determination as to [c]rewmember's disposition.").

[14]  This is merely a ministerial provision to ensure that crewmembers who lacked governmental licensure to fly would not be *assigned* to JALways flights, and it had nothing to do with whether their employment might be *terminated*.

JALways only communicated information to HACS on the status of the Crawford's medical fitness, flight certification for DC-10 aircraft from the Japan Civil Aviation Board (JCAB), or both; and HACS then took whatever employment action concerning the Crawford that HACS deemed advisable, without further consulting JALways on that employment action. CS No. 11.

Even if JALways rejected an assignee, or informed HACS that an assignee was unacceptable for any number of reasons under the contract, HACS still could re-assign a rejected JALways assignee to another airline for which HACS also assigned crewmembers.[15]  Even if JALways requested termination of a crewmember from assignment to JALways, that crewmember could remain a HACS employee by transferring to another airline serviced by HACS.  That is, rejection by JALways of flight-crew *assignment* did not mean HACS had to terminate the *employment* of any assignee. Critically in this case, the termination letters for Crawford came from HACS, not JALways.  CS Ex. 22.

*Moreau/Bonnette* factor (2)--supervision and control--is analogous to the situation in *Moreau*:  JALways's "indirect supervision" of Crawford was motivated

---

[15] HACS's webpage states: "Hawaii Aviation is the employer of approximately 150 pilots and flight engineers flying for Japan Airlines Group, All Nippon Airways Group, Nippon Cargo Airlines, and Starflyer. Our crewmembers operate the B747, B767, B737, A320 and DHC8-Q400 for our various customers from crew bases in Japan, United States, Australia and Europe." http://www.hawaiiaviation.com/ (last accessed December 1, 2007).

strictly by governmental and aviation-industry **safety concerns**.  CS No. 12.
*Moreau*, 356 F.3d at 951.  It was done to ensure compliance with various safety
regulations.  *See id.*  As the Ninth Circuit reasoned, "[a]ny airline that is concerned
about its passengers' safety would be remiss to simply delegate a task to another
party and not double-check to verify that the task was done properly."  *Id.*

Any purported control or supervision alleged by JALways of Crawford in
this case is analogous to that in *Moreau* and likewise qualitatively different from
the farm-worker situation in *Torres-Lopez*.  *See Guerin v. Genentech, Inc.*, 2005
WL 2739305 at *2 (N.D. Cal. Oct 24, 2005), *citing Moreau*, 356 F.3d at 951, for
this proposition: "holding that an airline's necessary oversight of work performed
by contractors was insufficient to convert airline to status as joint employer."
Under the contract, HACS assured that all *assigned* crewmembers would maintain
their current licenses. CS Ex. 1 [JALways-HACS Contract] at 4 § 2.05.  If a
crewmember failed to maintain his license to fly, JALways had the power to reject
the crewmembers' *assignment*, not to terminate the crewmember's *employment*.

Analogous to the Ninth Circuit's reasoning in *Moreau* with Air France,
JALways did not "control" Crawford:  JALways complaints about assigned
crewmembers were not given directly to the employees; instead, they were given to
HACS, and any grievances from the crewmembers were to be handled by HACS,
not JALways.  CS Ex. 1 [JALways-HACS Contract] at 19 § 11.01.

24.

*Moreau/Bonnette* factor (3)--determination of pay--likewise is straight-forward.  JALways did not determine the rate or method of pay as it related to any particular crewmember.  Instead, JALways contracted with HACS to provide a certain number of crew members, for a particular time period, at a particular fixed, bulk-purchase price (CS Ex. 1); HACS then went out into the marketplace and found crewmembers to fulfill the number of crewmembers HACS had contracted to supply to JALways.  *E.g.*, CS Ex. 1.  JALways did not direct HACS on how much to pay any crewmember.  HACS could implement any pay scale HACS wanted for the crewmembers it employed and then assigned to JALways, above or below what JALways contractually bound itself to pay HACS under the JALways-HACS Contract.  CS Ex. 1.  JALways never issued a single pay-check to Crawford.  CS. No. 13.  HACS also was required to provide all benefits and insurance to the assigned crewmembers as required by state and federal law.  *Id.* at 4 § 2.06.

*Moreau/Bonnette* factor (4)--employment records--likewise is straight-forward. JALways kept no employment records for Crawford.  CS No. 14.  The JALways-HACS Contract (CS Ex. 1) required HACS to handle all such issues, including, without limitation, sick leave requests, sick leave credit, vacation, leave without pay, and bereavement leave.  *Id.* at 13-15.

Summarizing the four *Moreau/Bonnette* factors as applied to this case: JALways was not Crawford's joint employer because (1) JALways lacked the ability to hire or fire Crawford; (2) the "indirect supervision" of Crawford involved aviation **safety** concerns (as in *Moreau*) that differed from the "indirect supervision" of the cucumber pickers in *Torres-Lopez*; (3) JALways did not determine Crawford's rate or method of pay; and (4) JALways did not keep employment records for Crawford. The economic reality of the employment relationship is that HACS, not JALways, was Crawford's sole employer; Crawford was economically dependent on HACS, not JALways. Indeed, a HACS-employed crewmember could be assigned to any number of airlines for which HACS supplied crewmembers—All Nippon Airways Group, Nippon Cargo Airlines, and Starflyer—**not** JALways alone.

The Ninth Circuit has found that the *Bonnette* factors weigh heavily in determining joint employer status. *Moreau*, 356 F.3d at 946-47 (stating that Ninth Circuit "noted [in *Bonnette* ] that the joint employment determination required consideration of the total employment situation, but focused primarily on [the] four [*Bonnette*] factors[.]"). *See also Bureerong v. Uvawas*, 922 F. Supp. 1450, 1467-69 (C.D. Cal. 1996) (relying only on *Bonnette* factors in its joint-employer analysis). Upon considering the "total employment situation," and especially the four *Bonnette* factors, JALways was not Crawford's joint employer.

Crawford bears the ultimate burden of persuasion on the issue of whether JALways is a joint employer with HACS. *See Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003) ("Because the laborer has the burden of proof [on his FLSA claim], to prevail he [ultimately] must establish the joint-employment inference by a preponderance of the evidence."). For this Rule 56 motion, JALways may discharge its burden of production and proof by showing "the nonmoving party does not have enough evidence of an essential element [of its claim] to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Here that essential element (which Crawford must prove to survive this motion) is that JALways was a joint employer with HACS. Crawford cannot prove that essential element of his claim.

## VII. CONCLUSION.

Crawford cannot prove a critical element for the tortious discharge claim. JALways was not Crawford's employer; only HACS was. This Court should grant JALways summary judgment and dismiss Count III.

DATED: Honolulu, Hawaii, December 19, 2007.


/s/ Andrew L. Pepper
ANDREW L. PEPPER
STEVEN M. EGESDAL
JOSEPH F. KOTOWSKI, III

Attorney for Defendants
JAPAN AIRLINES and
JALWAYS CO., LTD.