# PILOT CONTRACT

This contract (hereinafter referred to as "AGREEMENT" by and between HAWAII AVIATION CONTRACT SERVICES, INC., a Hawaii corporation doing business as H-A-C-S, whose address is 3660 Waialae Avenue, Suite 310, Honolulu, Hawaii, hereinafter referred to as "HACS" and MR. JACK L. CRAWFORD III hereinafter referred to as CRAWFORD whose address is 444 UPPER KINGSTON Rd. PRATTVILLE AL. 360 is entered into this 1ST day of NOV. ,199 2 .

WITNESSETH:

WHEREAS, JAPAN AIR CHARTER CO. LTD., is a foreign corporation established in accordance with the laws of Japan, whose address is Sumitomo Hamamatsu Cho Building, Tokyo, Japan, and is hereinafter referred to as "JAZ"; and

WHEREAS, JAZ conducts flight operations as an air carrier and needs personnel rated and able to be trained to fly as captain, first officer, flight engineer, who are in possession of the qualifications specifically provided hereunder, hereinafter, collectively, CREWMEMBERS; and

WHEREAS, HACS has the ability to supply such CREWMEMBERS; and

WHEREAS, JAZ desires to use such CREWMEMBERS for their charter operations; and

WHEREAS, HACS is a business designed to supply crews for special types of flight operations, including charter and ferry operations;

WHEREAS, CRAWFORD, desires to be employed as a crewmember for HACS under its current agreement with JAZ, NOW, THEREFORE, in consideration of mutual covenants and conditions contained hereinafter, the parties hereto, CRAWFORD and HACS, respectively, agree as follows:

1. <u>Term of Agreement</u>. This AGREEMENT contemplates a period of approximately five (5) years and seven (7) months, as follows:

1

100373

EXHIBIT 2

      a.    Crew training commences on/or about November 29, 1992.

      b.    Training shall encompass in excess of six (6) to seven (7) months.

      c.    When CRAWFORD has been qualified to fly for JAZ, i.e, all training, testing, line checking, are completed, he shall be obligated to fly for five (5) years, i.e., sixty (60) consecutive months subsequent to the completion of flight training and JAZ certification.

      d.    The term of this AGREEMENT shall run from the date of the signing (execution) of the AGREEMENT until approximately June, 1998 and shall be automatically renewed unless CRAWFORD notifies HACS in writing at least one year prior to the termination date of this contract that he does not wish to have this contract renewed. The termination date shall be determined upon certification of CRAWFORD for line flying and shall be inserted hereinafter upon completion.

      e.    Termination Date <u>Sep. 20th, 98</u>

2.    <u>CREWMEMBER Qualification; Assignment;</u>

      a.    HACS shall assign CRAWFORD to JAZ for the periods and purposes noted in paragraph 1, above.

      b.    CRAWFORD shall be certified to be qualified in accordance with specifications set forth in JAZ Operations Manual.

      c.    CRAWFORD understands that in the event the needs of JAZ and HACS diminish, the laws of the State of Hawaii shall apply should there be a requirement to lay off personnel.

      d.    Compensation:    Benefits for CREWMEMBERS shall be in accordance with Appendix B hereto.

      e.    CRAWFORD understands that JAZ and HACS shall screen and agree to his assignment to JAZ.

      f.    CRAWFORD understands that he is not eligible for promotion during

100374

the agreed term unless otherwise agreed by both JAZ and HACS.

g. CRAWFORD understands that he shall perform his services in accordance with the regulations and procedures of JAZ. However, should there be any conflict between JAZ regulations and procedures on the one hand and this AGREEMENT on the other hand, this Agreement shall take precedence and be binding.

h. HACS will be responsible for giving a complete briefing to CRAWFORD insuring that he is familiar with the terms, conditions and expectations of JAZ with respect to salary, working conditions, no strike provisions, etc.

i. CRAWFORD agrees to sign and adhere to the terms of the "Work Disruption Agreement." See Appendix C.

j. CRAWFORD acknowledges that JAZ has the right to supplement the HACS crew complement, including non-Japanese crews, to act as coordinators and/or managers of JAZ flight and charter operations.

