IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACK CRAWFORD, | CIVIL NO. CV 03-00451 SPK-LEK |
| Plaintiffs, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| JAPAN AIRLINES; JALWAYS CO., LTD.; HAWAII AVIATION CONTRACT SERVICES, INC.; and DOES 1-10, inclusive, | |
| Defendants. | |

Table of Contents

Page

I.     INTRODUCTION ............................................................................1

II.    PROCEDURAL BACKGROUND ...................................................2

III.   SUMMARY OF MOTION .............................................................3

IV.    FACTS ...........................................................................................4

V.     RULE 56 STANDARDS ...............................................................6

VI.    COUNT III ....................................................................................6

VII.   ANALYSIS...................................................................................10

       A.     Neither JAL Defendant is an employer of Crawford .........11

       B.     Crawford's policy is not supported by either constitutional or
              statutory provisions ...........................................................11

       C.     Crawford's policy is not "public" in the sense that it "inures to
              the benefit of the public" rather than serving merely the
              interests of the individual ..................................................18

       D.     Crawford's policy must have been articulated at the time of the
              discharge.............................................................................21

       E.     The policy must be "fundamental" and "substantial." .......22

       F.     Crawford cannot prove a causal link between Crawford's letter
              and his termination by HACS .............................................28

       G.     Summary .............................................................................29

VIII.  CONCLUSION.............................................................................30

Table of Authorities

Page

**Cases**

*American Computer Corp. v. Superior Court*,
261 Cal. Rptr. 796 (Cal. Ct. App. 1989) ...................................................... 23, 24

*Broussard v. University of Cal. at Berkeley*,
192 F.3d 1252 (9th Cir. 1999) ............................................................................6

*Carnero v. Boston Scientific Corp.*,
433 F.3d 1 (1st Cir. 2006) ..................................................................................30

*Cocchi v. Circuit City Stores, Inc.*,
2006 WL 870736 (N.D. Cal. April 3, 2006)......................................................10

*Concone v. Capital One Fin. Corp.*,
DOL ALJ, No. 2005-SOX-00006 (2004) ..........................................................30

*Doricent v. American Airlines, Inc.*,
1993 WL 437670 (D. Mass. 1993) .....................................................................30

*Fisher v. San Pedro Peninsula Hosp.*,
262 Cal. Rptr. 842 (Cal. Ct. App. 1989) ...........................................................13

*Foley Bros., Inc. v. Filardo*,
336 U.S. 281 (1949)............................................................................................29

*Foley v. Interactive Data Corp.*,
765 P.2d 373 (Cal. 1988) ................................................. 2, 4, 13, 22, 23, 24, 27

*Gantt v. Sentry Ins.*,
1 Cal. 4th 1083, 4 Cal. Rptr. 2d 874, 824 P.2d 680 (1992) ...............................19

*Gould v. Maryland Sound Indus., Inc.*,
37 Cal. Rptr. 2d 718 (Cal. 1995)................................................................. 19, 21

*Keifer v. Hamilton Engine Sales, Inc.*,
2006 WL 2620926 (E.D. Cal. Sept. 13, 2006)...................................................25

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
74 Cal. App. 4th 1105 (Cal. Ct. App. 1999) ......................................................27

*Norris v. Hawaiian Airlines, Inc.*,
74 Haw. 235, 842 P.2d 634 (1992), *aff'd,* 512 U.S. 246 (1994).........................15

*Pettus v. Cole*,
49 Cal. App. 4th 402, 57 Cal. Rptr. 2d 46 (1996)). ...........................................21

*Phillips v. Gemini Moving Specialists*,
74 Cal. Rptr. 2d 29 (Cal. Ct. App. 1998)...........................................................21

Table of Authorities

Page

*Rivera v. National R.R. Passenger Corp.*,
   331 F.3d 1074 (9th Cir. 2003) .................................................. 2, 3, 4, 10, 19, 20
*Silo v. CHW Med. Found.*,
   27 Cal. 4th 1097, 119 Cal. Rptr. 2d 698, 45 P.3d 1162 (2002) ................... 19, 22
*Sinatra v. Chico Unified School Dist.*,
   14 Cal. Rptr. 3d 661 (Cal. Ct. App. 2004) ............... 18, 19, 21, 22, 23, 24, 25, 26
*Smith v. United States*,
   507 U.S. 197 (1993) .................................................................................29
*Stevenson v. Superior Court*,
   941 P.2d 1157 (1997) .................................................................................3
*Sullivan v. Delta Air Lines, Inc.*
   58 Cal. App. 4th 938, 68 Cal.Rptr.2d 584 (1997) ...............................................26
*Tameny v. Atlantic Richfield Co.*,
   27 Cal. 3d 167 (Cal. 1980) ................................................................ 22, 26
*Trujillo v. North County Transit Dist.*,
   73 Cal. Rptr. 2d 596 (Cal. Ct. App. 1998) .................................................. 11, 12
*Turner v. Anheuser-Busch, Inc.*,
   7 Cal. 4th 1238 (1994) ................................................................. 24, 29
*Xin Liu v. Amway Corp.*,
   347 F.3d 1125 (9th Cir. 2003) .................................................. 2, 3, 10
*Zamora v. Sacramento Rendering Co.*,
   2007 WL 137239 (E.D. Cal. Jan 17, 2007) ........................................................13

**Statutes**
49 U.S.C. § 40101 .......................................................... 2, 7, 11, 14, 15
49 U.S.C. § 40102 ................................................................ 15, 16, 17
49 U.S.C. § 42121 .......................................................... 2, 7, 11, 16, 17
Cal. Educ. Code § 44922 ...............................................................18
Cal. Gov't. Code § 12920 ...............................................................12
Cal. Gov't. Code § 12940 ........................................... 2, 7, 11, 12, 13, 14
Cal. Lab. Code § 2922 .................................................................10

**Rules**
Prudence Kay Poppink Act,
   ch. 1049, § 7, 2000 CAL. LEGIS. SERV. 5812 (West) ...........................................12

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Crawford[1] sues for tortious employment discharge. The record, however, does not allow even the inference that JALways terminated Crawford to retaliate against him for his purported reporting of violations of a "public policy."[2] The record instead establishes that Crawford was terminated by his actual employer, HACS, because the Japan Civil Aviation Bureau ("**JCAB**") revoked his certification to fly to, from, and within Japan. Compl. Ex B.; CS Nos. 5-15.

