ORIGINAL

cc: LEK

Jack L. Crawford III
The Regent Royal Place II 6/179
Soi Mahadlekuang 2, Rajadamri Road
Lumpini, Patumwan,
Bangkok, Thailand 10330

Mobile Telephone: 001-66-81-907-9236
Land Line Telephone: 001-66-2-650-2307
Facsimile: 001-66-2-650-2307
E-mail: captjack1943@yahoo.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 29 2008

at 3 o'clock and ___ min __ M.
SUE BEITIA, CLERK

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARTIN VENTRESS<br>AND JACK L. CRAWFORD III<br><br>Plaintiffs<br><br>Vs.<br><br><br><br>JAPAN AIRLINES; JALWAYS<br>CO., LTD, A SUBSIDIARY OF JAPAN<br>AIRLINES; HAWAII AVIATION<br>CONTRAC SERVICES, INC., AND DOES<br>1-10<br><br>DEFENDANDTS | CIVIL NO. 03-451 SPK-LEK<br>(Civil Rights)<br><br><br><br>POSTION STATEMENT<br>AND OPPOSITION TO<br>WITHDRAWL OF SHAWN<br>LUIZ, ATTORNEY AS<br>COUNSEL FOR THE<br>PLAINTIFF. |

RECEIVED
CLERK U.S. DISTRICT COURT
JAN 28 2008
DISTRICT OF HAWAII

1

**Position Statement:**

Plaintiff, Jack L. Crawford III, presents the following Position Statement to the Court to the Honorable Magistrate Judge Leslie E. Kobayashi requesting that Attorney, Shawn A. Luiz's Motion to Withdraw be denied unless Luiz complies with specific conditions.

1. The Hourly Fee / Contingency Fee Attorney Client Agreement drawn by Attorney Shawn Luiz and presented to his client, Jack L. Crawford III, addresses costs. Payment of costs are the focus of Luiz's Motion to Witdraw and are reviewed within item #3 of his Agreement with Crawford. **(See Exhibit 1).**

    Luiz in the Agreement states costs are to be billed to the client **monthly.**

    No monthly statements have ever been presented to Crawford.

    Crawford has never received a monthly billing with costs of $5,200. Luiz does not follow the terms of his own Agreement.

    Luiz makes much of a 14-day deadline which he unilateral established for Crawford to pay costs of about $5,200. Crawford did not meet this arbitrary deadline. Luiz then filed a Motion to Withdraw. This deadline is not a part of Luiz's "Agreement" with his client.

    Crawford never received any monthly billings. Crawford rejects the Luiz 14-day deadline for payment of coss and requests Luiz's Motion to Withdraw be rejected

2. Luiz, within the Hourly Fee / Contingency Fee Attorney Client Agreement, only states costs will be billed monthly –

    Luiz fails to state when costs which are to be billed monthly **are due**.

    Luiz, an attorney and in a superior position to Crawford, failed to address the most basic question of when monthly costs billed **are due**. Luiz, an attorney, had every opportunity to state when monthly costs billed were due -- Were monthly costs which were billed to be paid 90, 120, 180 days after the billing date **or upon settlement**?

    Crawford states the Luiz Agreement, should be interpreted in his favor. It is Crawford's interpretation of this Agreement that costs billed monthly are due upon final settlement or at the conclusion of legal proceedings -- payment would be made via a deduction from a forthcoming settlement. In the absence of a

settlement, Crawford would pay costs incurred which had been billed monthly at the conclusion of his actions.

<u>Luiz, in his "Agreement," failed to establish both a due date for monthly billings and never sent monthly statements to Crawford.</u>

Crawford believes that Luiz should continue as counsel with his Motions to Withdraw rejected with Luiz billing costs monthly which will then be paid at settlement or conclusion of the legal action.

3. Luiz states that <u>"he"</u> spent $5,200 in "good faith" to attend oral arguments in the 9th Circuit Court of Appeals in California.

    It is Crawford's position that Luiz presents, at best, a "cloudy picture" to the court and, at worst, highly misleading statements that deserve both the scrutiny and action of the court.

4. Crawford advises the court that the <u>"he"</u>, (referred to in Luiz's Motions), is actually Shawn Luiz and his wife -- The accurate statement to the court should be: ":... <u>"we"</u> spent $5,200."

    <u>Luiz took his wife on the trip to the 9th Circuit Court and billed all her expenses, (food, hotel, etc.) including airfare to Crawford. The expenses for Luiz's wife appear to be nothing but a simple "junket."</u>

    Crawford has never challenged that Luiz and his wife dissipated $5,200 of expenses.

