01-25-08
Friday

**Strictly Confidential** –

Re: Glenn Matthews

Shawn:

It appears that I again need to review the situation. I do not know how to make the situation more clear – I review and review and you just do not seem to get the picture with regard to Glenn – Against my repeated directions, you continue to send my confidential client information to Glenn.

Just the other day you copied Glenn on *confidential lawyer / client communication*. What do I need to do to make you stop this serious breach of lawyer / client privileged communication – How many times must I make this request only to see you continuing to ignore my directions?

I will try just one more time to provide a better picture for you of events… kindly check out my statements and you will at least have an alternative view and may not be so blinded by the special relationship which you established with Glenn -- a relationship outside our primary lawyer / client relationship.

1. Glenn and I had a functional relationship for many years. He gave me both significant amount of time and was a help to me. The case was moving forward. All was well until the point of a few weeks ago.

   <u>I take nothing away from Glenn to this point and recognize his help. I only have issues with his most recent behaviors. I have stated many times that I was even willing let his recent serious errors be bygones.</u>

2. The situation was workable for all of us – Only over the Holidays did the situation so rapidly deteriorate.

   Glenn had stated that over the Holidays he had many patients who needed his help. He would need to take a break from working with me. I suggest it was Glenn who, *upon receipt of your expert witness form, was the one who truly needed help over the Holidays*.

3. As you well aware, Glenn was retained to for primarily three major functions: to be an expert witness; write detailed psychological reports; and deal with FAA regulations. Only after the conclusion of my case, was he going to help "heal" my wounds as my psychologist and I was going to be his patient.



EXHIBIT 6

4. <u>In return for his specific help in these three primary areas, he was going to get significant compensation from my settlement.</u>

5. In, as I recall, about the middle of December, your office sent the expert witness form and for Glenn to complete. A detailed example was attached.

6. Glenn, (I recently confirmed), does not have a medical license to practice in Thailand and has no work permit. Thus:

    i. He could never have been an expert witness.

    ii. As an unlicensed medical practitioner in Thailand, he never could have written psychological reports.

    iii. He never could have been my psychologist.

    <u>Glenn could not complete the expert witness form without exposing his situation.</u>

    Please note in researching on Google and other data bases of professional journals, I never found an article Glenn authored. His being an expert witness would have ended up being a fiasco.

    <u>Why do you think Pepper wanted to do a deposition on Glenn? – Pepper was just waiting to nail him and you – it was obvious to Glenn what would soon take place.</u>

    Glenn would have been "shot out of the box" by the first two questions with regard to licensing and qualifications from Pepper. Glenn, you, and I may have looked very bad.

7. I do not yet know about the status of Glenn's license in the United States --- I am working to get this information both under his current and former name.

    <u>I presume that when he retired to Thailand he probably just let his state license lapse.</u> – this is an open issue under investigation. I just do not have the facts to make any statement about any State license but will have them soon.

    I am now checking the license situation in Florida. I have no idea if there were actions against his license – Glenn always seemed ok to me so I doubt that there were issues but the name change is still a red flag. – Therefore, the Florida license and name change is an open issue still under investigation.

    Glenn upon seeing the expert witness form and detailed example knew he would have to present current license information. Practicing in Thailand without a medical license or work permit is a serious problem

2

<u>In presenting these problematic situations please remember that I am still appreciative for his past help. I can separate his past help to me from his most recent actions.</u>

8. Glen was obviously in a bind -- working without a work permit and with no medical license in Thailand. <u>Many issues were and are present for him.</u>

   IT IS NOT MY OBJECTIVE CAUSE ISSUES FOR GLENN-- IT NEVER WAS -- AND, IT STILL IS NOT MY OBJECTIVE TODAY.

   I would hope you and especially Glenn would believe me. I do not wish to make the situation worse for him and am trying everything possible to avoid confrontation. Of course, I am assembling information to protect myself -- that is only prudent.

   I still just want a handshake with each of us moving on. I also need some method, acceptable to Glenn and myself, to set the record straight with the court and other parties to whom he may have painted an inaccurate picture.

   I keep trying and trying to get things normalized and the response I got from a professional psychologist is beyond my belief. Glenn's response to my continued efforts to "normalize" was to have the Police Colonel call my wife who made threats to her and myself.

   I want things to settle down. I have presented a variety of options to Glenn…
   I am most serious that I want a normalized relationship yet, to date, can get no movement from Glenn to change course. I only seek for Glenn to become neutral and set the record straight --- In setting the record straight, I make no request that Glenn damage his reputation or acknowledge what I believe to be his serious wrongdoings and errors in sharing my confidential information with others. Please believe that after his recent actions, I have many options which can only work to Glenn's further disadvantage. I do not seek to hurt a person who has problems but I will not let their personal issues damage me without some form of corrective action on their part.

