Jack L. Crawford III
The Regent Royal Place II 6/179
Soi Mahadlekluang 2, Rachadamri Road
Lumpini, Patumwan,
Bangkok, Thailand 10330

Mobile Telephone: 001-66-81-907-9236
Land Line Telephone: 001-66-2-650-2307
Facsimile: 001-66-2-650-2307
E-mail: captjack1943@yahoo.com

Plaintiff, PRO SE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACK L. CRAWFORD, <br><br> Plaintiff, PRO SE <br><br> vs. <br><br> JAPAN AIRLINES AND JALWAYS CO., LTD.; HAWAII AVIATION CONTRACT SERVICES INC. <br><br> DEFENDANTS. | CIVIL NO. 03-00451 – SPK – LEK <br><br> PLAINTIFF'S POSITION, OPPOSITION AND RESPONSE STATEMENT REQUESTING RESCINDING AND / OR REVERSAL OF COURT ORDERS GRANTING DEPOSITIONS IN JAPAN MAY 7TH / 9TH, 2008. <br><br> RE: DEFENDANTS JAPAN AIRLINES, JALWAYS, AND HAWAIIAN AVIATION CONTRACT SERVICES, INC. "EX PARTE APPLICATION FOR ASSURANCE AND COMMISION TO TAKE DEPOSITIONS IN JAPAN. RE: AFFADAVIT OF CARL H. OSAKI AND GARY GRIMMER DATED FEBRUARY 13TH AND 29TH OF 2008. <br><br> TRIAL DATE: OCTOBER 7TH, 2008 |

PLAINTIFF'S POSITION, OPPOSITION AND RESPONSE STATEMENT
REQUESTING RESCINDING AND / OR REVERSAL OF COURT ORDERS
GRANTING DEPOSITIONS IN JAPAN MAY 7TH / 9TH, 2008.

RE: DEFENDANTS JAPAN AIRLINES, JALWAYS, AND HAWAIIAN AVIATION
CONTRACT SERVICES, INC. "EX PARTE APPLICATION FOR ASSURANCE AND
COMMISION TO TAKE DEPOSITIONS IN JAPAN. RE: AFFADAVIT OF CARL H.
OSAKI AND GARY GRIMMER DATED FEBRUARY 13TH AND 29TH OF 2008.

## DECLARATION OF CRAWFORD

Plaintiff, Jack L. Crawford, III, pro se, presents the following position / opposition and response statements to the court and the Honorable Magistrate Judge Leslie Kobayashi seeking rescinding and / or reversal of court orders for HACS and JAL to take depositions in Japan until Crawford can participate in legal proceeding and / or retain new counsel.

1. The defendants have attempted to create a "double bind" – "no win" situation for Crawford during the period of the 90-day continuance which has been granted by the Court. A period in which Crawford believed was to be a brief "time-out" for him to retain new counsel and / or attempt to settle his actions with the defendants while addressing issues presented by his medical condition.

2. The double bind: The defendants now create an ever mounting flow of work to Crawford and the Court while Crawford is "pro se." and while Crawford seeks to obtain new counsel. If Crawford does not respond, Crawford's options and legal actions are prejudiced. If Crawford does respond, the defendants attempt to state he is "well", not impaired, and competent.

   A classic double bind "no win" – establishing this double bind is an unfair tactic being used by the defendants during the 90-day continuance and all during a time Crawford's efforts have been directed towards attempting to obtain a fair settlement from the defendants.

3. Crawford based upon information, herewith, requests the Court rescind and / or reverse Court Orders granting depositions May 7th / May 9th in Japan while granting Crawford the opportunity to make a response to any requests, Motions, Application, or other pleadings made to the Court by the defendants.

   Crawford never had the opportunity to have his response heard by the court to either the Osaki Motion of February 29th, 2008 or the Grimmer Application dated March 29th, 2008. The defendants either hand delivered or sent their Motion and Application to the Court by electronic filing. The Court ruled in two or three business days. Crawford was not able to respond or participate.

<u>Crawford states the process and procedure used by the defendants which does not give the Plaintiff the opportunity to respond or participate is inequitable, unfair, and untenable and prejudices his legal actions.</u>

Crawford requests any benefit the defendants have obtained using this procedure and process should be negated with the Court rescinding or reversing Court orders granting depositions in Japan.

