## EXHIBITS

Exhibit 1: Martin Cervantes Letter dated July 26, 2003

Exhibit 2: Crawford letter to Carl Osaki and Garry Grimmer dated March 6th, 2008

*send to: 5042 Wilshire Blvd #310 Los Angeles, CA 90036*

**EXHIBIT**

## LAW OFFICES OF
## MARTIN A. CERVANTES

Ontario Executive Center
3535 Inland Empire Boulevard
Ontario, California 91764

Telephone: (909) 941-2525
Facsimile: (909) 941-2595
e-mail: maclaw@gte.net

July 28, 2003

Mr. Jack L. Crawford III
The Regent Royal Place II 6/149
Soi Mahadie Kluang 2, Rajadamri Road
Lumpini, Patumwan, Bangkok 10330

Via E-Mail and Regular Mail

Mr. Martin Ventress
    Via E-mail and Regular Mail

RE:   Martin Ventress and Jack Crawford v. Japan Airlines, et al.

Dear Martin and Jack:

I received a written Order from the United States District Court, Central District of California dated July 23, 2003 in which Judge Nora Manella granted the Defendant's motion to transfer the case to the District of Hawaii, but refused to dismiss the case as requested by the Defendants. I am attaching a copy of the fifteen page decision for your review. It is a judgment call and, quite frankly, I think it simply came down to court congestion as indicated on page twelve.

You have two options at this point. The first is to obtain new counsel. I am not licensed or admitted to practice law in the District Court of Hawaii. Time is of the essence and you must contact an attorney forthwith.

The other option is to appeal this decision. Understand it will be costly and time consuming. The last time I appealed a case to the Ninth District Court of Appeals, the cost was around $30,000.00 and it took well over one year for the court to decide.

I suppose a third option is to simply do nothing and let the case drop. If I do not hear from either of you within thirty days of the date of this letter, in writing, instructing me where to send your file, I will assume that you wish to simply drop the matter.

I am as disappointed as you two gentlemen. I hope you will not drop the case since I believe it has merit. However, the decision is yours. I look forward to hearing from you.

Sincerely,

MARTIN A. CERVANTES



March 6th, 2008

Mr. Gary Grimmer, Attorney at Law
Carlsmith Ball LLP
ASB Tower, Suite 2200
1001 Bishop Street
Honolulu, Hawaii 96813
Tel: 808.523.2500
Email: ggrimmer@carlsmith.com

Mr. Carl H. Osaki, Attorney at Law
Town Tower #17G
225 Queen Street Honolulu
Hawaii 96813
Tel: 808.528.4666
Email: carl@chosaki.com

Gentlemen:

I have offered Carlsmith Ball a good faith offer to settle all claims. No response was made – my offer was ignored.

Therefore, obviously, you must feel quite confident that I will be unable to continue and win my actions against Japan Airlines and HACS for their illegal termination. Rest assured, this is a miscalculation and you have made another poor decision.

I am now proceeding exactly as I have outlined in prior communication to you. Copies of my settlement offer are being sent to interested parties with other copies, as required by the court, being sent to you. The Japanese can respond directly to me or via any one their many attorneys. They can either accept or deny my offer to settle for $3.5 million. This offer remains open for a settlement discussion for a limited time while I am still Pro Se. See attached letter.

Kindly note the issue of depositions in Japan has already been addressed in my motion to the court and needs no further discussion. At the time when I soon retain new counsel and new counsel determines, (in accordance with the approved new court schedule), when they can proceed, all pending matters will be dealt with including depositions -- either before or after the 90 day continuance has expired.

Why do you appear to assume that I would prejudice myself and participate in court proceedings and/or depositions, "pro se" without having a competent attorney present and without being cleared by my psychiatrist to participate. Every 30-days I will be re-evaluated by my psychiatrist and the results presented. You know better than I that the person who represents themselves admits he/she is a fool. This should be the end of this discussion.

1

New representation will soon carry forth my claims to their inevitable conclusion which will be in my favor. I have only been willing to remain "pro se" for a few weeks to give you both the opportunity to enter into settlement discussions. It appears, that you have both squandered this opportunity.

<u>This case will go to jury trial. This action will go to arbitration. There is no legitimate defense. Obfuscation, lies, and unchallenged misrepresentations and statements will then become worthless.</u>

Before this settlement opportunity is lost, I address the simple facts concerning the JAL / HACS termination: --

No matter what spin you attempt, <u>I was terminated because HACS / JAL stated my JCAB license was terminated, cancelled, or revoked.</u> Simply a lie.

Beneath this lie and to give the lie support, is the nice "sham" route check – a route check, I am certain, <u>that was unique in aviation history</u>. A route check that took place over days. The standard check involves 10 minutes of questions. Your clients have constructed a "house of cards" that looks nice but after a cursory review, you will soon witness a catastrophic collapse.

