IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JACK CRAWFORD, | ) | CIVIL NO. 03-00451 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JAPAN AIRLINES; JALWAYS CO., | ) | |
| LTD., a subsidiary of Japan | ) | |
| Airlines; HAWAII AVIATION | ) | |
| CONTRACT SERVICES, INC.; and | ) | |
| DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER (1) DENYING PLAINTIFF JACK CRAWFORD'S MOTION FOR SANCTIONS AGAINST JAL DEFENDANTS, HACS, CARLSMITH BALL, CERTAIN CARLSMITH BALL ATTORNEYS AND CARL OSAKI; (2) DENYING DEFENDANT JAPAN AIRLINES' MOTION FOR THE COURT TO ISSUE AN ORDER REQUIRING PLAINTIFF JACK CRAWFORD TO SHOW HIS MEDICAL FITNESS TO LITIGATE; AND (3) GRANTING JAPAN AIRLINES' MOTION TO STRIKE PLAINTIFF JACK CRAWFORD'S SUPPLEMENTAL STATEMENT OF AUTHORITIES FILED PURSUANT TO LR7.8 IN SUPPORT OF PLAINTIFF JACK CRAWFORD'S MOTION FOR SANCTIONS AGAINST JAL DEFENDANTS, FILED FEBRUARY 28, 2013**

Before the Court are the following motions:

(1) Plaintiff Jack Crawford's ("Plaintiff") Motion for Sanctions Against JAL Defendants, HACS, Carlsmith Ball, Certain Carlsmith Ball Attorneys, and Carl Osaki ("Plaintiff's Motion"), filed on January 18, 2013; (2) Defendant Japan Airlines' ("JAL") Motion for Court to Issue An Order Requiring Plaintiff Jack Crawford to Show His Medical Fitness to Litigate ("JAL Motion"), filed on February 26, 2013; and (3) JAL's Motion to Strike Plaintiff's Supplemental Statement of Authorities Filed Pursuant to LR7.8 in Support of Plaintiff's Motion for Sanctions ("Motion to Strike"),

filed on March 6, 2013.  Carl Osaki ("Osaki" or "HACS Counsel"), counsel for Defendant Hawaii Aviation Contract Services ("HACS"), and JAL filed their memoranda in opposition to Plaintiff's Motion on March 18, 2013, and Plaintiff filed his reply on March 29, 2013.  Sanctions target Andrew L. Pepper, Esq., ("Pepper") filed a Joinder in JAL and HACS' oppositions to Plaintiff's Motion on March 22, 2013.  Plaintiff filed his memoranda in opposition to the JAL Motion and Motion to Strike on March 20, 2013, and JAL filed its replies on March 25, 2013.  HACS filed a Statement of No Position regarding the JAL Motion on March 18, 2013.

The Court held a hearing on the motions on April 8, 2014.  Appearing on behalf of Plaintiff was Michael Jay Green, Esq.  Appearing on behalf of JAL, Carlsmith Ball, LLP and Certain Carlsmith Ball Attorneys were Steven Egesdal, Esq, and William Harstad, Esq.  Appearing on behalf of HACS was Carl Osaki, Esq. Andrew Pepper, Esq., appeared on behalf of himself.  After careful consideration of the motions, the arguments of counsel, and the relevant legal authority, Plaintiff's Motion is hereby DENIED, the JAL Motion is hereby DENIED, and the Motion to Strike is hereby GRANTED for the reasons that follow.  With respect to Plaintiff's Motion, the Court finds that Defendants are the prevailing parties, and entitled to their fees pursuant to Fed. R. Civ. P. 11(c)(2).

I.   **Plaintiffs' Motion**

Plaintiff argues that JAL, HACS, and their counsel have defended this wrongful termination action for ten years on the grounds that the Japan Civil Aviation Bureau ("JCAB") revoked Plaintiff's pilot credentials and that Plaintiff was necessarily terminated as a consequence.  He now asserts that JCAB has "verified" that his pilot credentials were never revoked, and that defense counsel engaged in vexatious, bad faith motions practice in defending this action.  Plaintiff asks the Court to "impose appropriately severe sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the Court's inherent authority to sanction bad faith litigation, and also refer the responsible attorneys to the Hawai'i State Bar and the Bar of this Court for appropriate disciplinary action." [Mem. in Supp. of Plaintiff's Mot. at 2-4.]