k. CRAWFORD understands that JAZ has the authority to govern the conduct of, and to supervise, direct, and control CREWMEMBERS assigned hereunder during the performance of those duties for which they are assigned to JAZ. JAZ and HACS shall exercise their best efforts and will cooperate with each other in order to coordinate their efforts to accomplish said governing, supervision, direction and control.

l. CRAWFORD understands that HACS must, at the request of JAZ, terminate the assignment of any CREWMEMBER who fails to maintain required qualifications, i.e., flight certification, medical certification, visas required for operations, as per JAZ Operations Manual.

m. CRAWFORD understands that JAZ is entitled to claim damages resulting from the shortage of CREWMEMBERS for flight operation, when the shortage of CREWMEMBERS is caused by the negligence of HACS.

3

100375

n.  The JCAB (Japan Civil Aviation Bureau) Medical Certificate, as well as FAA medical certificates shall be obtained and paid for by CRAWFORD. Initial JCAB Medical Certificate will be paid by JAZ.

o.  CRAWFORD understands that he shall not communicate directly or indirectly with JAZ supervisory personnel unless it is necessary in the performance of his assigned duties.

p.  In the event CRAWFORD fails the required proficiency or type rating checks after receiving applicable training as specified in JAZ Qualification Manual, CRAWFORD understands that JAZ and HACS supervisory personnel shall confer and HACS supervisors shall present their opinion with respect to his case. JAZ shall determine after said conference, the final disposition of CRAWFORD'S case.

q.  Initial training and checks as well as certification for line flying will be performed at a location or locations chosen by JAZ. In the event initial training or subsequent training is failed by CRAWFORD, he will be given transportation back to his domicile at the origin of this AGREEMENT. Cost of transportation shall be borne by JAZ.

r.  CRAWFORD understands that JAZ shall provide and pay for periodic training and checks for CREWMEMBERS in accordance with the details described in JAZ Qualification Manual. Such training and checks shall be specified by JAZ.

s.  In the event CRAWFORD is involved in or causes an accident, he shall be deemed an employee of JAZ. He will be held harmless by JAZ and will be furnished legal counsel at no expense to himself. In the event fellow employees are injured, regardless of the location of the accident, the laws of Hawaii with respect to the Workman's Compensation remedies shall apply, i.e., no cause of action shall exist for JAZ against CRAWFORD nor shall CRAWFORD have any cause of action against JAZ or HACS.

3.  <u>CREWMEMBER Benefits</u>

        a.     Pay and allowances shall be in accordance with the scales set forth in Appendix B.

        b.     Individual benefits are set forth in Appendix B.

        c.     CRAWFORD understands that there are no interline benefits under the terms of this contract. HACS Employee Manual will set forth the current benefits available through Japan Airlines. Free and reduced fare transportation is open for further discussion and discovery. HACS and JAZ shall make their best efforts to obtain free and reduced fare transportation for CREWMEMBERS and their families.

    4.    <u>War or Terrorist Prisoner or Hostage Benefits</u>

        a.     In this international charter operation it is possible that CRAWFORD may be interned or held as hostage.

        b.     CRAWFORD understands that in the event he is interned for other than criminal conduct, JAZ shall continue to pay all amounts otherwise due CRAWFORD for the duration of said internment.

    5.    <u>Liabilities, Indemnities, Releases, Choice of Law</u>

        a.     While CRAWFORD is working or training under the supervision, direction or control of JAZ, JAZ shall save and hold harmless HACS, its officers, heirs or assigns from any and all claims arising from acts or omissions of CRAWFORD. HACS shall indemnify same and hold JAZ free and harmless from any and all claims of liability brought by any crewmember arising out of, or occurring in the course of such crewmember's performance of services hereunder, or employment agreements with such crewmember, including claims of liability caused by illness, accident or death of any such crewmember. JAZ reserves its right to make claims against HACS and Crewmember assigned to JAZ for damages caused by HACS crewmember while off duty.