Crawford's claim also fails to meet the mandatory "public policy" elements for a tortious discharge claim: (1) such a claim must be supported by constitutional or statutory provisions; (2) such a claim must be "public," "inur[ing] to the benefit of the public" not merely the employee's or employer's personal interests; (3) it must have been articulated at the time of the discharge; and (4) such a claim must

---

[1] This memorandum uses these defined terms: (1) defendant Japan Airlines (*i.e.*, Japan International Co., Ltd., a Japan corporation) is "**JAL**"; (2) defendant Jalways Co., Ltd. (formerly Japan Air Charter Co. Ltd, a Japan corporation) is "**JALways**": (3) JAL and JALways together are "**JAL Defendants**"; (4) defendant Hawaii Aviation Contract Services, Inc. is "**HACS**"; (5) plaintiff Jack Crawford is "**Crawford**,"; (6) the Complaint's third cause of action is "**Count III**"; and (7) the Concise Statement is as "**CS**," citing a relevant fact as "**CS No. __**."

[2] Crawford's Pilot Contract with HACS assigned him to pilot a commercial aircraft operated by JALways (called Japan Air Charter Co. Ltd. in that contract, as it was known at the time), not JAL. JAL and JALways are separate Japan corporations, as substantiated in the motion for summary judgment JAL has filed to have JAL dismissed as a defendant in this case. For this motion, all arguments relevant to deposing of Count III concerning JALways apply equally to JAL.

touch upon interests that are objectively "fundamental" **and** "substantial."[3]

Crawford's claim also fails to link causally his reporting and termination.

On requirement (1), the California statute[4] and two federal statutes[5]

Crawford cites provide **no** public policy for Crawford's claim. On requirement (2),

Crawford's *internal* disclosure to one supervisor about another supervisor's

purported attitude about sick leave would serve only the private interests of the

employer or employee(s).[6] On requirement (3), no policy articulated in any statute

Crawford cites applies to his claim; the statutes themselves are inapposite.  On

requirement (4), Crawford's expressing concerns over a purported informal policy

interpretation of a single supervisor does not implicate a "fundamental" and

"substantial" policy of California or the United States. An employee's *internal*

disclosure of his concerns to his employer serves only the private interests of the

employer or employee(s).[7] That law negates Crawford's claim.

## II.    PROCEDURAL BACKGROUND

This case's complex procedural history is summarized in other recently filed

motions; it is not repeated here. The Court denied Crawford's LR74.1 appeal from

---

[3] *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003) (citation omitted).

[4] Cal. Gov't. Code § 12940(k).

[5] 49 U.S.C. §§ 40101(d)(1)(2) & 42121.

[6] *E.g.*, *Rivera v. National R.R. Passenger Corp.*, 331 F.3d 1074, 1079 (9th Cir. 2003) (citation omitted).

[7] *Foley v. Interactive Data Corp.*, 765 P.2d 373, 380 (Cal. 1988).

the magistrate judge's denial of his motion to amend to plead claims under Hawaii law (Order Affirming Order Denying Mot. to Amend Compl., filed 11/28/07), leaving Crawford with only a claim for tortious discharge under California law (Count III).

## III.    SUMMARY OF MOTION

Count III is for tortious employment discharge in violation of "public policy."  It fails to meet that tort's requirements, as interpreted by California and federal courts applying California law.[8] No JAL Defendant was Crawford's employer; only HACS was.[9] Crawford was terminated because the JCAB "grounded" him by revoking his flight certification, not because he sent an *internal* letter to JALways about a particular supervisor's interpretation of a sick-leave policy. CS Nos. 5-15. Crawford cannot prove the requisite causal link between his reporting and his termination.

Crawford also fails to identify any public policy that (1) is "fundamental" and "substantial" and (2) inures to the benefit of the public instead of a personal or

---

[8] *E.g.*, *Rivera*, 331 F.3d at 1078 (citing *Stevenson v. Superior Court*, 941 P.2d 1157, 1161 (1997)); *Xin Liu*, 347 F.3d at 1137 (same).

[9] JALways has filed a motion for summary judgment that JALways was not Ventress's employer.

proprietary interest of an individual employee or an employer.[10] The

"fundamental" element requires:

> Even where, as here, a statutory touchstone has been asserted, we
> must still inquire whether the discharge is against public policy and
> affects a duty which inures to the benefit of the public at large rather
> than to **a particular employer or employee**. For example, many
> statutes simply regulate conduct between private individuals, or
> impose requirements whose fulfillment does not implicate
> fundamental public policy concerns.

*Foley*, 765 P.2d at 379 (emphasis added). That "fundamental" element is lacking in

Count III. Crawford's "complaint" about his JALways supervisor being

unsympathetic to employees who attempted to use sick leave coincidental with

vacation leave was internal between Crawford and JALways; it does not inure to

the public's benefit. The mundane, pedestrian friction that exists in all employment

relationships is of no concern to the law; it never has been recognized as support

for a "public policy" tortious discharge claim.

## IV.    FACTS

These facts are undisputed or indisputable. JALways had a contract with

HACS for HACS to provide supplemental flight-deck to JALways. CS No. 3.

Under that contract, HACS assigned Crawford to JALways to serve as a pilot, with

Crawford remaining a HACS employee. CS No. 4. Under that contract, HACS

---

[10] *Rivera*, 331 F.3d at 1079 (upholding summary judgment for employer where
only interest served by reporting co-workers' drug use to superior, prevention of
crime, was insufficient public policy to support tortious discharge claim under
California law).

employees assigned to JALways were required to maintain JCAB certification, or they could not be assigned to JALways. CS No. 5.  The JCAB is a Japan governmental agency regulating civil aviation in Japan (akin to the U.S. Federal Aviation Administration). CS No. 6. The JCAB issues and revokes certification for pilots flying into, out of, and within Japan. CS No. 7. Absent JCAB certification, a pilot may not fly within Japan. CS No. 8. An airline is barred by the JCAB and Japan law from allowing any pilot without JCAB certification to fly within Japan. CS No. 9.