5. Luiz has stated that his wife is an <u>essential part of his legal team and that it was required his wife accompany him to California so that he could "practice his forthcoming 5- minute appeals argument."</u> **(See Exhibt 2)**

    Crawford responds that any 5-minute "practice" oral arguments by Luiz with his wife could have taken place in Hawaii either at the office or within the confines of their residence .

    "Practicing" for a 5-minute presentation did not have to take place 2,000 miles from Hawaii in a 5-star Hotel in Los Angeles with all expenses billed to Crawford. **(See exhibit 3 ).**

3

Crawford has congratulated Luiz for his success in his 5-minute oral argument in the 9th Circuit Court of the appeal which was drafted and submitted by prior counsel; however, that does not change Crawford's concerns related to expenses incurred by Luiz and his wife.

6. In spite of the issues related to expenses incurred related to Luiz's wife, Crawford has acknowledged the debt and has asked 6 times for receipts. It is noted that Crawford did not aggressively first challenge these expenses because he feared Luiz, upon being challenged, would quit and Crawford would lose his $25,000 retainer leaving him without counsel. And, in fact, when Crawford pushed for a detailed accounting and receipts a "Motion to Withdraw" was soon forthcoming.

   Receipts, (at the time of this writing) have still not been forthcoming. If "lost" duplicate copies could have easily been obtained by Luiz.

   Luiz then had the temerity to imply that Crawford should call the hotel to obtain Luiz's receipts well knowing the Hotel would not release these records. Crawford in response advised Luiz that he would like to see what the financial manager of any law firm would do upon being told that they should track down an attorney's receipts.

   Luiz further advised Crawford the name of the hotel was: the Pasadena hotel, yet, no such hotel name can be found on the internet. **(See exhibit 4).** Crawford presumes that Luiz, by not presenting detailed receips, wishes to avoid full disclosure of his profligate spending and did not present the correct name of the Hotel.

   The accounting from Luiz without receipts for the hotel for three nights was about $1,400. Crawford called the most expensive hotels in the area determined expenses for 3 nights at a 5-star hotel should not exceed $900 --- Food and beverage charges for about 8 meals were stated by Luiz to be about $800. (Probably three of these meals would have been breakfasts.)

   Knowing that Crawford had limited funding, it is believed that Ruiz and his wife stayed in a yet to be named 5-star hotel with significant charges for food and beverage s all which have been billed to Crawford. Luiz continues to avoid presentation of detailed receipts.

   Crawford had made his limited financial condition quite clear to Luiz, **(See exhibit 5)** In light of both the amount of the expenditures and expenses for the wife of Luiz, Crawford questions the repeated statements by Luiz that all expenditure were made in "good faith" for the benefit of the client.

4

It is Crawford's position that due to profligate spending and other issues as presented within this Position Statement that the Luiz Motion to Withdraw should be denied

7. Luiz in his motion states Crawford is both unwilling and unable to pay. This statement is not correct. Crawford has always acknowledged the debt and was willing to pay upon having detailed receipts. It is correct that Crawford experienced a funding shortfall and sought to discuss the matter with his attorney while he verified a loan commitment from Japan. **(See exhibit 6)** Luiz never responded to Crawford's request for discussion. Luiz never presented receipts. He just withdrew. Crawford has funds.

8. The 9th Circuit Court of Appeals has awarded expenses to Crawford. Crawford ponders how the defendants in this case will respond to having to pay charges for the wife of Shawn Luiz to accompany him from Hawaii to California.

   Crawford questions if expense charges for the wife of any attorney would be paid. If these charges are not paid at a later date upon closer inspection, why should Crawford now be required to pay? Therefore, the issue of payment of $5,200 of spending presented by Luiz as a rational for his Motion to Withdrawal is rejected.

9. Luiz "implies" in his motion under seal within item 7, (with Crawford having no objection to all parties being acquainted with item 7 only), that Crawford also has other significant unpaid financial obligations. Luiz specifically refers to an obligation for a DPR deposit in the amount of $8,000. Presenting this as an issue within his motions is clearly an attempt by Luiz to show that Crawford has other financial issues which would, in turn, confirm Crawford's inability to pay expenses, thus, assuring Luiz can "drop" this case without penalty.

   Luiz in his motion states that Osaki, attorney for HACS, wants the Plaintiff to pay an equal share of DPR deposit in the amount of $8,000. The first time Crawford became aware of Osaki's statement was in the withdrawal motion –

   However, Luiz knows full well that this obligation was only $200 based upon a decision and compromise established by the Honorable Magistrate Judge Leslie E. Kobayashi. **(See exhibit 7).** Luiz has always stated HACS would pay all costs associated with DPR arbitration using AAA employment guidelines.

   Statements by Luiz are part of his obfuscation process which clouds the primary question – have expenses truly been incurred in good faith for the sole benefit of the client?

   The Motions to Withdraw should be denied.