   I have left it up to Glenn as to what he might do that would best work for him as a method of correcting any incorrect past impressions he may have created with others. And, now it appears with the court.

9. Glenn's response to receipt of the expert witness form was to make an excuse <u>that only a psychiatrist could be a "true expert witness" because they can prescribe medication</u>…

   <u>You and I both know a psychologist can be a great expert witness.</u>

   <u>Glenn wanted out as both a psychologist writing reports and as an expert witness.</u>

3

When Glenn noted licensing statements on the form and request for articles authored, I believe that he panicked. As fast as he could, he got me to a psychiatrist and attempted to get out of the role of expert witness / psychologist.

<u>Glenn wanted to shift the issue of his not being able to be either an expert witness or psychologist away from himself and his issues. Under his current circumstance, he cannot even write reports.</u>

Glenn's solution was to get the psychiatrist to take on this function.

10. Further supporting my statements to you: When I had made an off hand comment that "he (Glenn) was not my psychologist"<u>, Glenn **seized upon that statement** as a method of getting away from being an expert witness</u> and having to write psychological reports and exposure.

<u>He rapidly quit. …..</u>

Yet, I state Glenn quit not because I made the brief comment about his not being my psychologist but rather because Glenn knew he could never have written required psychological reports in Thailand or have been an expert witness without a medical license in Thailand.

By presenting his credentials, some weak at best, and his licensing when completing the expert witness form, he would have had to expose himself to difficult forthcoming questions by Pepper….

Due to the special relationship he had established with you, he did not want to "lose face" -- he would have been embarrassed to advise you that he did not have a medical license in Thailand and that he was working illegally – he wished to avoid dealing with these issues with you and wanted to "get out".

<u>And, he did just this.…</u>

<u>Shawn, I respectfully, suggest that your special relationship with Glenn has blinded you to any other explanation of events other than the one presented by Glenn.</u>

Had you just called or asked me, <u>your own client</u>, you would have had other input.

<u>Instead, you continued to work with Glenn who had quit and was not even a part of my case. You continued to share information with an unlicensed medical practitioner and never even bother to check out the situation with me.</u>

4

If Glenn had just been open about his concerns in completing expert witness forms, I certainly could have found other roles for Glenn. I am sincere in making this statement and still feel that way today.

Glenn spent considerable time with me….. his efforts to help me had helped us stay the course with this case working together for many years.

11. Glenn instead of openly dealing with issues he would soon have to face in the completion of the expert witness form, then wrote to you advising that he quit using the off hand statement that: "Jack said I was not his psychologist" Note: I was only repeating a statement he made that to the effect he could not be my psychologist until the case was conclude. No changes in his other functions were mentioned.

Shawn, does it make any sense to you that this simple statement would be grounds for quitting? Think about it.

The real grounds were that Glenn soon would be "in the dock" with Pepper examining his credentials and licensing. Quitting was a method of saving face.

12. <u>Background</u>: Larry Huddon is a nice guy. He is an expert jewelry designer. He is also highly emotional -- I even think he would agree with that. Larry regularly goes off on some emotional tangents -- some for valid reasons and some not. Usually about a week after the emotional incident, Larry and the other party are back sitting at the table going out to dinner.

Larry and I share common interests in jewelry design. I have known Larry for years. We regularly go to the movies and have dinner… He was always a friend of mine. Both Glenn, Larry, and I were friends up until the point of Glenn's actions -- Larry and Glenn were both guys that I had a normal relationship with. We would talk and share meals. I still hope that some day we can repair the relationship.

I have created a timeline.. You need to know that up to the point that Larry told me I had lost my psychologist and attorney, we had been planning meals and had movie plans.

Larry may have seen me depressed but he certainly would never have been making plans for dinner and movies up until the day I found out about Glenn's actions if he were truly worried about his safety.

5

13. <u>Remember: It was Larry Huddon, not Glenn who told me I had both lost my attorney and psychologist.</u>

    Glenn sat on the emails that he sent to you advising you that he quit for about 4 days after he wrote them and until I confronted him.

    <u>Glenn told Larry that he quit but Glenn never told me</u>. I have the time stamps. <u>Glenn never sent these emails to me.</u>

    It is unbelievable to me that I would get the information about Glenn's retirement from the case from Larry and not Glenn <u>and</u> that Glenn would hold informing me for days while discussing the matter with Larry, a mutual friend and Glenn's patient.

    <u>Are these truly the actions of a professional psychologist? These actions are, I suggest, of a guy in a bind, who did not deal with a problem directly – a problem which I could have accepted and dealt with. That problem was his knowledge he could not be either my expert witness nor write valid psychological reports.</u>

    Larry, when he called me, wondered why I was so happy and planning to see a movie with him that night while at the same time my psychologist had quit. (In making these plans for dinners and movies could Larry have been truly worried his personal safety.)