4. To clearly illustrate this inequitable situation described in item #3.

<u>Grimmer Ex Parte Application related to depositions in Japan:</u>

   a. 13 February 2008: Grimmer sends Ex Parte Application to Court regarding taking deposition in Japan.
   b. 15 February 2008: <u>Two days later</u>: The order granting Ex Part Motion of Grimmer from Court is made; obviously, <u>Crawford was not part of the process.</u>
   c. 19 February 2008: Crawford receives by Electronic Filing from Court advice that the Grimmer Application was granted.
   d. 29 February 2008: Crawford responds with his Opposition, Response and Motion of this date by both by Fed X and Electronic Mail – Electronic filing had to be destroyed because Crawford does not yet have ruling advising him if he, like the defendants, can send Electronic Filings..
   e. 11 March 2008: Crawford awaiting response from Court.

AND

<u>Osaki Ex Part Motion related to depositions in Japan:</u>

   a. 29 February 2008: Osaki Ex Parte Motion regarding depositions in Japan is either hand delivered or sent to the Court.
   b. 5 March 2008: <u>3 business days later</u> Court grants Osaki Motion; <u>obviously, and again, Crawford was not part of the process.</u>
   c. 7 March 2008: Osaki sends email to Crawford indicating that his, Osaki's, motion was granted but Crawford has not yet received anything official from the Court by either Electronic Filing or post as of March 11th, 2008.
   d. 11 March 2008: Crawford responds to Court / Osaki by sending Fed X documents which are not projected to reach the court for business days until 17th of March.

3

All of the above actions are taking place during a 90 day continuance at a time when Crawford does not have counsel and while Crawford, (under physicians care), cannot travel, is impaired, and not able to fully participate in his legal actions.

Obviously, (as illustrated above), Crawford's responses, to both the Grimmer's Ex Parte Application and Osaki's Ex Parte Motion could not be heard or read by the court.

<u>Certainly an unfair and prejudicial situation for Crawford.</u>

Therefore, Crawford based upon the presentation of the information contained, herewith, requests the Court review this document and reverse or rescind the decision rendered on Osaki's Ex Parte Motion and Grimmer's Ex Parte Application.

Should this reversal not be made, the defendants, in theory now only need bring letters of request, motions, or pleadings to the Court every day, obtain rulings in a day or two, with Crawford never having the opportunity to make a response to the Court.

5. Crawford feels compelled to address the court's attention to serious matters involving bias which creates an inequitable situation and an injustice by allowing the defendants to take depositions in Japan before the Plaintiff retains new competent counsel who can travel to Japan.

   a. Crawford, not having the opportunity to respond to Grimmer's Ex Parte Application of February 13th, 2008 and Oaski's Ex Parte Motion of February 29th, 2008, requests that these depositions be put on hold with the Court reversing or rescinding its position that depositions can take place in Japan on May 7th / May 9th.

   b. Depositions, without Crawford's counsel being present, will result in a one-sided and unfair examination. Witness will be able to state anything on the record and the Plaintiff will be totally disadvantaged in his attempt to gain factual information for the record.

4

    c. Crawford, "pro se." has already advised the defendants and the court that, under his psychiatrist's order, he will not be able to be in attendance at depositions nor will he be able to participate in court actions or depositions without new competent counsel. Crawford believes that his not having counsel and his medical condition were part of the reasons why the 90-day continuance was granted. Yet, the defendants continue to strive to establish status conferences, depositions, and move forward on other actions including Motions and Applications without Crawford being represented by new counsel.

    d. Crawford now, pro se, without the option of traveling to Japan, (due to medical reasons), is now being advised by the Court that the important legal matter of depositions can now go forth without Crawford being able to participate, ("pro se"), and while having not having his new legal representation. The Plaintiff requests that no depositions take place until he secures new counsel – without counsel present, the Plaintiff cannot examine the witnesses or their statements.

    e. Crawford questions how a deposition in Japan can take place when he cannot participate either personally, pro se, or with new counsel present.

    f. The witnesses, "being tucked away in Japan" can avoid US Law related to perjury, and being on the payroll of Japan Airlines will have no incentive to present truthful information; therefore, it is essential, at the very least, for any possible sense of fairness or equity that Crawford be allowed to question these and other parties in a deposition with new counsel present.

    g. Crawford suggests that these depositions are being used in an attempt to avoid testimony in a US Federal Court where those being deposed are subject to the rigors of U.S. Law.