For your review with regard to a failed legitimate route check: JCAB Air Law states that the Pilot-in-Command, (PIC), becomes "invalid" on the single route he/she failed -- nothing more or less. And, of course, the assumption is that any route check given is legitimate. As you also so well know, or have now learned, my route check was anything but legitimate being given to me by people whom I had reported for safety violations and then "blew the whistle" on for multiple violations of Japanese Civil Aviation Law.

If on a valid and legitimate failed route check, the JCAB states the only penalty is a recheck. There is nothing in article 72 that mentions the "word" license. As is established in Japanese Air Law, the pilot who failed a route check will be rechecked. There is no other option or penalty. Again, there is nothing related to any type of pilot licensing action.

The PIC, (Pilot-in-Command), is neither unqualified nor loses his qualification. This is a "far cry" from a license cancellation or having my pilot's DC-10 type rating voided as stated in court documents and statements to the EEOC and the media. Do you even understand what is involved in voiding a DC-10 type rating – I think not but, perhaps, time to learn.

Japanese Air Law, Article 72 states that the PIC, (<u>not a crew member</u>), loses his qualification only on the pertinent route. However, you will note, (which is probably new information to you), that in the HACS / JAZ pilots contract that I, and other pilots were <u>only hired by JAL / JAZ</u> as "crew members."

2

I could have easily continued to fly even after a failed sham route check as a crew member / co-pilot. Crew members include: Captain, (PIC), Captain, Co-Pilot, First Officer, (F / O), and Flight Engineer, (F /E). HACS <u>hired crew members</u> not Pilots-in Command so they could fill flight duty positions as required. However, each crew member was paid specific wages depending on the position. I was paid as a Captain but was often required to fly co-pilot while being paid as Captain.
These checks on the one sham route check was the only failing check that I ever received at JAL or, any other airline in 33 years of taking a numerous variety of checks, including qualifying on (13) different commercial aircraft, beginning with the DC-3, DC-9, DC-8, DC-10, B-727 and B-747. These are less that half of the total types of aircraft I have flown, not to mention type ratings received on various commercial aircraft and a flight engineer ratings. -- I think a jury and arbitrator, (and perhaps even both of you), will find it quite surprising that after having a perfect flying record for 33-years, that I suddenly "lost my license" as a result of one sham route check with the parties involved in the check being parties whom I had reported for safety violations. Truly an amazing event.

Neither the JCAB or Japanese Air Law supports JAL's / HACS statements related to a license revocation or cancellation presented in both termination letters.

The JCAB, as a requirement of Japanese Air Law, states that an official cancellation notice must be sent to me. There was no license cancellation notice attached to the termination letters – have you bothered to ask why you have not seen any notice of a license cancellation or revocation? If I may provide you with the simple explanation – there was simply no cancellation or revocation. In spite of your knowing full well what was done to me, how the phony termination was planned and effected, you continue to defend these reprehensible actions of the conduct of Japan Airlines and HACS that has so severely damaged me.

<u>The JCAB states that I have my JCAB license and I did have my license at the time it was stated by JAL / HACS that my license was revoked / cancelled.</u>

Oh, perhaps, JAL / HACS just made a simple mistake or misstatement in stating my license was cancelled or revoked which was then used to effect my wrongful termination, loss of my career and enjoyable retirement, all whilst smearing my name in the media as a pilot who had his license cancelled. Let me write a newspaper article that states you each had your license to practice law cancelled – Just a simple mistake that ends your legal career --- what damages would you claim? Have you seen the articles written with the support of the JAL PR department. And, you still somehow doubt that there will be punitive damages? Please show me within Japanese Air Law, as stated in termination letters, how an illegitimate route check could result in my not being able to fly any registered Japanese Aircraft.

I have continued to attempt to work towards settlement with you. I have only heard one offer of $30,000. Is this the basis for a discussion of my reasonable damages?

3

Please advise why my offer of $3,500,000 is unreasonable. Rather than just state my offer is not in good faith, please review the direct losses that I have presented -- I will listen to your explanation and evaluation of my case but I will not listen to a ridiculous offer of $30,000. Are you certain that you understand that once I retain new counsel that my options to settle will be limited.

I must ask -- how would you like to wake go to work and have Carlsmith Ball advise you in a letter the day before the Christmas Holidays that your license to practice law had been revoked or cancelled and your were, according to your contract, terminated.

Do you think the bar association could revoke your license to practice law without a formal hearing? Let Carlsmith Ball try this with you. You would be out on the street, the fact of the loss of your license to practice law made public, and all you would have in your hand was a few line letter that you were terminated at Carlsmith Ball because your license to practice law was cancelled. Try this little scenario on "for size" and think about how you would react --- **then spend the next six years of what is supposed to be your retirement years trying to correct the situation.** Again, you still appear to doubt that punitive damages will be assessed?