According to Plaintiff, on July 8, 1993, JCAB issued him Japan Pilot's certificate No. 4265 ("JCAB ATP Certificate"), which qualified him as a Japan Airline Transport Pilot with multi-engine turbine class privileges and a DC-10 instrument type rating under the laws of Japan.  He claims that, together with his first class medical, valid visas, and radio operator's license, Plaintiff's JCAB ATP Certificate and DC-10 qualification satisfied all "certification and qualification" requirements of Section 2.08 of the Crew Contract.  He states that he worked as a

JAZ crewmember,[1] and also piloted regularly scheduled passenger flights for JAL.  [Id. at 5-6 (citing Crawford Aff. at ¶¶ 2-23, 64).]

Plaintiff asserts that Defendants terminated his employment on December 26, 2001.  In the letters that JAL and HACS wrote terminating Plaintiff, Defendants expressly state that the reason for his termination is the "loss" and "cancellation" of his pilot credentials on account of the JCAB purportedly "revoking" them.  [Id. at 8 (citing Crawford Aff., Exh. D (12/26/01 JAL Letter), Exh. E. (12/26/01 HACS Letter)).] Plaintiff maintains that, in this action and in related proceedings, Defendants and their attorneys expressly asserted that, because the JCAB had cancelled and revoked Plaintiff's JCAB pilot credentials, Plaintiff had "lost his wings."  [Id. at 9-10.]

Plaintiff now presents letters from JCAB and the Federal Aviation Administration ("FAA"), dated May 9 and June 6, 2012, respectively, which purportedly verify that his JCAB pilot certificate, his JCAB ATP qualification, and his DC-10 qualification and type rating are all current and valid, and have never been revoked.  [Id. at 12-13 (citing Crawford Aff., Exh. A

---

[1] Plaintiff worked as a pilot crewmember on flights operated by Defendant Japan Air Charter Co., Ltd., an affiliate of Defendant Japan Airlines, which operated under the airline designator "JAZ."

(JCAB and FAA Letters)).]

Plaintiff points to case filings signed by current and former JAL counsel Matthew M. Matsunaga, Esq., Anna M. Elento-Sneed, Esq., and Steven Egesdal, Esq., as demonstrating bad faith.  He claims that JAL's law firm, Carlsmith Ball, LLP, and its current and former attorneys continued to allege that Plaintiff was terminated because he had lost his Japan pilot's certificate and DC-10 type rating – knowing such assertion was false – and that they pursued a course of deliberate delay, with a series of motions and threatened motions seeking dismissal on the basis that his claims were preempted or barred.  He claims that Carlsmith Ball has also engaged in a "pattern and practice of threatening Plaintiff and his attorneys with retribution if they did not abandon this action."  [Id. at 14.]  According to Plaintiff, all of Defendants' Rule 12(c) and Rule 56 motions were made with defense counsels' actual or constructive knowledge that JCAB had never acted in any way against Plaintiff's pilot credentials.  [Id. at 17.]

Plaintiff argues that Ms. Elento-Sneed violated Rule 11(b)(3) and (4) when she signed JAL's Answer to the Complaint indicating that Plaintiff "lost" his JCAB qualification, and that Rule 11(c) authorizes sanctions against JAL as well, because Defendants and their counsel knew that "their 'license revocation' story was spurious and fictitious."  [Id. at 25.]

Plaintiff next argues that the Court should impose sanctions on Carlsmith Ball, Mr. Pepper, Mr. Egesdal, Mr. Matsunaga, and HACS Counsel pursuant to 28 U.S.C. § 1927.  He argues that Carlsmith Ball made successive, frivolous motions to dismiss in an intentional effort to delay resolution on the merits for as long as possible, and that Defendants' motions have been rejected by the Ninth Circuit on appeal.  Last, Plaintiff seeks sanctions pursuant to the Court's inherent authority.  [Id. at 31-36.]