5

100377

     b.    Unless otherwise required by clear definition of conflicts of law, the choice of law for any dispute arising from this AGREEMENT shall be the law of the State of Hawaii and, if applicable, the law of the United States of America.

     c.    HACS will insure that CRAWFORD will be covered by both Workman's Compensation and Temporary Disability insurance and any other coverage required by the Hawaii Revised Statutes, the law of the United States of America.

     d.    In the event of any dispute between the parties hereto, the dispute shall be submitted to the American Arbitration Association and be decided by neutral binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitrator shall construe this Agreement and the rights of the parties hereunder in accordance with the laws of the State of Hawaii, U.S.A. Any decisions made by the arbitrator shall be deemed binding for the purposes of this Agreement and are not appealable. Costs and expenses incurred shall be borne in accordance with the decisions made by the arbitrator. This is the sole legal remedy CRAWFORD and HACS shall have with respect to any disputes arising from this agreement, i.e., each party hereby waives his or its rights to seek redress in any court system that might otherwise be available to him or it. The decision of the arbitrator shall be non-appealable. Judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

6.    <u>Future Hiring</u>

     a.    CRAWFORD, subsequent to the execution of this AGREEMENT, shall not be hired by JAZ directly or indirectly through any subsidiary of Japan Airlines or JAZ during the term of this AGREEMENT.

7.    <u>Termination of CREWMEMBERS</u>

     a.    Assignment of CRAWFORD to JAZ shall be terminated on the date CRAWFORD refuses or fails to maintain required qualification. (See Paragraph 2 (l))

100378

b. In the event that CRAWFORD becomes permanently physically or mentally unqualified for flight duty as a result of sickness or injury as determined by an approved JAZ physician, CRAWFORD shall be medically retired as per HACS Medical Retirement Plan. Neither HACS or JAZ shall be responsible for Medical retirement Benefits.

c. If CRAWFORD reaches age 60 or JCAB mandatory retirement age, voluntarily resigns or dies, his assignment to JAZ is terminated.

8. <u>Conditions of Service</u>

a. CRAWFORD understands that JAZ's Operations Manual, revised, is the controlling document for the JAZ operations.

b. To the extent it does not conflict with the JAZ Operations Manual, the HACS Policy Manual shall control.

c. It is understood that U.S. F.A.R's must be complied with as well as pertinent rules and regulations of the Nation of Japan.

9. <u>Voluntary Termination</u>

a. In the event CRAWFORD elects to terminate his assignment to JAZ prior to completion of his originally agreed upon term, he may do so by providing 90 days' notice to HACS who will in turn seek an acceptable replacement CREWMEMBER.

b. If CRAWFORD makes the election provided for in 9.a. above, crewmember shall be responsible to pay to JAZ through HACS liquidated damages in the amount of $15,000 per year or fraction thereof, not prorated, remaining in his term of employment with HACS up to a maximum of $75,000 U.S.D.

c. If CRAWFORD elects to terminate under provisions of 9.b. above he agrees to execute a promissory note in the amount owed plus 10% per annum interest if the debt is not paid off in full at the time of resignation.

d. If CRAWFORD fails to follow the procedure set forth in 9 a,b,c above,

7

100379

he understands that HACS has the right to recover special damages in addition to the liquidated damages provided for in paragraph 9 b,c. CRAWFORD Further understands that he may be liable for punitive damages if he fails to give notice as set forth in paragraph 9.a.

10.  CRAWFORD understands that the Appendices A,B,C & D attached hereto are incorporated by reference and made a part hereof.

IN WITNESS WHEREOF, the parties hereto have executed this contract this *1ST* day of *NOV*, 1992.

HAWAII AVIATION CONTRACT SERVICES, INC.