HACS' assignment of Crawford to JALways lasted from about November 1992 until about December 2001. CS No. 10.  In about December 2001, JALways learned the JCAB had revoked Crawford's certification for DC-10 aircraft. CS No. 11. Absent that certification, Crawford could not fly into, out of, or within Japan. CS No. 12. In about December 2001, JALways, through Katsuto Kamiyama ("**Kamiyama**") notified HACS that the JCAB had informed JALways that it (*i.e.* the JCAB) had revoked Crawford's flight certification. CS No. 13. After December 2001, HACS could no longer assign Crawford to JALways, because the JCAB had revoked his certification, and he could not fly in Japan. CS No. 14.

Before Kamiyama of JALways notified HACS of the JCAB's revocation of Crawford's certification, Kamiyama did not know of (a) Crawford's internal letter to Capt. Hanami or (b) Crawford's alleged oral conversation with Capt. Shimada

5.

on any JALways sick leave policy or practice. CS No. 15. Neither that letter nor

oral conversation was the reason JALways communicated to HACS the fact that

JCAB had revoked Crawford's certification. CS No. 16. Crawford's internal

reporting about a purported sick leave policy was not what led to HACS'

termination of Crawford. CS No. 17.

## V.    RULE 56 STANDARDS

The court knows the summary judgment standards. "[S]ummary judgment is

mandated if the non-moving party 'fails to make a showing sufficient to establish

the existence of an element essential to that party's case.'" *Broussard v. University*

*of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). Crawford cannot prove

elements essential to Count III.

## VI.    COUNT III

Count III alleges tortious discharge:

35.  As a direct, foreseeable, and proximate result of Defendants JAL
and HAWAII's knowing, willful, and intentional wrongful termination
of Plaintiff JACK CRAWFORD in violation of the public policies of the
United States and the State of California[.]

Compl. ¶ 35. Few allegations support Count III:

17. On July 24, 2001, Plaintiff JACK CRAWFORD met with Captain
Hanami. After the meeting, Plaintiff JACK CRAWFORD wrote Captain
Hanami a letter in which he expressed his concerns over Defendants
JAL's policy that captains fly aircraft despite being sick. (A true and
correct copy of the July 24, 2001 letter is attached hereto as Exhibit
"A" and incorporated by reference herein).

18. After July 24, 2001 and until December 26, 2001, Plaintiff JACK CRAWFORD was subjected to a pattern of harassing conduct by Defendants JAL and its employees including, but not limited to, an unprecedented twelve "line monitor" checks, inordinate amounts of oral questions, and homework assignments.

\*\*\*\*

20. On December 26, 2001, Plaintiff JACK CRAWFORD was notified by Defendant HAWAII that Defendants JAL had given him an "unsatisfactory grade" of his performance, which "technically voids" Plaintiff JACK CRAWFORD's JCAB type rating, and that thus Defendant HAWAII must "cancel" the assignment to Defendants JAL. (A true and correct copy of the December 26, 2001 letters is attached hereto as Exhibit "B" and incorporated by reference herein.

\*\*\*\*

33. Plaintiff JACK CRAWFORD incorporates by reference paragraphs 1 through 23, inclusive, of this complaint as though set forth fully herein.

34. Plaintiff JACK CRAWFORD was terminated by Defendants JAL and HAWAII on December 26, 2001. This termination constitutes harassment and is in retaliation for Plaintiff JACK CRAWFORD's voicing his concerns regarding Defendant JAL's policy that captains fly aircraft despite being sick. **The termination is in violation of the public policies expressed in [California] *Government Code* Sections 12940(k), 49 U.S.C. Section 40101(d)(1)-(2), and 49 U.S.C. Section 42121**.

Compl. ¶¶ 17-18, 20, 33-34 (emphasis added)

Count III alleges Crawford was terminated because he "voic[ed]…concerns regarding Defendant JAL's policy that captains fly aircraft despite being sick."

Compl. ¶ 34. Count III cites Crawford's letter (Compl. **Ex. A**) as the only evidence of his having "expressed his concerns over Defendant JAL's policy that captains fly

aircraft despite being sick." Compl. ¶ 17. Crawford's letter is the linchpin of his claim;[11] it memorializes his purported "express[ing] his concerns over Defendant JAL's policy." Compl. ¶ 17. What Crawford's letter states, however, differs materially from what his lawyer *says* Crawford's letter says, in a desperate attempt to shoehorn Crawford into tortious discharge claim. The key statements are:

> I was told it is JAL Standard by ***Capt. Shamada*** that we should fly sick …. This was brought up because **I called in sick on a vacation day from Bangkok, Thailand**. He *suggested* maybe I was not sick…. To suggest I was not sick or **to say I should fly while sick is _not_ JAL standard** and is dangerous.[12]

> …. If those who are responsible for safety pick and choose what is standard and what in not standard, and try to force us to fly sick in order to pass future check rides and keep our jobs.

> I am not someone … calling in sick without a good reason.

> ****

> But I feel ***part of*** my unacceptable grade for my line check was also due to the sick days mentioned….

> These two issues[13] became part of my post check and used during the debriefing as leverage to intimidate me …to fly sick[.]

> ….
> Finally, ***Capt. Shamada*** was very nice and ***only suggested these*** things[.]"

> …. I especially like you and ***Capt. Shamada***….

---

[11] Exhibit A to the Complaint is referred to hereinafter as "**Crawford's letter**."

[12] Crawford writes "Shamada," where the Japanese name correctly is *Shimada*.

[13] The other "issue" was "pressure … to carry another suit case." Ex. A, at 1.

    …. I respect **_Capt. Shamada_** and you and accept your criticism in good faith.

Compl. Ex. A, at 1-2 (emphases added).