5

10. Luiz continues to advise parties that <u>he is not counsel</u> to Crawford. <u>Yet, no ruling has been made by the court.</u> Crawford questions this behavior. At other times Luiz takes a contradictory position and advises Crawford as his counsel. – **(See exhibit 8)** Luiz acts in a contradictory manner not in the interest of his client while having no ruling from the court related to his Motion to Withdraw.

11. Luiz presents his Motion to Withdraw as issues primarily related to money when other factors are present :

    Luiz had entered into an arrangement / agreement with a consultant retained by Crawford. The agreement was: <u>If the consultant quit, Luiz would quit.</u> The agreement then expanded and became mutual – <u>If Luiz quit the consultant will quit.</u> **(See exhibit 9).** And, in fact, when the consultant quit, Luiz did quit.

    <u>Making an agreement outside the lawyer /client relationship that could adversely affect a client and laden with potential for conflicts of interest is inappropriate.</u>

    The first obligation of Luiz should be solely to his client and the attorney should establish no relationship which establishes the slightest possibility of a conflict of interest.

    A second factor: Andrew Pepper, attorney for JAL supports Luiz in any attempt to Withdraw. (This appears to be interference in Crawford's relationship with his attorney. ) Pepper advises Luiz to withdraw, **(See Exhibit 10),** and Luiz acts accordingly. Luiz then supports Pepper's statement advising the court that Crawford's settlement requirements reflect "emotionality;" however, Luiz, in making this statement to the court, never examined Crawford's actual financial losses. Crawford in reviewing this situation questions the competency and effectiveness of representation.

12. Crawford recently had an incident with the consultant referenced in item #11 when the psychologist breached client confidentiality. The consultant claimed threats were made. – Crawford vehemently denies this.

    Crawford also states implied threats were made to him. Crawford's inferences were soon supported and certainly not a fantasy – a police Colonel in Thailand, (who is a personal friend of the consultant), then made direct threats to Crawford and his wife

    Luiz failed to call his client to obtain factual information about the alleged incident.

6

Crawford advised Luiz that that he was to have no contact with this party. Yet, Luiz continued to share confidential lawyer client communication with the same party with whom Luiz had entered into the I quit/ you quit relationship **(See exhibit 8)**

Luiz committed a serious breach of trust and broke one of the primer tenants of a lawyer client relationship. Against multiple specific directions by Crawford to not share lawyer /client communication , Luiz continues to share information from Crawford and vice versa. Luiz might attempt to indicate he not Crawford's counsel; however, to date Luiz's Motion to Withdraw has not been acted upon by the Court. Luiz's actions could endanger Crawford, yet, Luiz continues in his inappropriate course of action. **(See exhibt 11)**

13. Luiz states he has earned the retainer fee of $25,00 by "more than double."

    Crawford states he paid the retainer as part of a contingency agreement for initial and ongoing legal services to the conclusion of the case. In accepting the retainer, Luiz promised to continue Crawford actions to their conclusion. **(See Exhibit 12)** The payment of costs is a "moot point" due to Luiz's failure to act according to the terms of his own agreement while omitting any due date for payment of monthly costs billed.

    Luiz now seeks to Withdraw and not provide services which he promised.

    Further, Luiz estimated that concluding work would require an additional $150,000 to $200,000 of his time. **(See Exhibit 13)** Crawford, by Luiz's withdrawal, will not receive the benefit of this commitment – leaving Crawford without money and representation at a critical juncture of proceedings. At a minimum, Crawford suggests tht the contingency fee should be returned.

14. Luiz in his motion states he advised Crawford with regard to deposition dates. The first time Luiz mentioned deposition dates was on the 12th of January – just three days before the scheduled deposition, making attendance impossible. No deadlines or dates prior to 12th of Janury were provided by Luiz. On the 9th of December, Luiz only mentioned depositions but no dates were given. **(See exhibit 14)** The matter of depositions was left open with no prior response to Crawford's questions related to the necessity of participation. Luiz never requested a date when Crawford might be available for depositions in Hawaii nor did Luiz, as an alternative, suggest that Andrew Pepper or Carl Osaki fly to Thailand.

### Concluding Statement:

In view of the magnitude of the issues presented within the Position Statement, Crawford recognizes that for Luiz to continue representation under order from the Court would probably not be beneficial to his legal actions.

Crawford believes he has presented significant information as to why the Motion to Withdraw by Luiz should be denied. Crawford recognizes, with trust broken, he must obtain new counsel.

Crawford as a condition of withdrawal of Luiz as counsel requests 30-days to retain new counsel.

Should Luiz still immediate withdrawal, Crawford is open to this option with Luiz returning his retainer less the $5,200 of expenses which Luiz and his wife spent on their trip to California.

8