    Larry then went on to reveal highly confidential information to me that I had only told Glenn.

    I told Larry this was all personal business that was between me and Glenn about which he should not be aware… Larry then hung up the phone and I have not since yet been able to contact him.

14. After talking to Larry, I then immediately called Glenn.. Glenn acknowledged that he never sent the "I quit" email which he had sent to you but not to me.

    Glenn read his past emails which had been sent to you but had never sent to me to me over the phone. Knowing the past correspondence between you and Glenn that established the Glenn quits / Shawn quits relationship, I knew you would soon be gone.

    <u>Unbelievably Glenn never sent had sent these emails to me advising that he quit. Only upon my confronting him did he first read and then send me these emails.</u>

15. Please imagine how it felt talking on the phone with Glenn --- seeing my $25,000 retainer go out the drain and losing my psychologist. I was talking with a person who had breached confidentiality and who advised you and my friend, Larry Huddon, but not me that he was quitting.

6

My case was falling apart just because a guy could not tell you or me that he could not go to court as a psychologist, write reports as a psychologist, or be an expert witness.

He did not want to deal with this issue with you or me. ---

Glenn, in selecting other means to "get out," from his problem quit and it cost me dearly.

Yes, I was furious and angry….. <u>in the vernacular I read Glenn the proverbial "riot act" – both sides of the page and in great detail. -- He deserved that and I will never change my mind about that. That does not mean that I cannot forgive and move on.</u>

<u>Any professional that breaches the most trusted secrets of his client deserved every word I said.</u>

Glenn had shared confidential information that I had previously borrowed money from my family without yet being able to repay… Why would Glenn ever share this with a mutual friend of ours? -- Couldn't he imagine I might be upset? Couldn't he imagine that by quitting and not telling me that I would be upset? And when I determined why he really quit, couldn't he imagine that I would be angry with him for not dealing directly with his problem with both you and me?

Again, all Glenn's activities were done to avoid his own personal exposure to his own problem. Inexcusable -- yes…… Did I suffer as a result of his actions – yes. Was I willing to forgive and move on while requesting that Glenn try to repair the breach in the dyke with you, -- yes.

Glenn, a trained professional, should have been able to deal with any issues of conflict. Instead he started calling people, painting a very distorted picture, again sharing client / patient issues.

Glenn knew this was wrong. He took rapid action to try to protect himself. Yet, he chose the wrong course….. All he needed to do was apologize, acknowledge his mistakes, and get back to work to heal relationships that had fractured. Instead he painted an unclear picture of me with you and others and resorted to making threats. If only Glenn had called…..

Or, if Glenn had just told me about his medical licensing problems or not having a work permit in Thailand, I could have worked around this. My intention would never have been to dump Glenn but rather to have used him where we could in other areas. Even if he were not my psychologist or expert witness, he still had much to add to my case – that is why in spite of events, I still make entreaties to him to help me.

7

Yes, he cannot perform major functions for which he was to be paid. Yes, I would now want to pay much less because he cannot perform functions for which I specifically retained him, but he can help and I do want to pay him for what he could do and I would do so.

16. Bottom line:

   i. Glenn could never have acted as an expert witness.
   ii. Glenn could never have written psychological reports.
   iii. Glenn's medical licensing status in Thailand, (and perhaps the U.S.), would have been a block to his work and impaired our case
   iv. Glenn was retained to perform specific functions which he could never have fulfilled
   v. I seek no problems for Glenn, (or myself) – I do want the record set straight.
   vi. I have made a number of suggestions to Glenn as to how he might proceed to make amends for his actions. I have asked him for his ideas…..his response was to threaten me.
   vii. I still want to normalize the situation – I would like a handshake with both us moving on and with Glenn making an valid attempt to set the record straight which would not compromise himself.
   viii. I would still like Glenn to consider doing some work for me on regulations. I have no other agenda other than to get back to work on my case.

17. Shawn, In spite of my having told you many times that there were issues with Glenn, you have continued to send confidential information to a person without a medical license in Thailand who has threatened me using a Thai Police Officer.

   Shawn, -- you do not live in Asia. You do not know the culture here. Life is cheap here. I take any threat seriously and especially when made to my wife by a Police Colonel. **Your decision to continue to be in contact with Glenn continues to endanger me.**

   I will never resort to the tactics which Glenn recently employed. Rest assured, I will respond in the courts taking vigorous action against any party that threatens my wife or myself.

   You need to be put on notice: You may have either knowingly or unwittingly have become a part of the problem by continuing to support Glenn by sharing personal and confidential correspondence and never calling me to review the situation… just a simple call to your client would have presented you with information which you needed to make an informed decision. You have still not made this call.