    Should these depositions take place, with or without either Crawford, "pro se" or new counsel present, the Plaintiff argues that this in no way shall absolve those being deposed from appearing in U.S. Court or arbitration or being deposed by Crawford at a later date.

    h. Should those being deposed not appear in Federal Court, and / or should Crawford not have the opportunity to depose these and other parties whom he wishes to depose with new competent counsel, the Plaintiff requests any depositions taken by Osaki, Grimmer, or the defendants not be admissible in either U.S. Federal Court or arbitration due to bias.

6. In addition, and in direct response and in opposition to statements made by Carl Osaki in his motion, Crawford replies:

5

a. Osaki has stated these depositions are critical and time sensitive and advised establishing them as having, "taken years to establish." Osaki's statement is simply not correct – he presents incorrect information to the Court. An appointment for depositions at the U.S. embassy can be established in a few months.

b. These depositions dates which Osaki portrays as taking years to determine were, according to Osaki, were just established in November of 2007 – just a few months ago.

c. Crawford asks: How could it take years to establish these dates to make certain the defendants would be available if the dates with the embassy were just set in November. Another serious and material misrepresentation by Osaki to the court in a signed and sworn affidavit.

   <u>Common sense severely judges Osaki's material misrepresentations. Misrepresentations which have lead the court to make a ruling without Crawford having had the opportunity to make a response which could be heard by the court.</u>

d. Depositions can easily be postponed and take place after the 90-day continuance when Crawford has retained competent counsel familiar with the process of taking depositions.

e. Depositions in Japan without Crawford's full participation will bear little weight because the deponents cannot be examined and witnesses are not held to the same standards as U.S. law. As a result, there is no penalty for perjury.

f. Osaki implies no attorney will be willing to take Crawford's case because he made a settlement offer of $3,500,000. Yet, hard cost losses presented to the defendants are between $1,800,000 and $2,500,000 and do not include punitive damages.

   Osaki has never examined these hard cost and direct losses. Let us let new and competent counsel determine for what amounts they wish to settle. Or, let us let a jury determine actual and punitive damages – not Carl Osaki.

g. Osaki states Crawford's counsel only has remained on the case for a matter of months. Another clouded picture is presented to the Court -- Charles Brower worked for <u>two years</u> fighting a continuing flow of blocking work by the defendants to avoid justice which will be rendered to in both arbitration and the courts.

6

Crawford's first counsel would not work on a contingency. His second attorney, Martin Cervantes, (after the actions were moved to Hawaii by the defendants), could not practice law in Hawaii, (See: **Exhibit 1**) – Crawford's third counsel, Eric Seitz quit before he even started working on the case when threatened with a claim for malicious prosecution by Andrew Pepper – Mr. Pepper also incorrectly advised Seitz that nobody could ever circumvent the protection provided to the defendants by the FCN Treaty – a first meeting with Seitz and his clients never took place.

Luiz: The issue with Luiz escalated, when Crawford demanded detailed receipts for Luiz billing his wife's expenses to his client for inordinate hotel and other expenses. In spite of these issues, Crawford assured Luiz that he would make payment upon obtaining detailed receipts. Luiz, would not present these detailed receipts and abandoned the case rather than subject himself to presenting his embarrassing expense information to both his client and the Court.

Crawford would look forward to observe the reactions of Mr. Osaki and Mr. Pepper should he present his billing for legal costs awarded and incurred in the FCN treaty appeal without detailed receipts – an action attempted by Luiz in his billing appeal expenses to Crawford. The reaction of the defendants might be quite similar to Crawford's response to the Luiz billing –especially, if Crawford should also attempt to bill the defendants for his wife's expenses because she was part of Crawford's legal team.

A brief reading of Crawford's issues with Luiz, which is on the record, makes clear the necessity for Crawford's change of counsel. A change not brought about because of Crawford's desire but rather a change beyond Crawford's control.

h. Osaki has stated that Crawford was terminated for his sub par performance. The termination letter from HACS / Japan Airlines is quite clear. Crawford was terminated because his license to fly was cancelled or revoked. (See: **Exhibit 2** – Crawford Letter to Osaki, Grimmer). Crawford has his license.