Do you both really wish to continue to participate in working to ruin my retirement years – up to you, but I never thought this was what they taught about ethics in law school.
If this is what the law is now about, I hope you enjoy your professional standing.

I seek no more than fair damages and the only number you can present to me is $30,000. If this is the best you can do, let us let a jury decide what my actual and punitive damages should be and you can continue this costly misadventure for your clients and myself.

Now, you wish to have parties whom I reported comment on my flying abilities, on issues not related to the termination by HACS and JAL in depositions without my presence. Of course, I will wish to also review their wonderful sense of judgment in letting a captain pilot-in-training who was twice completely incapacitated on one flight attempt to land a plane two times with passengers screaming and baggage doors flying open. But let us not stop there.... let's then let this impaired pilot do the same thing again, just a day or so later. After this final flight, he was carried off the plane, hospitalized, later found to have been flying with a brain tumor the size of a golf ball, and then died just 5 months later.

I will let my flight record speak for itself. We will let the flight records of others do the same.

4

I do look forward to travel to Japan, at the appropriate time, to take depositions of the pilots that you have volunteered as well as a few JAL executives that I have selected regarding safety issues to be deposed after my new attorney stipulates a new time and date. Let us also get some passengers and along some with flight attendants who live in Thailand whom were on those flights who thought they were about to die in a crash landing – I am certain the events of these landing attempts are indelibly marked in their minds. Make a few calls. You will be interested in the responses that you obtain from those whom are no longer depend on JAL for their "daily bread."

Could it be that Japan Airlines, with profits sagging, was in some type of rush to qualify another low cost American pilot for Japanese Airlines who would work and violate safety laws in favor of what he knew were the de facto fly sick policy without question to support his family by flying flight schedules with work loads that no Japanese pilot would every be asked or requested to fly – The fact of flying sick, (illegal in Japan and the US) that even Mr. Osaki has stated and acknowledged was part of the corporate culture at Japan Airlines – A policy which Jeff Bicknell accepted as part of his quest to become a Captain.

What changes have taken place after these incidents to remove the conflict of interest between corporate profits and flight safety which has been established in "bonus" contracts with Japanese pilots? More interesting reading. The number of issues to investigate from these "safety officers" and Japan Airlines flying company executives will be truly illuminating reading to all.

I have also always been surprised that Linda Bicknell, if she were to know the true facts of what took place with Captain Hanami doing nothing to assist her husband in a medical crisis, would not file a wrongful death action against JAL and HACS – If Jeff had only sought medical attention, long before, when he knew something was wrong rather than to attempt to meet the terms of Japan Airlines de facto fly sick policy. Please have a copy of a Japanese Pilot's bonus provisions reviewed – and, next time you talk to Hanami, ask him what he was doing while Martin Ventress was trying to save Jeff's life? Someday, I am certain, Linda Bicknell will learn about her "friends" at Japan Airlines.

In addition to lies about my license, you have involved U. S. Federal Agencies by your false representation of Japanese Air law, article 72, which was used as an exhibit to dismiss and avoid scrutiny by the EEOC of my claim against JAL/HACS. It is clear from the briefest reading of Article 72 that this regulation has only deals with pilot in command qualifications on a pertinent route flown. More significantly, it has nothing to do with licensing issues.

Carlsmith Ball and Carl Osaki have both spun, lied, and embellished the simple facts of the situation while involving the JCAB and US Federal in the hope that these fabrications with the hope that they will never be heard in a Federal Court or arbitration. And, until many of the benefits of the FSN treaty were lost for your clients with your gamble, you were both pretty safe in telling Federal Agencies whatever you wished to state.

The alleged JCAB license cancellation is the only reason for HACS and JAL's contract termination. I will be pleased to deal with this simple fact when stripped of the layers of misstatements and false presentation of information. Or, in the alternative, I will accept an email indicating you wish to make a reasonable settlement offer.

Regards,


Jack L. Crawford


cc:
Michelle C. Imata: mci@carlsmith.com
Andrew L. Pepper: apepper@carlsmith.com
Elvira P. Leming: eleming@carlsmith.com
Lawrence S. Okinaga: lokinaga@carlsmith.com
Lesa G. Douuglas-Wong: ldouglas-wong@carlsmith.com
Bebe H. Saunders: bsaunders@carlsmith.com
Susan O. Asato: sasato@carlsmith.com
Steven M. Egesdal: segesdal@carlsmith.com
Paul H. Davis: pdavis@carlsmith.com
Renee K. Hatchie: rhatchie@carlsmith.com
Carl H. Osaki: carl@chosaki.com
Danielle N. Degele-Mathews: ddm@ahfi.com
Joseph F. Kotowski III: jkotowski@carlsmith.com
Jennifer B. Lyons: jlyons@rlhlaw.com
Albert H. Ebrigt: ahe@carlsmith.com
Anton N. Handal: anh@handal-law.com
Nancy M. Beckner: nmb@carlsmith.com