## A.  JAL Opposition

In its opposition, which covers JAL, Carlsmith Ball, and its current and former attorneys named in Plaintiff's Motion, JAL argues that Plaintiff is improperly using a Rule 11 motion as a vehicle to test the legal sufficiency of his claims.  According to JAL: (1) Plaintiff's pilot disqualification is irrelevant in these proceedings; and (2) Plaintiff points to no Court ruling, motion he made or opposed, or discovery he served or answered, where his disqualification was an issue.  JAL states that his sole remaining claim is for wrongful discharge under California law, and, based on this Court's affirmed ruling, he cannot amend the Complaint.  Specifically, his remaining claim is based on allegations that he was fired for writing an internal letter to one supervisor about another supervisor's interpretation of JAL's policy on pilots taking sick leave, maintaining route

6

manuals, and hauling oversize luggage.  JAL argues that the
remaining issues require the fact-finder to consider whether
pilot qualifications (regulated by Japan law under which he was
disqualified) are preempted, and if not preempted, does Plaintiff
meet all requirements for a California wrongful termination
claim.  According to JAL, regardless of whether Plaintiff had a
license, he lost his "pilot-in-command qualification."  [JAL Mem.
in Opp. to Plaintiff's Mot. at 2-3.]  JAL argues that Plaintiff's
Motion is frivolous and that it should be awarded its fees and
costs under Rule 11.  [Id. at 3.]

     With respect to § 1927, JAL argues that there is no
evidence of subjective bad faith, and that Plaintiff cannot use
the statute to sidestep Rule 11's safe harbor provision.  It
claims that its motions were not frivolous, but were granted by
the presiding district judge.  It further argues that § 1927 does
not apply to law firms or parties, only to attorneys.  JAL argues
that there is no basis to invoke the Court's inherent powers
because there is no bad faith.  [Id. at 19-30.]

     **B.   HACS Counsel Opposition**

     HACS Counsel, Mr. Osaki, also argues that Plaintiff's
Motion is frivolous, and that it does not identify any pleading
filed by HACS that allegedly violated Rule 11, or identify how
HACS has litigated unreasonably or vexatiously.  He notes that
every motion and paper presented by HACS was part of a successful

effort to transfer the action to this district, and move Plaintiff's claims to arbitration.  HACS Counsel also argues that Plaintiff did not comply with Rule 11's safe harbor provision because: (1) the motion does not describe the specific conduct of HACS that is alleged to violate Rule 11; and (2) Plaintiff provided no map to a safe harbor, nor would his counsel communicate with HACS Counsel regarding Plaintiff's Motion. [HACS Mem. in Opp. to Plaintiff's Mot. at 5-10.]

HACS Counsel emphasizes that Plaintiff failed his line check in December 2001 after already performing unsatisfactorily in several line monitoring flights, and that JAL determined that it was not possible to retrain Plaintiff to competently fly.  He notes that an unsatisfactory rating means that a pilot's qualifications are lost.  [Id. at 18-22.]

### C.   **Pepper Joinder**

Mr. Pepper joins in the oppositions filed by JAL and HACS Counsel, and makes additional arguments as they relate to his personal involvement in the case.  He notes that he did not sign any pleadings at issue, and was not afforded a safe harbor, so he is not subject to Rule 11 sanctions.  He also argues that he is not accused of any wrongdoing, and cannot be the subject of sanctions pursuant to § 1927.  [Pepper Mem. in Opp. to Plaintiff's Mot. at 2-3, 7-8.]

### D.   **Plaintiff's Reply and Errata**

In his reply, Plaintiff argues that he maintained the qualifications required by his contract, and that the effect of the failed check ride was not a JCAB revocation of his license and DC-10 type-rating.  [Reply in Supp. of Plaintiff's Mot. at 3.]

He argues with respect to § 1927 that JAL and its counsel have pursued a calculated strategy to avoid litigating the merits of Plaintiff's complaint.  Plaintiff maintains that Carlsmith Ball should be sanctioned under the statute because it pursued a strategy of coordinated bad faith litigation.  [Id. at 15-19.]

## II.  **JAL Motion**

JAL seeks an order requiring Plaintiff to show his medical fitness to litigate in this matter.  It states that in June 2008, Plaintiff told the Court that he was too ill to litigate, and since the Court stayed the case on July 1, 2008, the docket sheet for this action does not show that he has told the Court about any improvement in his health status or any change in his ability to litigate.  It notes that in January 2011, the Court administratively closed this case.  JAL argues that Plaintiff should be required to show the Court that he now is well enough to litigate, before the Court allows Plaintiff to resume prosecution of his case.  [JAL Mot. at 1.]  JAL also states that:

> a June 25, 2008 letter from Crawford's physician
> stated to this Court: "I have again instructed Mr.
> Crawford not to respond to the court due to his
> current medical infirmities and medical
> conditions, nor to travel or involve himself in
> any sort of legal dialog and proceedings, until
> such time my diagnosis changes and Mr. Crawford is
> no longer suffers [sic] from severe depression."