By: _____
    JOHN S. CARROLL
    President

By: _____
    JACK L. CRAWFORD III

100350

8

# APPENDIX A

# QUALIFICATIONS LIST

# PILOT CONTRACT

## U.S. F.A.A. QUALIFICATIONS

### CAPTAINS

1. Airline Transport Pilot Certificate
2. Type rating for aircraft to which assigned
3. First Class Medical Certificate
4. F.C.C. Flight Radio Operator's License

### FIRST OFFICERS

1. Airline Transport Pilot Certificate
2. Type Rating for aircraft to which assigned
3. First Class Medical Certificate
4. F.C.C. Flight Radio Operator's License

### FLIGHT ENGENEERS

1. Flight Engineer Certificate
2. Turbo Jet Rating
3. Second Class Medical Certificate
4. F.C.C. Flight Radio Operator's License

100381

## JCAB QUALIFICATIONS

### CAPTAIN

1. Airline Transport Pilot Certificate

2. Type Rating for aircraft to which assigned

3. Aviation Medical Certificate - JCAB - First Class

4. Third Class Flight Radio Operator's Certificate

5. Aeronautical Class Service Radio Operator's License

### FIRST OFFICERS

1. Airline Transport Pilot Certificate

2. Type Rating for aircraft to which assigned.

3. Aviation Medical Certificate - JCAB - First Class

4. Third Class Flight Radio Operator's Certificate

5. Aeronautical Class Service Radio Operator's License.

### FLIGHT ENGINEERS

1. Flight Engineer Certificate

2. Type Rating for aircraft to which assigned.

3. Aviation Medical Certificate - JCAB - First Class

100382

2

## ICAO QUALIFICATIONS

### CAPTAINS

1. Airline Transport Pilot License

2. Aircraft Type Rating for aircraft to which assigned.

3. Class One Medical Certificate

4. Radio License issued by a member state of the International Telecommunications Union.

### FIRST OFFICERS

1. Airline Transport Pilot License

2. Aircraft Type Rating for aircraft to which assigned.

3. Class One Medical Certificate.

4. Radio License issued by a member state of the International Telecommunications Union.

### FLIGHT ENGINEERS

1. Flight Engineer License

2. Authorization for the type of aircraft to which assigned.

3. Aviation Medical Certificate.

100385

## APPENDIX B

## PILOT CONTRACT

|  |  | Captain | First Officer | Flight Engineer |
|---|---|---|---|---|
| Monthly Salary |  | $9,240.00 | $6,006.00 | $5,544.00 |
| Social Security |  | GOVERNED BY U.S. LAW | | |
| Medicare |  | GOVERNED BY U.S. LAW | | |
| Unemployment | Federal | PAID BY HACS | | |
|  | State | PAID BY HACS | | |
| Worker's Comp |  | PAID BY HACS | | |
| Medical & Dental |  | PAID BY HACS | | |
| Basic Life & AD&D Insurance |  | 100,000/250,000 PAID BY HACS | | |
| Pension |  | 14.8% OF MONTHLY SALARY | | |
| TDI |  | PAID BY HACS | | |

Above Monthly Salary is based on a 65 (sixty-five) hour guarantee.

In case a crewmember flies more that 65 (sixty-five) hours Pay Time, the actual Monthly Salary will be calculated by the following formula.

Pay Time (PT) = Flight Duty Hours + 50 (fifty) % of Deadhead time

Unit Pay per Hour (UPH) = 65 hours guaranteed Monthly Salary ÷ 65 hours

UPH - Captain = $142.15
UPH - Copilot = $92.40
UPH - F/E = $85.29

Actual Monthly Salary   =   65 Hours Guaranteed Monthly Salary
(When Pay Time is at or less that 65 Hours)

or

=   65 Hours Guaranteed Monthly Salary + UPH x (PT - 65)

100384

## APPENDIX B (cont'd)

For Example:

    Example 1    Flight Duty Hours: 50 Hours
                      Dead Head Time: 20 Hours

                      PT = 50hrs + (0.5 x 20hrs) = 50 + 10 = 60hrs

In this case, the crewmember receives 65 hours Guaranteed Monthly Salary.
    For Captains:    $9,240.00
    For Copilots     $6,006.00
    For F/E          $5,544.00

    Example 2    Flight Duty Hours: 60 Hours
                      Dead Head Time: 20 Hours

                      PT = 60hrs + (0.5 x 20hrs) = 60 + 10 = 70hrs

In this case, the crewmember receives 70 hours of Actual Monthly Salary. i.e.
    For Captains:    $9,240.00 + (142.15 x (70-65)) = $9,950.75
    For Copilots     $6,006.00 + (92.40 x (70-65)) = $6,468.00
    For F/E          $5,544.00 + (85.29 x (70-65)) = $5,970.45