Count III alleges Crawford was subjected to wrongful termination for writing an internal letter to a JALways supervisor (Capt. Hanami) "in which he [Crawford] expressed his concerns over Defendants JAL's policy that captains fly aircraft despite being sick." Compl. ¶ 17. In fact, he never "expressed" that "concern"; instead, he wrote that **_Capt. Shamada_** (actually Shimada) expressed that standard: "I was told it is JAL Standard by **_Capt. Shamada_** that we should fly sick[.]" Compl. Ex. A, at 1. He then offered his thought on the correct JALways standard: "to say I should fly while sick **is _not_ JAL standard**[.]" *Id.* (emphases added). His recitation of events indicates he was a passive listener, not an active complainer.  Further, it is clear that his allegation is that one particular supervisor doubted that he was legitimately sick and that to insist that a pilot fly while sick was **_not_** the JAL standard.  Put another way, his allegation is that Jalways' official policy was safe and he was not complaining about it.

Crawford's allegations and letter are summarized: (1) In June 2001, he called in sick while on vacation in Bangkok, while assigned to JALways, a foreign air carrier not subject to U.S. or California state laws; (2) his calling in sick was questioned by a JALways captain (Shimada), who "suggested maybe [Crawford] was not sick" (*i.e.*, Crawford was malingering in an effort to extend his vacation in

9.

Thailand); and (3) he wrote another JALways captain (Hanami) a letter, to justify his sick day and to suggest it partly affected his grade, unfairly. Any semblance of causality then disappears: for unrelated reasons, in December 2001, Crawford had his flight certificate revoked by the governmental authorities at the **JCAB**; and, accordingly, he received a ministerial letter from HACS terminating his employment and, effectively, his assignment to JALways. Compl. Ex. B.

## VII.  ANALYSIS

Employment is at-will unless the parties contract otherwise. Cal. Lab. Code § 2922. California courts have carved out an "exceedingly narrow"[14] exception to that general rule: an employer is liable if it terminates an employee in violation of public policy.[15] The elements for such a "public policy" claim are:

> First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be "fundamental" and "substantial."[16]

Count III meets none of those requirements.

---

[14] "[T]he public policy exception is exceedingly narrow." *Cocchi v. Circuit City Stores, Inc.*, 2006 WL 870736 at *6 (N.D. Cal. April 3, 2006) (addressing tortious discharge claim).

[15] *Rivera,* 331 F.3d at 1078 (citation omitted); *Xin Liu*, 347 F.3d at 1137.

[16] *Xin Liu*, 347 F.3d at 1137 (citation omitted).

**A.     Neither JAL Defendant is an employer of Crawford.**

Tortious discharge claims exist only in the context of an employer/employee relationship. Crawford must establish a JAL Defendant was his employer. He cannot. ***HACS*** was Crawford's sole employer. The JAL Defendants filed a motion for summary judgment on that issue (on 12/19/07).

**B.     Crawford's policy is not supported by either constitutional or statutory provisions.**

Crawford cites ***three*** statutes as supplying the public policy for his claim: Cal. Gov't. Code § 12940(k), 49 U.S.C. § 40101(d)(1)-(2), and 49 U.S.C. § 42121. Compl. ¶ 34. Crawford claims his letter "reported" violations of a public policy found in those statutes. It did not. Those statutes cannot even apply here.

1.     ***Cal. Gov't. Code Section 12940(k).***

Section 12940(k) is part of California's Fair Employment and Housing Act ("**FEHA**"), which makes it unlawful:

> "[f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

*Trujillo v. North County Transit Dist.*, 73 Cal. Rptr. 2d 596, 599-600 (Cal. Ct. App. 1998)[17] explains the public policy of the FEHA's public policy:

---

[17] In *Trujillo*, employees sued for employment discrimination and harassment. The jury found defendants did not commit the alleged misconduct, but did violate former § 12940(i) (now § 12940(k)), by failing to prevent discrimination and harassment from occurring, and it awarded damages. The trial judge granted

Section 12920 sets forth the **public policy** underlying the employment provisions of FEHA: Protection and safeguarding of the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of **race, color, national origin, ancestry, and other enumerated characteristics**; the purpose of FEHA is to provide, under the police power of the state, effective remedies which will eliminate such discriminatory practices. In particular, section 12940 provides in subdivision (a) that it is an unlawful employment practice, with certain exceptions, for an employer to refuse to hire, employ, or select a person for a training program, or to bar or to discharge the person from employment, or to discriminate against the person in compensation, terms, conditions or privileges of employment, because of the person's **race, color, national origin, ancestry, or other enumerated characteristics**. Section 12940, subdivision (i) then provides it is an unlawful employment practice:

"(i) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, *to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring*." (Italics added.)

*Trujillo,* 73 Cal. Rptr. 2d at 599-600 (emphasis added).[18]

That public policy is not implicated here.[19] Crawford does not allege he

expressed any concern regarding the:

---

defendants' *jnov* motion. The appeal court affirmed, finding the jury could not find a violation of former § 12940(i), unless it also found that discrimination or harassment occurred; absent that finding, the award of damages lacked support. 73 Cal. Rptr. 2d at 602.

[18] Section 12940(k) was numbered Section 12940(i) when *Trujillo* was published (in 1998). When the FEHA was enacted (in 1987), this provision was § 12940(i), later renumbered without substantial change as § 12940(k). *See* Prudence Kay Poppink Act, ch. 1049, § 7, 2000 CAL. LEGIS. SERV. 5812, 5822 (West).

[19] The policy in FEHA (as stated in § 12920) might support a tortious discharge claim, with the right facts. *See Zamora v. Sacramento Rendering Co.*, 2007 WL 137239 at *5 (E.D. Cal. Jan 17, 2007) (antidiscrimination laws such as FEHA

> "[p]rotection and safeguarding of the right and opportunity of all
> persons to seek, obtain, and hold employment without discrimination
> or abridgment on account of race, color, national origin, ancestry, and
> other enumerated characteristics[.]"

*Id.* Crawford does not allege he challenged any policy or practice under which JAL

"fail[ed] to take all reasonable steps necessary to prevent discrimination and

harassment from occurring." *Id.*  Crawford's letter alleges nothing about

"discrimination or harassment" based on "race, color, national origin, ancestry, or

other enumerated categories."[20] The Court may take judicial notice that people of

all races, colors, national origins, and ancestries get sick and/or malinger; an

"unfair" sick leave policy (or policy interpretation) does not discriminate on the

basis of those protected categories.