I again tell you to stop any communication with Glenn. There are other issues with Glenn on which I could comment but until I have more facts I will not share this information with you.

<u>You will soon see that your course of action was erroneous and violated all standards of professional ethics.</u>

<u>You chose to listen only to a person with no medical license in Thailand and no work permit in Thailand – a person working illegally.</u>

<u>You chose to violate directions not to communicate with this person and violate client / lawyer confidentiality without having all the facts.</u>

<u>Your actions endangered me.</u>

<u>You chose to work solely with a person who elected to make threats of violence without ever discussing the situation with your client.</u>

<u>You are now appearing to be taking punitive actions against me because I simply challenged your billing. -- It appears you have submitted documents to the court from this person who does not have a medical liscense in Thailand who resorted to threats of violence and who is working illegally.</u>

**You made your choices …. all without ever having made a simple call to me.**

<u>As with Glenn, I too will not be vindictive with you even though it appears you are now taking punitive action against me.</u>

I will, however, seek your sincere apology along with your taking corrective actions to make amends for your very serious errors and any punitive actions you appear to now be taking against me.

If your actions have caused me loss, I will expect you to make restitution to me.

<u>Your errors in judgment, when soon exposed, will I believe cause you to rethink your position.</u>

<u>My path to challenge Glenn and his actions in both civil and criminal actions in the courts is now open and, if required, will be pursued. I have almost been at the point of pleading with Glenn… yet, no response. My pleadings have reached their end. I will now soon act.</u>

I would think that with the information that I have continuously presented to you that you may have chosen to rethink your course of action in sharing client / lawyer information with a third party.

9

<u>How much more information do you need to have in your possession to take a moment to think about the fact that you might not have the complete picture?</u> –

<u>Why would you not discuss any concern with me?</u> –

<u>Why would you only listen to a person who is not your client who has his own issues?</u> –

<u>Why couldn't you make a simple call to me and ask me what is going on over in Thailand between myself and Glenn?</u>

Finally, the question of sharing lawyer / client information should not even be an issue about which I need to write you 11 pages to support my position. What took place should never have been an issue.

**You should have learned about privileged communication and lawyer client communication on your first day of law school.**

Even if you have some scattered reason as to why you were required to violate client confidentiality, it will not stand up to any serious investigation.

<u>You do not share client information with others. Frankly, I think you need to take a refresher course on ethics.</u>

If you have an issue with your client…. call your client and listen to your client and do not act on input from a party who is not your client whose motivations are highly suspect.

Get the facts and then make an informed decision. I have provided you with information at each step of the way about Glenn -- <u>All information disregarded by you.</u>

Shawn, as we move on working towards our separation, I wish to note:

    a. You sent me nothing with regard to sending any papers from Glenn or others to the court in either your papers or correspondence.
    b. You have not advised me of any motions that you sent by yourself to the court other than the motions now in the hands of the court that are pending with the exception of the motion to withdraw.
    c. You have not advised me of any actions I need to take to protect my case. You have abandoned me and the case without any release from the court as my attorney.
    d. You are still my attorney and I believe should be held to highest legal standards of practice in your dealings with me.

10

    e. Did you send anything to the court from Glenn or others? If you submitted information to the court from Glenn or other parties, respectfully be advised that I think you have made a serious mistake.
    f. You will need to send me copies of everything you submitted to the court from Matthews or others – to date and in the future. Should you not do this I will hold your responsible. You have provided no explanation to me of the reasons for your actions.
    g. To date, you have only sent your motion to withdraw. I need copies of anything you submitted from Glenn, others, or yourself that was not submitted to the court.
    h. If you have not kept me 100% advised of your submissions and others, I suggest this to be a mistake which I request you now rectify.

Shawn, You may not like the fact that I have challenged you and your billing.

**This does not provide you with any type of excuse to take what I believe are punitive actions against your client.**

Do not take punitive action against me because of your personal anger at my challenge to your expenses. Take your own responsibility for your actions in creating $5,200 of expenses.

If you have personal issues with me, deal with those issues directly. – Do not confuse the issue you have related to payment of expenses and my challenge to those expenses with your apparent anger and your apparent need to personally injure me.

I see your actions and inexcusable and unprofessional -- not much more needs or can be said.

Conclusion:

I have made some very direct and critical statements. You are still my attorney and I needed to be quite frank. I need to be able to tell you exactly what I think. When you have a better picture of events, I think you might even thank me. You are taking action that I think you will soon determine to be inappropriate to the circumstances.

You have written to me about my ranting and raving ---- I assure you that none of my comments are unsupported.

I still want you to consider a return to the case. I have made a proposal which I hope you might reconsider. We are still so very close. I can do my part if you can do yours. Please consider

Jack L. Crawford III

11