The true situation with regard to Crawford's termination is outlined with absolute clarity with supporting documents. (See Exhibit 3) The "off the cuff" unsupported statements by Osaki in his affidavit are clearly not factual.

7

i. Crawford does not dispute that Luiz was "advised" of dates for depositions by Osaki; however, Luiz, abandoned Crawford and now new counsel must carry forth with these depositions either during or after the 90-day continuance. <u>However, neither Crawford or Luiz concurred or agreed to participate in depositions in Japan on May 7ht / May 9th, 2008.</u>

   <u>Being advised of dates, which are still tentative, (as indicated by Osaki in his Motion), is not an agreement by Crawford, pro se, to participate on those dates.</u>

   Gary Grimmer in his Ex Parte Application to the Court on the 13th of February concluded, "The deponents have agreed to appear voluntarily thus the specific dates and times <u>will be agreed upon by the parties and the deponents will be advised accordingly.</u> Grimmer has acknowledged that the dates are not absolute.

   Even Osaki does not have exact dates – <u>they are still not yet exactly determined.</u> The dates are only tentative until all the parties agree. Crawford does not yet agree to any dates.

   Crawford, never agreed with either Grimmer or Osaki with regard to any dates. Crawford presented a position / opposition statement to the Court related to Grimmer's Application dated February 29th, 2008. Crawford disagreed with both Grimmer and Osaki. Crawford will not be prepared to participate in depositions until he has new counsel retained during the current 90-day continuance.

j. Osaki argues that HACS / JAL do have control over their clients. JAL and HACS share an indemnification agreement which clearly establishes this control.

k. In that Crawford cannot now travel, and in that the Japanese fly free, Crawford is willing to schedule an appointment in Thailand for depositions at the U.S. Embassy with those deponents listed and other parties Crawford wishes to depose. Crawford could then proceed with depositions with local counsel, hopefully, on the dates near those established by the defendants. -- This would provide an equal opportunity to both defendants and plaintiffs for equal justice. This seems to be a reasonable and fair alternative.

8

7. In response and opposition to Mr. Osaki's Ex Parte motion and Mr. Grimmer's Ex Parte Application, it is Crawford's suggestion that actions by all parties, including depositions, status conferences, Motions and other legal actions be placed "on hold" during the 90-day continuance and /or until Crawford can properly be represented by competent counsel so that he can respond in the appropriate legal format and manner to the ever mounting flow of legal work being generated by the defendants solely in their attempt to gain unfair advantage and push actions through the court while Crawford is negotiating with new counsel.

   It is Crawford's position that this "hold" / "cooling off period" will not prejudice either parties actions – there will be more than sufficient time, after the continuance, for the defendants and to continue to generate paperwork, take depositions, file motions, and generate numerous additional expenses for all parties.

8. Crawford requests the Court examine the date involved in Osaki's Ex Part Motion. Crawford had to provide an Electronic copy of his motion dated the 29th of February in response to Grimmer's Application to the Court to establish deposition dates in Japan to Carl Osaki. Both Osaki and Grimmer had to be copied.

   Osaki noted Crawford's opposition to Grimmer and immediately on the same day of Crawford's Motion and Opposition statement sent to Grimmer on the 29th of February, 2008, Osaki either Electronically filed or hand carried his motion to fix deposition dates in Japan. Osaki obtained his ruling in 3 business days.

   This is unfair because Osaki was able to determine that Crawford had responded to Grimmer and attempted to prevent Grimmer from establishing these deposition dates as fixed dates for depositions. Osaki had the advantage of Electronic filing or hand delivering motions. Crawford could not file electronically -- this permitted Osaki to both file and also get a ruling without Crawford being involved in the legal process. All during a 90-day continuance and a time when Crawford was without competent legal counsel.

   Crawford, unlike the defendants, without a ruling from the Court cannot make Electronic filings. Crawford, unlike the defendants, cannot make hand deliveries to the Court.

   Therefore, Crawford suggests that the fastest reasonable turnaround time for Crawford to respond to any motion, pleading, or other presentation presented to the court by the defendants should be established as at least 20 days commencing from the date of receipt by Crawford.

9. Crawford prays that the court continue to uphold the 90-day continuance for all actions, including depositions and status conferences, until Crawford retains new competent counsel, and with approval of the Court. New counsel proceed with legal actions, depositions, Motions, and status conferences.