[Mem. in Supp. of JAL Mot. at 5 n.2.]

JAL argues that, "given Crawford's unknown medical status, the Court's order should require him to substantiate that whatever health condition prevented him from litigating in 2008 has ended, or diminished sufficiently, such that he now is able to litigate (including, *inter alia*, participating in motions practice, document discovery, and depositions as this case moves forward)." [Id. at 5.]

## A.   Plaintiff's Opposition

In his opposition, Plaintiff states that the JAL Motion is unsupported by any legal authority, and that there is no indication that the Court has authority to enter such an order. He argues that there is no requirement that a litigant demonstrate medical fitness to litigate. He acknowledges that he "suffered from a stress-related condition and could not continue to represent himself." [Mem. in Opp. to JAL Motion at 3.] He states that he is now represented by counsel "under altogether different circumstances". [Id.]

## B.   JAL's Reply

In JAL's reply, it first notes that Plaintiff's

10

opposition is untimely.  It next argues that the Court has broad

power to impose a stay, which includes the ability to lift the

stay once imposed.  It states that courts can stay proceedings

based on illness of a party, or party's counsel, and that a court

can condition a stay, or lifting of a stay, on proof from a party

seeking a stay for health reasons.  JAL also asserts that:

> Indeed, it should raise a red flag that Crawford
> will not provide a simple letter from his
> physician that he is well enough to litigate.
> Crawford did so when he wanted to stop litigating
> in 2008.  The tacit message is that he wants to be
> able to play the "sick card" again.  He wants to
> have it both ways.  He wants to litigate when he
> sees some advantage, and if he sees some
> disadvantage, he wants to seek refuge behind a
> physician's letter.  The Court should preempt that
> gamesmanship with a properly fashioned order.

[Reply to JAL Mot. at 8.]

JAL argues that, under the Court's broad authority to

control its docket, and the equities of this case, that it should

grant the JAL Motion.  [Id. at 10.]

**III. Motion to Strike**

JAL moves the Court to strike Plaintiff's Supplemental

Statement of Authorities, filed on February 28, 2013.  It argues

that Plaintiff's filing is not supported by Local Rule LR7.8.

**A.  Plaintiff's Opposition**

In his opposition, Plaintiff argues that he is in

compliance with Local Rule LR7.8 because his filing provides the

relevant language of the two additional authorities Plaintiff

11

intends to rely on during the April 8, 2013 hearing.  He claims
that it "provides a short contextual paragraph for each of the
two authorities, essentially giving all parties a courtesy 'heads
up' as to how the authorities will be utilized." [Mem. in Opp.
to Motion to Strike at 2.]

**B.   JAL's Reply**

In its reply, JAL notes that Plaintiff's opposition was
filed two days late, and asks the Court to disregard the
opposition and grant its motion.  It argues that Plaintiff's
purported "authorities" are Federal Rules, and that there is no
need to provide "copies" of these rules to the Court or opposing
counsel.  Rather, Plaintiff intended to add argument to his
sanctions motion, which violates Local Rules LR7.4 and LR7.5(a).
[Reply in Supp. of Mot. to Strike at 4.]

**DISCUSSION**

**I.   Motion to Strike**

Plaintiff purports to have filed his supplemental brief
pursuant to Local Rule LR7.8, which provides in pertinent part:

> A party who intends to rely at a hearing on
> authorities not included in either the brief or
> memorandum of law . . . should provide to the
> court and opposing counsel copies of the
> authorities at the earliest possible time prior to
> the hearing.

JAL argues that Plaintiff provides no copies of any
"authorities not included in . . . [his] memorandum of law" for

the sanctions motion.  Instead, Plaintiff uses the filing to augment his sanctions motion, in violation of Local Rule LR7.4, which provides: "No further or supplemental briefing shall be submitted without leave of court."  The Court agrees and therefore HEREBY STRIKES Plaintiff's supplemental filing, and GRANTS JAL's Motion to Strike.

## II.  **JAL Motion**

JAL seeks a court order requiring Plaintiff to show his medical fitness to litigate this matter pursuant to the Court's inherent authority to manage its docket.  The Court finds that such an order is not necessary and the request is HEREBY DENIED.