100385

## APPENDIX C

## PILOT CONTRACT

## WORK DISRUPTION AGREEMENT

The undersigned, CRAWFORD, agrees and understands that by signing the Contract between himself and HACS, that he voluntarily waives any right to strike either HACS or JAZ. He further agrees that he will not participate in any work slow down, sick out, secondary boycott* or any other type of disruptive behavior designed to diminish or denigrate efficient flight or ground operations of JAZ or HACS. I further agree that I shall never act in anyway disruptive or detrimental to the normal course of business of HACS or JAZ.

Consideration for this agreement is the right to become a pilot (flight engineer) for HACS.

Agreed and understood this __1ST__ day __NOV.__ 199_3_.

HAWAII AVIATION CONTRACT SERVICES, INC.

By: ___John S. Carroll___
JOHN S. CARROLL
President

By: ___Jack L Crawford, III___
JACK L. CRAWFORD III

\* i.e. refusing to perform JAZ or HACS assigned flight duties in order to give support to workers or unions not employed by JAZ or HACS.

100386

## APPENDIX D

## PILOT CONTRACT

1.  a.  CRAWFORD understands that he is required to have a semi-annual physical examination in addition to all other requirements for physical examinations listed hereinabove or hereinafter. The semi-annual physical is an internal requirement of JAZ and hereinafter designated as PEA.

    b.  CRAWFORD understands that he is required to take the PEA at the location so designated by JAZ. In the event travel costs are to be incurred, i.e. if the exam is designated to be completed at other than the crewmember's domicile, JAZ shall pay for such costs or provide suitable transportation, per diem and hotel accommodations.

2.  Ground Transportation.

    a.  Transportation will be provided for crewmembers in accordance with standards set forth in the (JAZ S.O.P.'s). Such transportation shall be paid by JAZ upon receipt of requested reimbursement from HACS if JAZ is unable to supply appropriate ground transport when crewmember is away from domicile.

    b.  CRAWFORD understands that HACS shall provide parking for crewmember at Honolulu International Airport. This proviso is based on the condition that HACS employees shall be allowed to use the employee's parking lot at Honolulu International Airport. Neither HACS nor JAZ has any obligation to furnish ground transportation at the domicile of the crewmember.

3.  Documentation costs.

    a.  Cost of passport shall be borne by crewmember.

    b.  Costs for visas shall be borne by JAZ.

    c.  Costs for inoculation in connection with visa requirements or company requirements shall be borne by JAZ.

4.  Hotel usage.

    a.    CRAWFORD understands that when it is operationally necessary for crewmembers to be housed in hotels, JAZ shall designate the hotel or hotels to be used. JAZ scheduling and HAcs shall inform crewmembers of said selection.

    b.    CRAWFORD understands that JAZ shall be responsible for obtaining reservations at designated hotels and shall be responsible to pay for hotel costs, i.e. room and taxes, and fees. Crewmembers shall be responsible for incidental costs and shall insure separate payment for such expenditures.

5.    Per Diem Payments.

    a.    Per diem payments for crewmembers serving JAZ away from domicile shall be in accordance with effective JAZ standards. (Current standards set forth APP. .Table).

    b.    Per diem will be paid by JAZ, accounted for and disbursed by HACS.

6.    Deadhead Provisions.

    a.    CRAWFORD understands he is required to deadhead for purposes of supporting JAZ flight operations or otherwise, he shall be given aircraft seating as follows:

        i.    On JAZ aircraft, Y class, positive space.

        ii.    On all other carriers, if available, C-class, positive space.

        iii.    If, C class is not available, Y class, positive space shall be provided.

7.    Sick Leave Policy.

    a.    CRAWFORD understands in the event that he becomes ill and cannot perform flight duties, or if he becomes injured or otherwise physically disabled, he shall notify HACS operations immediately. He shall immediately thereafter notify JAZ schedulers of his condition.

    b.    Sick leave pay approval shall be subject to approval by JAZ.

    c.    As soon as able, crewmembers shall advise JAZ schedulers and HACS that he is able to return to flight duty.