Crawford only alleges he voiced concerns about a particular supervisor

looking askance of Crawford's false claims of illness and that particular

supervisor's alleged *personal* policy of "making" pilots fly while sick. Compl. ¶ 17;

*id.* at 7 ¶ 34. Crawford's letter focuses on one incident: (1) he called in sick at the

---

satisfy the *Foley* requirement, citing § 12940(k)). Count III does not implicate that
policy.

[20] Crawford's letter implicates none of the policies of the federal Fair Employment
Housing Act and Title VII of the Federal Civil Rights Act of 1964, which are
analogous to California's FEHA. *See Fisher v. San Pedro Peninsula Hosp.*, 262
Cal. Rptr. 842, 850 (Cal. Ct. App. 1989) ("Although the wording of the Fair
Employment Housing Act and title VII of the Federal Civil Rights Act of 1964 ...
differs in some particulars, the antidiscriminatory objectives and the overriding
public policy purposes are identical and we refer to those federal decisions where
appropriate.") (internal citation omitted).

13.

tail-end of a vacation in Bangkok; (2) he felt questioned as to whether he actually was sick that day; and (3) then he perceived he was given a lower grade, because he took that sick day even after being implicitly accused of malingering while on vacation to avoid reporting to work as scheduled. Given those allegations, the FEHA's public policy, including section 12940(k), facially does not support Crawford's claim.

2.    ***49 U.S.C. § 40101(d)(1)-(2). This statute concerns "[s]afety considerations in public interest":***

(d) Safety considerations in public interest. —In carrying out subpart III of this part and those provisions of subpart IV applicable in carrying out subpart III, the Administrator shall consider the following matters, among others, as being in the public interest:

* * *

(2) regulating **air commerce** in a way that best promotes safety and fulfills national defense requirements.

(3) encouraging and developing civil **aeronautics**.

The defined terms for that section show it cannot apply here, and it therefore has no "public policy" to offer for Crawford's tortious discharge claim.

(1) "**aeronautics**" means the science and art of flight.

****

(3) "**air commerce**" means foreign air commerce, interstate air commerce, the transportation of mail by aircraft, the operation of aircraft within the limits of a Federal airway, or the operation of aircraft that directly affects, or may endanger safety in, foreign or interstate air commerce.

****

(22) "**foreign air commerce**" means the transportation of passengers or property by aircraft for compensation, the transportation of mail by aircraft, or the operation of aircraft in furthering a business or vocation, between a place in the United States and a place outside the United States when any part of the transportation or operation is by aircraft.

49 U.S.C. § 40102(1), (3), (22) (emphasis added).

Crawford's letter concerned an incident that occurred while he was on the ground, on vacation, in Bangkok. Crawford alleges *no* "**air commerce.**" Crawford's letter concerns a disputed sick day taken in Bangkok, about which Crawford stated that ***Capt. Shimada***'s personal policy of making pilots fly sick was *not* the official JAL corporate standard. He alleges no incident involving the flight of commercial aircraft "between a place in the United States and a place outside the United States[.]" 49 U.S.C. § 40101(d)(1) has no relevance or connection to the matters raised in Crawford's letter. It also alleges nothing on "aeronautics," rendering it irrelevant for 49 U.S.C. § 40101(d)(2). That statute supplies no public policy for a tortious discharge claim. Count III does not allege, or allow any inference of, a discharge for reporting faulty safety standards in violation of an *American* law.[21]

---

[21] *Cf. Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 842 P.2d 634 (1992) (unionized airline mechanic states common law whistleblower claim in alleging discharge for reporting faulty airline maintenance in violation of FAA rules), *aff'd*, 512 U.S. 246 (1994).

3.    *49 U.S.C. § 42121. This statute concerns "[p]rotection of employees providing air safety information." It does not apply here: (1) it applies only to an "air carrier," (2) an "air carrier" must be "a citizen of the United States," and (3) no JAL Defendant is a U.S. citizen. Section 42121(a) provides:*

> (a) Discrimination against airline employees.—No **air carrier** or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)—
>
> (1) **provided**, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to **the employer** or Federal Government information relating to any violation or alleged violation of **any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States**;
>
> (2) has **filed**, caused to be filed, or is about to file (with any knowledge of the employer) or cause to be filed a proceeding relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States;
>
> (3) **testified** or is about to testify in such a proceeding; or
>
> (4) **assisted** or **participated** or is about to assist or participate in such a proceeding.

49 U.S.C. § 42121(a) (emphases added). Section 40102(a)(2) then provides:

> (a) General definitions.—In this part—

****

(2) "air carrier" means a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation.

****

(15) "citizen of the United States" means--

****

(C) a corporation or association organized under the laws of the United States or a State, the District of Columbia, or a territory or possession of the United States[.]

49 U.S.C. § 40102(a)(2). No JAL Defendant is a "citizen of the United States"; each is a Japan corporation. **CS Nos. 1-2**. 49 U.S.C. § 42121(a) *never* could or would apply to the JAL Defendants. Section 42121(a) therefore cannot support the "public policy" for a tortious discharge claim against a *foreign* air carrier.

Even if a JAL Defendant were a domestic "air carrier" under Section 42121(a), that statute would not apply to support Count III. Count III fails to allege Crawford provided his employer (*arguendo* either JAL Defendant):

or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the **Federal Aviation Administration** or any other provision of Federal law relating to **air carrier safety** under this subtitle or **any other law of the United States**.

49 U.S.C. § 42121(a)(1) (emphases added). Nor does Crawford allege he filed, testified, or assisted in any proceeding covered by Section 42121(a)(2)-(4). *See* Compl. 1-9 & *id.* Ex. A. Crawford's *internal* letter focused on a questioned sick day taken by Crawford: "This was brought up because I called in sick on a vacation

day from Bangkok, Thailand." Compl. Ex. A, at 1. It said nothing about any law on air carrier safety or any other U.S. law.

> ### C.    Crawford's policy is not "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual.