10. Crawford's has previously responded to Osaki's incorrect statements related to Plaintiff's mental health impairment. Osaki and Grimmer have no training or little understanding of mental health issues, yet, Osaki wishes to discuss medical matters without a medical license.

<u>Crawford is open to a psychiatric examination in Thailand by defendants licensed psychiatrists, at Crawford's local hospital as long as Crawford's own psychiatrist and local counsel are present during the examination</u>. Crawford advises the defendants that a person with a mental health issue is certainly not stupid nor necessarily totally incapacitated and / or permanently and totally disabled.

<u>Again, the double bind situation for Crawford</u> – if Crawford ignores the ever mounting incoming paperwork, Motions and Applications being generated by the defendants during the 90-day continuance while Crawford is "pro se," under medical treatment, and in the process of retaining new counsel, his case will be prejudiced. Yet, – if Crawford responds, he is portrayed by the defendants as both "well and competent to both travel and defend himself"

Crawford, and more importantly, Crawford's Medical Doctor and Psychiatrist recognize that Crawford's full participation in legal actions and travel at this time would be unwise. Crawford will update both the Court and the defendants a medical report every 30-days to apprise them of his condition.

Crawford advises the defendant's that his condition has been ongoing since his termination with having some periods better than others. Stress is one of the main factors leading to more severe episodes of depression with incapacitation. Obviously, the recent event of Crawford being threatened by a Thai Police officer have whilst his attorney abandoned his case tremendously increased stress levels.

Note: In 2002, Crawford, after travel to Los Angeles from Thailand, to deal with legal matters was taken to the emergency room on a stretcher in an ambulance by Los Angels Emergency Medical Technicians with a life threatening medical issue brought about by the stresses of this case in conjunction, travel, and medication issues. The information given to Crawford was that he was seriously ill and needed emergency medical treatment. Later, the same day, Crawford was again treated in the emergency room of another hospital with a second stress related medical emergency. After this second event Crawford was hydrated and found to be too weak to travel and was bedridden for 5 days.

<u>These are the same types of medication issues with which Crawford is now dealing while changing from one anti-depressant to another.</u> (The defendants

10

need to be aware that a person with severe depression must sometimes change medications in response to stress or as the effectiveness of medication changes over time.)

For Carl Osaki, without any understanding of Crawford's medical condition to imply Crawford in not impaired, presents another example of his typical unsupported statements which are so often presented to the Court, Federal Agencies, and the Plaintiff.

10. Crawford will soon be able to move forward with his legal actions and depositions in Japan with new counsel on a schedule approved by the court but not dictated by Mr. Osaki's attempts to force an untenable situation on the Plaintiff with his advantage of hand delivering documents and electronic filling and service whilst Crawford is disadvantaged.

11. Crawford states that while "pro se," and attempting to obtain settlement that he has not initiated any legal action with the Court other than to attempt to gain an equal footing with the court, i.e electronic filings. -- The defendants have this advantage and also are now "hand delivering" documents to the court to obtaining rulings whilst Crawford does not have the opportunity to respond before a ruling is granted by the Court.

<u>Any advantage gained or attempted to be gained using these tactics, now disclosed, should be negated.</u>

Crawford has only been responding, <u>defensively</u>, to the numerous actions by the defendants -- i.e. responding by the latest attempts of Osaki to force responses and create a disadvantage to Crawford during the period of the continuance whilst Crawford is pro se.

12. The only action Crawford seeks to pursue while "pro se" is an initial settlement discussion with the defendants.

13. Crawford's new attorney will respond, in correct legal format, to matters presented to the court either during the period of the 90-day continuance or upon obtaining a new court schedule. Crawford expects new counsel to move his actions forward before the conclusion of the 90-day continuance.

## CONCLUDING STATEMENT

As a result of information presented herewith and identified as:

RE: PLAINTIFF'S POSITION, OPPOSITION AND RESPONSE STATEMENT REQUESTING RESCINDING AND / OR REVERSAL OF COURT ORDERS GRANTING DEPOSITIONS MAY 7TH / 9TH, 2008.