A district court has the power to stay proceedings as part of its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  In determining whether to stay an action, courts must weigh competing interests that will be affected by the granting or refusal to grant a stay.  CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).  Among these competing interests are (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to

result from a stay.  Id. (citing Landis, 299 U.S. at 254–55).

"[T]he same court that imposes a stay of litigation has the inherent power and discretion to lift the stay." Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 74 (D.D.C. 2002). "When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay."  Id.

Although the Court finds that the order requested by JAL is not necessary in the instant matter, as discussed at the April 8, 2013 hearing, the Court orders that this case be re-opened and HEREBY lifts the stay in this matter.

## III. **Plaintiff's Motion**

### A.   **Plaintiff's Request for Sanctions**

The Court first addresses Plaintiff's request for sanctions pursuant to Rule 11.

#### 1.   **Rule 11 Sanctions**

Federal Rule of Civil Procedure 11(b) requires that parties present arguments that are warranted by the law and non-frivolous:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for

any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. . . .

Rule 11 applies to all pleadings, written motions and other papers presented to the court. Fed. R. Civ. P. 11(a).

Rule 11 "subject[s] litigants to potential sanctions for insisting upon a position after it is no longer tenable. . . ." Fed. R. Civ. P. 11 advisory committee's note (1993).  In determining whether a party has violated Rule 11, the court applies an objective reasonableness standard. Yagman v. Republic Ins., 987 F.2d 622, 628 (9th Cir. 1993).  A showing of subjective bad faith is not required.  See Smith v. Ricks, 31 F.3d 1478, 1488 (9th Cir. 1994) (noting that sanctions cannot be avoided by the "empty head, pure heart" defense); Zaldivar v. City of L.A., 780 F.2d 823, 831 (9th Cir. 1986), overruled on other grounds by Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990) (noting that the certification requirements of Rule 11 are violated "if the paper filed . . . is frivolous, legally unreasonable or without factual foundation, even though . . . not filed in subjective bad faith").

Rey v. Countrywide Home Loans, Inc., Civil No. 11-00142 JMS/KSC, 2011 WL 4103704, at *2 (D. Hawai'i Sept. 13, 2011).

Plaintiff clearly fails to meet the Rule 11 standard here with respect to any of the specific filings identified in his motion.  First, the Court notes that Plaintiff failed to comply with Rule 11(c)(2)'s 21-day safe harbor provision.  The

15

purpose of the safe harbor provision is to allow offending parties the opportunity to withdraw or correct the material challenged and thereby escape sanctions.  Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC, 339 F.3d 1146, 1150 (9th Cir. 2003).  This provision is so strictly enforced that sanctions are not to be awarded when the moving party fails to comply, even if the underlying filing is frivolous.  Here, counsel can no longer correct or withdraw any of the allegedly frivolous contentions under the safe harbor provision, except for JAL's Answer.

Moreover, Plaintiff's Motion and its exhibits themselves do not describe the specific conduct by each filing party that is alleged to violate Rule 11.  Further, as noted by Mr. Pepper, he received an unfiled draft of Plaintiff's Motion in early December of 2012, with no note of explanation or request for withdrawal or modification of any filing.  Mr. Green's response to Mr. Pepper's inquiry does not provide proper notice of the allegations or an adequate opportunity to cure the alleged deficiencies.  Nor was HACS Counsel successful in receiving information regarding the motion, despite multiple requests.  See Holgate v. Baldwin, 425, F.3d 671, 679 (9th Cir. 2005).

Second, the Court wholly rejects Plaintiff's theory that statements that he lost his JCAB qualification or "lost his wings" are frivolous for purposes of his request for Rule 11

sanctions.  Rather, based on the current record, any such
statements appear to be objectively reasonable and factually
supported.  For example, JAL's Answer, filed in 2003, is
supported by a good faith basis, including a December 26, 2001
letter from JAL to HACS, which stated that Plaintiff "failed his
line checks on Dec. 13 and 15, 2001 . . . and lost his capacity
as a JCAB-qualified pilot."  [Mem. in Supp. of Plaintiff's Mot.,
Exhibit D (12/6/01 JAL Letter).]  Further, any such claim
regarding Plaintiff's qualification to fly has not been fully
litigated – or even advanced beyond the initial pleading stage –
and the sanction requested by Plaintiff is entirely premature.
Plaintiff's request for Rule 11 sanctions is both procedurally
defective and substantively specious, and is HEREBY DENIED.