100388

  d. Any sick leave in excess of two days will require submission of a physician's statement outlining the illness suffered and an assurance that the crewmember is now fit for flight duty.

  e. In the event sick leave is in excess of thirty (30) days, a statement shall be submitted by the physician once each thirty (30) days, indicating the crewmember's current health status, i.e., fit to fly, grounded, etc.

  f. **No** sick leave shall be approved for more than two (2) days if a physician's statement is not furnished to HACS. Cost of the physicians statement shall be borne by crewmember.

  g. If no physicians's statement is submitted by a crewmember, he will be charged for the lost time by having said unapproved absence charged against his accrued vacation.

  h. If a crewmember has no accrued vacation credit he shall be deemed to have taken unauthorized leave. In this event crewmember will be denied pay for the unauthorized absence. Add e.g. Pay is based on 30 day months. If sick three days out of 30 days, pay is reduced by 10%. 10% times (monthly salary) $4,739.20 = $473.92 (Monthly salary) $4,739.20 - (10%) $473.92 = $4,265.28.

  i. Sick leave will be accrued at the rate of one and one- half days per month. Maximum accumulation shall be thirty-six days.

  j. If a crewmember has unused sick leave at the termination of the contract period, that sick leave shall not be paid to HACS by JAZ.

  k. If crewmember has unused sick leave at termination of contract period and is chosen by HACS and JAL to sign a subsequent contract, such crewmember shall be allowed to be credited with the unused sick leave at the commencement of the subsequent contract period.

8. Vacation Provision.

  a. CRAWFORD understands that vacation will be accrued at the rate of twenty (20) days per fiscal year.

  b. Crewmembers may elect to carry over vacation to the following fiscal year for a maximum of forty (40) days per year.

100380

c.  If a crewmember is allowed to take vacation during the initial assignment period, such vacation will be based on the proration noted above, i.e. 20 days per fiscal year.

d.  Unused vacation credit shall be paid to crewmember by JAZ upon termination of each contract period.

9.  Missing Appendices, severability.

CRAWFORD understands that if this agreement does not have the appendices denominated or if the appendices indicate "correction needed" or the like, that the agreement is still binding upon the both parties. If a missing or later corrected appendix causes a contractual defect, that defective portion and the results issuing there from shall be considered severed. The unsevered portion of the contract shall be binding.

HAWAII AVIATION CONTRACT SERVICES, INC.

By: _____John S. Carroll_____
JOHN S. CARROLL
President

Date of Execution: 11-22-92

By: _____Jack L. Crawford, III_____
JACK L. CRAWFORD III

Date of Execution: Nov. 1, 1992

4

100390

# LETTER OF ACKNOWLEDGEMENT
# RE: PILOT CONTRACT

1. I must remain a HACS employee during the time of the my assignment to JAZ.

2. Any claims for illness, injury, or death arising out of the my employment shall be governed by the laws of the State of Hawaii.

3. I shall not engage in any work disruption.

4. I shall not communicate with JAZ personnel other than as necessary for flight operations. In the event HACS management determines that an improper communication, that is, any communication directly or indirectly with JAZ administration, in violation of this section will cause the crewmember to be liable for a penalty of $500.00 (five hundred) for the first breach, $1,000.00 (one thousand) for the second breach and $1,500.00 (fifteen hundred) for each subsequent unauthorized communication. The undersigned cewmember agrees that this determination is within the sole province of HACS administration. CRAWFORD agrees and understands that the above denominated civil penalty will be deductible without any further authorization by CRAWFORD from his earned pay.

5. I understand without question or ambiguity that as well as all items contained in this contract that :-

    A. I have no interline benefits.

    B. I must live in Hawaii and will not commute to work

    C. I have not been promised any possibility of upgrade from my current position.

6. I shall indicate by written acknowledgement that I have read and understand and agree to the terms of the HACS/JAZ pilots' contract. I

1

100391

further acknowledge that I have been briefed on, understand and accept the JAZ work rules.

By: _____Jack L. Crawford, III_____
JACK LAFAYETTE CRAWFORD III

Date of Execution: ___Nov. 1, 1992___

100392