*Sinatra v. Chico Unified School Dist.*, 14 Cal. Rptr. 3d 661 (Cal. Ct. App. 2004), instructs on this requirement. In *Sinatra*, a principal requested reassignment to a part-time administrative position, as permitted by Cal. Educ. Code § 44922 ("**Section 44922**"). *Id.* at 663.  He was notified of a reassignment to a full-time teaching position, but believed he would be given the requested part-time position. *Id.*  When that did not occur, he took medical leave over teaching full-time. *Id.* at 664.  He ultimately sued for tortious discharge. *Id.*  The trial court ruled for the school district; the court of appeal affirmed.  *Id.* at 664, 667.

The court held Section 44922 did not embody the requisite "fundamental" public policy. *Id.* at 666.  Section 44922 permits a school district to allow "certificated employees to reduce their workload from full-time to part-time duties" and thereby give older full-time employees a part-time option without sacrificing their retirement and health care benefits. *Id.* at 665.  That part-time option was not a "fundamental" and "substantial" policy that (1) was tethered to constitutional or

statutory law, (2) inured to the benefit of the public rather than personally to the employee, and (3) clearly articulated at the time of discharge.[22] *Sinatra* explains:

> The difficulty … lies in determining where and how to draw the line between claims that genuinely involve matters of public policy, and those that concern **merely ordinary disputes between employer and employee**. This determination depends in large part on whether the **public policy** alleged is sufficiently clear to provide the basis for such a potent remedy.[23]

When an employee's *internal* disclosure of information to his employer only serves the employer's private interest, the employee has not stated a claim for wrongful termination.[24] Crawford's letter, at most, exemplifies an "ordinary dispute[] between employer and employee."[25] *Sinatra*, 14 Cal. Rptr. 3d at 664. Crawford felt he had been treated unfairly after he called in sick while on vacation in Bangkok. Crawford's letter is an *internal* dispute about whether his supervisor (*i.e.*, Capt. Shimada) was justified in questioning Crawford's veracity in calling in sick while on vacation and then "requiring" Crawford to fly his scheduled flight despite Crawford's subjective insistence he was sick.  Compl. Ex. A.

---

[22] *Id.* at 664 (citing *Silo v. CHW Med. Found.*, 27 Cal. 4th 1097, 1104, 119 Cal. Rptr. 2d 698, 45 P.3d 1162 (2002)).

[23] *Id.* (quoting *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1090, 4 Cal. Rptr. 2d 874, 824 P.2d 680 (1992)) (boldface added).

[24] *Rivera*, 331 F.3d at 1079 (citing *Gould v. Maryland Sound Indus., Inc.*, 37 Cal. Rptr. 2d 718, 725-26 (Cal. 1995)).

[25] Again, neither JALways nor JAL was Crawford's employer; only defendant HACS was Crawford's employer.

When a plaintiff's alleged retaliation is based on a report to "the same supervisor he alleges was condoning and enforcing the illegal activity," the plaintiff's "wrongful termination claim fails on this basis alone."[26] Crawford sent a letter to the same supervisor with whom he met on the issue, about another supervisor's purported violation of a "JAL standard" (which Crawford himself insists was to *not* require sick pilots to fly). That slight difference in facts—one versus two supervisors—does not remove this case from the preclusive effect of *Rivera*,[27] because both supervisors to whom he complained were the very same supervisors "condemning and enforcing the illegal activity."[28]

Count III does not allege Crawford (or any pilot) was required actually to fly any aircraft while sick, under Capt. Shimada's purported "JAL standard." Crawford's letter only raises the very narrow concern that after Crawford went ahead and took a sick day after the veracity of his claim of illness had been questioned by one JAL captain, Crawford *speculated* that he *partly* got a lower grade because of it. Crawford does not even allege he actually was told he was

---

[26] *Rivera*, 331 F.3d at 1079.

[27] Crawford's letter indicates both JAL captains were his supervisors. *E.g.*, Compl. Ex. A. ("I respect Capt. Shamada and you and accept your criticism in good faith.")

[28] The Court may take judicial notice that private corporate sick leave policies do not have the force of law; accordingly, a variance from such a policy cannot, in and of itself, be "illegal."

given a lower grade because he took a questioned sick day. *See* Compl. at 1-9 (lacking that allegation).

"The cases in which the courts have allowed a tortious claim for wrongful termination in violation of public policy generally fall into one of four categories, where the employee is discharged for: (1) refusal to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory or constitutional right or privilege; or (4) *externally* reporting an alleged violation of a statute of public significance."[29] Count III does not fall into any of those four recognized categories. At most, Crawford alleges a JALways supervisor, who was skeptical of vacationing pilots who conveniently claimed illness to extend their holidays, suggested "that we [captains] should fly sick,"[30] which Crawford reported to another JALways supervisor. Even if Crawford's letter were to fall within the fourth category—for which Crawford seems to be shooting—it would fail. Crawford's letter does not touch on any "fundamental *and* substantial" public policy, as explained in **Section VI.C**.

---

[29] *Sinatra*, 14 Cal. Rptr. 3d at 664 (citing *Pettus v. Cole*, 49 Cal. App. 4th 402, 454, 57 Cal. Rptr. 2d 46 (1996)). The tort is not limited to those categories. *Gould v. Maryland Sound Indus., Inc.*, 37 Cal. Rptr. 2d 718, 723 (Cal. Ct. App. 1995); *see also Phillips v. Gemini Moving Specialists*, 74 Cal. Rptr. 2d 29, 33 (Cal. Ct. App. 1998).

[30] Comp. Ex. A at 1.

**D.    Crawford's policy must have been articulated at the time of the discharge.**

**Section VI.B** above explains the three statutes specified in Count III do not support any public policy invoked for a tortious discharge claim. It therefore does not matter whether the policy in those statutes may have been articulated when Crawford allegedly was discharged; they are irrelevant to the outcome of this motion.