RE: DEFENDANTS JAPAN AIRLINES, JALWAYS, AND HAWAIIAN AVIATION CONTRACT SERVICES, INC. "EX PARTE APPLICATION FOR ASSURANCE AND COMMISION TO TAKE DEPOSITIONS IN JAPAN. RE: AFFADAVIT OF CARL H. OSAKI AND GARY GRIMMER DATED FEBRUARY 13TH AND 29TH OF 2008.

Crawford now requests the Ex Parte Motion of Carl Osaki and Application of Gary Grimmer for depositions in Japan be reversed and Grimmer's request for status conference be denied.

<u>Crawford also requests that any further action related to discussion of depositions or status conferences be postponed until the Plaintiff has new and competent counsel.</u>

Now, that it appears to Crawford that the Court has ruled on Osaki's Motion without Crawford having the opportunity or participation or making a response. Crawford, therefore, requests the court revisit this earlier decision taking into account the information Crawford has now presented and reverse the Court's earlier decision.

Crawford suggests that when Crawford retains new competent counsel, during the 90-day continuance, that depositions and legal matters such as status conferences can soon take place.

Crawford feels that by moving forward with depositions without his first obtaining new and competent Crawford that his case will be prejudiced. New dates for depositions are relatively easy to obtain. Carl Osaki's sworn testimony to the court has been identified as containing a number of material misrepresentations which should disqualify his request and result in a reversal of the Court's prior decision to move forward with depositions in Japan.

To move forward, at this time, with depositions in Japan and other legal matters, other than settlement discussion, would prejudice Crawford's position and deny Crawford, both an equal and legal opportunity, to depose defendants who are employees of the defendants and whom can actually be available at most dates and times.

And, should the defendants wish to proceed on or near the scheduled dates, (dates which they still cannot absolutely confirm), Crawford has presented a reasonable alternative of including taking deposition in Thailand providing that Crawford has local counsel.

As was previously outlined to the Court in Crawford's position and opposition statement to the Court dated February 29th 2008, (related to the Grimmer Ex Parte Application for depositions in Japan) -- as soon as Crawford has new counsel, is able to participate in his legal actions, travel to Hawaii, and the counsel is familiar with legal matters, Crawford looks forward to moving ahead with action concerning all legal matters.

Crawford has previously agreed with JAL / HACS that, at the appropriate time JAL defendant's depositions by Crawford need to be taken as oral deposition of Kazuo Hanami, Kozo Nakabayashi, Kenji Yamada, and Jun Shimada, (collectively "JAL Pilots"), along with others as determined by new counsel of record.

Crawford does not agree nor does he stipulate that these depositions in Japan replace or preclude the Japanese witnesses and other JAL / JAZ executives from participating in a trial in Hawaii.

Crawford further states that JAL witnesses scheduled and others to be named are necessary for Crawford must be examined and cross-examined in Hawaii in the Federal Trial without exception.

Crawford's new counsel of record expects to take depositions of deponents and other Japanese witnesses including, but not limited to, Chairman Toshiyuki Shinmachi, President CEO Haruka Nashimatsu, and Executive Vice-President Nawano Katshuiko whom all are designated as JAL's safety officers.

Crawford, therefore, requests both depositions and all other legal matters be postponed until the expiration of his 90-day continuance, he can travel, new counsel is retained, and he is medically fit to fully participate in these actions.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

CIVIL NO. 03-00451 – SPK – LEK

<u>JACK L. CRAWFORD</u>
Plaintiff, PRO SE

vs.

JAPAN AIRLINES AND JALWAYS CO., LTD.
Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Motion For Continuance was served via U.S. Certified Mail and/or FEDEX on the person(s) listed below:

TO:   ANDREW PEPPER, ESQ.
      Carlsmith Ball LLP
      2200 American Savings Bank Tower
      1001 Bishop Street
      Honolulu, Hawaii 96813
      Attorney for Defendants
      Japan Airlines and JALways, Co., Ltd.
      e-mail: apepper@carlsmith.com

TO:   CARL H. OSAKI, ESQ.
      Town Tower #17G
      225 Queen Street
      Honolulu, Hawaii 96813
      Attorney for Defendants
      Hawaii Aviation Contract Services, Inc.
      carl@chosaki.com

To: "warren" <warren_nakmura@hid. uscourts.gov>

DATED: <u>March 11, 2008</u>

SIGNED: _____
JACK L. CRAWFORD

14