### 2.   **28 U.S.C. § 1927 Sanctions**

Plaintiff also seeks sanctions against defense counsel
pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct
> cases in any court of the United States or any
> Territory thereof who so multiplies the
> proceedings in any case unreasonably and
> vexatiously may be required by the court to
> satisfy personally the excess costs, expenses, and
> attorneys' fees reasonably incurred because of
> such conduct.

Sanctions imposed pursuant to 28 U.S.C. § 1927 "must be
supported by a finding of subjective bad faith," and such "[b]ad
faith is present when an attorney knowingly or recklessly raises
a frivolous argument, or argues a meritorious claim for the

purpose of harassing an opponent." Moore v. Keegan Mgmt. Co. (In Re Keegan Mgmt. Co., Sec. Litig.), 78 F.3d 431, 436 (9th Cir. 1996).

"Thus, with § 1927 as with other sanctions provisions, '[d]istrict courts enjoy much discretion in determining whether and how much sanctions are appropriate.'" Haynes v. City & Cnty. of San Francisco, 688 F.3d 984, 987 (9th Cir. 2012) (quoting Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995)).

Plaintiff clearly fails to meet the more stringent subjective bad faith standard in the instant case, and the Court, exercising its discretion, finds that sanctions are not warranted pursuant to 28 U.S.C. § 1927. Plaintiff's Motion is DENIED insofar as it requests sanctions pursuant to 28 U.S.C. § 1927.

### 3. Court's Inherent Power to Sanction

"Inherent-power sanctions" must be preceded by a finding of "bad faith or conduct tantamount to bad faith." Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1061 (9th Cir. 2009) (emphasis, citations and internal quotation marks omitted); accord Scott v. Kruse (In re Fisher Fin. & Inv. LLC), No. 09-60035, 2011 WL 1898225, at *1 (9th Cir. May 19, 2011). As explained by the Ninth Circuit in Leon v. IDX Systems Corp.:

Under its "inherent powers," a district court may . . . award sanctions in the form of attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (discussing a sanction against an attorney) (citation omitted). Before awarding such sanctions, the

18

court must make an express finding that
the sanctioned party's behavior
"constituted or was tantamount to bad
faith."  Id. (citation omitted).  A
party "demonstrates bad faith by
delaying or disrupting the litigation or
hampering enforcement of a court order."
Id. at 649 (internal quotation marks and
citation omitted).  The bad faith
requirement ensures that the district
court's exercise of its broad power is
properly restrained, and "preserves a
balance between protecting the court's
integrity and encouraging meritorious
arguments."  Id.  Additionally, the
amount of monetary sanctions must be
"reasonable."  Brown v. Baden (In re
Yagman), 796 F.2d 1165, 1184 (9th Cir.),
as amended by 803 F.2d 1085 (1986)
(reviewing a Rule 11 sanction but
announcing a standard applicable to
other sanctions as well).

464 F.3d 951, 961 (9th Cir. 2006).

A court may also impose sanctions for
recklessness when such behavior is "combined with
an additional factor such as frivolousness,
harassment, or an improper purpose."  Fink [v.
Gomez], 239 F.3d [989,] 994 [(9th Cir. 2001)].
"[A]lthough recklessness, of itself, does not
justify the imposition of sanctions, sanctions
. . . . are justified 'when a party acts for an
improper purpose—even if the act consists of
making a truthful statement or a non-frivolous
argument or objection .'"  Gomez v. Vernon, 255
F.3d 1118, 1134 (9th Cir. 2001) (emphasis in
original) (quoting Fink, 239 F.3d at 992).  The
Ninth Circuit has cautioned, however, that courts
may not issue inherent power sanctions for
"inadvertent" conduct such as "'an oversight or
ordinary negligence'".  Fink, 239 F.3d at 993
(some citations and quotation marks omitted)
(quoting Zambrano v. City of Tustin, 885 F.2d
1473, 1483 (9th Cir. 1989)).