**E.    The policy must be "fundamental" and "substantial."**

"To withstand a legal challenge to a wrongful discharge claim, a plaintiff must identify a policy that is 'fundamental' and 'substantial' in that it is tethered to constitutional or statutory law, that **inures to the benefit of the public** rather than to a personal or proprietary interest of the individual employee, and that is clearly articulated at the time of discharge."[31] *Foley* further instructs on this requirement. In *Foley*, the court ruled tort damages may be awarded for a discharge that violates "fundamental" or "basic" public policy concerns. 765 P.2d at 377.  The violation must implicate a "public policy" or affect a "duty" that inures to the benefit of the public at large rather than to a ***particular employer or employee***. *Id.* at 379. The court found no such public policy or duty was involved in the discharge of an employee allegedly for reporting his supervisor's past illegal activities *internally* to

---

[31] *Sinatra*, 14 Cal. Rptr. 3d at 664 (citing *Silo v. CHW Med. Found.*, 27 Cal. 4th 1097, 1104, 119 Cal. Rptr. 2d 698, 45 P.3d 1162 (2002)) (emphasis added).

the company, because an employee's duty to disclose information to his employer serves *only the private interests of the employer*.[32]

Crawford's termination did not affect a duty that inures to the benefit of the public at large. *Id.* Crawford's letter to Capt. Hanami about Capt. Shimada's purported "sick leave standard," at most, would serve the private interests of JALways (or JAL), or his own, but not the interests of the public at large. By Crawford's own statements, he reported Capt. Shimada's standard because it involved his own *personal* sick day and his own *personal* repercussion. Crawford even combined his complaint about being questioned on the legitimacy of his claim of illness with a complaint about *his* having to carry an extra suitcase on flights; that joinder indicates the internal and personal nature of Crawford's complaints.

This case is far from the more substantive allegations in *American Computer Corp. v. Superior Court*, 261 Cal. Rptr. 796 (Cal. Ct. App. 1989), still held insufficient to state a tortious discharge claim. There, an employee who reported suspicions of embezzlement to his employer and was later discharged did not have a cause of action for tortious discharge in violation of public policy. The court determined that while plaintiff's report might benefit the public by preventing or

---

[32] The court explained: "[W]hen the duty of an employee to disclose information to his employer serves only the private interest of the employer, the rationale underlying the *Tameny* cause of action is not implicated." *Foley*, 765 P.2d at 380.

uncovering the commission of a felony and "thereby served the laudable goal of preventing crime[,]" that public benefit was not "weighty enough to give rise to a claim for wrongful discharge." *Id.* at 668. No public interest was involved, because the employee was not being ordered to embezzle; to the contrary, he was told the matter was none of his business. Nor was he punished for reporting criminal activity to law enforcement officials; instead, his report was to his superiors.[33]

The concern in Crawford's letter—whether a single supervisory pilot required a particular sole pilot to fly sick—does not implicate a "public policy," or affect a "duty" that inures to the benefit of the public instead of a **particular employer *or* employee**. The matter would concern, at most, JALways. No *Foley*-type public policy or duty was involved in the discharge of Crawford allegedly for expressing concerns on Capt. Shimada's attitude toward Crawford for his perceived malingering, (purportedly requiring Crawford to "fly while sick") because an employee's duty to disclose information to his employer serves only the private interests of the employer (even assuming *arguendo* JALways employed Crawford). Crawford's letter expressed concerns that would have served only his employer's

---

[33] *See also Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256-57 (1994) (discharge for exposing violations of internal operating practices and collective bargaining agreement did not contravene public policy).

private interests (or his personal interests). Under *Foley* (and *Sinatra*), those narrow concerns do not support a claim for tortious discharge in violation of public policy. The law simply does not deal in trifles.

Here, as in *Foley* and *American Computer*, Crawford's letter may have raised issues about employer conduct. Any benefit that might inure to the public from Crawford's internal reporting that Capt. Shimada had a certain standard on pilot sick leave, however, is far too attenuated to support a tortious discharge claim. *See Keifer v. Hamilton Engine Sales, Inc.*, 2006 WL 2620926 (E.D. Cal. Sept. 13, 2006) (granting defendant's motion for summary judgment on tortious discharge claim, interpreting California law).

Crawford does not allege he was ordered to fly while sick. Compl. at 1-9; *id.* Ex. A. He does not allege he was made to fly while sick, or punished for not flying sick. *Id.* Nor does he allege he was punished for reporting any activity to any agency; instead, his report was only to Capt. Hanami, his superior (about another superior, Capt. Shimada). *Id.* So far as he alleges, his letter stayed entirely in-house, with no impact outside his employer or on any interests but his own. *Id.*

*Sinatra* summarizes the applicable standard for a fundamental public policy:

> "[I]n determining whether discharging an employee for exercising a right violates a **fundamental public policy**, the focus is not simply on the importance of the right that was exercised. The issue is whether permitting an employer to discharge an employee for exercising that right would undermine a ' "clearly mandated public policy" ' embodied in the provision from which that right emanates. [Citation.]

It must be clear from the provision itself or from some other legislative or regulatory enactment that employers are not free to disregard or limit that right.... '[A] constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law.' [Citation.]"[34]

Crawford assumes the statutes he cites embody some fundamental public policy; he fails to indicate what it is. "If plaintiff assumes that all statutes encompass a sufficient policy to support a *Tameny* [public policy] tort claim,[35] he is mistaken."[36] "Surely the Legislature believes that each statute enacted serves the public interest of this state, but the courts have clearly and consistently demanded that public policy within the meaning of a *Tameny* tort claim must be fundamental and substantial and must inure to the benefit of the public at large."[37]

Crawford nowhere alleges the public policy he invokes is "fundamental and substantial" to California (or the U.S.). His letter focuses on him: it seeks to justify his taking a sick day to extend his vacation in Thailand and refute any punishment for his perceived malingering. His letter raises no broad, public policy concern. The crux of the matter is his **grade**: "I feel part of my unacceptable grade for my

---

[34] *Sinatra*, 14 Cal. Rptr. 3d at 665 (citation omitted) (emphasis added).

[35] *See Tameny v. Atlantic Richfield Co*., 27 Cal. 3d 167, 178 (Cal. 1980) (establishing tortious discharge claim).

[36] *Sinatra*, 14 Cal. Rptr. 3d at 665 (emphasis added).