Although the Ninth Circuit has yet to address
the burden of proof required for an inherent

powers sanctions award, it has analyzed several
sanctions cases under a "clear and convincing
evidence" standard.  <u>See, e.g.</u>, <u>Lahiri v.
Universal Music & Video Distrib. Corp.</u>, 606 F.3d
1216, 1219 (9th Cir. 2010) (declining to address
the burden of proof issue because "clear and
convincing evidence" supported the district
court's bad faith finding); <u>In re Lehtinen</u>, 564
F.3d at 1061 n.4 (same); <u>F.J. Hanshaw Enters.,
Inc. v. Emerald River Dev., Inc.</u>, 244 F.3d 1128,
1143 n.11 (9th Cir. 2001) (same).

<u>Coles v. Eagle</u>, NO. CIV. 09-00167 LEK, 2011 WL 2610199, at *8 (D.

Hawai'i July 1, 2011).

> While we found no authority setting specific
> time limits for the filing of a motion for
> sanctions pursuant to our inherent authority, it
> is generally well-established that "unreasonable
> delay may render . . . a [sanctions] motion
> untimely." <u>Brown v. Hawaii</u>, No. 07 C 00556, 2009
> WL 3365850, at *2 (D. Haw. Oct. 19, 2009) (quoting
> <u>Long v. Howard Univ.</u>, 561 F. Supp. 2d 85, 91
> (D.D.C. 2008)); <u>see also</u> <u>Brandt v. Vulcan, Inc.</u>,
> 30 F.3d 752, 756 (7th Cir. 1994).  "The timeliness
> of a motion for sanctions depends on such factors
> as when the movant learned of the discovery
> violation, how long [she] waited before bringing
> it to the court's attention, and whether discovery
> has been completed." <u>Long</u>, 561 F. Supp. 2d at 91
> (evaluating a Rule 37 sanctions motion).

<u>Clark v. United States</u>, No. 06-CV-00544, 2011 WL 66181, at *4 (D.

Hawai'i Jan. 7, 2011).

For the reasons stated above, and because the Court

finds that sanctions are not warranted pursuant to its inherent

power, the Court DENIES Plaintiff's Motion on this additional

ground.

**B.   Defendants' Request for Fees**

"If warranted, the court may award to the prevailing

party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).

The Court finds that Plaintiff failed to comply with the procedural requirements of Rule 11 and that the Plaintiff's Motion is substantively without merit. The Court therefore concludes that Defendants, and any additional sanctions targets, are the prevailing parties. Accordingly, these responding parties and counsel are entitled to their reasonable attorneys' fees resulting directly from Plaintiff's filing, in an amount sufficient to deter repetition of such conduct. Counsel shall submit an appropriate motion for attorneys' fees, in compliance with Local Rule LR54.3, by **June 24, 2013**.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Sanctions Against JAL Defendants, HACS, Certain Carlsmith Ball Attorneys, and Carl Osaki, filed on January 18, 2013, is HEREBY DENIED and the Court FINDS that Defendants are the prevailing parties. Counsel shall file any motions for attorneys' fees by **June 24, 2013**. JAL's Motion for Court to Issue An Order Requiring Plaintiff Jack Crawford to Show His Medical Fitness to Litigate, filed on February 22, 2013, is HEREBY DENIED. JAL's Motion to Strike Plaintiff's Supplemental Statement of Authorities Filed Pursuant to LR7.8 in Support of Plaintiff's Motion for Sanctions, filed on March 6, 2013, is HEREBY GRANTED.

21

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, MAY 31, 2013.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

CRAWFORD V. JAPAN AIRLINES, ET AL.; CIVIL NO. 03-00451 LEK-KSC; ORDER (1) DENYING PLAINTIFF JACK CRAWFORD'S MOTION FOR SANCTIONS AGAINST JAL DEFENDANTS, HACS, CARLSMITH BALL, CERTAIN CARLSMITH BALL ATTORNEYS AND CARL OSAKI; (2) DENYING DEFENDANT JAPAN AIRLINES' MOTION FOR THE COURT TO ISSUE AN ORDER REQUIRING PLAINTIFF JACK CRAWFORD TO SHOW HIS MEDICAL FITNESS TO LITIGATE; AND (3) GRANTING JAPAN AIRLINES' MOTION TO STRIKE PLAINTIFF JACK CRAWFORD'S SUPPLEMENTAL STATEMENT OF AUTHORITIES FILED PURSUANT TO LR7.8 IN SUPPORT OF PLAINTIFF JACK CRAWFORD'S MOTION FOR SANCTIONS AGAINST JAL DEFENDANTS, FILED FEBRUARY 28, 2013