[37] *Id.* (citing *Sullivan v. Delta Air Lines, Inc.* 58 Cal. App. 4th 938, 68 Cal.Rptr.2d 584 (1997)).

line check was also due to the sick days mentioned[.]" Compl. Ex. A at 1. That is not "fundamental and substantial" public policy (and is facially speculative at best).

Crawford does not claim his termination violated the public policy expressed in Cal. Lab. Code section 6310,[38] which prohibits an employer from terminating an employee for raising *bona fide* complaints relating to workplace health or safety.[39] The unavoidable inference of that pleading choice is that Crawford is not raising any workplace health or safety issue—indeed, **no** issue beyond himself. Crawford's letter complains about how **he alone** was treated.

Many statutes regulate conduct between individuals or impose requirements not implicating public policy concerns. *Foley*, 47 Cal. 3d at 669. To determine if a "substantial" policy is violated, courts consider if an employer and employee *could* circumvent the policy by agreement. *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1112 (Cal. Ct. App. 1999). In *Lagatree*, the court held terminating an employee for refusing to sign an arbitration agreement did not violate a substantial public policy, because the right to a jury trial may be waived by agreement. *Id.* at 1116. Even though JALways was not an employer, the

---

[38] *E.g.*, *Taylor v. Lockheed Martin Corp.*, 92 Cal. Rptr. 2d 873, 881 (Cal. Ct. App 2000) ("A private cause of action for retaliatory discharge under Labor Code section 6310 is part of California's statutory scheme for occupational safety.").

[39] *See Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003) (nuclear pharmacist states common law claim of wrongful discharge in violation of public policy based on policies embodied in state statute [§ 6310] prohibiting retaliatory discharge for raising bona fide workplace safety complaints).

JALways standard on sick leave could be altered—or waived—by agreement between the HACS assigned pilots and JALways.

**F.    Crawford cannot prove a causal link between Crawford's letter and his termination by HACS.**

Crawford's assignment with JALways was terminated by HACS because Crawford failed to meet requisite JCAB[40] standards and, accordingly, the JCAB "grounded" Crawford by revoking his pilot's license.  *See* Compl. Ex. B (HACS termination letter); CS Nos. 5-15 (summarized in Section IV). HACS informed Crawford by a December 26, 2001 letter: "You no longer have a JCAB DC-10 rating. As a result of this license cancellation HACS has no choice but to cancel your assignment to JALways effective today." Compl. Ex. B. Crawford can provide no evidence from which a jury reasonably could conclude his termination resulted from his statements on the JAL Defendants' handling of pilot sick leave, as memorialized in Crawford's letter. The persons to whom Crawford reported the purported sick leave policy (Captains Hanami and Shimada) had no communication or involvement with the person (Kamiyama) who notified HACS that the JCAB had revoked Crawford's certificate for DC-10 aircraft. **CS No. 15.**

---

[40] The JCAB website states as one of its duties: "To enhance the safe operation of aircraft, the Bureau conducts written examinations and practical examinations for airmen in order to issue **competence certificates**, in accordance with the Annex 1 to the Convention on International Civil Aviation." http://www.mlit.go.jp /koku/ english/05_safety/index.html (emphasis added), last accessed 1/14/08.

Crawford cannot show a causal nexus between his reporting of the purported sick leave policy and his termination by HACS, as a direct consequence of the JACB having revoked Crawford's certificate for DC-10 aircraft; he cannot controvert Jalways' evidence on why he was terminated. *See* **CS Nos. 5-17** (explaining consequences of JCAB's revoking Crawford's certification). Lack of a causal nexus entitles the JAL Defendants to summary judgment.[41]

### G.    Summary.

The incident underlying the internal disclosure purportedly triggering the termination occurred in **Bangkok**, concerned a person assigned to work for a ***foreign*** air carrier, and involved one contested sick day actually taken (*i.e.*, not denied). Count III fails to allege Crawford disclosed any unlawful activity by any JAL Defendant ***in California or the U.S.***, or that Crawford disclosed to any state or federal agency (or anybody else) any air commerce and air safety issue ***involving California or the U.S.***. Compl., 1-9 (lacking those allegations).

Crawford ignores the tethered extraterritoriality of American law.[42] "[L]egislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States[.]" *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949). That is especially true for state whistleblower acts, which seek to protect employees within particular sub-jurisdictions of the

---

[41] *See Turner*, 7 Cal. 4th at 1258 (summary judgment proper where evidence does not support reasonable inference of causal nexus between employee's past complaints about employer's illegal activities and employee's later termination).

[42] *See, e.g., Smith v. United States*, 507 U.S. 197, 204 (1993) (holding there must be "clear evidence" of congressional intent to apply a statute extraterritorially).

greater United States.[43] The reach of the statutes Crawford cites, and their public policies, do not stretch so far from U.S. borders. Californian and American public policy do not apply to an incident involving an employee sick day taken in **Bangkok,** as it relates to the operations of a foreign air carrier flying a foreign aircraft supervised by foreign nationals in foreign airspace.

## VIII.  CONCLUSION.

Crawford cannot prove critical elements for tortious discharge. He was terminated because he lost the JCAB certification needed for his assignment to pilot commercial aircraft for JALways. Count III lacks the requisite public policy for tortious discharge. There was no causal link between his *internal* disclosure and his termination. The Court should grant summary judgment for the JAL Defendants and dismiss Count III.

DATED: Honolulu, Hawaii, January 16, 2008.

/s/ Andrew L. Pepper
ANDREW L. PEPPER
STEVEN M. EGESDAL
GARY G. GRIMMER
JOSEPH F. KOTOWSKI, III

Attorneys for Defendants
JAPAN AIRLINES and
JALWAYS CO., LTD.

---

[43] *Cf. Doricent v. American Airlines, Inc.*, 1993 WL 437670 (D. Mass. 1993) (holding state employment laws generally do not apply extraterritorially). *Cf. also Carnero v. Boston Scientific Corp.*, 433 F.3d 1 (1st Cir. 2006) (holding whistleblower provisions of the Sarbanes-Oxley Act do not apply to employees of U.S. companies employed outside U.S.); *Concone v. Capital One Fin. Corp.*, DOL ALJ, No. 2005-SOX-00006 (2004) (same).